IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────

JAMES MAXWELL,

        Plaintiff,

    v.

MR. MILLER, *et al.*,

        Defendants.

Civil Action No.
9:16-CV-0275 (LEK/DEP)

─────────────────────────────

<u>APPEARANCES</u>:

<u>FOR PLAINTIFF</u>:

JAMES MAXWELL, *Pro Se*
0080005
St. Lawrence Psychiatric Center
1 Chimney Point Drive
Ogdensburg, New York 13669

<u>FOR DEFENDANTS</u>:

HON. ERIC T. SCHNEIDERMAN
New York State Attorney General
The Capitol
Albany, New York 12224

<u>OF COUNSEL</u>:

NICOLE E. HAIMSON, ESQ.
Assistant Attorney General

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by *pro se* plaintiff James Maxwell, a civilly committed resident in the St. Lawrence Psychiatric Center ("SLPC"). Plaintiff's complaint generally alleges that defendants, three individuals employed at the SLPC, violated his rights under the Fourteenth Amendment by failing to provide him with adequate medical treatment and using excessive force against him.

Currently pending before the court is a motion brought by defendants seeking dismissal of plaintiff's complaint for failure to state a claim upon which relief may be granted. For the reasons set forth below, I recommend that defendants' motion be granted, in part, but otherwise denied.

I.    <u>BACKGROUND</u>[1]

Plaintiff is currently housed in the SLPC, a mental health treatment facility, which is located in Ogdensburg, New York, and operated by the New York State Office of Mental Health ("OMH"). *See generally* Dkt. No. 1.

---

[1]    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964).

The circumstances under which plaintiff came to be housed in the SLPC remain unclear based on the record now before the court but do not appear to be relevant to his claims in this action.

Plaintiff's complaint is not a model of clarity. Liberally construed, it appears to allege that, on an unspecified date, plaintiff asked to have a dressing for a wound changed after his shower but that defendants Miller and Reynolds, two nurses employed at the facility, refused his request and, instead, assaulted him. Dkt. No. 1 at 2, 4. Plaintiff further alleges that while not an active participant in the incident, defendant Chief Nurse Snyder was present for the attack but did nothing to protect him from harm. *Id.*

II.    PROCEDURAL HISTORY

Plaintiff's complaint in this action was filed on March 9, 2016. Dkt. No. 1. Because plaintiff did not pay the required filing fee or submit an accompanying application for leave to proceed in the case *in forma pauperis* ("IFP"), Senior District Judge Lawrence E. Kahn issued an order directing that the case be administratively closed but providing plaintiff an opportunity to comply with the filing fee requirement. Dkt. No. 2. Plaintiff thereafter submitted a motion for permission to proceed IFP. Dkt. No. 3. That motion was granted by Judge Kahn in a decision and order issued on

April 21, 2016. Dkt. No. 6. In his decision, Judge Kahn also directed, *inter alia*, that the complaint be served on, and summonses be issued to, defendants Miller, Reynolds, and Snyder.[2] *Id.* In lieu of answering plaintiff's complaint, defendants instead filed the currently pending motion to dismiss the pleading for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. Nos. 14, 19, 20. Plaintiff has not responded to defendants' motion, which is now ripe for determination and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

---

[2]     Plaintiff's complaint originally identified defendant Reynolds as "Mr. Randys." Dkt. No. 1 at 1, 2. On June 10, 2016, the court received a letter from Nancy Halleck, Deputy Counsel for Litigation for the OMH, indicating that no one with the last name "Randys" works at the SLPC. Dkt. No. 9 at 1. Halleck informed the court that she "believes it is possible that the plaintiff was referring to Ivor Reynolds, a nurse at SLPC, who was working at the time [of the] alleged incident[.]" *Id.* In light of this letter, the court directed the clerk of the court to issue a new summons for Ivor Reynolds and the United States Marshal to serve it, along with a copy of plaintiff's complaint, on Reynolds or his counsel. Dkt. No. 12. Service of the summons and complaint was acknowledged on July 13, 2016, by an assistant attorney general on behalf of defendant Reynolds. Dkt. No. 18. Defendant Reynolds has since requested and been granted permission to join the pending dismissal motion. Dkt. Nos. 19, 20.

III.    DISCUSSION

    A.    Legal Standard Governing Motions to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard which, though unexacting, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292,

300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The tenet that a court must accept as true all of the allegations contained in a complaint does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (citation omitted)); *Sealed*

*Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

    B.    <u>Plaintiff's Medical Indifference Claim</u>

As a civilly committed resident confined in the SLPC, plaintiff is not subject to the protections provided to incarcerated individuals under the Eighth Amendment. *Youngberg v. Romeo*, 457 U.S. 307, 312 (1982). He is, however, entitled to the substantive due process protections afforded by the Fourteenth Amendment, including a guaranty of certain minimal levels of medical treatment. *See, e.g., Youngberg*, 457 U.S. at 315-16 ("If it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional to confine the involuntarily committed – who may not be punished at all – in unsafe conditions."). This distinction, however, is of little significance because the standard governing medical indifference claims brought by civilly committed individuals, like the plaintiff in this case, is the same as that applicable to medical indifference claims asserted by convicted prisoners and pretrial detainees. *See, e.g., Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009)

("Claims for deliberate indifference to a serious medical condition or other serious threat to the health and safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment."); *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (applying the deliberate-indifference test applicable under the Eighth Amendment to the pretrial-detainee plaintiff's Fourteenth Amendment medical indifference claim); *accord Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000); *see also Ahlers v. Kaskiw*, No. 12-CV-0501, 2014 WL 4184752, at *4-6 (N.D.N.Y. Aug. 21, 2014) (Sharpe, J., *adopting report and recommendation by* Baxter, M.J.) (concluding that *Youngberg* did not mandate a different standard for medical claims brought by civil detainees as compared to those brought by pretrial detainees or convicted prisoners).[3]

A claim that officials have been deliberately indifferent to an individual's serious medical needs must satisfy both objective and subjective requirements. *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009); *Price v. Reilly*, 697 F. Supp. 2d 344, 356 (E.D.N.Y. 2010). To meet the objective requirement, the alleged deprivation must be "sufficiently

---

[3]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

serious." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994); *see also Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) ("[T]he objective test asks whether the inadequacy in medical care is sufficiently serious."). Factors informing this inquiry include "whether a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." *Salahuddin*, 467 F.3d at 280 (quotation marks and alterations omitted). Determining whether a deprivation is sufficiently serious requires a court to examine the seriousness of the deprivation, and whether the deprivation represents "a condition of urgency, one that may produce death, degeneration, or extreme pain[.]" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quotation marks omitted). Importantly, it is "the particular risk of harm faced by [the individual] due to the challenged deprivation of care, rather than the severity of [his] underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).

To satisfy the subjective requirement, a plaintiff must demonstrate that the defendant acted with "the necessary level of culpability, shown by actions characterized by 'wantonness.'" *Blyden v. Mancusi*, 186 F.3d 252,

262 (2d Cir. 1999). "In medical-treatment cases . . ., the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin*, 467 F.3d at 280. "Deliberate indifference," in a constitutional sense, "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.*; *see also Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin*, 467 F.3d at 280 (citing *Farmer*, 511 U.S. at 839-40).

In this case, plaintiff's complaint alleges that defendants Miller and Reynolds failed to provide him with adequate medical treatment by refusing to change his medical dressing for a wound. Dkt. No. 1 at 2, 4. No other details regarding plaintiff's medical condition, or the incident more generally, are provided. For example, plaintiff does not describe the injury for which he required a dressing. Accordingly, the complaint fails to allege sufficient facts to plausibly suggest that plaintiff suffered from a serious medical condition. *See, e.g., DesRosiers v. Moran*, 949 F.2d 15, 19 (1st

Cir. 1991) ("[W]e cannot say that the court below erred in holding [on summary judgment] that the defendants' failure to have a nurse change [the plaintiff]'s bandages three times a day, even if coupled with some curtailment of shower access, could not be equated with deliberate indifference to his medical needs."). Because plaintiff's complaint does not allege sufficient facts to satisfy the first element of the controlling test, I recommend that defendants' motion be granted to the extent it challenges the sufficiency of plaintiff's medical indifference cause of action.

C.    Plaintiff's Excessive Force Claim

As is the case with respect to his medical indifference claim, plaintiff's excessive force claim also arises under the Fourteenth Amendment Due Process Clause. *See Youngberg*, 457 U.S. at 315-16 (finding that an involuntarily committed plaintiff residing in a state institution has a constitutionally protected right to be free from unsafe conditions of confinement under the Due Process Clause of the Fourteenth Amendment); *accord Groves v. Davis*, No. 09-CV-1317, 2012 WL 651919, at *3 (N.D.N.Y. Feb. 28, 2012) (Suddaby, J.). Although courts in this circuit have previously analyzed a civil detainee's excessive force cause of action under the same standard as that applicable to convicted prisoners, *see, e.g., Groves*, 2012 WL 651919, at *4, the Supreme Court

issued a decision last year holding that a pretrial detainee's excessive force claim, arising under the Fourteenth Amendment, is not subject to the same standard as that applied to convicted prisoners' excessive force claims arising under the Eighth Amendment. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015) (distinguishing between excessive force claims brought under the Eighth and Fourteenth Amendments by finding that "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically'"). Instead, the Court held that "a pretrial detainee must show only that the force . . . used against [the plaintiff] was objectively unreasonable." *Kingsley*, 135 S. Ct. at 2473. Because it is well settled that a civil detainee's constitutional conditions-of-confinement claims arise under the Fourteenth Amendment Due Process Clause, *Youngberg*, 457 U.S. at 315-16, and because the rationale by the Supreme Court in *Kingsley* seems equally applicable to civil detainees, I find that the legal standard articulated in *Kingsley* applies to plaintiff's excessive force claim in this case.[4] As the Supreme Court has explained,

---

[4]     Unlike plaintiff's medical indifference claim, I have determined that the appropriate legal standard applicable to his excessive force claim differs from that which applies to convicted prisoners based solely on the Supreme Court's decision in *Kingsley*, which is binding precedent under the circumstances. The Second Circuit's application of the two-pronged, objective and subjective test (governing convicted prisoners' deliberate medical indifference claims) to medical indifference claims asserted by pretrial and civil detainees, however, remains binding precedent absent any authority suggesting that *Kingsley* also extends to medical indifference claims

the following non-exhaustive considerations are relevant to the question of

whether a defendant applied force reasonably:

> the relationship between the need for the use of
> force and the amount of force used; the extent of
> the plaintiff's injury; any effort made by the officer to
> temper or to limit the amount of force; the severity of
> the security problem at issue; the threat reasonably
> perceived by the officer; and whether the plaintiff
> was actively resisting.

*Kingsley*, 135 S. Ct. at 2473.

In this case, plaintiff's complaint alleges that, while he was "walking

with a walker with 4-wheels while [he] was about to get [his] dressing

change [sic] both [defendants Miller and Reynolds] attack [sic] [plaintiff]

who's handycap [sic] . . . in front of . . . [defendant] Snyder[.]" Dkt. No. 1 at

2. While these allegations are, at best, threadbare, I am mindful of the

court's obligation to both liberally construe a *pro se* litigant's pleadings and

extend special solicitude to *pro se* plaintiffs. *Tracy v. Freshwater*, 623 F.3d

90, 101 (2d Cir. 2010); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471,

475 (2d Cir. 2006). Accordingly, while plaintiff's claims may not survive a

motion for summary judgment after the parties have engaged in full

---

arising under the Fourteenth Amendment. *See, e.g., Caiozzo*, 581 F.3d at 72 ("Claims
for deliberate indifference to a serious medical condition or other serious threat to the
health and safety of a person in custody should be analyzed under the same standard
irrespective of whether they are brought under the Eighth or Fourteenth Amendment.").
For this reason only, and despite the seemingly inconsistent legal standards, I have
applied different standards when analyzing plaintiff's medical indifference and
excessive force claims in this case.

discovery and a more robust record can be developed, I find that, at this early juncture, plaintiff's complaint alleges sufficient facts to plausibly suggest that defendants Miller and Reynolds used unreasonable force against plaintiff. For this reason, I recommend that defendants' motion be denied with respect to plaintiff's excessive force claim.

D.  Plaintiff's Failure-to-Protect Claim

In light of the Supreme Court's finding that involuntarily committed individuals have a Fourteenth Amendment Due Process right to safe conditions of confinement, *Youngberg*, 457 U.S. at 316, I find that civil detainees, like the plaintiff in this case, may bring a failure-to-protect claim against individuals employed by the facility responsible for the safety of its residents, who, like correctional officers in the prison setting, fail to intervene and protect them from harm. In order to prevail on such a claim, a plaintiff must prove that the defendant actually knew of and disregarded an excessive risk of harm to his health and safety.[5] *Hayes v. N.Y. City Dep't of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996). Because plaintiff in this case alleges that defendant Snyder was present during the alleged attack on him by defendants Miller and Reynolds, and presumably was

---

[5]     In the absence of any authority stating otherwise, I find that the legal standard applicable to failure-to-protect claims arising from an individual's Fourteenth Amendment rights is the same as the standard governing a convicted prisoner's claims arising under the Eighth Amendment.

positioned to protect the him from the assault, I find that the complaint sufficiently alleges a cognizable failure-to-protect claim against defendant Snyder. Accordingly, I also recommend that defendants' motion be denied with respect to this cause of action.

   E.   Plaintiff's Verbal Harassment Claims

   Plaintiff alleges that defendant Miller had a history of "threating [sic]" him prior to the alleged attack. Dkt. No. 1 at 4. To the extent that this allegation could be construed as plaintiff's attempt to assert a verbal harassment cause of action, I recommend it be dismissed as legally deficient because such conduct is not actionable under section 1983. *See, e.g., Cabassa v. Smith*, No. 08-CV-0480, 2009 WL 1212495, at *6 (N.D.N.Y Apr. 30, 2009) (Kahn, J., *adopting report and recommendation by* Peebles, M.J.), ("[C]ourts typically note that 42 U.S.C. § 1983 is not designed to remedy harassment or verbal abuse." (citing cases)).

   F.   Whether to Permit Amendment

   In the event the recommendations described above are adopted, plaintiff's medical indifference and verbal harassment claims will be subject to dismissal. Ordinarily, a court should not dismiss claims asserted by a *pro se* litigant without granting leave to amend the complaint at least once "when a liberal reading of the complaint gives any indication that a

15

valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). Here, given the procedural history of this action, the court must determine whether plaintiff is entitled to the benefit of this general rule.

The deficiencies identified in plaintiff's complaint with respect to his medical indifference claim could feasibly be cured through the inclusion of greater factual detail in his pleading. Therefore, I recommend that plaintiff be permitted to amend his complaint, if desired, to address the deficiencies identified in this report with respect to that cause of action. Plaintiff's verbal harassment cause of action, however, is legally deficient, and the deficiency cannot be corrected through amendment. Accordingly, I recommend against permitting amendment with respect to that claim.

In the event plaintiff chooses to file an amended complaint, he is advised that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a

litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in his amended complaint, plaintiff must clearly set forth the facts that give rise to the claim, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of each of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ('It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted)).

IV.    <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff's complaint asserts claims against the defendants related to their refusal to provide him medical treatment and an ensuing assault. While the complaint fails to allege facts plausibly supporting his medical indifference claim and, to the extent it can be construed to assert such a claim, his cause of action alleging verbal harassment, I find that it does allege sufficient facts to support his excessive force and failure-to-protect claims arising under the Fourteenth Amendment. Accordingly, it is respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 14) be GRANTED with respect to plaintiff's medical indifference and verbal harassment claims, and that those claims be DISMISSED, with leave to amend within thirty days of any order adopting this report to cure the deficiencies described herein regarding his medical indifference claim.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      November 17, 2016
            Syracuse, New York

2014 WL 4184752
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Karl AHLERS, Plaintiff,
v.
Richard KASKIW, Defendant.

No. 9:12–cv–501 (GLS/ATB).
|
Signed Aug. 21, 2014.

**Attorneys and Law Firms**

Karl Ahlers, pro se.

C. Harris Dague, Ass't Att'y Gen., for the Defendant.

### *SUMMARY ORDER*

GARY L. SHARPE, Chief Judge.

**\*1** Plaintiff *pro se* Karl Ahlers commenced this action against defendant Dr. Richard Kaskiw,[1] pursuant to 42 U.S.C. § 1983, alleging violations of his Fourteenth Amendment due process rights. (*See generally* Am. Compl., Dkt. No. 6.) Specifically, Ahlers, who is a civilly committed sex offender, confined at the Central New York Psychiatric Center (CNYPC), and in the custody of the New York State Office of Mental Health (OMH), alleged that, between July 2011 and September 2012, Kaskiw denied him an adequate diet and appropriate medical care. (*Id.*) In a Report–Recommendation (R & R) issued on July 9, 2014, Magistrate Judge Andrew T. Baxter recommended that Kaskiw's motion for summary judgment be granted and Ahlers' amended complaint be dismissed in its entirety. (Dkt. No. 21.) For the reasons that follow, the R & R is adopted in its entirety.

Before entering final judgment, this court reviews report and recommendation orders in cases it has referred to a magistrate judge. If a party properly objects to a specific element of the magistrate judge's findings and recommendations, this court reviews those findings and recommendations *de novo. See Almonte v. N.Y. State Div. of Parole,* No. Civ. 904CV484GLS, 2006 WL 149049, at \*3, \*5 (N.D.N.Y. Jan. 18, 2006). In those cases

where no party has filed an objection, only vague or general objections are made, or a party resubmits the same papers and arguments already considered by the magistrate judge, this court reviews the findings and recommendations of the magistrate judge for clear error. *See id.* at \*4–5.

Here, neither party has filed objections to the R & R, and the court, therefore, has reviewed it for clear error. *See id.* While the thoughtful and well-reasoned R & R is free of clear error and is adopted in its entirety, the court takes this opportunity to comment on the proper legal framework for analyzing constitutional medical care claims filed by civilly committed sex offenders, which, as Judge Baxter noted, is an area of uncertainty in this District and Circuit. (Dkt. No. 21 at 6–12.) The confusion arises over whether the courts should apply the same deliberate indifference standard that is employed when such claims are raised by convicted prisoners or pretrial detainees, or whether a more plaintiff-friendly reasonable-professional judgment standard is warranted. (*Id.*)

For substantially the same reasons as articulated in the R & R, this court agrees with the majority of our sister courts, and concludes that the appropriate standard for constitutional medical claims asserted by civilly committed sex offenders is the same deliberate indifference standard that applies to convicted prisoners and pretrial detainees. (*See id.* at 8 (collecting cases).) To the extent that this court has hinted otherwise, and inadvertently contributed to the confusion, *see Treat v. Cent. N.Y. Psychiatric Ctr.,* No. 9:12–cv–602, 2013 WL 6169746, at \*2 n. 4, \*3 (N.D.N.Y. Nov. 20, 2013) (noting the different standards, and indicating that individuals who have been involuntarily committed may be entitled to more considerate treatment and conditions of confinement than prison inmates, but not squarely or definitively deciding the appropriate standard), the court now clarifies which standard it finds appropriate.

**\*2** Accordingly, having found no clear error in the R & R, the court adopts it in its entirety.

### V. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Andrew T. Baxter's July 9, 2014 Report–Recommendation (Dkt. No. 21) is **ADOPTED** in its entirety; and it is further

**ORDERED** that Kaskiw's motion for summary judgment (Dkt. No. 17) is **GRANTED;** and it is further

**ORDERED** that Ahlers' amended complaint (Dkt. No. 6) is **DISMISSED;** and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Summary Order to the parties.

**IT IS SO ORDERED.**

### REPORT–RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge.

Presently before the court is the defendant Kaskiw's motion for summary judgment pursuant to Fed.R.Civ.P. 56 (Dkt.Nos.17, 18), which plaintiff has opposed (Dkt. No. 20). This matter was referred to me for Report and Recommendation on January 31, 2014 by Chief U.S. District Judge Gary L. Sharpe, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

Plaintiff Karl Ahlers is a civilly-committed sex offender, confined at the Central New York Psychiatric Center ("CNYPC"), in the custody of the New York State Office of Mental Health ("OMH"). Liberally construed, the amended complaint ("AC," Dkt. No. 6) alleges that, between July 2011 and September 2012, Dr. Kaskiw denied plaintiff an adequate diet and appropriate medical care, in violation of the Due Process Clause of the Fourteenth Amendment.[1] For the reasons set forth below, this court recommends that defendant's summary judgment motion be granted, and that the remaining claim set forth in plaintiff's amended complaint be dismissed.

### FACTS

The amended complaint alleges that, based on an improper diagnosis that plaintiff suffered from a nut allergy, he was kept on a restricted diet at CNYPC, which

deprived him of certain foods that were provided to other residents. (AC ¶¶ 2–9, 26–27, 46–48). Plaintiff's requests to be taken off the restrictive diet and to be scheduled for allergy testing, to determine whether he was allergic to nuts, were denied by Dr. Kaskiw and others. (AC ¶¶ 10–18, 21, 28–35, 38). The amended complaint states that, as a result of the restricted diet, plaintiff lost an average of one pound per month since December 2010. (AC ¶¶ 45, 48). Plaintiff also alleges that the medical staff refused to continue to prescribe Lidex cream to address a persistent itchy rash on plaintiff's legs and feet. (AC ¶¶ 39, 41 & Exs. 23, 25; Pl.'s Aff. ¶¶ 40–46, Dkt. No. 20 at 4).[2]

When plaintiff was transferred to CNYPC in May 2009, his prior medical records from other facilities contained numerous references to his nut allergies and the fact that his diet was not to include, *inter alia,* nuts and honey. (Kaskiw Aff. ¶¶ 17, 18, Dkt. No. 17–4; AG DEF–1–3, 11–12, Dkt. No. 18).[3] Based upon plaintiff's documented medical history, the CNYPC staff imposed an allergy-tailored diet plan that excluded foods to which plaintiff was allergic, including nuts and honey.[4] (Kaskiw Aff. ¶ 20, AG DEF–12, 13).

**\*3** On or about November 7, 2011, plaintiff attended a medical appointment with Dr. Kaskiw, during which he objected to his allergy-tailored diet plan and requested to have the plan discontinued so that he could regulate his own diet. Dr. Kaskiw advised plaintiff that eliminating his dietary restrictions was not medically appropriate, would be in violation of facility policy, and would present a danger to plaintiff. Plaintiff also requested further allergy testing, which Dr. Kaskiw refused as medically unnecessary, given plaintiff's well-documented allergy history. (Kaskiw Aff. ¶ 21; AG DEF–15).

Plaintiff thereafter made repeated complaints to Dr. Kaskiw and other OMH officials, claiming that he had no food allergies, objecting to his restricted diet, and demanding allergy testing. (AC ¶¶ 12–23, 26–38). OMH consistently responded that a change in plaintiff's dietary restrictions and re-testing for allergies were not medically indicated given his history of nut allergies. (Kaskiw Aff. ¶¶ 22–23; AG DEF 31–38).

On or about November 13, 2012, two months after plaintiff filed this lawsuit, he was given a Radioallergosorbent ("RAST") test by an outside allergy

testing laboratory. The RAST test was positive for a "Class III" peanut allergy, indicating a "moderate to strong" food allergy. (Kaskiw Aff. ¶¶ 24–26; AG DEF–16–17). Based on the re-testing results, CNYPC continued plaintiff on a restrictive diet, excluding peanuts and peanut by-products. (AG DEF–28–30).

Medical records from the Manhattan Psychiatric Center indicated that, as of August 2007, plaintiff weighed 236 pounds, and that the nursing staff was tasked with educating him about the importance of better dietary choices. (AG DEF–7–8). Upon his transfer to CNYPC on May 28, 2009, plaintiff's height was 75.5 inches and his weight was 260 pounds, placing him in the "obese" category on the American Medical Association's Body Mass Index ("BMI") scale. (Kaskiw Aff. ¶¶ 34–35 & Ex. 2). Plaintiff's weight was gradually reduced to 216 pounds ("overweight" on the BMI scale) as of September 28, 2011; to 203 pounds (still "overweight") as of September 29, 2012; and to 194 pounds (a normal and healthy weight on the BMI scale) as of December 28, 2013. (Kaskiw Aff. ¶¶ 36–38 & Ex. 2). Dr. Kaskiw observed that plaintiff's "gradual and steady" weight loss over the course of four years "placed him in a vastly improved, medically desirable, healthy place." Dr. Kaskiw concluded that "there has been no need for treatment or medical intervention to curb or other[ ]wise address [plaintiff's] weight loss or dietary restrictions." (Kaskiw Aff. ¶ 39).

Dr. Kaskiw prescribed Lidex cream to plaintiff on January 9, 2012, based on his complaints of dry, scaly skin on his ankles/feet. (Kaskiw Aff. ¶ 43; AG DEF 20–22).[5] On July 30, 2012, CNYPC medical staff examined plaintiff, following his request for Lidex cream, and found dry and itchy skin on his legs, with four to five scattered small scabs. A nurse practitioner determined that a prescription for Lidex cream was not indicated, and suggested that plaintiff use an over-the-counter skin moisturizer available through the facility's commissary. (Kaskiw Aff. ¶ 44; AG DEF–23). Plaintiff was examined again on August 21, 2012 and presented with a raised rash on his arm and scabbed areas on his calves. A nurse practitioner advised plaintiff to try a lower-potency steroid cream first, instead of Lidex. (Kaskiw Aff. ¶ 45; AG DEF–24–25). Plaintiff was seen again on November 27, 2012, still complaining of dry, itchy skin and a raised rash on his legs. Plaintiff was treated by a nurse practitioner with Benadryl, Bacitracin and Lac–Hydrin. (Kaskiw Aff. ¶ 46; AG DEF–26–27).

## DISCUSSION

### I. Summary Judgment

**\*4** Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Salahuddin v. Goord,* 467 F.3d 263, 272–73 (2d Cir.2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir.1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord,* 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc .,* 369 U.S. 654, 655 (1962); *Salahuddin v. Goord,* 467 F.3d at 272.

### II. Medical Care

#### A. Applicable Law

In analyzing the contours of the constitutional standard applicable to medical care claims of civilly committed sex offenders, it is helpful to discuss first the standards applied by the courts when such claims are raised by convicted prisoners and pretrial detainees. In order to state a claim for cruel and unusual punishment under the Eighth Amendment, based on constitutionally inadequate medical treatment, a sentenced prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,*

429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter,* 316 F.3d 178, 183–84 (2d Cir.2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing, *inter alia, Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998)).

Constitutional medical care claims by pretrial detainees must be analyzed under the Due Process Clause of the Fourteenth Amendment because the Eighth Amendment's cruel and unusual "punishment" clause is not directly applicable to prisoners who have not been convicted. *Mayo v. County of Albany,* 357 F. App'x 339, 341 (2d Cir.2009). In 2009, the Second Circuit held that the Eighth Amendment "deliberate indifference" standard, as articulated in the Supreme Court's decision in *Farmer v. Brennan,* 511 U.S. 825 (1994) [6], should be applied to constitutional medical care claims of pretrial detainees under the Due Process clause. *Caiozzo v. Koreman,* 581 F.3d 63, 66, 72 (2d Cir.2009) ("[c]laims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment"). *Caiozzo,* following the position taken by several other circuit courts, reversed prior Second Circuit precedent which had applied a strictly objective standard in evaluating medical claims by pretrial detainees under the Due Process clause. *Mayo,* 357 F. App'x at 341; *Caiozzo v. Koreman,* 581 F.3d at 71 & n. 4. [7]

**\*5** Civilly committed sex offenders are neither convicted inmates, nor "pretrial detainees." However, most of the judges in the Northern District of New York who have analyzed constitutional medical care claims by civilly committed sex offenders at CNYPC have relied upon *Caiozzo* in applying the same deliberate indifference standard applied by the Second Circuit to sentenced prisoners and pretrial detainees. *See, e.g., James v. Morgan,* 9:13–CV–526 (DNH/CFH), 2014 WL 841344, at \*2 (N.D.N.Y. March 4, 2014) [8]; *Ali v. Hogan,* No. 9:12–CV–0104 (DNH/RFT), 2013 WL 5466302, at \*4 (N.D.N.Y. Sept. 30, 2013); *Smith v. Carey,* No. 9:10–CV–1247 (NAM/TWD), 2012 WL 6923338, at \*7 (N.D.N.Y. Dec. 28, 2012) (Rep't–Rec.), *adopted,* 2013 WL 237722 (N.D.N.Y. Jan. 22, 2013); *Balkum v. Sawyer,* No. 6:06–

CV–1467 (NPM), 2011 WL 5041206, at \*11 (N.D.N.Y. Oct. 21, 2011); *Smith v. Hogan,* No. 9:09–CV–554 (GTS/GHL), 2011 WL 4343978, at \*8 (N.D.N.Y. Aug. 1, 2011) (Rep't–Rec .), *adopted,* 2011 WL 4343809 (N.D.N.Y. Sept. 14, 2011). Some of our judges, however, have noted uncertainty as to whether a different standard for medical care claims of civilly committed persons should be applied, at least in the alternative, based on the Supreme Court's case in *Youngberg v. Romeo,* 457 U.S. 307, 321–22 (1982) and its progeny. *See, e.g., Groves v. New York,* No. 9:09–CV–412 (GLS/DEP), 2010 WL 1257858, at \*6, \*8 (N.D.N.Y. Mar. 1, 2010) (persons in nonpunitive detention have a right to "reasonable medical care," a standard demonstrably higher than the Eighth Amendment standard that protects prisoners-"deliberate indifference to serious medical needs") (citing *Haitian Ctrs. Council, Inc. v. Sale,* 823 F.Supp. 1028, 1043 (E.D.N.Y.1993); *Owens v. Colburn,* 860 F.Supp. 966, 974 (N.D.N.Y.1994), *aff'd,* 60 F.3d 812 (2d Cir.1995) (table)) (Rep't–Rec.), *adopted,* 2010 WL 1257942 (N.D.N.Y. Mar. 26, 2010).

*Youngberg* considered the legal standard that should be applied to assess the claim asserted on behalf of a "mentally retarded" individual, who was involuntarily committed to a state institution, and whose substantive due process rights to safe conditions of confinement, freedom from bodily restraint, and training or "habilitation" were allegedly violated. *Youngberg,* 457 U.S. at 309. The Supreme Court noted that "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Id.* at 321–22. The Youngberg court held that the standard articulated by Chief Judge Seitz in the lower court opinion under review

> ... affords the necessary guidance and reflects the proper balance between the legitimate interests of the State and the rights of the involuntarily committed to reasonable conditions of safety and freedom from unreasonable restraints. He would have held that "the Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made."

**\*6** *Id.* at 321 (quoting *Romeo v. Youngberg,* 644 F.2d 147, 178 (3d Cir.1980) (en banc) (Seitz, C.J., concurring).

It does not appear that the Supreme Court or the Second Circuit have explicitly ruled on whether *Youngberg* would require the application of a different standard for constitutional medical care claims for civilly committed persons than is now applied to sentenced prisoners and pretrial detainees.[9] There is disagreement among other courts on this question. *See, e.g., Battista v. Clarke,* 645 F.3d 449, 453 & n. 4 (1st Cir.2011) (the opinions as to whether a different, more plaintiff-friendly reasonable-professional-judgment standard applies to civilly committed individuals, based on *Youngberg v. Romeo,* are "not uniform") (collecting cases).

This court is persuaded by the opinions in other circuits that *Youngberg,* when construed in light of subsequent Supreme Court cases, does not compel a different standard for medical care claims for civilly committed individuals and prisoners or pretrial detainees. *See, e.g., Scott v. Benson,* 742 F.3d 335, 339 (8th Cir.2014) (because the Supreme Court later said that *Youngberg* "did not deal with decisions to administer or withhold medical treatment[ ]," *Cruzan by Cruzan v. Dir., Mo. Dep't of Health,* 497 U.S. 261, 279–80 (1990), we apply the deliberate indifference standard from the Eighth Amendment to the medical care claims of a civilly committed plaintiff); *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 646–47 (5th Cir.1996) (although *Youngberg* announced a distinct standard to be applied in measuring the state's constitutional duties to mental incompetents, the Court's later decision in *DeShaney,* called into question the constitutional significance of the *Youngberg* decision)[10] (citing *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 199–200 (1989)). *See also Serna v. Goodno,* 567 F.3d 944, 949 (8th Cir.2009) (applying the Fourth Amendment standard applicable to a pretrial detainee to a civil detainee, based on an analogy drawn by the *Youngberg,* 457 U.S. at 320–21, between pretrial detainees and civilly committed persons, as two groups that could be subjected to liberty restrictions "reasonably related to legitimate government objectives and not tantamount to punishment") .[11] However, like the Fifth Circuit in *Hare,* 74 F.3d at 647, I need not resolve whether the professional judgment standard suggested by *Youngberg* has continuing vitality in the context of medical care claims, because, as discussed below, the standard is not substantially different from "deliberate indifference," and both would produce the same outcome on the facts of this case.

### 1. Deliberate Indifference

The objective prong of the deliberate indifference standard is satisfied "when (a) the prisoner was 'actually deprived of adequate medical care,' meaning prison officials acted unreasonably in response to an inmate health risk under the circumstances, and (b) 'the inadequacy in medical care is sufficiently serious.' *Bellotto v. County of Orange,* 248 F. App'x 232, 236 (2d Cir.2007) (quoting *Salahuddin v. Goord,* 467 F.3d 263, 279–80 (2d Cir.2006)). If the "unreasonable care" consists of a failure to provide any treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Smith v. Carpenter,* 316 F.3d 178, 185–86 (2d Cir.2003). When a prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," the court must focus on the seriousness of the particular risk of harm that resulted from the challenged delay or interruption, rather than the prisoner's underlying medical condition alone." *Id.* at 185. The standard for determining when a deprivation or delay in a prisoner's medical need is sufficiently serious contemplates a condition of urgency that may result in degeneration of the patient's condition or extreme pain. *Bellotto v. County of Orange,* 248 F. App'x at 236 (citing, *inter alia, Chance v. Armstrong,* 143 F.3d at 702).

**\*7** The subjective prong of the deliberate indifference test is satisfied when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan,* 511 U.S. 825, 847 (1994). A plaintiff is not required to show that a defendant acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result," but must show that the official was aware of facts from which one could infer that "a substantial risk of serious harm" exists, and that the official drew that inference. *Id.* at 835, 837. The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer v. Brennan,* 511 U.S. at 844. Thus, the court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if

objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin v. Goord,* 467 F.3d at 281.

A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference. *Chance v. Armstrong,* 143 F.3d at 703. Nor does the fact that an inmate feels that he did not get the level of medical attention he deserved, or that he might prefer an alternative treatment, support a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services,* 151 F.Supp.2d 303, 311 (S.D.N.Y.2001) (citing *Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986)). Even negligence in diagnosing or treating an inmate's medical condition does not constitute deliberate indifference. *Farmer v. Brennan,* 511 U.S. at 835. Thus, any claims of medical malpractice, or disagreement with treatment are not actionable under Section 1983. *Ross v. Kelly,* 784 F.Supp. 35, 44–45 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.1992) (table).

### 2. Professional Judgment

Chief Judge Seitz's concurring opinion in the Third Circuit elaborated on the professional judgment standard adopted, on review, by the Supreme Court in *Youngberg:*

[T]he defendants are liable if their conduct was such a substantial departure from accepted professional judgment, practice, or standards in the care and treatment of this plaintiff as to demonstrate that the defendants did not base their conduct on a professional judgment.... By "accepted professional judgment" I do not mean some standard employed by a reasonable expert or a majority of experts in the community, as state malpractice actions would require, but rather that the choice in question was not a sham or otherwise illegitimate.... The 'substantial departure from accepted professional judgment' standard effectively distinguishes between conduct that violates the minimum requirements of the Constitution and conduct, such as ordinary malpractice, that does not.

**\*8** *Romeo v. Youngberg,* 316 F.3d at 178. I agree with the judges who have parsed this standard and have concluded that it is not "all that far apart" from the deliberate indifference standard articulated in *Farmer.* See, e.g., *Battista v. Clarke,* 645 F .3d at 453 ("[b]oth the *Farmer* and *Youngberg* tests leave ample room

for professional judgment, constraints presented by the institutional setting, and the need to give latitude to administrators who have to make difficult trade-offs as to risks and resources"). *See also Groves v. New York,* 2010 WL 1257858, at \*6 (concluding that "[a]t a minimum, due process forbids conduct that is deliberately indifferent to one that is involuntarily committed" and focusing on the "deliberate indifference" standard in reviewing the medical care claim of the civilly-committed CNYPC sex offender).

I would respectfully disagree with the 1993 Eastern District of New York opinion in *Haitian Ctrs. Council, Inc. v. Sale,* 823 F.Supp. at 1043, and other cases to the extent they suggest that *Youngberg* imposed a "reasonable medical care" standard for civil detainees that is "demonstrably higher" than the Eighth Amendment deliberate indifference standard. [12] Such a "reasonable medical care" "is easily confused" with a negligence or medical malpractice standard that was clearly not intended by the Court in *Youngberg. Hare v. City of Corinth, Miss.,* 74 F.3d at 646.

### B. Analysis

Pursuant to the legal analysis above, this court will evaluate plaintiff's complaints about his medical care primarily under the "deliberate indifference" standard applicable both to prisoners under the Eighth Amendment and to persons in non-punitive detention under the Due Process Clause. However, in the alternative, I will also assess how plaintiff's claims would fare under the "professional judgment" standard, to the extent that applies to civilly committed individuals.

### 1. Restrictive Diet/Weight Loss

"The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health .... While prison officials are duty bound to provide inmates with nutritionally adequate food, 'absent religious or medical [ly] peculiar circumstances, a prisoner does not have a right to a specialized diet while incarcerated[.]' " *Bost v. Bockelmann,* No. 9:04–CV–246 (GLS/DEP), 2007 WL 527320, at \*10 (N.D.N.Y. Feb. 20, 2007) (citations omitted). Prison officials have the discretion to control a prisoner's diet within these constitutional constraints, and " '[p]reference for certain foods and dislike of others cannot be equated with a constitutional guarantee to a custom-tailored menu.' " *Collado v. Sposato,* No. 12–

CV–2151, 2012 WL 3113837, at *4 (E.D.N.Y. July 24, 2012) (quoting *Word v. Croce,* 169 F.Supp.2d 219, 226 (S.D.N.Y.2001)). To establish a deliberate indifference claim with respect to a medically prescribed diet, " 'one must establish that there was a sufficiently serious condition that resulted from the food not being received.' " *Gaines v. Armor Health Care, Inc.,* No. 12–CV–4666, 2012 WL 5438931, at *5 (E.D.N.Y. Nov. 2, 2012) (citing, inter alia, *Evans v. Albany County Correctional Facility,* No. 9:05–CV–1400 (GTS/DEP), 2009 WL 1401645, at * 9 (N.D.N.Y. May 14, 2009)).

**\*9** As discussed above, plaintiff Ahlers was placed on a restricted diet based on nut allergies that were clearly documented in his medical records and that were eventually confirmed by independent laboratory testing, albeit after plaintiff filed this action. The only medical consequence of the restricted diet imposed on plaintiff was that, over the course of more than four years, he gradually lost 66 pounds, going from a body weight that was classified as "obese" on the BMI scale, to a normal and healthy weight of 194 pounds. While "rapid weight loss or weight loss coupled with other conditions may present a serious medical condition[,]" [13] plaintiff's gradual transformation from obesity to a healthy body weight clearly does not satisfy the objective prong of the deliberate indifference standard. *See, e.g., Evans v. Albany County Correctional Facility,* 2009 WL 1401645, at *10 (even assuming that plaintiff lost 30 pounds and experienced dizziness and headaches over a four-month period the court concludes that there is no evidence in the record from which a reasonable fact finder could conclude that plaintiff's " 'weight loss concerns represented a condition of urgency or resulted in degeneration or extreme pain sufficient to implicate an Eighth Amendment violation' ") (citing *Bost v. Bockelmann,* 2007 WL 527320, at *8)).

The defendant and the OMH staff did not violate plaintiff's constitutional rights by imposing a diet on plaintiff that was contrary to his medical needs. Rather, they restricted plaintiff's diet in a manner that was reasonably consistent with his documented food allergies. As noted above, Dr. Kaskiw made a medical judgment that the restricted diet was medically necessary and that the resulting weight loss greatly improved plaintiff's overall health. Plaintiff's disagreement with Dr. Kaskiw's treatment decisions, even if it had some factual support (which it does not), clearly is not sufficient to create an

issue of fact about whether plaintiff could establish the subjective element of the deliberate indifference standard. *See, e.g., Bost v. Bockelmann,* 2007 WL 527320, at *10 ("[to the extent that plaintiff complains about having been prescribed a high protein diet, as distinct from the high calorie intake diet which he sought in order to secure extra portions of food, the claim fails to rise to a level of constitutional significance, instead merely representing the sort of disagreement with a prescribed course of treatment that does not establish a defendant's deliberate indifference"). Even if there were occasional issues as to how plaintiff's restricted diet was implemented by food services workers at CNYPC (who are not, in any event, defendants in this action), such arguably negligent oversight of plaintiff's food choices would not constitute deliberate indifference. *See, e.g., Evans v. Albany County Correctional Facility,* 2009 WL 1401645, at * 11 (the evidence is lacking that any prison medical personnel or food service providers were cognizant of a serious medical need on the part of the plaintiff and aware that their failure to be faithful in providing the prescribed diet would result in a substantial risk of serious harm); *Gaines v.. Armor Health Care, Inc.,* 2012 WL 5438931, at *5–6.

**\*10** Moreover, no reasonable fact finder could conclude that Dr. Kaskiw's medical care of plaintiff reflected such a "substantial departure from accepted professional judgment" as to make his treatment choices "a sham or otherwise illegitimate." [14] Hence, even if the "professional judgment" standard suggested by *Youngberg* applied to plaintiff's medical claims, defendant is still entitled to summary judgment.

### 2. Lidex Cream

No rational fact finder could conclude, on the record in this case, that plaintiff's complaints about the treatment of his skin rash and eczema at CNYPC met either the objective or subjective prongs of the deliberate indifference test. [15] Plaintiff's skin condition is clearly not a sufficiently serious medical condition to meet the objective element of this standard. *See, e.g., Melendez v. Costello,* No. 6:12–CV–6226, 2013 WL 5937052, at *7 (W.D.N.Y. Nov. 1, 2013) ("[p]laintiff cannot establish the 'serious medical need' component of a deliberate indifference claim based on his eczema" (citing *Sledge v. Kooi,* 564 F.3d 105, 107, 108 (2d Cir.2009) ("Sledge failed to produce sufficient evidence that any one of the conditions complained of [i.e., eczema, back pain,

stomach disorders, allergies, and asthma] qualified as a 'serious medical need.' ")); *Samuels v. Jackson,* 97–CV–2420, 1999 WL 92617, at *1–3 (S.D.N.Y. Feb. 22, 1999) (prisoner's "[p]apules, vesicles, pustules, burrows, and intense itching resulting in eczema" did not constitute a sufficiently "serious medical need" for purposes of Eighth Amendment). Nor, based on the authority cited above, is plaintiff's disagreement with his medical care providers about the appropriate medication for his skin condition sufficient to create a factual issue as to whether they harbored subjective deliberate indifference to his serious medical needs. [16] To the extent that the "professional judgment" standard suggested by *Youngberg* applies to plaintiff's medical care claim, the treatment of plaintiff's skin condition with more conservative medications than the one he preferred certainly does not constitute a "substantial departure from accepted professional judgment."

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendant Kaskiw's motion for summary judgment (Dkt. Nos.17, 18) be **GRANTED** on the grounds stated herein, and that the remaining claims in plaintiff's amended complaint be **DISMISSED** in their entirety.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec. of Health & Human Servs.,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

**\*11 Dated: July 9, 2014.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 4184752

Footnotes

1    Ahlers originally named several additional defendants, all of whom have since been dismissed. (Dkt. No. 8.)

1    Chief Judge Sharpe's Decision and Order dated April 19, 2013, dismissed various other claims against five additional defendants who were named in the amended complaint. (Dkt. No. 8 at 17).

2    The amended complaint also alleges that Dr. Kaskiw ignored (1) a complaint from plaintiff on March 26, 2012 "concerning pain that had developed" in his arms, legs, and abdomen (AC ¶¶ 24–25 & Ex. 15); (2) a request on July 13, 2012 concerning a prescription from an ophthalmologist which plaintiff never received (AC ¶ 40 & Ex. 24); and (3) a July 22, 2102 letter noting plaintiff's problems climbing multiple flights of stairs, and requesting an elevator pass (AC ¶ 42 & Ex. 26). Neither plaintiff's amended complaint, nor his motion papers, provide further information regarding any negative impact on plaintiff's health or well-being resulting from the alleged lack of response to these complaints; hence, they clearly do not support a constitutional claim for inadequate medical care based on the legal standards discussed below.

3    For example, an August 8, 2007 Nursing Assessment from the Manhattan Psychiatric Center noted that plaintiff had allergies to honey, rice, and nuts, which resulted in abdominal discomfort and vomiting. (AG DEF–2).

4    "Examples of products that might contain tree nuts include ... [h]oney ...." USDA Food Allergy Fact Sheet, http://www.nfsmi.org/documentlibraryfiles/PDF/20130227020259.pdf. Plaintiff's medical records also indicate that he was allergic to bee stings, which may have influenced the exclusion of honey in his restricted diet. (AG DEF–12–13, 20).

5    Lidex cream is a topical steroid anti-inflammatory medication often prescribed to relieve symptoms of eczema, such as itching or skin dryness. (Kasiw Aff. ¶ 42).

6    Farmer included a subjective element in the Eighth Amendment standard for deliberate indifference, requiring evidence that the defendant "disregard[ed] a risk of harm of which he [was] aware." *Caiozzo,* 581 F.3d at 65 (quoting *Farmer,* 511 U.S. at 837).

7    As the Second Circuit in *Caiozzo* elaborated: "[D]espite the distinct constitutional sources of the rights of pretrial detainees and convicted inmates, state jail and prison officials owe the same duty to provide the same quantum of basic human needs and humane conditions of confinement to both groups.... That pretrial detainees may have more protections or rights in general ... does not mean that they are entitled to greater protection of rights shared in common with convicted inmates.' " 581 F.3d at 71–72 (quoting *Hare v. City of Corinth, Mississippi,* 74 F.3d 633, 649 (5th Cir.1996) (en banc)).

**8**  "Because plaintiff was civilly committed at the time of the incident, his medical care claims are analyzed under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment..... Despite this distinction, the same standard applies to Fourteenth Amendment medical care claims involving non-prisoners as to Eighth Amendment medical claims regarding prisoners." *Id.* (citing, *inter alia, Caiozzo, 581 F.3d at 72).*

**9**  In *Ahlers v. Rabinowitz,* 684 F.3d 53, 61 (2d Cir.2012), the Second Circuit discussed *Youngberg* in assessing prior civil rights claims of the plaintiff in this action relating to the seizure of certain of his DVDs by officials at CNYPC:

> Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg,* 457 U.S. at 321–22.... However, the state's interest in maintaining order and security is not punitive in purpose or character, and remains valid in institutions of civil commitment." ... The state also has an interest in treating the civilly committed individual.... The reasonableness of the seizure in this case depends on a balance of interests: the state's interests in order, security, and treatment, and Ahlers's property interest in his discs..... In striking the appropriate balance, decisions made by the Defendants are entitled to a " 'presumption of correctness.' "

This panel decision indicates the Second Circuit may still adhere to the general proposition that civilly committed individuals are entitled to more considerate conditions of confinement than convicted prisoners. However, it does not shed much light on the appropriate standard to apply to medical care claims of a civilly committed sex offender following the decision in *Caiozzo* that the deliberate indifference standard applies to pretrial criminal detainees.

**10**  *"DeShaney* clarified that '[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.' 489 U.S. at 200.... In other words, *DeShaney* suggests that a State's declared intent to confine incompetents for their own benefit, as opposed to its announced purpose to punish convicted criminals, should have no bearing on the nature of the constitutional duty owed to either group.... Since the State restrains the individual liberty of both mental incompetents and convicted inmates in a like manner, the State should incur the same duties to provide for the basic human needs of both groups." *Hare,* 74 F.3d at 647. In holding that the "deliberate indifference" standard applies to claims that a pretrial detainee was deprived of basic human needs, including medical care, the Fifth Circuit also noted that subsequent Supreme Court cases such as *Farmer,* which articulated the deliberate indifference standards for prisoners, "cast doubt on the vitality of *Youngberg." Id.* As noted above, the Second Circuit in *Caiozzo* relied on *Hare* and *Farmer* in deciding to apply the deliberate indifference standard to pretrial detainees asserting medical care claims.

**11**  "The similarity in the grounds for detaining persons awaiting trial and persons determined to be sexually dangerous supports application of the analogy to pretrial detainees ...." *Serna v. Goodno,* 567 F.3d at 948.

**12**  *Bost v. Bockelmann,* No. 9:04–CV–246 (GLS/DEP), 2007 WL 527320, at * 1 (N.D.N.Y. Feb. 20, 2007) distinguished *Haitian Centers* because it dealt with immigration issues and was "wholly outside the context of prisoner litigation." *Owens v. Colburn,* 860 F.Supp. at 974, a 1994 Northern District of New York case which applied the "reasonable medical care" standard to pretrial detainees, was clearly overruled by the Second Circuit's 2009 opinion in *Caiozzo,* which held that the "deliberate indifference" standard should apply in that context.

**13**  *See, e.g., Anderson v. Kooi,* No. 9:07–CV–1257 (DNH/GHL), 2011 WL 1315721, at * 12 (N.D.N.Y. Jan. 24, 2011) (citing *Kaminsky v. Rosenblum,* 929 F.2d 922, 924, 926–27 (2d Cir.1991) (high blood pressure, diabetes, angina, gout and an enlarged spleen held to be serious medical needs, particularly in light of prisoner's extreme weight loss)) (Rep't Rec.), *adopted,* 2011 WL 1256942 (N.D.N.Y. Apr. 1, 2011).

**14**  This is part of Chief Judge Seitz's formulation of the "professional judgment" standard that was adopted by reference by the Supreme Court in *Youngberg. Romeo v. Youngberg,* 316 F.3d at 178; *Youngberg v. Romeo,* 457 U.S. at 321.

**15**  Plaintiff's response to defendant Kaskiw's summary judgment motion suggests that he may dispute that his skin condition was treated at various times, albeit with medications other than those he requested. (Pl.'s Aff. ¶¶ 40–46, Dkt. No. 20 at 4 ("it took almost one full year to treat my itchy rash on both legs and feet!")). Given the affidavits submitted by defendant Kaskiw and the supporting medical records, plaintiff's unsupported suggestion that he may have not received the documented treatment for his skin condition does not create an issue of fact that would defeat the summary judgment motion. *See, e.g., Benitez v. Pecenco,* No. 92 Civ. 7670, 1995 WL 444352 at *7 n. 5, (S.D.N.Y. July 27, 1995) (conclusory claim that plaintiff was never issued medication was directly contradicted by medical records and was insufficient to create a factual dispute on that issue) (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case")); *Brown v. White,* 9:08–CV–200, 2010 WL 985184, at *8 (N.D.N.Y. Mar. 15, 2010) (plaintiff's conclusory suggestion that defendant nurse completely refused to provide any medical attention on a particular date is insufficient to create a dispute of fact in the face of the sworn declaration and supporting documentary evidence in the record). *See also Jeffreys v. City*

*of New York,* 426 F.3d 549, 554 (2d Cir.2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' ... and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account." (citation omitted)).

16    As discussed in the factual summary above, the nurse practitioners who denied plaintiff the Lidex cream originally prescribed by Dr. Kaskiw, are not named defendants in this case. Although Dr. Kaskiw may have supervised the nurse practitioners at CNYPC, it does not appear that he was personally involved in denying Lidex cream to plaintiff, which would provide further support for granting defendant Kaskiw's motion for summary judgment with respect to this aspect of plaintiff's medical care claim. Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003). Plaintiff alleged that Dr. Kaskiw ignored two letters that plaintiff wrote requesting treatment with Lidex cream. (AC ¶¶ 39, 41). It is well-settled that the failure of a supervisory official to respond to a letter of complaint written by an inmate is not sufficient to show personal involvement. *See, e.g., Johnson v. Wright,* 234 F.Supp.2d 352, 363 (S.D.N.Y.2002) (collecting cases); *Smart v. Goord,* 441 F.Supp.2d 631, 642–643 (S.D.N.Y.2006).

---

**End of Document**                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**    © 2016 Thomson Reuters. No claim to original U.S. Government Works.    10

2012 WL 651919
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kenneth Carl GROVES, Sr., Plaintiff,

v.

Brett DAVIS, Secure Care Treatment Aid; David
W. Sill, Secure Care Treatment Aid; Thomas
Nicolette, RN, Ward Nurse; Charmaine Bill,
Treatment Team Leader; Jill E. Carver, Social
Worker, Primary Therapist; Edwin Debroize,
Psychologist Assist; Jeff Nowicki, Chief of Mental
Health Treatment Serv.; Terri Maxymillian,
Ph.D., Dir. of Mental Health Serv.; Sgt. Sweet,
Security Services, CNYPC; Michael Hogan,
Comm'r, Dep't of Mental Health, Defendants.

No. 9:11–CV–1317 (GTS/RFT).
|
Feb. 28, 2012.

Attorneys and Law Firms

Kenneth Carl Groves, Sr., Marcy, NY, pro se.

### MEMORANDUM DECISION and ORDER

Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Kenneth Carl Groves, Sr. ("Plaintiff"),
against numerous employees of New York State or the
Central New York Psychiatric Center ("Defendants"),
are Plaintiff's motion to proceed *in forma pauperis,* his
motion for a temporary restraining order and preliminary
injunction, and his motion for appointment of counsel.
(Dkt.Nos.2, 3, 4.) [1] For the reasons set forth below,
Plaintiff's motion to proceed *in forma pauperis* is granted;
his motion for a preliminary injunction is denied; his
motion for appointment of counsel is denied; Plaintiff's
claims of deliberate indifference to his mental health
needs against Defendants Bill, Carver and DeBroize are
*sua sponte* dismissed with prejudice; Plaintiff's claims
against Defendants Bill, Carver, DeBroize, Nowicki,
Maxymillian, and Hogan arising from their alleged
personal involvement in the August 8, 2011 assault are

*sua sponte* dismissed without prejudice and with leave to
amend in this action in accordance with Fed.R.Civ.P.
15; Sgt. Sweet is *sua sponte* dismissed without prejudice
as a Defendant in this action; the Clerk is directed to
issue summonses, and the U.S. Marshal is directed to
effect service of process on Defendants Davis, Sill, and
Nicolette.

### I. RELEVANT BACKGROUND

On November 7, 2011, Plaintiff commenced this action
*pro se* by filing a civil rights Complaint, together with
a motion to proceed *in forma pauperis.* (Dkt. Nos.1,
2.) [2] Liberally construed, Plaintiff's Complaint alleges
that the following constitutional violations against him
occurred during his confinement at Central New York
Psychiatric Center ("CNYPC"): (1) Defendants Davis and
Sill used excessive force against him under the Eighth
and/or Fourteenth Amendments; (2) Defendant Nicolette
knew of and failed to take action to protect Plaintiff
from the assault under the Eighth and/or Fourteenth
Amendments; (3) Defendants Bill, Carver, and DeBroize
were deliberately indifferent to his mental health needs
under the Eighth and/or Fourteenth Amendments;
and (4) Defendants Bill, Carver, DeBroize, Nowicki,
Maxymillian, Bosco, and Hogan failed to "adequately
train the staff under their supervision" and to take
appropriate action in response to the incident. (*See
generally* Dkt. No. 1.) For a more detailed description of
Plaintiff's claims, and the factual allegations giving rise to
those claims, the reader is referred to Part III.B of this
Decision and Order.

### II. MOTION TO PROCEED *IN FORMA PAUPERIS*

Because Plaintiff sets forth sufficient economic need, the
Court finds that Plaintiff may properly commence this
action *in forma pauperis.* (Dkt. No. 2.)

### III. *SUA SPONTE* REVIEW OF
PLAINTIFF'S COMPLAINT

In light of the foregoing, the Court must now review the
sufficiency of the allegations that Plaintiff has set forth in
his Complaint in light of 28 U.S.C. § 1915(e)(2)(B). This is
because Section 1915(e)(2)(B) directs that, when a plaintiff
seeks to proceed *in forma pauperis,* "(2) ... the court shall
dismiss the case at any time if the court determines that
—... (B) the action ... (i) is frivolous or malicious; (ii) fails
to state a claim on which relief may be granted; or (iii)

seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

### A. Governing Legal Standard

**\*2** It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n .17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–

61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id .* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

**\*3** As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[4] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[5] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted].[6]

### B. Analysis of Plaintiff's Complaint

The Court prefaces its analysis of Plaintiff's Complaint by noting that, although Plaintiff is a civilly committed sex offender and no longer a prisoner, the Court will look to cases addressing prisoner's rights in analyzing Plaintiff's claims, because "confinement of civilly committed patients is similar to that of prisoners." *Holly v. Anderson,* 04–CV–1489, 2008 WL 1773093, at *7 (D.Minn. Apr.15, 2008); *see also Morgan v. Rabun,* 128 F.3d 694, 697 (8th Cir.1997) ("The governmental interests in running a state mental hospital are similar in material aspects to that of running a prison."). Thus, whereas claims of excessive force by convicted criminals are analyzed under the Eighth Amendment to the United States Constitution, because Plaintiff is a civilly committed sex offender and no longer a prisoner, his substantive rights to be free from unsafe conditions of confinement arise under the Due Process Clause of the

Fourteenth Amendment. In *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Court stated "[i]f it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed-who may not be punished at all-in unsafe conditions." *Youngberg,* 457 U.S. at 315–16. As have numerous other courts which have considered the issue, this Court has found that "the standard for analyzing a civil detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard." *Groves v. Patterson,* 09–CV–1002, Memorandum–Decision and Order at *15–16 (N.D.N.Y. filed Nov. 18, 2009).[7]

### 1. Excessive Force Claims Against Defendants Davis, Still and Nicolette

**\*4** Plaintiff alleges that on August 8, 2011, Defendant Davis entered Plaintiff's dorm room at CNYPC and "viciously attacked and brutally assaulted and battered" him. (Dkt. No. 1 at 4.) During the course of this assault, Defendant Sill is alleged to have entered Plaintiff's room and "jump[ed] on the plaintiff's legs holding and pinning them as Defendant Davis [continued to beat Plaintiff]." (*Id.*) As alleged in the Complaint, although Defendant Nicolette knew in advance that this assault was planned, he "remained in the Nurses Station" and "did nothing to interceed [sic] or stop the brutal attack on the plaintiff." (*Id.* at 5.)

To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must allege the following: (1) subjectively, that the defendants acted wantonly and in bad faith; and (2) objectively, that the defendants' actions violated "contemporary standards of decency." *Blyden v. Mancusi,* 186 F.3d 252, 262–63 (2d Cir.1999) (internal quotation marks omitted) (citing *Hudson v. McMillian,* 503 U.S. 1, 8 [1992] ).

Here, construing the factual allegations of Plaintiff's Complaint with special leniency, the Court finds that Plaintiff appears to have alleged facts plausibly suggesting that he was subjected to excessive force by Defendants Davis and Sill. In addition, by alleging that Defendants Davis, Sill and Nicolette discussed the assault in advance of it occurring, and that Nicolette was in the vicinity of Plaintiff's room and had an opportunity to intervene to prevent it, the Complaint sufficiently alleges that

Defendant Nicolette was personally involved and/or failed to protect Plaintiff from the assault. *See Bhuiyan v. Wright,* 06–CV–0409, 2009 WL 3123484, at *7 (N.D.N.Y. Sept.29, 2009) (Scullin, J.) ("The fact that defendant Davis was not in the room, but was acting as a 'lookout' so that no one came into the room while plaintiff was being beaten, would not absolve him from liability for the assault. An officer's failure to intervene during another officer's use of excessive force can itself constitute an Eighth Amendment violation unless the assault is "sudden and brief," and the defendant had no real opportunity to prevent it."); *Jeffreys v. Rossi,* 275 F.Supp.2d 463, 474 (S.D.N.Y.2003) (holding that an officer may be personally involved in the use of excessive force if he either directly participates in the assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so).

As a result, a response to these claims is required from Defendants David, Sill, and Nicolette. In so ruling, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Deliberate Indifference Claims Against Defendants Bill, Carver and DeBroize

Plaintiff alleges that on August 9, 2011, the day after the alleged assault, he attempted to "discuss the incident and what transpired" with Defendants Bill and Carver. (Dkt. No. 1 at 5.) Plaintiff alleges that Defendant Bill told him, "I don't want to discuss this Mr. Groves, we're too busy for your foolishness and the matter is being investigated." (*Id.*) Plaintiff's effort to explain that he was frightened by the incident was rebuffed by Defendant Bill, who told Plaintiff to "grow up." (*Id.* at 5–6.) The following day, Plaintiff attempted to discuss the incident with Defendant Carver, his primary therapist, again without success. A further attempt at discussion later that day was met with Defendant Carver "stating to the plaintiff in a snotty tone 'grow the hell up!' " (*Id.* at 6.) On August 10, 2011, Plaintiff attempted to discuss the incident "and his current fears and feelings," during his Monday afternoon "Process Group," which is facilitated by Defendant DeBroize. As alleged, Defendant DeBroize told Plaintiff and the other group members that the matter was under investigation "so no one could discuss the incident with anyone." (*Id.* at 6.)

**\*5** To state a claim of deliberate indifference to a serious medical and/or mental health need under the Eighth Amendment, a plaintiff must first allege facts plausibly suggesting that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06). The "deliberate indifference standard embodies both an objective and a subjective prong," both of which the plaintiff must establish. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.' " *Id.* (citations omitted). Second, the defendant "must act with a sufficiently culpable state of mind." *Id.*

With regard to the first element, generally, to be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) [citations omitted], *accord, Hathaway,* 37 F.3d at 66; *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).). [8] Under the subjective component, a plaintiff must also allege facts plausibly suggesting that the defendant acted with "a sufficiently culpable state of mind." *Hathaway,* 37 F.3d at 66. The requisite culpable mental state is similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). A physician's negligence in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment and is not properly the subject of a Section 1983 action. *Estelle,* 429 U.S. at 105–06; *Chance,* 143 F.3d at 703. [9]

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendants Bill, Carver, and DeBroize acted with deliberate indifference to Plaintiff's serious mental health condition when they declined to discuss the incident of August 8, 2011. There is nothing in the Complaint that even remotely suggests that the requested conversations were integral to Plaintiff's treatment as a convicted sex offender involuntarily

committed to CNYPC, or that Defendants' refusal to discuss the incident with Plaintiff when he requested to do so caused Plaintiff to suffer any harm or worsening of his condition. In addition, Plaintiff does not allege that any of these Defendants acted with the requisite culpable state of mind.

Moreover, the statements made by Defendants Bill and Carver that he should "grow up," even if construed as verbal harassment, do not give rise to a cognizable claim that may be pursued under Section 1983. Allegations of verbal harassment are insufficient to support a Section 1983 claim. *Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001); *see also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) ("[A]llegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged .").

**\*6** For these reasons, Plaintiff's deliberate indifference claims against Defendants Bill, Carver, and DeBroize are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). Moreover, because the Court cannot imagine how Plaintiff might correct this claim through better pleading, he is not granted leave to attempt to do so in an amended pleading. [10] Rather, this claim is hereby dismissed with prejudice.

**3. Failure to Supervise Claims Against Defendants Bill, Carver, DeBroize, Nowicki, Maxmillian, and Hogan**

To prevail on a claim under 42 U.S.C. § 1983, a defendant must be personally involved in the plaintiff's constitutional deprivation. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). Generally, for purposes of 42 U.S.C. § 1983, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. [11]

Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement. *McKinnon,* 568 F.2d at 934. Rather, a plaintiff must demonstrate " 'a tangible

connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* 04–CV–7263, 2008 WL 857528, at \*2 (S.D.N.Y. Mar.31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 [2d Cir.1986] ) (other citation omitted). An official's failure to respond to grievance letters from inmates, however, "does not establish supervisory liability." *Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997). [12] Moreover, "the law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Pine v. Seally,* 9–CV–1198, 2011 WL 856426, at \*9 (N.D.N.Y. Feb.4, 2011). [13]

In his Complaint, Plaintiff alleges in wholly conclusory terms that Defendants Bill, Carver, DeBroize, Nowicki, Maxmillian, and Hogan failed to "adequately train the staff under their supervision and fail[ed] to act within the scope and training of the position and job title they hold." (Dkt. No. 1 at 8.) Plaintiff alleges that he submitted a letter of complaint to Defendant Hogan and wrote to Defendant Nowicki on several occasions expressing concern his complaint had not been responded to, only to be advised that in September, 2011 that an investigation was ongoing. (*Id.* at 6–7.) Plaintiff does not allege that any of these Defendants personally participated in the alleged assault on August 8, 2011.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting any personal involvement by these Defendants in the alleged used of excessive force on August 8, 2011. As a result, Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxmillian, and Hogan arising from this incident are *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e) (2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). This dismissal is without prejudice to Plaintiff's right to file an Amended Complaint that corrects the above-described pleading defects, and states a viable claim against these Defendants. The Court notes that, at this early stage of the case, Plaintiff has the right—without leave of the Court— to file an Amended Complaint within the time limits established by Fed.R.Civ.P. 15(a)(1)(B). However, if he seeks to file an Amended Complaint after those time limits, he must file a motion for leave to file an Amended Complaint in accordance with Fed.R.Civ.P. 15(a)(2). In either event, Plaintiff is advised that *any Amended Complaint must be a complete pleading that will replace and supersede the original Complaint in its entirety, and that*

*may not incorporate by reference any portion of the original Complaint. See N.D.N.Y. L.R. 7.1(a) (4).*

**\*7** Finally, although Plaintiff names Sgt. Sweet as a Defendant in the caption of the complaint and the listing of the parties, he has not set forth in the Complaint any allegations of fact regarding the conduct of this Defendant complained of. (*See generally* Dkt. No. 1.) As a result, the Complaint fails to state a claim upon which relief may be granted and Sgt. Sweet is dismissed from this action without prejudice to Plaintiff's right to file an Amended Complaint as set forth above.

### IV. MOTION FOR INJUNCTIVE RELIEF

A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter." *Patton v. Dole,* 806 F.2d 24, 28 (2d Cir.1986). In most cases, to warrant the issuance of a preliminary injunction, a movant must show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in favor of the moving party. *D.D. ex rel. V.D. v. New York City Bd. of Educ.,* 465 F.3d 503, 510 (2d Cir.2006) (quotation omitted). "The purpose of issuing a preliminary injunction is to 'preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the ... merits.' " *Candelaria v. Baker,* 00–CV–912, 2006 WL 618576, at \*3 (W.D.N.Y. Mar.10, 2006) (quoting *Devose v. Herrington,* 42 F.3d 470, 471 [8th Cir.1994] ). Preliminary injunctive relief " 'should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' " *Moore v. Consolidated Edison Co. of New York, Inc.,* 409 F.3d 506, 510 (2d Cir.2005) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 [1997] ). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore,* 409 F.3d at 510 (citing *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). The same standards govern consideration of an application for a temporary restraining order. *Perri v. Bloomberg,* 06–CV–0403, 2008 WL 2944642, at \*2 (E.D.N.Y. Jul.31, 2008) [citation omitted]. The district court has broad discretion in determining whether to grant a preliminary injunction. *Moore,* 409 F.3d at 511.

"The Second Circuit has defined 'irreparable harm' as 'certain and imminent harm for which a monetary award does not adequately compensate,' noting that 'only harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief.' " *Perri,* 2008 WL 2944642, at \*2 (citing *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.,* 339 F.3d 101, 113–14 [2d Cir.2003] ); *see also Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir.2002) ("To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.") (internal quotation omitted). Speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons,* 461 U.S. 95, 111–12, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *see also Hooks v. Howard,* 07–CV–0724, 2008 WL 2705371, at \*2 (N.D.N.Y. Jul.3, 2008) (citation omitted) ("Irreparable harm must be shown to be imminent, not remote or speculative, and the injury must be such that it cannot be fully remedied by monetary damages.").

**\*8** Plaintiff has submitted a document entitled "Order to Show Cause for Preliminary Injunction and Tempor[ary] Restraining Order." (Dkt. No. 3.) Construed liberally, Plaintiff's submission seeks a temporary restraining order and injunctive relief enjoining Defendants from "submitting and filing false and untrue statements and reports" regarding the August 11, 2011 incident, and to "stop all retaliatory actions against the plaintiff ...." (*Id.* at 1.) Plaintiff also seeks an "Order of Seperation [sic]" directing that Defendants Davis, Sill, Nicolette, Bill, Carver and DeBroize be "restrained from being within 100 feet from the plaintiff in any form or matter." (*Id.* at 2.)

The Court has reviewed Plaintiff's motion papers thoroughly and considered the claims asserted therein in the light most favorable to Plaintiff, as a *pro se* litigant. Based upon that review, the Court finds that the harm Plaintiff alleges is purely speculative and, therefore, not "irreparable." Plaintiff's motion is supported only by a recitation of the alleged assault in August, 2011. (*Id.* at 1–4.) Plaintiff has not supported the claims of ongoing misconduct set forth in his motion papers with any factual allegations, such as the dates on which the misconduct occurred, the nature of the injuries he claims to have suffered, the identities of the persons responsible for the conduct he seeks to enjoin, or the relationship between those actions and the claims asserted in his Complaint. Simply stated, Plaintiff's alleged fear of future

wrongdoing by the Defendants is not sufficient to warrant the extraordinary remedy of preliminary injunctive relief.

The Court further notes that the requested injunctive relief cannot be granted unless there is also proof that Plaintiff has a likelihood of succeeding on the merits of his claim, or evidence that establishes sufficiently serious questions going to the merits of his claim and a balance of hardships tipping decidedly toward him. *See Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir.1992). Plaintiff has failed to submit *proof or evidence* that meets this standard. Plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief. *See Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F.Supp. 547, 561 (E.D.N.Y.1995)* (*"[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Resources, Inc.,* 792 F.Supp. 924, 928 (S.D.N.Y.1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). Without evidence to support his claims that he is in danger from the actions of anyone at CNYPC, the Court will not credit Plaintiff's conclusory allegations that he will be retaliated against or harmed in the future.

Plaintiff has failed to establish either of the two requisite elements discussed above. As a result, Plaintiff's request for a temporary restraining order and/or injunctive relief is denied.

## V. MOTION FOR APPOINTMENT OF COUNSEL

**\*9** Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin,* 114 F.3d 390, 392–93 (2d Cir.1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case,

the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 [2d Cir.1986] ). This is not to say that all, or indeed any, of these factors are controlling in a particular case.[14] Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D.N.Y.1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61).

Upon due consideration, the Court finds that the relevant factors weigh decidedly against granting Plaintiff's motion at this time. For example, the Court finds as follows: (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action; (3) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial, as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel," *Velasquez,* 899 F.Supp. at 974; (4) if this case survives any dispositive motions filed by Defendants, *it is highly probable that this Court will appoint trial counsel at the final pretrial conference;* (5) this Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation; and (6) Plaintiff's motion for counsel is not accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

For these reasons, Plaintiff's motion for the appointment of counsel is denied without prejudice. After the Defendants have responded to the allegations in the Complaint which survive *sua sponte* review, and the parties have undertaken discovery, Plaintiff may file a second motion for the appointment of counsel, at which time the Court may be better able to determine whether such appointment is warranted in this case. Plaintiff is advised that any second motion for appointment of counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

**\*10 ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED;** [15] and it is further

**ORDERED** that Plaintiff's motion for injunctive relief (Dkt. No. 3) is **DENIED;** and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED without prejudice;** and it is further

**ORDERED** that Plaintiff's claims of deliberate indifference against Defendants Bill, Carver and DeBroize are *sua sponte* **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2) (B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from their alleged personal involvement in the August 8, 2011 incident are *sua sponte* **DISMISSED without prejudice and with leave to amend** in this action in accordance with Fed.R.Civ.P. 15 (as described above in Part III.B.3. of this Decision and Order), pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Defendant Sweet is *sua sponte* **DISMISSED** without prejudice and with leave to be **reinstated** as a Defendant in this action in accordance with Fed.R.Civ.P. 15, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is otherwise accepted for filing (i.e., as to the claims against Defendants Davis, Sill, and Nicolette arising from the August 8, 2011 incident); and it is further

**ORDERED** that Plaintiff provide a summons, USM–285 form and a copy of the complaint for Defendant Davis, Sill and Nicolette for service, and upon receipt from Plaintiff of the documents required for service of process, the Clerk shall (1) issue summonses and forward them, along with copies of the Complaint to the United States Marshal for service upon the remaining Defendants, and (2) forward a copy of the summons and Complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that, after service of process on Defendants, a response to the Complaint shall be filed by the Defendants or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261–7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a certificate of service showing that a copy was served upon all opposing parties or their attorneys will be stricken from the docket .** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to so may result in the dismissal of this action.** All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 651919

**Footnotes**

1       This is the fourth civil rights action filed by Plaintiff in this District. Generally, two of these actions arose out of Plaintiff's refusal to consent to a strip search and the subsequent actions taken against Plaintiff as a result of his refusal. *See Groves v. New York,* 09–CV–0406, Decision and Order (N.D.N.Y. filed May 11, 2009) (Hurd, J.) (*sua sponte* dismissing complaint pursuant to 28 U.S.C. § 1915[e][2][B] ); *Groves v. The State of New York,* 9:09–CV–0412, Decision and Order (N.D.N.Y. filed Mar. 26, 2010) (Sharpe, J.) (granting defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12[b][6] ).

The third action alleged numerous violations of Plaintiff's constitutional rights during the period July 23, 2009, and August 26, 2009, and was dismissed without prejudice upon Plaintiff's request in October, 2010. *See Groves v. Maxymillian,* 9:09–CV–1002, Decision and Order (N.D.N.Y. filed Oct. 8, 2010) (Suddaby, J.). As a result, it does not appear that the current action is barred because of res judicata, collateral estoppel, and/or the rule against duplicative litigation.

2  At that time, Plaintiff also filed motions for injunctive relief and for appointment of counsel. (Dkt.Nos.3, 4.)

3  The Court notes that, similarly, Section 1915A(b) directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

4  *See Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

5  *See Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

6  It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, *"Specific facts are not necessary"* to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law—first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

7  *See Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) ("[W]hile the Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner."); *Walton v. Breeyear,* 05–CV–0194, 2007 WL 446010, at *8, n. 16 (N.D.N.Y. Feb.8, 2007) (Peebles, M.J.) (noting that pretrial detainees enjoy protections under the due process clause of the Fourteenth Amendment parallel to those afforded to sentenced prisoners by the Eighth Amendment); *Vallen v. Carrol,* 02–CV–5666, 2005 WL 2296620, at ––––8–9 (S.D.N.Y. Sep.20, 2005) (finding that the Eighth Amendment standard of "deliberate indifference" is the correct one for Section 1983 claims brought by involuntarily committed mental patients based on alleged failures to protect them that violated their substantive due process rights); *Bourdon v. Roney,* 99–CV–0769, 2003 WL 21058177, at *10 (N.D.N.Y. Mar.6, 2003) (Sharpe, M.J.) ("The standard for analyzing a pretrial detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard.").

8  Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "reasonable doctor or patient would find important and worthy of comment or treatment," a condition that "significantly affects" a prisoner's daily activities, or "the existence of chronic and substantial pain." *Chance,* 143 F.3d at 702.

9  Thus, a physician who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not exhibit the mental state necessary for deliberate indifference. *Harrison,* 219 F.3d at 139. Likewise, an inmate who disagrees with the physician over the appropriate course of treatment has no claim under Section 1983 if the treatment provided is "adequate." *Chance,* 143 F.3d at 703. The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.' " *Jones v. Westchester Cnty. Dept. of Corr.,* 557 F.Supp.2d 408, 413 (S.D.N.Y.2008). In addition, "disagreements over medications, diagnostic techniques (e .g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001). However, if prison officials consciously delay or otherwise fail to treat an inmate's serious medical condition "as punishment or for other invalid reasons," such conduct constitutes deliberate indifference. *Harrison,* 219 F.3d at 138.

10  The Court notes that, generally, leave to amend pleadings shall be freely granted when justice so requires. Fed.R.Civ.P. 15(a). However, an opportunity to amend is not required where amendment would be futile. *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir.1994). *John Hancock Mut. Life Ins. Co.,* 22 F.3d at 462. The Second Circuit has explained that "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not

an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *see Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with [Plaintiff's] cause of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). This rule is applicable even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103.

11   *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (adding fifth prong); *Wright,* 21 F.3d at 501 (adding fifth prong); *Williams v. Smith,* 781 F.2d 319, 323–324 (2d Cir.1986) (setting forth four prongs).

12   *See also Gillard v. Rosati,* 08–CV–1104, 2011 WL 4402131, at *7 (N.D.N.Y. Aug.22, 2011) (Peebles, J.) ("It is well-established that without more, 'mere receipt of letters from an inmate by a supervisory official regarding a medical claim is insufficient to constitute personal liability." [internal quotation marks and brackets omitted] ); *Greenwaldt v. Coughlin,* 93–CV–6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."); *Clark v. Coughlin,* 92–CV 0920, 1993 WL 205111, at *5 n. 2 (S.D.N.Y. Jun.10, 1993) ("Courts in this jurisdiction have consistently held that an inmate's single letter does not constitute the requisite personal involvement in an alleged constitutional deprivation to trigger the Commissioner's liability.")

13   *See also Bernstein v. N.Y.,* 591 F.Supp.2d 448, 460 (S.D.N.Y.2008) ("Courts within the Second Circuit have determined that there is no constitutional right to an investigation by government officials." [internal quotation marks, brackets and ellipsis omitted] ).

14   For example, a plaintiff's motion for counsel must always be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector, and such a motion may be denied solely on the failure of the plaintiff to provide such documentation. *See Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994); *Cooper v. Sargenti Co., Inc.,* 877 F.2d 170, 172, 174 (2d Cir.1989) [citation omitted].

15   Plaintiff should note that he will still be required to pay fees that he may incur in this action, including but not limited to copying and/or witness fees.

---

2009 WL 1212495
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Samuel CABASSA, Plaintiff,
v.
Joseph T. SMITH, et al., Defendants.

No. 9:08–CV–0480 (LEK/DEP).
|
April 30, 2009.

West KeySummary

**1**    **Constitutional Law**
👉 Discipline and Classification

**Prisons**
👉 Punitive, Disciplinary, or Administrative
Confinement

**Prisons**
👉 Particular Issues and Applications

In his § 1983 action, prisoner failed to
state procedural due process claim against
prison employees who allegedly tampered
with the tape recording of prisoner's tier
II disciplinary hearing. The consequences
flowing from prisoner's tier II hearing were
not sufficiently serious to qualify as a
liberty interest deprivation of constitutional
proportions. Since prisoner had not alleged
that the disciplinary confinement imposed
following the tier II hearing departed from the
ordinary incidents of keeplock confinement,
his disciplinary sanction of thirty days did
not qualify as constitutionally significant
deprivation for Fourteenth Amendment
purposes. U.S.C.A. Const.Amend. 14; 42
U.S.C.A. § 1983.

4 Cases that cite this headnote

**Attorneys and Law Firms**

Samuel Cabassa, Dannemora, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State
of New York, Roger W. Kinsey, Esq., Assistant Attorney
General, of Counsel, Syracuse, NY, for Defendants.

*DECISION AND ORDER*

LAWRENCE E. KAHN, District Judge.

**\*1**  This matter comes before the Court following a
Report–Recommendation filed on April 10, 2009, by the
Honorable David E. Peebles, United States Magistrate
Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3(c)
of the Northern District of New York. Report–Rec. (Dkt.
No. 31).

Within ten days, excluding weekends and holidays, after
a party has been served with a copy of a Magistrate
Judge's Report–Recommendation, the party "may serve
and file specific, written objections to the proposed
findings and recommendations," FED. R. CIV. P. 72(b),
in compliance with L.R. 72.1. No objections have been
raised in the allotted time with respect to Judge Peebles'
Report–Recommendation. Furthermore, after examining
the record, the Court has determined that the Report–
Recommendation is not subject to attack for plain error
or manifest injustice.

Accordingly, it is hereby

**ORDERED,** that the Report–Recommendation (Dkt.
No. 31) is **APPROVED** and **ADOPTED** in its
**ENTIRETY;** and it is further

**ORDERED,** that Defendants' Motion to dismiss (Dkt.
No. 28) be **GRANTED,** in part, and that Plaintiff's first,
second and third causes of action be **DISMISSED** in
their entirety; that all claims against Defendants Malone,
Bergmann and Miller be **DISMISSED;** that all damage
claims, except those arising under the ADA, against
Defendants in their official capacities be **DISMISSED;**
all damage claims against Defendants in their individual
capacities asserted under the ADA and section 504 be
**DISMISSED;** that Plaintiff's sixth cause of action against
Defendants Smith, Maley and Pico in their individual
capacities be **DISMISSED;** but that Defendants' Motion
otherwise be **DENIED;** and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

### REPORT AND RECOMMENDATION

[DAVID E. PEEBLES](), United States Magistrate Judge.

Plaintiff Samuel Cabassa, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis,* has commenced this action pursuant to [42 U.S.C. § 1983]() against the Commissioner of the New York State Department of Correctional Services (the "DOCS") and seventeen other DOCS employees, alleging deprivation of his civil rights, additionally asserting claims under the Americans With Disabilities Act ("ADA"), [42 U.S.C. § 12101 *et seq.*]() and [section 504]() of the Rehabilitation Act of 1973, [29 U.S.C. § 794](). In his complaint, which is both comprehensive and wide ranging, plaintiff asserts a variety of claims many of which, as a common theme, allege various acts of retaliation against him for filing grievances dating back to April of 2005, when he complained regarding the failure of prison officials to investigate his claim that excessive force was used against a fellow inmate. As relief, plaintiff's complaint seeks awards of compensatory and punitive damages against defendants in varying, specified amounts.

In response to plaintiff's complaint defendants have moved for dismissal on a variety of grounds, both procedural and substantive, and additionally have claimed entitlement to qualified immunity from suit.[1] Having carefully considered defendants' motion, which plaintiff has not opposed, I recommend that the motion be granted in part, and that plaintiff's first, second and third causes of action, as well as all claims against defendants Malone, Bergmann and Miller, the sixth cause of action against Smith, Maley, and Pico and plaintiff's damage claims against defendants in their official capacities, except those alleged under the ADA, all be dismissed, and also that plaintiff's claims against defendants in their individual capacities under the ADA and [section 504]() be dismissed, but that the motion otherwise be denied.

### I. BACKGROUND[2]

**\*2** Plaintiff is a New York State prison inmate entrusted to the care and custody of the DOCS; at all times relevant to his claims in this action, plaintiff was designated to the Shawangunk Correctional Facility ("Shawangunk"), located in Wallkill, New York. *See generally* Complaint (Dkt. No. 1).

Although somewhat difficult to distil, plaintiff's claims generally center upon his contention that various of the named defendants engaged in a campaign of retribution against him, in retaliation for his having filed various grievances over time. According to plaintiff the acts of retaliation, which have included threats, intimidation, the filing of misbehavior reports and resulting findings of guilt, placement in involuntary protective custody ("IPC") without the requisite due process, and denial of his application for a transfer out of Shawangunk, were all precipitated by his filing of a grievance, no. SHG–21477–05, on April 5, 2005 alleging that the superintendent at Shawangunk and several other DOCS employees at the facility failed to properly investigate an incident alleged to have occurred on March 28, 2005, involving the use of excessive force by staff toward a fellow inmate. Complaint (Dkt. No. 1) ¶ 6. According to plaintiff, the ensuing course of recrimination against him continued and escalated, following his filing of a second grievance, no. SHG–21491–05, on April 9, 2005; a third, no. SHG–21631–05 on May 18, 2005; and a fourth, no. SHG21662–05 on May 24, 2005, leading to his conviction in May of 2005, following a Tier II disciplinary hearing, of refusing to obey a direct order and a resulting penalty of thirty days of keeplock confinement together with a corresponding loss of certain privileges, and his having been placed in IPC, over his objection, from June of 2005 until October of 2007, without having been afforded the full panoply of applicable due process rights.[3] *Id.* Plaintiff also contends that the denial by prison officials of his applications in July of 2005 and November of 2006 for a transfer into another facility were also based upon retaliatory animus. *Id.*

### II. PROCEDURAL HISTORY

Plaintiff commenced this action on June 3, 2008. Dkt. No. 1. Named as defendants in plaintiff's complaint are Joseph T. Smith, the Superintendent at Shawangunk; John Maly, the Deputy Superintendent of Security Services at the facility; Daniel Connolly, a corrections captain at Shawangunk; Glenn S. Goord, the former Commissioner of DOCS; Donald Selsky, the DOCS Director of the

Special Housing Unit/Inmate Discipline Program; Jose Pico, a commissioner's hearing officer; Brian Malone, the former Inspector General ("IG") of the DOCS; [4] Ray Roy, also identified as the DOCS IG; Brian Bergmann, an investigator in the DOCS IG office; David Miller, identified as the "HUB Superintendent"; Evan Gorelick, the Deputy Superintendent for Program Services at Shawangunk; A.J. Loscalzo, a corrections captain at the facility; Gerald Gardner and L. Pingotti, two corrections lieutenants at the prison; and M. Bertone, a corrections sergeant at Shawangunk. [5] Plaintiff's complaint sets forth eleven causes of action sounding principally in retaliation and based upon actions allegedly taken toward plaintiff in return for his having filed grievances, in violation of the First and Fourteenth Amendments to the United States Constitution.

**\*3** Following service of process upon the majority of the named defendants, a motion was filed on their behalf on August 25, 2008 seeking dismissal of plaintiff's claims on several grounds. Dkt. No. 28. Despite granting plaintiff an extension of the deadline for doing so, *see* Dkt. No. 29, he has failed to respond in opposition to defendants' motion. [6]

Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

### III. *DISCUSSION*

#### A. *Dismissal Motion Standard*

A motion to dismiss a complaint, brought pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which is particularly unexacting in its requirements. Rule 8 of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Absent applicability of a heightened pleading requirement such as that imposed under Rule 9, a plaintiff is not required to plead specific factual allegations to support the claim; rather, "the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus,*

551 U.S. 2197, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (other quotations omitted)); *cf. Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007) (acknowledging that a plaintiff may properly be required to illuminate a claim with some factual allegations in those contexts where amplification is necessary to establish that the claim is "plausible"). Once the claim has been stated adequately, a plaintiff may present any set of facts consistent with the allegations contained in the complaint to support his or her claim. *Twombly,* 550 U.S. at 562, 127 S.Ct. at 1969 (observing that the Court's prior decision in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party. *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1723, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 300 (2d Cir.2003), *cert. denied,* 540 U.S. 823, 124 S.Ct. 153, 157 L.Ed.2d 44 (2003); *Burke v. Gregory,* 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, " 'but whether the claimant is entitled to offer evidence to support the claims.' " *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.,* 223 F.Supp.2d 435, 441 (S.D.N.Y.2001) (quoting *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995)) (other quotations omitted).

**\*4** Accordingly, a complaint should be dismissed on a motion brought pursuant to Rule 12(b)(6) only where the plaintiff has failed to provide some basis for the allegations that support the elements of his or her claim. *See Twombly,* 550 U.S. at 562, 570, 127 S.Ct. at 1969, 1974; *see also Patane v. Clark,* 508 F.3d 106, 111–12 (2d Cir.2007) ("In order to withstand a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face' ") (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974). "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.' " *In re Elevator*

*Antitrust Litig.,* 502 F.3d 47, 50 (3d Cir.2007) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson,* 127 S.Ct. at 2200 (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers' ") (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) (internal quotations omitted)); *Davis v. Goord,* 320 F.3d 346, 350 (2d Cir.2003) (citation omitted); *Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (Hurd, J.). In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. *Branum v. Clark,* 927 F.2d 698, 704–05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

### B. *Statute of Limitations*

Noting that the event referenced in plaintiff's complaint as having precipitated the campaign of retaliation forming the basis for the bulk of his claims dates back to more than three years prior to commencement of this action, defendants seek dismissal of plaintiff's claims as barred by the governing statute of limitations.

Section 1983 itself specifies no time limit for the commencement of civil rights actions brought under that section; in light of this void the Supreme Court has held that the limitations period applicable to such actions is derived from the general or residual statute of limitations for personal injury actions under the laws of the forum state. *See Owens v. Okure,* 488 U.S. 235, 249–50, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989). Plaintiff's section 1983 claims in this action are therefore governed by the three-year statute of limitations which applies in New York to personal injury claims of an otherwise unspecified nature.[7] *See* N.Y. C.P.L.R. § 214(5); *see also Ormiston v. Nelson,* 117 F.3d 69, 71 (2d Cir.1997) (quoting *Owens,* 488 U.S.249–50, 109 S.Ct. 581–82); *Pinaud v. County of Suffolk,* 52 F.3d 1139, 1156 (2d Cir.1995); *Lugo v. Senkowski,* 114 F.Supp.2d 111, 113 (N.D.N.Y.2000)

(Kahn, J.) (citing *Pinaud,* 152 F.3d at 1156 and *Owens,* 488 U.S. 250–51, 109 S.Ct. at 582).

**\*5** This action was formally commenced on May 5, 2008, with the filing of plaintiff's complaint. Dkt. No. 1. For purposes of gauging the timeliness of his claims, however, I have applied the prison mailbox rule recognized in this circuit and elsewhere as controlling, for purposes of measuring the timeliness of an action brought by a prison inmate. *See Houston v. Lack,* 487 U.S. 266, 270–76, 108 S.Ct. 2379, 2382–85, 101 L.Ed.2d 245 (1988); *Jones v. Waterbury Police Dep't,* No. 04CV2137, 2005 WL 1185723, at *2 (D.Conn. May 12, 2005). Since the post-mark found on the envelope in which plaintiff's complaint was forwarded reflects that it was mailed on May 2, 2008, absent a basis to find that the governing limitations period was tolled during all or any part of the intervening period, it appears likely that any claims accruing on or before May 2, 2005 are time-barred.[8],[9]

Like the governing limitations period, the tolling rules applicable to a section 1983 claim are also borrowed by the corresponding state provisions. *Bd. of Regents v. Tomanio,* 446 U.S. 478, 484–86, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Pearl v. City of Long Beach,* 296 F.3d at 80. In New York, rules governing tolling are derived both from a number of codified provisions, governing such matters as disability due to infancy, insanity, or imprisonment, and based upon application of common law rules. *Pearl,* 296 F.3d at 81. In this case, there is nothing in plaintiff's complaint that would suggest that tolling under the state's governing provisions should be applied. Plaintiff's claims are of such a nature that he undoubtedly knew, or at a minimum reasonably should have known, of the facts underlying his claims and the existence of a potential section 1983 cause of action at the time of the relevant events. *Paige v. Police Dep't of City of Schenectady,* 264 F.3d 197, 199–200 (2d Cir.2001).

One potential basis for excusing the untimeliness of a complaint asserting a section 1983 violation is equitable tolling, a doctrine applied in " 'rare and exceptional circumstances,' where [the court finds] that 'extraordinary circumstances' prevented a party from timely performing a required act and that party 'acted with reasonable diligence throughout the period he [sought] to toll.' " *Czernicki v. U.S. Dep't of Justice,* 137 Fed. Appx. 409, 410–11, 2005 WL 1498456, at *1 (2d Cir.2005) (citing and quoting *Doe v. Menefee,* 391 F.3d 147, 159–60 (2d

Cir.2004)). The doctrine may be applied where a statute of limitations has passed due to " 'defective pleading' " or the defendant's " 'misconduct' " in preventing the plaintiff from bringing his claim or learning of the cause of action. *Id.* (citing *Irwin v. Dep't of Veterans Affairs,* 489 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); *Kronisch v. U.S.,* 150 F.3d 112, 123 (2d Cir.1998). Once again, plaintiff's complaint discloses no basis to find equitable tolling, and in the face of defendants' motion, plaintiff has offered no explanation or basis upon which to find such tolling.

**\*6** Under the circumstances now presented, particularly in light of plaintiff's failure to respond, I agree with defendants that any causes of action accruing prior to May 2, 2005 are untimely, and thus subject to dismissal. What is less than clear is the impact, if any, of this ruling upon plaintiff's claims. There are only a limited number of events recited in plaintiff's complaint which predate May 2, 2005, and none of them seem to trigger the accrual of one or more of plaintiff's claims. By way of example, the incident which formed the genesis of grievances alleged in plaintiff's complaint was the purported use of excessive force against another inmate on March 28, 2005. *See* Complaint (Dkt. No. 1) ¶ 6. That incident lead to plaintiff's filing of his first grievance, no. SHG–21477–05, on April 5, 2005, representing activity protected by the First Amendment. The few events which followed seem to have been relatively benign. *See id.* ¶¶ 6(1)–6(4).

It does not appear that any of the actions allegedly taken by defendants in retaliation for plaintiff's protected activity occurred prior to May 2, 2005. Since adverse action is an essential element of a claim of retaliation, *see Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977), plaintiff's retaliation claims could not have accrued prior to the critical date of May 2, 2005, even if the relevant protected conduct predated that milepost, and thus are not time-barred. Accordingly, I recommend denial of defendants' motion to dismiss plaintiff's claims on the basis of the governing statute of limitations, without prejudice to his right to argue at trial or on motion for summary judgment that any adverse actions taken prior to May 2, 2005 and potentially giving rise to a claim of retaliation are outside of the governing limitations period, and to that limited extent plaintiff's retaliation are untimely.

### C. *Verbal Threats*

Certain of plaintiff's claims are based upon alleged verbal threats, intimidation, and disparaging comments on the part of corrections officers. Plaintiff contends that such conduct constituted adverse action, and was taken against him in retaliation for his having engaged in protected activity. In their motion, defendants also seek dismissal of this claim.

Claims of this nature typically arise in the context of the Eighth Amendment, with the plaintiff inmate alleging that verbal harassment and threats made by prison officials represent a form of cruel and unusual punishment in violation of that constitutional provision. In response to such claims, courts typically note that 42 U.S.C. § 1983 is not designed to remedy harassment or verbal abuse. *Alnutt v. Cleary,* 913 F.Supp. 160, 165–66 (W.D.N.Y.1996) (citations omitted). Accordingly, mere allegations of verbal abuse do not rise to the level of a constitutional violation, and are not cognizable under 42 U.S.C. § 1983. *See Moncrieffe v. Witbeck,* No. 97–CV–253, 2000 WL 949457, at \*3 (N.D.N.Y. June 29, 2000) (Mordue, J.) (allegations that corrections officer laughed at inmate not actionable under section 1983) (citation omitted); *Carpio v. Walker,* No. Civ.A.95CV1502, 1997 WL 642543, at \*6 (N.D.N.Y. Oct.15, 1997) (Pooler, J. and DiBianco, M.J.) ("verbal harassment alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not rise to the level of an Eighth Amendment violation").

**\*7** Plaintiff's claims regarding threats and harassment do not seek to invoke the protections of the Eighth Amendment, however, but instead are grounded in the First and Fourteenth Amendments, with plaintiff contending that defendants' conduct represented adverse action taken in retaliation for his having engaged in protected activity. [10]

Even when measured against the applicable First Amendment retaliation standard, plaintiff's allegations regarding threats and verbal harassment as representing a form of adverse action are deficient. For purposes of meeting the requirements for making a *prima facie* showing of retaliation, an action is sufficiently adverse only if it is one "that would deter a similarly situated individual of ordinary firmness of exercising constitutional rights." *Gill v. Pidlypchack,* 389 F.3d 379,

380 (2d Cir.2004) (citing *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003)); *Islam v. Goord,* No. 05–Civ. 7502(RJH), 2006 WL 2819651, at *5 (S .D.N.Y. Sept. 29, 2006). Courts addressing claims of verbal threats and harassment advanced to support First Amendment retaliation claims have uniformly held that such conduct is not sufficiently serious to meet this standard. *See Islam,* 2006 WL 2819651, at *5–6 (collecting cases); *see also Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995) (claim of receiving threats, in retaliation for lodging complaints regarding cancellation of a dental appointment, deemed insufficient to support a cognizable claim). *Morales v. Mackalm,* 278 F.3d 1126 (2d Cir.2002) (claim that defendant called plaintiff "stoolie" and "rat" in front of other inmates not sufficiently adverse; *Dawes v. Walker,* 239 F.3d 489 (2d Cir.2000) (references to prisoner as "informant" or a "rat" in conversations with other inmates were not sufficiently adverse), overruled on other grounds by *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Williams v. Muller,* No. 98 CIV 5204, 2001 WL 936297 (S.D.N.Y. Aug. 17, 2001) (spreading rumors about the plaintiff in order to incite other inmates did not state a cognizable claim).

I therefore recommend dismissal of plaintiff's first cause of action, which alleges a pattern of harassment, intimidation and threats in retaliation for his having engaged in protected activity, as well as that portion of plaintiff's second cause of action making similar assertions, as failing to support a *prima facie* case of retaliation.

### D. *Personal Involvement*

In their motion, defendants next challenge the sufficiency of plaintiff's allegations regarding their personal involvement in the constitutional deprivations alleged. Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

**\*8** Certain of the defendants named in this action are alleged by plaintiff to bear responsibility strictly as a result of their supervisory positions. For the purposes of determining whether such a defendant can be held responsible for a constitutional deprivation it must be noted that a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor; there is no *respondeat superior* liability under section 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright v. Smith,* 21 F.3d at 501. Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability. *Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim ... [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights.").

Culpability on the part of a supervisory official for a civil rights violation can, however, be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d at 152–53; *see also Richardson v. Goord,* 347 F.3d at 435; *Wright v. Smith,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986).

### 1. *Defendant Malone*

Plaintiff's allegations against defendant Malone, despite the overall comprehensive nature of his complaint, are limited to broad and general allegations in his first and eleventh causes of action, in which he accuses defendant Malone of complicity in other defendants' retaliatory actions. Such conclusory allegations, particularly in light of defendant Malone's apparent death in June of 2001 (long before the events relevant to plaintiff's claims are said to have occurred), convince me that plaintiff has failed to plausibly allege defendant Malone's personal involvement in the constitutional violations alleged. On

that basis, I recommend dismissal of plaintiff's claims against defendant Malone.

### 2. *Defendant Goord*

Plaintiff's allegations against defendant Goord are distinctly more specific than those against defendant Malone. Defendant Goord is named in plaintiff's first cause of action, alleging retaliatory harassment and threats based upon plaintiff's pursuit of complaints regarding alleged abuse of a co-inmate; his eighth cause of action, alleging Goord's refusal to overturn the determination to place Cabassa in IPC; and his claims predicated upon the denial of his prison transfer requests.

**\*9** Plaintiff's complaint makes allegations from which one could infer both defendant Goord's awareness of constitutional deprivations raised and his failure to act to remedy those violations. *See, e.g.,* Complaint (Dkt. No. 1) ¶¶ 3–4, 7. While defendant Goord cannot be held liable under section 1983 solely by virtue of his supervisory position, *see Wright v. Smith,* 21 F.3d at 501; *Richardson v. Goord,* 547 F.3d at 435, the allegation that he either participated in, or was aware of but failed to remedy, an ongoing constitutional deprivation could suffice to establish a basis for finding liability. *Iqbal,* 490 F.3d at 152 (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)). While in their motion defendants allege that plaintiff has failed to adduce evidence to support defendant Goord's involvement, all that is required at this juncture is that plaintiff allege a plausible basis for finding liability as against the defendant; this he has done. Accordingly, at this early procedural stage I recommend against dismissal of plaintiff's claims against defendant Goord for lack of personal involvement.

### 3. *Defendants Bergmann and Miller*

Defendants Bergmann and Miller are named only in plaintiff's first cause of action, which alleges a pattern of threats, intimidation, and harassment in an effort to convince them not to pursue complaints against prison officials. Since I have already determined that this cause of action is legally deficient, it is unnecessary to address the additional argument by defendants Bergmann and Miller that because their personal involvement in the constitutional deprivation at issue is not sufficiently alleged, they are entitled to dismissal of that cause of action against them.

### 4. *Defendant Roy*

Like defendant Malone, Roy is named only in plaintiff's eleventh cause of action, in which it is averred that he participated in a retaliatory decision to deny Cabassa's request for a prison transfer. At this juncture it is not readily apparent why defendant Roy, who is identified as a DOCS IG, would have played a role in any decision involving an inter-prison transfer. Nonetheless, as plaintiff has alleged that he, along with the other defendants named in that cause of action, were complicit in the denial of his transfer request in retaliation for his having engaged in protected activity, I am unable to say with certainty at this point in the proceeding that plaintiff cannot state a claim upon which relief may be granted against defendant Roy, and therefore recommend denial of defendants' motion for dismissal of that cause of action as against him.

### E. *Due Process Claims*

Encompassed within plaintiff's complaint are claims alleging procedural due process deprivations in violation of the Fourteenth Amendment. While the precise nature of those claims is somewhat unclear, it appears that plaintiff asserts procedural due process violations associated with a Tier II disciplinary hearing, stemming from alleged tampering by prison officials with the tape recording of the proceeding, and additionally in connection with the refusal of defendants Smith and Gorelick to overturn the results of that conviction. Plaintiff also complains that when placed in IPC he was not afforded procedural due process, including through meaningful, periodic reviews of his circumstances. In their motion, defendants argue that these claims are without merit.

**\*10** To successfully state a claim under 42 U.S.C. § 1983 for the denial of procedural due process, a plaintiff must show that he or she 1) possessed an actual liberty interest, and 2) was deprived of that interest without being afforded sufficient process. *See Tellier v. Fields,* 280 F.3d 69, 79–80 (2d Cir.2000) (citations omitted); *Hynes v. Squillace,* 143 F.3d 653, 658 (2d Cir.1998); *Bedoya v. Coughlin,* 91 F.3d 349, 351–52 (2d Cir.1996). These principles apply equally to both disciplinary hearings leading to sanctions arising to a level of constitutional significance and decisions to place an inmate into IPC. *Thomas v. Picio,* No. 04 Civ. 3174, 2008 WL 820740, at \*3 (S.D.N.Y. March 26, 2008).

The procedural safeguards to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest as a result of disciplinary action are well established, the contours of the requisite protections having been articulated in *Wolff v. McDonnell,* 418 U.S. 539, 564–67, 94 S.Ct. 2963, 2978–80, 41 L.Ed.2d 935 (1974). Under *Wolff,* the constitutionally mandated due process requirements, include 1) written notice of the charges; 2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence, subject to legitimate safety and penological concerns; 3) a written statement by the hearing officer explaining his or her decision and the reasons for the action being taken; and 4) in some circumstances, the right to assistance in preparing a defense. *Wolff,* 418 U.S. at 564–67, 94 S.Ct. at 2978–80; *see also Eng v. Coughlin,* 858 F.2d 889, 897–98 (2d Cir.1988). In order to pass muster under the Fourteenth Amendment, a hearing officer's disciplinary determination must garner the support of at least "some evidence". *Superintendent v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

As an initial matter I note that while defendants have not raised this argument, the consequences flowing from plaintiff's Tier II hearing were not sufficiently serious to qualify as a liberty interest deprivation of constitutional proportions. Plaintiff's complaint discloses that as a result of the hearing officer's finding of guilt a disciplinary sanction was imposed which included thirty days of keeplock confinement, with a corresponding loss of privileges. Complaint (Dkt. No. 1) ¶ 6(19). Since plaintiff has not alleged that the disciplinary confinement imposed following the Tier II hearing departed from the ordinary incidents of keeplock confinement, his disciplinary sanction of thirty days does not qualify as constitutionally significant deprivation for Fourteenth Amendment purposes. *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *Scott v. Albury,* 156 F.3d 283, 287–88 (2d Cir.1998) (per curiam).

Even if plaintiff could establish the existence of a constitutionally significant liberty interest deprivation, his procedural due process claim would nonetheless be destined for dismissal based upon his failure to establish that he was denied the minimal due process required under *Wolff.* As defendants correctly note, certain of plaintiff's allegations of irregularity regarding the disciplinary hearing appear to relate to the interference with the tape recorder, the alleged tampering with the

hearing tape, and the hearing officer's failure to grant the request for an adjournment. Because neither a tape recording nor adjournment of a disciplinary hearing is constitutionally mandated, plaintiff has failed to state a plausible due process violation claim with regard to his Tier II hearing as relates to those matters. *Dixon v. Goord,* 224 F.Supp.2d 739, 744 (S.D.N.Y.2002); *Afrika v. Selsky,* 750 F.Supp. 595, 600–602 (S.D.N.Y.1990); *Brito v. Coughlin,* 88–cv–8064, 1989 WL 241718, at *2 (S.D.N.Y. July 31, 1989). Accordingly, since plaintiff has alleged neither the deprivation of a cognizable liberty interest nor the denial of due process growing out of his Tier II hearing, I recommend dismissal of the balance of plaintiff's second cause of action, as well as his third cause of action, both which relate to that matter.

**\*11** Plaintiff's ninth cause of action also asserts a procedural due process claim, in this instance arising from his placement in IPC. As is the case with disciplinary SHU confinement, a prison inmate is entitled to at least minimal due process when being involuntarily placed in administrative confinement, particularly when that confinement entails the deprivation of a liberty interest including by virtue of the length of such confinement. *See Arce v. Walker,* 139 F.3d 329, 335 (2d Cir.1998). The placement of an inmate into involuntary administrative confinement carries with it only minimal due process requirements. In *Hewitt v. Helms,* the Supreme Court defined the minimum due process to which an inmate is entitled when placed in administrative segregation, holding that under those circumstances an inmate is entitled to "an informal, nonadversary review," occurring "within a reasonable time" following the inmate's transfer to administrative segregation, where the inmate "receive[s] some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." [11] 459 U.S. 460, 472, 476, 103 S.Ct. 864, 872, 874, 74 L.Ed.2d 675.

Additionally, since "administrative segregation may not be used as a pretext for indefinite confinement of an inmate[,]" prison officials must periodically review their decision to ascertain whether a prisoner remains a security risk. *Id.* at 477 n. 9, 103 S.Ct. at 874 n. 9. While these reviews must be "meaningful and not simply perfunctory", *McClary,* 4 F.Supp.2d at 213 (citing *Giano v. Kelly,* 869 F.Supp. 143, 150–51 (W.D.N.Y.1994)), the Supreme Court made it clear in *Hewitt* that they will

not necessarily require that prison officials permit the submission of any additional evidence or statements.

> [t]he decision whether a prisoner remains a security risk will be based on facts relating to a particular prisoner—which will have been ascertained when determining [whether] to confine the inmate to administrative segregation—and on the officials' general knowledge of prison conditions and tensions, which are singularly unsuited for "proof" in any highly structured manner. Likewise, the decision to continue confinement of an inmate pending investigation of misconduct charges depends upon circumstances that prison officials will be well aware of—most typically, the progress of the investigation.

*Hewitt,* 459 U.S. at 477 n. 9, 103 S.Ct. at 874 n. 9.

In his complaint plaintiff alleges that he remained in IPC status, on an involuntary basis, from June 3, 2005 until October 3, 2007, a period of some twenty-eight months. Complaint (Dkt. No. 1) ¶ 6(72). Plaintiff asserts that his initial IPC hearing was conducted by defendant Pico, who was biased based upon a previous encounter between Pico and Cabassa, and that the hearing was infected based upon the failure to accommodate plaintiff's limited eyesight, the refusal of the hearing officer to permit the plaintiff to call witnesses on his behalf and to introduce documentary evidence supporting his defenses, and that the evidence adduced during the hearing failed to establish credibly that plaintiff's safety was in danger. *Id.* ¶¶ 6(32)–6(53). Plaintiff further alleges that the resulting, infected IPC determination was improperly upheld on appeal to defendants Goord and Selsky on August 16, 2005, and that while he remained in IPC, against his will, only sham periodic reviews were conducted to determine whether the circumstances giving rise to his initial protective custody persisted. *Id.* ¶¶ 6(68)–6(69), 6(72). These allegations suffice, at this early stage, to allege a plausible due process violation stemming from his placement in involuntary protected custody.

F. *Americans With Disability Act and Section 504 Claims*

**\*12** In his complaint, plaintiff purports to assert claims under the ADA and section 504 of the Rehabilitation Act. Those claims appear to arise out of his left eye blindness and the alleged failure of prison officials to reasonably accommodate his vision impairment, including through providing a contact lens or other visual aid at a Tier I I disciplinary hearing, and to allow him more time to review written materials. Complaint (Dkt. No. 1) Sixth Cause of Action. Defendants seek dismissal of this claim. Plaintiff's ADA and section 504 claims are asserted against defendants Smith, Maly and Pico, and appear to seek damages against them in both their official capacities and as individuals.

It is well established that neither the ADA nor section 504 of the Rehabilitation Act provide for suits for monetary damages against defendants in their individual capacities. *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn,* 280 F.3d 98, 107 (2d Cir.2001); *Alsbrook v. City of Maumelle,* 184 F.3d 999, 1005 n. 8 (8th Cir.1999); and *Shariff v. Coombe,* No. 96 Civ. 3001, 2002 WL 1392164, at *2 (S.D.N.Y. June 26, 2002) (citing *Garcia,* 28 F.3d 107). Accordingly, I recommend dismissal of plaintiff's sixth cause of action, to the extent that it seeks recovery of damages against defendants Smith, Maley and Pico as individuals.

G. *Eleventh Amendment*

Plaintiff's claims in this action are asserted against defendants, both individually and in their official capacities as state employees. Defendants contend that plaintiff's claims for damages against them in their official capacities are subject to dismissal on the basis of the immunity which the Eleventh Amendment affords.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought. *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3057–58, 57 L.Ed.2d 1114 (1978). This absolute immunity which states enjoy under the Eleventh Amendment extends both to state agencies, and in favor of state officials sued for damages in their official capacities when the essence of the claim involved seeks recovery from the state as the real party in interest. [12] *Richards v. State of New York Appellate Division, Second Dep't,* 597 F.Supp. 689, 691 (E.D.N.Y.1984) (citing *Pugh,* 98 S.Ct. at 3057–58 and

*Cory v. White,* 457 U.S. 85, 89–91, 102 S.Ct. 2325, 2328–29, 72 L.Ed.2d 694 (1982)). "To the extent that a state official is sued for damages in his official capacity ... the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." [13] *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991); *Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).

Since plaintiff's damage claims against the named defendants in their official capacities are in reality claims against the State of New York, thus exemplifying those against which the Eleventh Amendment protects, they are subject to dismissal. *Daisernia v. State of New York,* 582 F.Supp. 792, 798–99 (N.D.N.Y.1984) (McCurn, J.). I therefore recommend that this portion of defendants' motion be granted, in part, and that all damage claims, except for those asserted against the defendants in their official capacities under the ADA and section 504, be dismissed. *Lighthall v. Vadlamudi,* No. 9:04–cv–0721, 2006 WL 7215678, at *18 (N.D.N.Y. March 17, 2006) (Mordue, J. and Treece, M.J.).

**\*13** While not specifically addressing those counts, defendants' Eleventh Amendment argument appears to extend as well to plaintiff's claims asserted under the ADA. [14] Unfortunately, however, such claims asserted against them in their official, representative capacities are not so easily discounted. While in *Henrietta D. v. Bloomberg,* 331 F.3d 261 (2d Cir.2003), the Second Circuit held that an ADA plaintiff can assert a prospective claim for injunctive relief under *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), against a state official in his or her official capacity, as opposed to against the state directly, it has not explicitly held likewise for ADA plaintiffs who seek money damages. Nonetheless, as defendants argue, a request for monetary damages from DOCS officials in their official capacities, as plaintiff Cabassa has made in this instance, is the functional equivalent of seeking damages directly from the State of New York, and Eleventh Amendment sovereign immunity therefore ordinarily protects a defendant in his or her official capacity to the same extent that it protects the State. *See, e.g., Garcia v. S.U.N.Y. Health Sciences Ctr.,* 280 F.3d at 107 (citing *inter alia, Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989)).

It is well settled under Eleventh Amendment jurisprudence that neither a state nor one of its agencies can be sued without either express or implied consent, or an express abrogation by Congress of the state's sovereign immunity. *See, e.g., Kilcullen v. N.Y. State Dep't of Labor,* 205 F.3d 77, 79 (2d Cir.2000), implicitly overruled on other grounds by *Bd. of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 368, 121 S.Ct. 955, 965, 148 L.Ed.2d 866 (2001); *Hallett v. N.Y. State DOCS,* 109 F.Supp.2d 190, 197 (S.D.N.Y.2000) (citations omitted). In this respect, the Eleventh Amendment, while not directly controlling, confirms the broader, " 'background principle of sovereign immunity[.]' " *Garcia,* 280 F.3d at 107 (quoting *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 72, 116 S.Ct. 1114, 1131, 134 L.Ed.2d 252 (1996)). When abrogating sovereign immunity, Congress must both unequivocally intend to do so and act pursuant to a valid grant of constitutional authority. *Garrett,* 531 U.S. at 363, 121 S.Ct. at 962 (citing, *inter alia, Seminole Tribe,* 517 U .S. at 54, 116 S.Ct. at 1122; *Garcia,* 280 F.3d at 108) (citations omitted). The pivotal question, in determining whether defendants are entitled to protection under the Eleventh Amendment when sued in their official capacities, is whether, and if so to what extent, that amendment protects the states from liability under Title II of the ADA and section 504 of the Rehabilitation Act. [15]

### i. *Eleventh Amendment: ADA Claims*

The question of whether the Eleventh Amendment bars ADA claims under Title II against a state is an unsettled question among the circuits. In *Garrett,* the Supreme Court held that Congress had failed to validly abrogate state sovereign immunity under Title I of the ADA. 531 U.S. at 374, 121 S.Ct. at 967–68. In doing so, the Court was careful to distinguish Title II from its analysis, inasmuch as the issue had not been briefed by the parties, but did note that the remedial scheme of Title II is very different from that of Title I. *Id.* at 360 n. 1, 121 S.Ct. at 960 n. 1. The courts appear to be divided as to whether *Garrett* should extend to Title II of the ADA, especially since *Pennsylvania Dep't of Corr. v. Yeskey,* 524 U.S. 206, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998)—which held that Title II of the ADA applies to prisons—had been decided in the term previous to *Garrett,* but did not address sovereign immunity. *Compare, e.g., Popovich v. Cuyahoga Cty. Ct. of Common Pleas,* 276 F.3d 808, 813–16 (6th Cir.) (holding that sovereign immunity validly abrogated by Congress as to the Due Process Clause), *cert. denied,*

537 U.S. 812, 123 S.Ct. 72 (2002), with *Alsbrook,* 184 F.3d at 1007 (finding that Congress exceeded authority by extending Title II of the ADA to the states and therefore did not validly abrogate sovereign immunity).

**\*14** The Second Circuit has taken a slightly different approach than various other federal courts in addressing this question. In *Muller v. Costello,* 187 F.3d 298, 310 (2d Cir.1999) decided by the Second Circuit before the Supreme Court issued its opinion in *Garrett,* the Second Circuit found that Congress had validly abrogated sovereign immunity within its authority under section five of the Fourteenth Amendment, subjecting states to potential monetary liability under the ADA. [16] More recently, however, in *Garcia v. S.U.N.Y. Health Sciences Ctr.,* the Second Circuit found that *Garrett* had "implicitly abrogated" its prior position that the states were not immune from ADA claims. 280 F.3d at 113 n. 3.

In *Garcia,* the Second Circuit found that Congress could not validly abrogate sovereign immunity under the Commerce Clause, one of the two empowering provisions cited in support of its enactment of Title II. *Garcia,* 280 F.3d at 108. The circuit court went on to find, however, that Congress could exercise its authority under section five of the Fourteenth Amendment—the "sweep of congressional authority" allowing Congress to "enforce the [F]ourteenth [A]mendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities"—when enacting Title II of the ADA, as a whole, though it found the power to have been exceeded through enactment of Title II, since that provision conferred upon Congress the right to abrogate sovereign immunity and allow for private parties to sue nonconsenting states for money damages. 280 F.3d at 108–10.

Turning to the specific question of whether Congress, through proper invocation of its section five powers, effectively abrogated sovereign immunity in the case of private damage suits under Title II, however, the Second Circuit found that the ADA's broad remedial scheme, borrowed from the Rehabilitation Act and Title VI of the Civil Rights Act of 1964, included a judicially implied private cause of action, thus allowing that court latitude to shape a remedy. *Id.* at 110–111. Specifically, in *Garcia* the Second Circuit concluded that Title II claims against the states for monetary damages could be reconciled with the prohibitions of the Eleventh Amendment if

permitted in limited circumstances—in cases where a plaintiff establishes that a Title II violation was motivated by discriminatory animus or ill will based on disability. [17] 280 F.3d at 111; *see Doe v. Goord,* No. 04 CV 0570, 2004 WL 2829876, at \*15 (S.D.N.Y. Dec. 10, 2004).

ii. *Eleventh Amendment: Rehabilitation Act*

In addition to his ADA claim, plaintiff Cabassa also asserts a parallel claim under section 504 of the Rehabilitation Act against various DOCS employees "individually and in their official, representative capacities". As is the case with plaintiff's ADA cause of action, plaintiff's section 504 claims against defendants in their individual capacities are also legally deficient. *See, e .g., Garcia,* 280 F.3d at 107; *Shariff,* 2002 WL 1392164, at \*2.

**\*15** As to the viability of plaintiff's section 504 claims against the defendants in their official capacities, once again *Garcia* is instructive on the issue. Before *Garrett,* the Second Circuit had extended its logic in *Muller,* in which it held that Congress had validly abrogated sovereign immunity under the ADA, to claims under section 504 of the Rehabilitation Act. *Kilcullen v. N.Y. State Dep't of Labor,* 205 F.3d at 78. In *Garcia,* however, the Second Circuit held that as with Title II of the ADA Congress exceeded its power under section five of the Fourteenth Amendment. 280 F.3d at 113. Since, unlike the ADA, section 504 was enacted under the Constitution's Spending Clause, however, the *Garcia* court held that despite Congress's failure to properly abrogate Eleventh Amendment immunity by statute Congress could still require a state to agree to waive its sovereign immunity as a condition of accepting federal funds. *Garcia,* 280 F.3d at 113–114. While acknowledging that Congress imposed such a condition in Title 42 (42 U.S.C. § 2000d–7), the court also noted that the state's waiver, as with any waiver, must have represented an "intentional relinquishment or abandonment of a *known* right or privilege". *Garcia,* 280 F.3d at 114 (emphasis in original) (quotation omitted).

Applying this standard, the *Garcia* court was unable to conclude that New York had knowingly waived its sovereign immunity when it accepted federal funds, since at the time when the state accepted federal funds Title II of the ADA was reasonably understood to validly abrogate sovereign immunity under the Commerce Clause, thereby

allowing suit under the ADA and section 504 against the state. *Id.* at 114 (citing, *inter alia, Kilcullen,* 205 F.3d at 82).

Courts in this circuit have differed, however, as to what date the State can be deemed to have understood that the DOCS acceptance of federal funds would create potential section 504 liability for them to which they were not already subject. While some courts have held that the state effectively waived its sovereign immunity as of September 25, 2001, when *Garcia* was decided, others have held that the waiver occurred as early as February 25, 2001, when the Supreme Court decided *Garrett.* [18] *See Doe v. Goord,* 2004 WL 2829876, at *16 (noting split and collecting cases).

Since all of the acts complained of by Cabassa occurred after 2001, it appears that his claims of official liability under the Rehabilitation Act survive notwithstanding defendants' Eleventh Amendment argument. I therefore recommend against dismissal of plaintiff's section 504 claim against the defendants in their official capacities.

### H. *Conspiracy*

According to defendants, embedded within plaintiff's claims is his accusation that defendants were engaged in a conspiracy to deprive him of his civil rights. Arguing that plaintiff's conspiracy claims are insufficiently pleaded, and in any event barred by the intra-corporate conspiracy doctrine, defendants also seek dismissal of any such cause of action.

**\*16** To sustain a conspiracy claim under § 42 U.S.C.1983, a plaintiff must demonstrate that a defendant "acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights ... secured by the Constitution or the federal courts." *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995) (citations and internal quotation marks omitted). Conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983. *See Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.), *cert. denied,* 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 158 (1983).

Claims of conspiracy in cases like this are also typically met with the argument that because they implicate, as participants, the DOCS and its employees, such claims are barred by the intra-corporate conspiracy doctrine.

Rooted in the conspiracy provision of section one of the Sherman Antitrust Act, 15 U.S.C. § 1, and which, although developed in the context of business entities, since inception has been expanded to apply to business corporations and public entities as well, the intra-corporate conspiracy doctrine provides, that with exceptions not now presented, an entity cannot conspire with one or more of its employees, acting within the scope of employment, and thus a conspiracy claim conceptually will not lie in such circumstances. *See, e.g., Everson v. New York City Transit Auth.,* 216 F.Supp.2d 71, 75–76 (E.D.N.Y.2002); *Griffin–Nolan v. Providence Wash. Ins. Co.,* No. 504CV1453, 2005 WL 1460424, at *10 (N.D.N.Y. June 20, 2005) (Scullin, C.J.). Since all of the defendants named in this action are employees of the DOCS, any conspiracy claim asserted by plaintiff would be subject to dismissal on the basis of this well established rule.

Unlike the defendants, however, I am unable to discern any conspiracy claim expressly contained within plaintiff's complaint. Although plaintiff's first cause of action refers to "collusion" it does not appear to assert the existence of a conspiracy on a formal basis, independent of the retaliation claim set forth within it. [19] While any conspiracy claim would be subject to dismissal as having been insufficiently alleged and additionally as subject to the intra-corporate conspiracy doctrine, because I do not detect such a claim from the face of plaintiff's complaint I recommend denial of this portion of defendants' motion as academic.

### I. *Qualified Immunity*

In addition to asserting that plaintiff's claims, as currently constituted, are insufficiently pleaded, defendants also assert their entitlement to qualified immunity from suit.

Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations omitted). Accordingly, governmental officials sued for damages "are entitled to qualified immunity if 1) their actions did not violate clearly established law, or 2) it was objectively reasonable for them to believe that their actions did not violate such law."

*Warren v. Keane,* 196 F.3d 330, 332 (2d Cir.1999) (citing *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir.1996)); *see also Zellner v. Summerlin,* 494 F.3d 344, 367 (2d Cir.2007); *Iqbal,* 490 F.3d at 152. The law of qualified immunity seeks to strike a balance between overexposure by government officials to suits for violations based upon abstract rights and an unduly narrow view which would insulate them from liability in connection with virtually all discretionary decisions. *Locurto v. Safir,* 264 F.3d 154, 162–63 (2d Cir.2001); *Warren,* 196 F.3d at 332. As the Second Circuit has observed,

> **\*17** [q]ualified immunity serves important interests in our political system, chief among them to ensure that damages suits do not unduly inhibit officials in the discharge of their duties by saddling individual officers with personal monetary liability and harassing litigation.

*Provost v. City of Newburgh,* 262 F.3d 146, 160 (2d Cir.2001) (internal quotations omitted) (citing, *inter alia, Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 456 F.2d 1339, 1348 (2d Cir.1972)).

Until recently, it was generally agreed that a proper qualified immunity analysis entailed a three-step inquiry. *Harhay v. Town of Ellington Bd. of Educ.,* 323 F.3d 206, 211–12 (2d Cir.2003). As a threshold matter, a court considering the issue was charged with first determining whether, based upon the facts alleged, the plaintiff had facially established a constitutional violation. *Id .; Gilles v. Repicky,* 511 F.3d 239, 243–44 (2d Cir.2007). If the answer to this inquiry was in the affirmative, then the focus turned to whether the right in issue was clearly established at the time of the alleged violation. *Harhay,* 323 F.3d at 211 (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001)); *see also Poe v. Leonard,* 282 F.3d 123, 132 (2d Cir.2002). Finally, upon determining that the plaintiff had a clearly established, constitutionally protected right which was violated, the court next considered whether it was nonetheless objectively reasonable for the defendant to believe that his or her action did not abridge that established right. *Harhay,* 323 F.3d at 211; *Poe,* 282 F.3d at 133 (quoting *Tierney v. Davidson,* 133 F.3d 189, 196 (2d Cir.1998) (quoting, in turn, *Salim,* 93 F.3d at 89)).

The United States Supreme Court recently had the opportunity to reconsider the analysis prescribed by *Saucier,* holding that while the sequence of the inquiry set forth in that case is often appropriate, it should no longer be regarded as compulsory. *Pearson v. Callahan,* 555 U.S. ——, 129 S.Ct. 808, 818, 172 L.Ed.2d 565, 2009 WL 128768, at \*9 (Jan. 21, 2009). In *Pearson,* the court reasoned that while the *Saucier* protocol promotes the development of constitutional precedent and is "especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable," the rigidity of the rule comes with a price. *Id.* at \*10. The inquiry often wastes both scarce judicial and party resources on challenging questions that have no bearing on the outcome of the case. *Id.* Given that the purpose of the qualified immunity doctrine is to ensure that insubstantial claims are resolved prior to discovery, the court opined that the algorithm prescribed by *Saucier* may serve to defeat this goal by requiring the parties "to endure additional burdens of suit—such as the cost of litigating constitutional questions and delays attributable to resolving them—when the suit otherwise could be disposed of more readily." *Id.* (quotations and citations omitted).

**\*18** As a result of its reflection on the matter, the *Pearson* court concluded that because the judges of the district courts and courts of appeals "are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case", those decision makers "should be permitted to exercise their sound discretion in deciding which of the ... prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Id.* at \*9.

As can be seen, the qualified immunity analysis is informed in the first instance by whether a cognizable constitutional violation has been alleged. Since I have already recommended dismissal of various of plaintiff's claims, it is unnecessary to proceed further with the qualified immunity analysis with regard to those causes of action. As to the remaining claims, the majority of those are comprised of retaliation causes of action asserted pursuant to the First Amendment, as well as procedural due process claims arising under the Fourteenth. Since those rights were clearly established at the time of the relevant events, and the court is unable to conclude at this juncture that it would be

objectively reasonable to believe that the issuance of false misbehavior reports and the imposition of disciplinary sanctions in retaliation for engaging in protected activity did not run afoul of established principles, and further that the denial of procedural due process, including meaningful periodic reviews for an inmate entrusted to IPC would similarly not contravene the due process requirements of the Fourteenth Amendment, I recommend denial of defendants' motion for dismissal on the basis of qualified immunity with regard to plaintiff's remaining claims.

IV. *SUMMARY AND RECOMMENDATION*

Plaintiff's complaint in this action asserts several claims, most of which fall into the categories of either unlawful retaliation, prompted by his having engaged in protected activity, or the denial of procedural due process. While certain of plaintiff's claims are subject to dismissal as a matter of law, including those associated with claims of threats, harassment or intimidation, others related to the issuance of false misbehavior reports and disciplinary sanctions, and the placement of the plaintiff in IPC, allegedly without affording meaningful, periodic reviews, cannot be dismissed at this early procedural juncture. Accordingly, it is hereby respectfully

RECOMMENDED, that defendants' motion to dismiss (Dkt. No. 28) be GRANTED, in part, and that plaintiff's

first, second and third causes of action be DISMISSED in their entirety; that all claims against defendants Malone, Bergmann and Miller be DISMISSED; that all damage claims, except those arising under the ADA, against defendants in their official capacities be DISMISSED; all damage claims against defendants in their individual capacities asserted under the ADA and section 504 be DISMISSED; that plaintiff's sixth cause of action against Smith, Maley and Pico in their individual capacities be DISMISSED; but that defendants' motion otherwise be DENIED.

**\*19** NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette, 984 F.2d 85 (2d Cir.1993)*.

It is hereby ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 1212495

**Footnotes**

1      Defendants also assert lack of standing as a ground for their motion, interpreting certain of plaintiff's claims as attempting to vindicate the constitutional rights of other inmates. From a careful review of plaintiff's complaint I do not understand Cabassa to be raising civil rights claims on behalf of other inmates. It is true that his first cause of action references excessive force exerted by prison officials against another inmate, and grievances were filed by the plaintiff addressing that claim, and additionally his fourth cause of action makes mention of the fact that another inmate was wrongfully subjected to involuntary protective confinement. I construe those allegations, however, as merely providing background to support the claims Cabassa is raising on his own behalf. I therefore have found it unnecessary to address defendants' standing argument.

2      In light of the procedural posture of this case the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007), citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007); *see also Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1734, 12 L.Ed.2d 1030 (1964).

3      The DOCS conducts three types of inmate disciplinary hearings. Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit ("SHU"). Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits. *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied,* 525 U.S. 907, 119 S.Ct. 246, 142 L.Ed.2d 202 (1998).

4      According to a communication received from defendants' counsel, Malone died on June 27, 2001. *See* Dkt. No. 7. In light of this information, I issued an order on July 18, 2008 advising plaintiff that the court was treating counsel's letter

as a suggestion of defendant Malone's death and that I would therefore recommend dismissal of the action as against that defendant pursuant to Rule 25(a) of the Federal Rules of Civil Procedure, absent a timely motion by plaintiff for substitution of an appropriate estate representative. Dkt. No. 10. No such motion has been forthcoming from the plaintiff. Accordingly, among the recommendations now being made is that all claims against defendant Malone in this action be dismissed, for this reason and in light of the lack of his personal involvement. *See* p. 20, *post.*

5    Certain of the defendants named in plaintiff's complaint are identified only as "Doe" defendants, including John Doe, an Analyst, CMC Transfer Review; James Doe, an Analyst, Classification and Movement; and Bob Doe, identified as an IPC review committee member at Shawangunk. Dkt. 1 pp. 8–10.

6    Plaintiff's failure to respond to the pending motion does not preclude me from recommending its disposition without the benefit of his submission. *See, e.g., White v. Mitchell,* No. 99–CV–8519, 2001 WL 64756, at *1 (E.D.N.Y. Jan.18, 2001). Such a motion to dismiss tests only the legal sufficiency of plaintiff's complaint; accordingly, since plaintiff has been afforded a reasonable opportunity to respond to the motion, but has failed to avail himself of that chance, the court may now determine the complaint's sufficiency as a matter of law based on its own reading of the complaint and knowledge of the case law. *McCall v. Pataki,* 232 F.3d 321, 322–23 (2d Cir.2000). It should be noted, however, that plaintiff's silence in the face of defendants' motion is not without significance; under this court's local rules, a party's failure to respond to a properly filed motion can constitute consent to the granting of that motion, provided the court determines that the moving party has met its burden demonstrating entitlement to the relief requested. N.D.N.Y.L.R. 7.1(b)(3); *see also McCall,* 232 F.3d at 322–23 (holding that plaintiff's silence in the face of defendants' motion failure to respond to motion to dismiss in and of itself could not constitute basis for dismissal if plaintiff's complaint stated a claim for relief); *White,* 2001 WL 64756, at n. 2 (citing *McCall* ).

7    Plaintiff's ADA and section 504 claims are also subject to a three-year statute of limitations. *See Harrison v. Harlem Hosp.,* No. 05 Civ 8271, 2007 WL 2822231, at *3 (S.D.N.Y. Sept.28, 2007). In view of the timetable associated with the events giving rise to those causes of action, however, it does not appear that the statute of limitations comes into play with regard to those claims.

8    Despite the fact that state statutes of limitation, which often vary in length from jurisdiction to jurisdiction, apply to such federal claims, the determination of the proper accrual date to affix in connection with a section 1983 claim is controlled by federal law. *Ormiston,* 117 F.3d at 71; *see also Pearl v. City of Long Beach,* 296 F.3d 76, 80 (2d Cir.2002). Such a claim accrues when the plaintiff " 'knows or has reason to know of the injury which is the basis of his [or her] action.' " *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir.1980) (internal quotations and citation omitted), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981).

9    Oddly, plaintiff's complaint is dated March 25, 2008. There is no readily apparently explanation for the delay in mailing it to the court.

10    As one example of this, Cabassa alleges that defendant Connolly threatened him in response to the filing of a grievance on May 18, 2005. Complaint (Dkt. No. 1) ¶ 6(8).

11    At least one court has held that these essential elements of minimal due process are easily satisfied by the detailed regulations that govern placement of inmates in administrative segregation in DOCS facilities. *McClary v. Kelly,* 4 F.Supp.2d 195, 213 (W.D.N.Y.1998).

12    In a broader sense, this portion of defendants' motion implicates the sovereign immunity enjoyed by the State. As the Supreme Court has reaffirmed relatively recently, the sovereign immunity enjoyed by the states is deeply rooted, having been recognized in this country even prior to ratification of the Constitution, and is neither dependent upon nor defined by the Eleventh Amendment. *Northern Ins. Co. of New York v. Chatham County,* 547 U.S. 189, 193, 126 S.Ct. 1689, 1693, 164 L.Ed.2d 367 (2006).

13    By contrast, the Eleventh Amendment does not establish a barrier against suits seeking to impose individual or personal liability on state officials under section 1983. *See Hafer,* 502 U.S. at 30–31, 112 S.Ct. at 364–65.

14    I also recommend dismissal of claims against defendant in the official capacities asserted under section 504. Infra. pp. 38–40.

15    In making my analysis I have assumed, without deciding, that plaintiff's failure to include the state and/or the DOCS as a named defendant is not fatal to his claims.

16    That section provides that "Congress shall have power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. amend XIV, § 5.

17    The Second Circuit reaffirmed this position in *Henrietta D.,* noting that the two decisions were consistent. 331 F.3d at 268. In *Tennessee v. Lane,* 541 U.S. 509, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004), the Supreme Court considered whether Congress validly abrogated the Eleventh Amendment when enacting Title II of the ADA, specifically examining Title II

within the context of a state's responsibility to provide disabled persons with access to courts and holding "that Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' *§ 5* authority to enforce the guarantees of the Fourteenth Amendment." *Id.* at 533–34, 124 S.Ct. at 1944. Subsequently, in *United States v. Georgia,* 546 U.S. 151, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006), noting disagreement among the members of the Court "regarding the scope of Congress's 'prophylactic' enforcement powers under *§ 5* of the Fourteenth Amendment", the Court held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." 546 U.S. at 159, 126 S.Ct. at 882 (emphasis in original). The Second Circuit "has yet to address the fate of *Garcia* in the wake of *Lane* and *Georgia,* even though district courts in this Circuit have adopted divergent positions as to whether *Garcia* has been abrogated." *Olson v. State of N.Y.,* 2:04–cv–00419, 2007 WL 1029021, at *7 (E.D.N.Y. March 30, 2007) (collecting cases); *Press v. State Univ. of N.Y. at Stony Brook,* 388 F.Supp.2d 127, 133 (E.D.N.Y.2005) (noting division among district courts in Second Circuit on whether *Lane* addresses only cases implicating fundamental rights and *Garcia* applies to all others or whether *Lane* superseded *Garcia* ); *see, e.g., Degrafinreid, v. Ricks,* 417 F.Supp.2d, 403, 409–10 (S.D.N.Y.2006) (holding that *Lane* superseded *Garcia* and that *Georgia* "refined" the *Lane* test); *Goonewardena v. N.Y.,* 475 F.Supp.2d 310, 323–34 (S.D.N.Y.2007) (applying test established in *Georgia* and holding where plaintiff stated a claim under Title II of the ADA but not a violation of the Fourteenth Amendment, court would determine whether abrogation of sovereign immunity valid exercise of Congressional power); *but see, e.g., Brown v. DeFrank,* 2006 WL 3313821, at * 26 (S.D.N.Y. Nov.15, 2006) (applying *Garcia* standard of motivation by either discriminatory animus of ill will due to disability under *Georgia* ). Courts in this district appear to continue in their application of *Garcia. See, e.g., Lighthall v. Vadlamudi,* 2006 WL 721568, at *18.

18  One court has even suggested in *dicta* that arguably sovereign immunity could have been waived as early as April 17, 2000, when the Supreme Court granted *certiorari* in *Garrett. Wasser v. New York State Office of Voc. & Educ. Servs. for Indivs. with Disabilities,* No. 01–CV–6788, 2003 WL 22284576, at *10 (E.D.N .Y. Sept. 30, 2003).

19  In any event, I am recommending dismissal of plaintiff's first cause of action. *See* pp. 15–18, *ante.*

---

**End of Document**                                                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.



**MINA POURZANDVAKIL, Plaintiff, -against- HUBERT HUMPHRY, JUDISICIAL SYSTEAM OF THE STATE OF MINNESOTA AND OLMESTED COUNTY COURT SYSTEAM, AND STATE OF MINNESOTA, SAINT PETER STATE HOSPITAL, DOCTOR GAMMEL STEPHELTON, ET EL ERICKSON, NORTH WEST BANK AND TRUST, OLMESTED COUNTY SOCIAL SERVICE, J.C. PENNY INSURNCE, METMORE FINICIAL, TRAVELER INSURNCE, COMECIAL UNION INSURNCE, HIRMAN INSURNCE, AMRICAN STATE INSURNCE, FARMERS INSURNCE, C. O BROWN INSURNCE, MSI INSURNCE, STEVEN YOUNGQUIST, KENT CHIRSTAIN, MICHEAL BENSON, UNITED AIRLINE, KOWATE AIRLINE, FORDMOTOR CRIDITE, FIRST BANK ROCHESTER, GEORGE RESTWICH, BRITISH AIRWAYS, WESTERN UNION, PRUDENIAL INSURNCE, T.C.F. BANK, JUDGE SANDY KIETH, JUDGE NIERGARI, OLMESTEAD COUNTY JUDGERING, JUDGE MORES, JUDGE JACOBSON, JUDGE CHALLIEN, JUDGE COLLIN, JUDGE THOMASE, JUDGE BUTTLER, JUDGE MORKE, JUDGE MOWEER, SERA CLAYTON, SUSAN MUDHAUL, RAY SCHMITE, Defendants.** [1]

1 Names in the caption are spelled to reflect plaintiffs complaint.

**Civil Action No. 94-CV-1594**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK**

*1995 U.S. Dist. LEXIS 7136*

**May 22, 1995, Decided**
**May 23, 1995, FILED**

## CASE SUMMARY:

**PROCEDURAL POSTURE:** Plaintiff filed a complaint accusing defendants with kidnapping plaintiff and her daughter, torturing plaintiff in the Mayo Clinic, and causing plaintiff and her daughter to suffer physically, financially, and emotionally. Certain defendants sought vacation of the defaults entered against them without proper service, some sought dismissal of the complaint, and some sought both vacation of the defaults and dismissal.

**OVERVIEW:** Plaintiff served defendants by certified mail. The court determined that such service was not authorized under federal law or under either New York or Minnesota law. Additionally, plaintiff's extraterritorial service of process was not effective under *Fed. R. Civ. P. 4(k)*. Defendants were not subject to federal interpleader jurisdiction, and they were not joined pursuant to *Fed. R. Civ. P. 14* or *Fed. R. Civ. P. 19*. No federal long-arm statute was argued as a basis for jurisdiction, and the alleged harm did not stem from acts in New York for jurisdiction under *N.Y. C.P.L.R. § 302(a)*. The complaint showed no basis for subject matter jurisdiction against defendants that were insurance companies with no apparent relationship to claims of rape, torture, harassment, and kidnapping, and the court found that no basis for supplemental jurisdiction under *28 U.S.C.S. § 1367(a)* existed. Venue was clearly improper under *28 U.S.C.S. § 1391(b)* because no defendant resided in the district and none of the conduct complained of occurred there. Plaintiff's claims of civil rights violations were insufficient because her complaint was a litany of general conclusions, not specific allegations of fact.

**OUTCOME:** The court vacated all defaults. The court dismissed plaintiff's complaint against all moving and non-moving defendants. The dismissal of the complaint against certain defendants premised on the court's lack of power either over the person of the defendant or the subject matter of the controversy was without prejudice, but dismissals against the remaining defendants were with prejudice. Requests for sanctions and attorney's fees were denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Residential Service*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Agents*
*Governments > Federal Government > Employees & Officials*
[HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2)*. Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed. R. Civ. P. 4(e)(1)*.

*Business & Corporate Law > Agency Relationships > Agents Distinguished > General Overview*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Corporations*
[HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1), 4(e)(1)*.

*Civil Procedure > Pleading & Practice > Service of Process > Methods > General Overview*
[HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *N.Y. C.P.L.R. §§ 308, 311* (Supp. 1995); *N.Y. Bus. Corp. Law § 306* (Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995).

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview*
*Governments > Local Governments > Claims By & Against*
[HN4] Service on states, municipal corporations, or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2)*. Minnesota law does not authorize service on a governmental entity by certified mail. Minn. R. 4.03(d), (e) (1995).

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Parties > Interpleaders > General Overview*
[HN5] A plaintiff's extraterritorial service of process in New York can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York state; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Fed. R. Civ. P. 14* or *Fed. R. Civ. P. 19* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. R. Civ. P. 4(k)*.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
[HN6] *N.Y. C.P.L.R. § 302(a)* provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state such as transacting any business in the state and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General*

*Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Pendent Claims*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
[HN7] *28 U.S.C.S. § 1367(a)* requires a relationship between the state and federal claims for pendent jurisdiction so that they form part of the same case or controversy.

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN8] See *28 U.S.C.S. § 1391(a)*.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN9] See *28 U.S.C.S. § 1391(1)*.

*Civil Procedure > Venue > Federal Venue Transfers > Improper Venue Transfers*
*Civil Procedure > Venue > Individual Defendants*
*Civil Procedure > Venue > Multiparty Litigation*
[HN10] Where venue is laid in the wrong district, the court shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought. *28 U.S.C.S. § 1406(a)*.

*Civil Procedure > Venue > Motions to Transfer > General Overview*
*Civil Procedure > Judicial Officers > Judges > Discretion*
*Governments > Legislation > Statutes of Limitations > General Overview*
[HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is to eliminate impediments to the timely disposition of cases and controversies on their merits.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss*
[HN12] Where a court has already dismissed against the moving parties on jurisdictional grounds, it has no power to address a *Fed. R. Civ. P. 12(b)(6)* issue.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*

*Civil Rights Law > General Overview*
[HN13] Complaints that rely on civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights instead of a litany of general conclusions that shock but have no meaning.

*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN14] A pro se plaintiff's complaint must be construed liberally and should be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN15] Even pro se complaints must show some minimum level of factual support for their claims.

*Civil Procedure > Parties > Self-Representation > General Overview*
*Civil Procedure > Counsel > Appointments*
*Civil Rights Law > Prisoner Rights > Prison Litigation Reform Act > Claim Dismissals*
[HN16] The United States Supreme Court explicitly has acknowledged a district court's power under *28 U.S.C.S. § 1915(d)* to dismiss as frivolous a complaint that lacks an arguable basis either in law or in fact. The Supreme Court has explicitly declined to rule, however, on whether a district court has the authority to dismiss sua sponte frivolous complaints filed by non-indigent plaintiffs. The law in the district of New York is that a district court may sua sponte dismiss a frivolous complaint even if the plaintiff has paid the filing fee.

**COUNSEL:** [*1] HUBERT H. HUMPHREY, III, Attorney General of the State of Minnesota, Attorney for Hubert H. Humphry, III, Judicial System of the State of Minnesota, St. Peter Regional Treatment Center, Gerald Gammell, MD, William Erickson, MD, Thomas Stapleton, MD, the Honorable James L. Mork, Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen, and Judge Lawrence Collins, St. Paul, MN, OF COUNSEL: JEROME L. GETZ, Assistant Attorney General.

CONDON & FORSYTH, P.C., Attorneys for British Airways, P.L.C. and Kuwait Airways Corp., New York, NY, OF COUNSEL: STEPHEN J. FEARON, ESQ., MICHAEL J. HOLLAND, ESQ.

DUNLAP & SEEGER, P.C., Attorneys for Olmsted County, Raymond Schmitz, Susan Mundahl, Norwest Bank Minnesota, N.A. (the Northwest Bank & Trust), C.O. Brown Agency, Inc., Rochester, MN, OF COUNSEL: GREGORY J. GRIFFITHS, ESQ.

ARTHUR, CHAPMAN, McDONOUGH, KETTERING & SMETAK, P.A., Attorneys for J.C. Penney Insurance Co. and Metropolitan Insurance Co., Minneapolis, MN, OF COUNSEL: EUGENE C. SHERMOEN, JR., ESQ.

SHAPIRO & KREISMAN, Attorneys for Metmor Financial, Inc., Rochester, NY, OF COUNSEL: JOHN A. DiCARO, ESQ.

COSTELLO, COONEY & FEARON, Attorneys [*2] for Travelers Insurance Companies; Hirman Insurance; Commercial Union Insurance Companies, Syracuse, NY, OF COUNSEL: PAUL G. FERRARA, ESQ., ROBERT J. SMITH, ESQ.

SMITH, SOVIK, KENDRICK & SUGNET, P.C., Attorneys for American States Insurance Co. and Prudential Insurance Co., Syracuse, NY, OF COUNSEL: THOMAS N. KAUFMANN, ESQ.

STEVEN C. YOUNGQUIST, ESQ., Pro Se, Rochester, MN.

THOMAS J. MARONEY, United States Attorney, Attorney for Michael Benson, Postmaster, Northern District of New York, Syracuse, NY, OF COUNSEL: WILLIAM F. LARKIN, Assistant United States Attorney.

GEORGE F. RESTOVICH & ASSOCIATES, Attorneys for George F. Restovich, Esq., Rochester, MN, OF COUNSEL: GEORGE F. RESTOVICH, ESQ.

CONBOY, McKAY, BACHMAN & KENDALL, L.L.P., Attorneys for Western Union, Watertown, NY, OF COUNSEL: GEORGE K. MYRUS, ESQ.

RICHARD MAKI, Pro Se, Rochester, MN.

**JUDGES:** ROSEMARY S. POOLER, UNITED STATES DISTRICT JUDGE

**OPINION BY:** ROSEMARY S. POOLER

**OPINION**

***MEMORANDUM-DECISION AND ORDER***

**INTRODUCTION**

In the four and one-half months since she filed this action, plaintiff Mina Pourzandvakil has filed three amended complaints and ten motions. She also has sought and received [*3] entry of default against ten defendants, none of whom she properly served. She twice has sought and been denied temporary restraining orders. She has included in her action defendants with no apparent connection to this forum, that were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of defendants have filed a total of twelve motions, some seeking vacation of the defaults entered against them, some seeking dismissal and others seeking both. We grant defendants' motions insofar as they seek vacation of the clerk's entries of default and dismissal of the complaint. We vacate *sua sponte* the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

**BACKGROUND**

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. [*4] Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also [*5] adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint

on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*) [2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, [*6] it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March [*7] 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper [3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

> 2    Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved

for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

> 3    Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

[*8]    The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or *Rule 12 of the Federal Rules of Civil Procedure*. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to *Fed. R. Civ. P. 12(b)* or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson [*9] and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to

Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. [*10] Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

> 4   The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against nonmoving defendants for failure to state a claim on which relief can be granted.

> 5   The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

[*11] Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

## ANALYSIS

### The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. [HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2).* Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed.* [*12] *R. Civ. P.*

*4(e)(1).* [HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1)* and *4(e)(1).* [HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See N.Y. Civ. Prac. L. & R. §§ 308, 311* (McKinney Supp. 1995); *N.Y. Bus. Corp. Law § 306* (McKinney Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995). Finally, [HN4] service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2).* Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. [*13] R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

## II. The Jurisdictional Arguments

In addition to raising various [*14] other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

### A. Personal Jurisdiction

Maki, the state defendants, Olmsted County,

Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Younquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. [HN5] Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant [*15] is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Rule 14* or *Rule 19 of the Federal Rules of Civil Procedure* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. Civ. P. 4(k)*. Defendants are not subject to federal interpleader jurisdiction and they were not joined pursuant to *Rule 14* or *Rule 19*. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to *Rule 4(k). See N.Y. Civ. Prac. L. & R. § 302* (McKinney Supp. 1995). [HN6] This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain [*16] minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id. § 302(a)*. The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of *Section 302(a)*. Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

### B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by *Fed. R. Civ. P. 8(a)(1)*. Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff [*17] was a party. *District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983)*. These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. *28 U.S.C. § 1332*. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's [*18] address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under *28 U.S.C. § 1367(a). Section 1367(a)* [HN7] requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

> 6    We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. *28 U.S.C. § 1332(a)*. However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id. § 1332(a)(2)*. Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of *28 U.S.C. §*

*1603*. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See 28 U.S.C. § 1330*. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under *Section 1332*. Cf. *Hiram Walker & Sons, Inc. v. Kirk Line, 877 F.2d 1508, 1511-1512 (11th Cir. 1989), cert. denied, 131 L. Ed. 2d 219, 115 S. Ct. 1362 (1995)* (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under *28 U.S.C. § 1332*.

[*19] We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

## C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. [*20] The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

[HN8] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

*28 U.S.C. § 1391(a)*. Section 1391(b) provides that federal question actions, except as otherwise provided by law, may be brought only in

[HN9] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

[*21] *Id. § 1391(b)*. The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. [HN10] Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id. § 1406(a)*. Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. [HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993)* (holding that it was an improper exercise of discretion to dismiss rather than transfer [*22] when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United

States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

### III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).* [7] [HN12] We already [*23] have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the *Rule 12(b)(6)* issue only on ASI's motion. *See Bell v. Hood, 327 U.S. 678, 682-83, 90 L. Ed. 939, 66 S. Ct. 773 (1946)* (subject matter jurisdiction); *Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963)* (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

> 7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other [*24] defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. [HN13] Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation [*25]

of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).* [HN14] A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)* (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr, 810 F.2d at 363.*

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not [*26] pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] *Civ. No. 94-C944 (D.D.C. 1994), Pourzandvakil v. Doty (E.D.N.Y. 1993), Pourzandvakil v. Price, Civ. No. 7 (D.Minn. 1993).* Where the results are known to us these actions resulted in dismissals for failure to state a claim upon which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to [*27] amend her pleading and plaintiff still was not able to offer specifics. [9] [HN15] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White, 886 F.2d 721, 724 (4th Cir. 1989)).* We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).*

> 8    Former Supreme Court Justice Harry A. Blackmun.
> 9    We note also that plaintiff has not requested leave to amend in this action.

We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under *28 U.S.C. § 1915(d)*, holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. [*28] [HN16] The Supreme Court explicitly has acknowledged a district court's power under *Section 1915(d)* to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams, 490 U.S. 319, 325, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989).* The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id. at 329 n.8.* The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter, 151 F.R.D. 537, 540 (S.D.N.Y. 1993), aff'd 41 F.3d 1500 (2d Cir. 1994); cf. Pillay v. I.N.S., 45 F.3d 14, 17 (2d Cir. 1995) (per curiam)* (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts [*29] and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler, 151 F.R.D. at 540.*

## IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture, 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991).* Moreover, her litigiousness has not yet reached the point at which courts in this circuit have justified injunctive relief. *See id. at 694* (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants [*30] on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id. at 695.*

## CONCLUSION

All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry, 799 F.2d 183, 188-9 (5th Cir. 1986)* (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co., 377 F.2d 194, 199 n.3 (2d Cir. 1967)* (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 875 (3d Cir.) cert. denied, 322 U.S. 740, 88 L. Ed. 1573, 64 S. Ct. 1057 (1944)* (dismissal for lack of personal jurisdiction is not [*31] a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

DATE: May 22, 1995

Syracuse, New York

ROSEMARY S. POOLER

UNITED STATES DISTRICT JUDGE