IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JAMES MAXWELL,

                            Plaintiff,              Civil Action No.
                                                 9:16-CV-0275 (LEK/DEP)

      v.

MR. MILLER, *et al.*,

                            Defendants.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

JAMES MAXWELL, *Pro Se*
0080005
St. Lawrence Psychiatric Center
1 Chimney Point Drive
Ogdensburg, NY 13669

FOR DEFENDANTS:

BARBARA D. UNDERWOOD          NICOLE E. HAIMSON, ESQ.
Acting New York State Attorney General    Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

*Pro se* plaintiff James Maxwell, a civilly committed resident confined in the St. Lawrence Psychiatric Center ("SLPC"), has brought this civil rights action pursuant to 42 U.S.C. § 1983. Although plaintiff's complaint asserted other causes of action, what remains pending before the court involves allegations of excessive force and failure to protect him from harm, in violation of his Fourteenth Amendment rights.

Currently pending before the court is a motion brought by the defendants seeking the entry of summary judgment dismissing plaintiff's remaining causes of action. For the reasons set forth below, I recommend that defendants' motion be granted.

## I.   BACKGROUND[1]

Plaintiff is a sex offender involuntarily civilly confined in the SLPC, located in Ogdensburg, New York, and operated by the New York State Office of Mental Health ("OMH"), pursuant to New York Mental Hygiene Law Article 10. *See generally* Dkt. No. 1; Dkt. No. 30-5 at 23, 72. Plaintiff alleges that, on an unspecified date, he asked to have a wound dressing changed after his shower, but that defendants Dusty Miller and/or Ivor

---

[1]   In light of the procedural posture of this case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in the non-movant's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

Reynolds, two nurses employed at the facility, refused his request and, instead, assaulted him. Dkt. No. 1 at 2, 4; Dkt. No. 30-5 at 94-102. Although the complaint alleges that defendant Chief Nurse Snyder was present for the attack but did nothing to protect plaintiff from harm, Dkt. No. 1 at 2, at his deposition, plaintiff testified that defendant Snyder was in her office during the assault and that he named her as a defendant only so that she could serve as a witness on his behalf. Dkt. No. 30-5 at 102, 104, 124, 137.

II.   PROCEDURAL HISTORY

Plaintiff commenced this action with the filing of a complaint on or about March 9, 2016. Dkt. No. 1. Plaintiff shortly thereafter filed a motion to proceed *in forma pauperis* ("IFP"), Dkt. No. 3, which was granted in a decision and order issued by Senior District Judge Lawrence E. Kahn on April 21, 2016. Dkt. No. 6. Pursuant to 28 U.S.C. §§ 1915(e), 1915A, Judge Kahn also conducted a *sua sponte* review of the substance of plaintiff's complaint and directed that the complaint be served on, and summonses be issued to, defendants Miller, Reynolds, and Snyder. *Id.*

In lieu of an answer, defendants responded to plaintiff's complaint by filing a motion seeking its dismissal for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of

3

Civil Procedure. Dkt. Nos. 14, 19, 20. Following plaintiff's failure to

respond to defendants' motion within the allotted time, I issued a report on

November 17, 2016, recommending that plaintiff's medical indifference

and verbal harassment claims be dismissed, but that his excessive force

and failure to intervene claims survive defendants' motion. Dkt. No. 23.

Judge Kahn adopted that report on December 29, 2016, Dkt. No. 24.

Following the completion of discovery, defendants filed the pending

motion for summary judgment pursuant to Rule 56 of the Federal Rules of

Civil Procedure on October 10, 2017. Dkt. No. 30. Once again, plaintiff has

failed to respond to defendants' motion, which is now ripe for

determination and has been referred to me for the issuance of a report

and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Plaintiff's Failure to Oppose Defendants' Motion

Before turning to the merits of defendants' motion, a threshold issue

to be addressed is the legal significance of plaintiff's failure to oppose

defendants' motion, and specifically whether that failure should be

construed as a consent to the dismissal of his complaint.

Pursuant to Local Rule 7.1(b)(3), by failing to oppose defendants'

4

motion, plaintiff has effectively consented to the granting of the relief

sought. That rule provides as follows:

> Where a properly filed motion is unopposed and the
> Court determines that the moving party has met its
> burden to demonstrate entitlement to the relief
> requested therein, the non-moving party's failure to
> file or serve any papers as this Rule requires shall
> be deemed as consent to the granting or denial of
> the motion, as the case may be, unless good cause
> is shown.

N.D.N.Y. L.R. 7.1(b)(3); *see also Jackson v. Fed. Express*, 766 F.3d 189,

194 (2d Cir. 2014) (holding that the district courts may enter summary

judgment in favor of the moving party where the non-moving party fails to

respond in opposition, but not without first "ensur[ing] that each statement

of material fact is support by record evidence sufficient to satisfy the

movant's burden of production" and "determin[ing] whether the legal theory

of the motion is sound").

In this case, plaintiff has not responded to defendants' motion. The

motion was properly filed by defendants Reynolds, Miller, and Snyder, and

defendants, through their motion, have met their burden of demonstrating

entitlement to the relief requested. With respect to the question of whether

defendants have met their burden, I note that the "burden of persuasion is

lightened such that, in order to succeed, his motion need only be 'facially

meritorious.'" *See Rodriguez v. Goord*, No. 04-CV-0358, 2007 WL

4246443, at *1 (N.D.N.Y. Nov. 27, 2007) (Scullin, J., *adopting report and recommendation by* Lowe, M.J.) (finding that determination of whether a movant has satisfied its burden to demonstrate entitlement to a dismissal under Local Rule 7.1(b)(3) "is a more limited endeavor than a review of a contested motion to dismiss" (citing cases)).[2]

Because defendants have accurately cited both proper legal authority and evidence in the record supporting the grounds on which their motion is based, and plaintiff has failed to respond in opposition to the motion, I find that defendants' motion is facially meritorious. *Jackson*, 766 F.3d at 194. Accordingly, I recommend that the court grant defendants' motion on this basis.

It should also be noted that there are additional consequences flowing from plaintiff's failure to file an opposition to defendants' Local Rule 7.1(a)(3) Statement of Material Facts. Local Rule 7.1 provides, in relevant part, that "[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." N.D.N.Y. L.R. 7.1(a)(3) (emphasis in original). Courts in this district have routinely enforced this rule in cases where a

---

[2]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

non-movant has failed to properly respond. *See*, *e.g.*, *Elgamil v. Syracuse Univ.*, No. 99-CV-0611, 2000 WL 1264122, at *1 (N.D.N.Y. Aug. 22, 2010) (McCurn, J.) (listing cases). Undeniably, *pro se* litigants are entitled to some measure of forbearance when defending against summary judgment motions. *Jemzura v. Public Serv. Comm'n*, 961 F. Supp. 406, 415 (N.D.N.Y.1997) (McAvoy, J.). The deference owed to *pro se* litigants, however, does not extend to relieving them of the ramifications associated with the failure to comply with the court's local rules. *Robinson v. Delgado*, No. 96-CV-0169, 1998 WL 278264, at *2 (N.D.N.Y. May 22, 1998) (Pooler, J., *adopting report and recommendation by* Hurd, M.J.). Stated differently, "a pro se litigant is not relieved of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Latouche v. Tompkins*, No. 09-CV-0308, 2011 WL 1103045, at *1 (N.D.N.Y. Mar. 23, 2011) (Mordue, J.).

Defendants' motion was accompanied by a statement of undisputed material facts, as required by Local Rule 7.1(a)(3). In light of plaintiff's failure to oppose the instant motion, that statement stands uncontested. Because plaintiff was warned of the consequences of failing to properly respond to defendants' Local Rule 7.1(a)(3) Statement, Dkt. No. 31 at 2, but has nonetheless failed to do so, I recommend that the court deem the

facts contained in that statement as having been admitted to the extent that they are supported by accurate record citations.[3]  *See, e.g., Latouche*, 2011 WL 1103045, at \*1; *see also Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

  B.  Legal Standard Governing Motions for Summary Judgment

  Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

  A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be

---

[3]    As to any facts not contained in defendants' Local Rule 7.1(a)(3) Statement, in light of the procedural posture of this case, the court is "required to resolve all ambiguities and draw all permissible factual inferences" in favor of plaintiff. *Terry*, 336 F.3d at 137.

decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex,* 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan,* 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson*, 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

C.    Plaintiff's Fourteenth Amendment Claims Asserted Against
      Defendants Reynolds and Miller

1.    Defendant Reynolds

Defendants argue that the court should grant their motion for summary judgment dismissing the excessive force claim as it pertains to defendant Reynolds because plaintiff testified during his deposition that only defendant Miller used force against him, and that defendant Reynolds was not present during the alleged assault. Dkt. No. 30-2 at 6.

At his deposition, plaintiff testified that, on the morning of the alleged assault, defendant Reynolds "went off [ward fifty-two]," the ward in which plaintiff was housed at the time, and "went back to ward fifty-one." Dkt. No. 30-5 at 97. Indeed, during the course of his deposition, plaintiff testified on several occasions that defendant Reynolds was on ward fifty-one during the use-of-force incident between plaintiff and defendant Miller. *Id.* at 98, 102, 103-04. According to plaintiff, after defendant Reynolds left ward fifty-two, defendant Miller began threatening plaintiff with physical harm and immediately thereafter the altercation between plaintiff and defendant Miller ensued. *Id.* at 98. When asked by defendants' counsel at the deposition why he named Reynolds as a defendant in this action, plaintiff responded that he did so because defendant Reynolds does "[w]hatever Mr. Dusty Miller tells [him] to do," *id.* at 129, and then agreed that his real

10

claim against defendant Reynolds is the alleged denial of medical care.[4] *Id.* at 128-31.

In *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460 (S.D.N.Y. 1998), then-District Judge Sotomayor granted the defendants' motion for summary judgment in a section 1983 action involving an excessive force claim, where there was no record evidence corroborating the allegations in plaintiff's complaint and where the plaintiff's deposition testimony was inconsistent with and contradictory to the allegations set forth in his complaint. *Aziz Zarif Shabazz*, 994 F. Supp. at 468-71. Those same circumstances are present in this action. Here, plaintiff's complaint alleges that defendant Reynolds participated in the assault on plaintiff but, as was previously discussed, in his deposition he testified that defendant Reynolds was on an entirely separate ward at the time of the incident.[5] There is nothing in the record to support plaintiff's original contention that defendant Reynolds participated in, or was present at, the alleged assault. Even drawing all inferences in plaintiff's favor, no reasonable juror "would undertake the suspension of disbelief necessary to give credit to the

---

[4] Plaintiff's medical indifference claim was dismissed by the court on December 29, 2016, Dkt. No. 24, and therefore will not be discussed in this report.

[5] That testimony is consistent with paragraph thirty-three of defendants' Local Rule 7.1(a)(3) Statement, which plaintiff is deemed to have admitted. Dkt. No. 30-1 at 4.

allegations made in the complaint." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 555 (2d Cir. 2005) (internal quotation marks and alteration omitted). Accordingly, I recommend defendants' motion for summary judgment be granted as it relates to the excessive force claim against defendant Reynolds.

### 2.    Defendant Miller

#### a.    Lack of Particularity

In their motion, defendants argue that plaintiff's excessive force claim asserted against defendant Miller is subject to dismissal because plaintiff "has failed to identify the date on which he was allegedly assaulted by defendant Miller, thereby prejudicing defendant Miller." Dkt. No. 30-2 at 6. Defendants support this assertion by citing various cases from courts within the Second Circuit that have dismissed claims "where the plaintiff failed to specify the date of a defendant's alleged misconduct." *Id.* at 7. Those cases, however, are distinguishable from this action because they involved complaints and records that were insufficient not only because pertinent dates were omitted and/or absent from the record, but also because other material facts were found to be missing from the complaint or record evidence. *See, e.g. Trowell v. Upstate Corr. Facility*, No. 16-CV-0639, 2016 WL 7156559, at *5, (N.D.N.Y. Dec. 7, 2016) (D'Agostino, J.)

(denying the plaintiff's request for leave to file a supplemental complaint concerning an Eighth Amendment medical indifference claim because "the complaint does not contain any facts related to who plaintiff complained to, the substance of his complaints, or the response, if any, to his complaints"); *Shahzad v. Cnty. of Nassau*, No. 13-CV-2268, 2016 U.S. Dist. LEXIS 46135, at *56 (E.D.N.Y. Mar. 31, 2016) (noting the possibility, but not deciding, that the plaintiff's complaint failed to state a claim where it "fail[ed] to identify the date, time, and place of the various incidents"); *Davidson v. Talbot*, No. 01-CV-0473, 2005 WL 928620, at *12-13 (N.D.N.Y. Mar. 31, 2005) (Treece, M.J.) (recommending dismissal of the plaintiff's supervisory liability claims on summary judgment because "[the plaintiff] does not allege the dates he allegedly contacted [the defendants] nor does he provide any copies of any correspondence he sent to these [d]efendants. Nor, for that matter, has [the plaintiff] alleged with sufficient particularity the dates on which he was denied any medical care"); *Kee v. Hasty*, No. 01-CV-2123, 2004 WL 807071, at *29 (S.D.N.Y. Apr. 14, 2004) (denying the plaintiff's request for leave to add new defendants because the purported asserted cause of action was not legally cognizable but nonetheless proceeded to analyze the allegations in the complaint and concluded that they "fail[ed] to specify the dates on which [the plaintiff]

13

was denied proper treatment, the nature of his needs on those dates, and the nature of the treatment that was purportedly denied").[6] Unlike those cases cited by defendants, in this case, plaintiff alleges with specificity the basis of his excessive force claim against defendant Miller, including the verbal exchange that occurred between the two before the physical altercation took place, who was present at the time, and the type of force used by defendant Miller against plaintiff. Dkt. No. 1 at 2; Dkt. No. 30-5 at 94-99.

I am not persuaded by defendants' contention that the lack of a specified date concerning the use-of-force incident inhibits their ability to adequately defend the action. Dkt. No. 30-2 at 6. Plaintiff stated in his deposition that the incident occurred sometime in early March 2016, before the commencement of this action on March 9, 2016, which leaves a relatively small timeframe to consider. Dkt. No. 30-5 at 41-42. Moreover, the allegations by plaintiff concerning his claim against defendant Miller

---

[6]      Defendants also cite to *Watson v. Grady*, No. 09-CV-3055, 2010 U.S. Dist. LEXIS 103473, at *12 (S.D.N.Y. Sept. 30, 2012), for the proposition that the court in that case, in granting the defendants' summary judgment in their favor, "not[ed] that the plaintiffs [sic] allegations were insufficient, where he failed to specify any dates regarding the alleged misconduct." Dkt. No. 30-2 at 8. *Watson*, however, involved a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, rather than a motion for summary judgment under Rule 56. *Watson*, 2010 U.S. Dist. LEXIS 103473, at *2. In addition, the pinpoint citation provided by defendants appears to be an error. For these reasons, I have not considered whether *Watson* supports defendants' arguments.

are remarkably similar to those facts provided in defendant Miller's declaration, submitted in connection with the pending motion. Dkt. No. 30-6. In particular, defendant Miller recalls that on March 2, 2016, after plaintiff's shower, while attempting to change plaintiff's wound dressing, a verbal confrontation ensued between the two, which led to a "code orange" being called. *Id.* at 1-3. Accordingly, I find that plaintiff's inability to identify the specific date on which the incident occurred has not prejudiced defendants' ability to adequately defend this action. *Cf. Ayers v. Selsky*, 467 F. App'x. 45, 47 (2d Cir. 2012) (finding that an incorrect date listed on a misbehavior report was harmless because the inmate's written submissions demonstrated no actual confusion concerning the incident in question).

b.   Merits

Although courts in this circuit have previously analyzed a civil detainee's excessive force cause of action under the same standard as that applicable to convicted prisoners, *see, e.g., Groves v. Davis,* No. 09-CV-1317, 2012 WL 651919, at *4 (N.D.N.Y. Feb. 28, 2012) (Suddaby, J.), the Supreme Court issued a decision in 2015, concluding that a pretrial detainee's excessive force claim, arising under the due process clause of the Fourteenth Amendment, is not subject to the same standard as that

applied to convicted prisoners' excessive force claims arising under the Eighth Amendment. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015) (distinguishing between excessive force claims brought under the Eighth and Fourteenth Amendments by finding that "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically'"). Instead, the Court held that "a pretrial detainee must show only that the force . . . used against [the plaintiff] was objectively unreasonable." *Kingsley*, 135 S. Ct. at 2473. Because it is well settled that a civil detainee's constitutional conditions-of-confinement claims arise under the Fourteenth Amendment due process clause, *Youngberg*, 457 U.S. at 315-16, and because the rationale by the Supreme Court in *Kingsley* seems equally applicable to civil detainees, I find that the legal standard articulated in *Kingsley* applies in this action to plaintiff's excessive force claim.

    In determining whether the use of force applied to a civil detainee is "excessive" for purposes of a Fourteenth Amendment due process claim, a court must apply "an objective standard only, . . . instead of a subjective standard that takes into account a defendant's state of mind[.]" *Kingsley*, 135 S. Ct. at 2472-73. Stated differently, a plaintiff "must show only that the force purposely or knowingly used against him was objectively

unreasonable." *Id.* at 2473. This question "turns on the facts and

circumstances of each particular case" and must be considered from the

perspective of a reasonable officer at the scene. *Id.* Courts must also take

into consideration the need for order and security at a facility or institution

and defer to the policies in place intended to maintain order and discipline.

*Id.*

In *Kingsley*, the Supreme Court explained that the following non-

exhaustive factors are relevant to the question of whether a defendant

applied force reasonably:

> [T]he relationship between the need for the use of
> force and the amount of force used; the extent of
> the plaintiff's injury; any effort made by the officer to
> temper or to limit the amount of force; the severity of
> the security problem at issue; the threat reasonably
> perceived by the officer; and whether the plaintiff
> was actively resisting.

*Kingsley*, 135 S. Ct. at 2473.

In this case, during his deposition plaintiff testified as follows

concerning his injuries:

> Q:    [D]id [defendant Miller] hurt you when he put
>        his hands on you? . . .
>
> A:    Well, yeah . . . . Yeah, he did . . . . I feel [his]
>        nails and I feel [him] tightening them on – on
>        my skin . . . .
>
> Q:    Okay. So, when Mr. Miller – when you say he

– when he grabbed you, he – he like pinched the skin on your chest, is that right?

A:    Yeah . . . .

Q:    How much did that hurt?

A:    One hundred percent . . . .

Q:    Did you have any bruising on your chest, or anything like that afterwards?

A:    A little – a little scratch from . . . a little mark from his nails and whatnot and that's about it . . . .

Q:    When you had a scratch on your chest, how big was the scratch?

A:    It was long enough. It was like. . . five inches, but I could – it was deep into my flesh, so --.

Q:    You had one – or one on each side, or just one scratch?

A:    One on both sides.

Q:    Okay. So, two scratches?

A:    Yeah.

Q:    Any bleeding?

A:    Little bit, but it wasn't – it wasn't deep blood.

Q:    How much were you bleeding?

A:    I had to shower. I was constantly bleeding. I had to shower. I had to put alcohol on my – on my skin to stop the blood . . . .

> Q:    [W]hen did the scratches go away? How long
>        did they stay for?
>
> A:    A few weeks . . . .
>
> Q:    What about your ankles. . . you had this
>        chronic leg pain and also your ulcers. Did
>        [defendant Miller] do anything with those? Did
>        he make any of those worse, when he
>        grabbed you on your pajamas?
>
> A:    Well, he didn't kick me, so no.

Dkt. No. 30-5 at 107-11. Other than plaintiff's deposition testimony, which is by no means a model of clarity, the record before this court is devoid of any objective medical evidence supporting plaintiff's allegations concerning any injury sustained as a result of the incident. Defendants contend, and plaintiff does not dispute, that plaintiff's clinical records do not reflect any injuries sustained as a result of a use-of-force incident involving plaintiff between March 1, 2016 and March 9, 2016. Dkt. No. 30-2 at 6. Drawing all inferences in plaintiff's favor, the record in this case demonstrates that, at most, plaintiff suffered from two flesh-deep scratches when defendant Miller grabbed plaintiff's shirt. Such injuries, on their own, are *de minimis* and weigh in favor of finding defendant Miller's use of force objectively reasonable.

The reasonableness of the force in a Fourteenth Amendment substantive due process claim is also informed by considering whether the

19

plaintiff was actively resisting. *Kingsley*, 135 S. Ct. at 2473. In this case, by plaintiff's own admission, he was a threat throughout the conflict between him and defendant Miller. Specifically, plaintiff testified at his deposition that, when the verbal confrontation began, he approached defendant Miller and said, "[T]here's nobody here besides me and you, man. You know, Vicki Snyder's not and your friend Ivon Reynolds isn't here. So, what's up man? What's good?" Dkt. No. 30-5 at 98. Plaintiff then went to his room to put on his sneakers and his "knockout" gloves, which he uses whenever he "go[es] against an employee and they put their hands on [him.]" *Id.* Plaintiff then testified that, after defendant Miller "put his hands on [plaintiff] first" by grabbing his pajama shirt, plaintiff "made [his] move and [he] pushed [defendant Miller] against the corner of the . . . door." *Id.* at 99. Plaintiff further stated that he "pushed [defendant Miller] into the door, grabbed him by his leg" and had defendant Miller "against [the] wall, he wasn't going nowhere, period, besides that floor." *Id.*

Even assuming defendant Miller initiated the physical contact, as plaintiff alleges, doing so in the manner described by plaintiff – that is, by grabbing plaintiff's shirt – in light of plaintiff's verbal threats and threat of harm reasonably perceived by plaintiff's retrieval of his fighting gloves, defendant Miller's actions were objectively reasonable.

20

In sum, given plaintiff's deposition testimony concerning the use-of-force incident, no reasonable factfinder would conclude that defendant Miller was objectively unreasonable in his use of force against plaintiff. For that reason, I recommend that defendant's motion for summary judgment as it relates to defendant Miller's excessive force claim be granted.

D.    Plaintiff's Failure to Intervene Claim Asserted Against Defendant Snyder

In light of the Supreme Court's finding that involuntarily committed individuals enjoy a Fourteenth Amendment due process right to safe conditions of confinement, *Youngberg*, 457 U.S. at 316, civil detainees, like plaintiff here, may bring a failure to intervene claim against individuals employed by the facility responsible for their safety, who, like corrections officers in the prison setting, fail to intervene and protect them from harm. To prevail on such a claim the plaintiff must prove that the defendant actually knew of and disregarded an excessive risk of harm to his health and safety. *Hayes v. N.Y. City Dep't of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996).

Based on my recommendation that defendants' motion for summary judgment be granted with respect to plaintiff's excessive force claims asserted against defendants Reynolds and Miller, it follows that the claim against defendant Snyder for failure to intervene is moot. *See Holland v.*

21

*City of N.Y.*, 197 F. Supp. 3d 529, 549 (S.D.N.Y. 2016) (discussing that, if an officer's conduct does not violate a constitutional right, the analysis ends, because failure to intervene claims are contingent upon the underlying claims) (citing *Feinberg v. City of N.Y.*, No. 99-CV-12127, 2004 WL 1824373, at *4 (S.D.N.Y. Aug. 13, 2004)); *see also Usavage v. Port Auth. of N.Y. & N.J.*, 932 F. Supp. 2d 575, 599 (S.D.N.Y. 2003). Plaintiff's failure to intervene claim asserted against defendant Snyder should be dismissed on the merits, as well, based upon plaintiff's testimony at his deposition that defendant Snyder was in her office during the use-of-force incident, Dkt. No. 30-5 at 124, and, in any event, he never intended to sue defendant Snyder and listed her as a defendant in his complaint only because he hoped that she would serve as a witness on his behalf. *Id.* at 136-37. Accordingly, I recommend that defendants' motion for summary judgment as it relates to defendant Snyder's failure to intervene claim be granted.

IV.    SUMMARY AND RECOMMENDATION

Based upon the record now before the court, I find that plaintiff's excessive force claims asserted against defendants Reynolds and Miller cannot survive defendants' pending motion for several reasons. In particular, there is no record evidence upon which a reasonable factfinder

could conclude that defendant Reynolds used any force against plaintiff or was present during the alleged assault. Moreover,   the record contains no evidence that defendant Miller used force in an unreasonable manner given plaintiff's verbal and physical threats. Finally, because plaintiff testified at his deposition that he never intended to sue defendant Snyder, and the record reflects that she was not present during the encounter between plaintiff and defendant Miller, plaintiff's claim asserted against her is subject to dismissal, as well.

Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 30) be GRANTED, and that plaintiff's complaint be DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[7] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

---

[7]    If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

Dated:    May 21, 2018
          Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

Westlaw.

Not Reported in F.Supp.2d, 2007 WL 4246443 (N.D.N.Y.)

(Cite as: 2007 WL 4246443 (N.D.N.Y.))

C

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Jose RODRIGUEZ, Plaintiff,
v.
Glen S. GOORD, et al, Defendants.
No. 9:04-CV-0358 (FJS/GHL).

Nov. 27, 2007.
Jose Rodriguez, Willard, NY, pro se.

Andrew M. Cuomo, Attorney General of the State of New York,  David L. Cochran, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

### DECISION AND ORDER

FREDERICK J. SCULLIN, Senior District Judge.

**\*1** The above-captioned matter having been presented to me by the Report-Recommendation of Magistrate Judge George H. Lowe filed November 6, 2007, and the Court having reviewed the Report-Recommendation and the entire file in this matter, and no objections to said Report-Recommendation having been filed, the Court hereby

**ORDERS,** that Magistrate Judge Lowe's November 6, 2007 Report-Recommendation is **ACCEPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS,** that Defendants' motion, pursuant to Local Rule 41.2(b), to dismiss for Plaintiff's failure to provide notice to the Court of a change of address, is **GRANTED;** and the Court further

**ORDERS,** that the Clerk of the Court enter judgment in favor of the Defendants and close this case.

**IT IS SO ORDERED.**

### REPORT-RECOMMENDATION

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, filed pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Frederick J. Scullin, Jr., Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court. Generally, Jose Rodriguez ("Plaintiff") alleges that, while he was an inmate at Oneida Correctional Facility in 2003 and 2004, ten employees of the New York State Department of Correctional Services ("Defendants") were deliberately indifferent to his serious medical needs, and subjected him to cruel and unusual prison conditions, in violation of the Eighth Amendment. (Dkt. No. 27 [Plf .'s Am. Compl.].) Currently pending is Defendants' motion to dismiss for failure to provide notice to the Court of a change of address, pursuant to Local Rule 41.2(b) of the Local Rules of Practice for this Court. (Dkt. No. 86.) Plaintiff has not opposed the motion, despite having been given more than six weeks in which to do so. Under the circumstances, I recommend that (1) Defendants' motion to dismiss be granted, and (2) in the alternative, the Court exercise its inherent authority to *sua sponte* dismiss Plaintiff's Amended Complaint for failure to prosecute and/or failure to comply with an Order of the Court.

### I. DEFENDANTS' MOTION TO DISMISS

Under the Local Rules of Practice for this Court, Plaintiff has effectively "consented" to the granting of Defendants' motion to dismiss, since (1) he failed to oppose the motion, (2) the motion was properly filed, and (3) Defendants have, through the motion, met their burden of demonstrating entitlement to the relief requested in the motion. L.R. 7.1(b)(3).

In particular, with regard to this last factor (i.e., that Defendants have met their burden of demonstrating entitlement to the relief requested), Defendants argue that their motion to dismiss should be granted because (1) Local Rule 41.2(b) provides that "[f]ailure to notify the Court of a change of address in accordance with [Local Rule] 10.1(b) may result in the dismissal of any pending

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4246443 (N.D.N.Y.)

(Cite as: 2007 WL 4246443 (N.D.N.Y.))

action," (2) on April 15, 2004, Plaintiff was specifically advised of this rule when (through Dkt. No. 5, at 4) the Court advised Plaintiff that "his failure to [promptly notify the Clerk's Office and all parties or their counsel of any change in his address] will result in the dismissal of his action," (3) on May 22, 2007, Plaintiff was released from the Willard Drug Treatment Center, (4) since that time, Plaintiff has failed to provide notice to the Court (or Defendants) of his new address, as required by Local Rule 10.1(b)(2), and (5) as a result of this failure, Defendants have been prejudiced in that they have been unable to contact Plaintiff in connection with this litigation (e.g., in order to depose him, as authorized by the Court on May 4, 2007). (Dkt. No. 86, Part 4, at 1-2 [Defs.' Mem. of Law].)

**\*2** Authority exists suggesting that an inquiry into the third factor (i.e., whether a movant has met its "burden to demonstrate entitlement" to dismissal under Local Rule 7.1[b][3] ) is a more limited endeavor than a review of a contested motion to dismiss.[FN1] Specifically, under such an analysis, the movant's burden of persuasion is lightened such that, in order to succeed, his motion need only be "facially meritorious." [FN2] Given that Defendants accurately cite the law and facts in their memorandum of law, I find that they have met their lightened burden on their unopposed motion. Moreover, I am confident that I would reach the same conclusion even if their motion were contested.

FN1. *See, e.g., Hernandez v. Nash,* 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at *7-8, 2003 WL 22143709 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before an unopposed motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious* ") [emphasis added; citations omitted]; *Race Safe Sys. v. Indy Racing League,* 251 F.Supp.2d 1106, 1109-10 (N.D.N.Y.2003) (Munson, J.) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3] ); *see also Wilmer v. Torian,* 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1

[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers), *adopted by* 1997 U.S. Dist. LEXIS 16340, at *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord, Carter v. Superintendent Montello,* 95-CV-0989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, J.), *adopted by* 983 F.Supp. 595 (N.D.N.Y.1996) (Pooler, J.).

FN2. *See, e.g., Hernandez,* 2003 U.S. Dist. LEXIS 1625 at *8.

For these reasons, I recommend that the Court grant Defendants' motion to dismiss.

## II. *SUA SPONTE* DISMISSAL

Even if Defendants have not met their burden on their motion to dismiss, the Court possesses the inherent authority to dismiss Plaintiff's Amended Complaint *sua sponte* under the circumstances. Rule 41 of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a proceeding for (1) failure to prosecute the action and/or (2) failure to comply with the Federal Rules of Civil Procedure or an Order of the Court. Fed.R.Civ.P. 41(b).[FN3] However, it has long been recognized that, despite Rule 41 (which speaks only of a *motion* to dismiss on the referenced grounds, and not a *sua sponte* order of dismissal on those grounds), courts retain the inherent "power" to *sua sponte* "clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *see also Saylor v. Bastedo,* 623 F.2d 230, 238 (2d Cir.1980); *Theilmann v. Rutland Hospital, Inc.,* 455 F.2d 853, 855 (2d Cir.1972). Indeed, Local Rule 41.2(a) not only recognizes this authority but *requires* that it be exercised in appropriate circumstances. *See* N.D.N.Y. L.R. 41.2(a) ("Whenever it appears that the plaintiff has failed to prosecute an action or proceeding diligently, the assigned judge *shall* order it dismissed.") [emphasis added].

FN3. Fed.R.Civ.P. 41(b) (providing, in pertinent part, that "[f]or failure of the plaintiff to prosecute or to comply with these rules or any

Not Reported in F.Supp.2d, 2007 WL 4246443 (N.D.N.Y.)

(Cite as: 2007 WL 4246443 (N.D.N.Y.))

order of court, a defendant may move for dismissal of an action or of any claim against the defendant").

## A. Failure to Prosecute

With regard to the first ground for dismissal (a failure to prosecute the action), it is within the trial judge's sound discretion to dismiss for want of prosecution.[FN4] The Second Circuit has identified five factors that it considers when reviewing a district court's order to dismiss an action for failure to prosecute:

FN4. *See* Merker v. Rice, 649 F.2d 171, 173 (2d Cir.1981).

[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard and [5] whether the judge has adequately assessed the efficacy of lesser sanctions.[FN5]

FN5. *See* Shannon v. GE Co., 186 F.3d 186, 193 (2d Cir.1999) (affirming Rule 41[b] dismissal of plaintiff's claims by U.S. District Court for Northern District of New York based on plaintiff's failure to prosecute the action) [citation and internal quotation marks omitted].

**\*3** As a general rule, no single one of these five factors is dispositive.[FN6] However, I note that, with regard to the first factor, Rule 41.2 of the Local Rules of Practice for this Court provides that a "plaintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution." N.D.N.Y. L.R. 41.2(a). In addition, I note that a party's failure to keep the Clerk's Office apprised of his or her current address may also constitute grounds for dismissal under Rule 41(b) of the Federal Rules of Civil Procedure.[FN7]

FN6. *See* Nita v. Conn. Dep't of Env. Protection, 16 F.3d 482 (2d Cir.1994).

FN7. *See, e.g., Robinson v. Middaugh, 95-CV-0836, 1997 U.S. Dist. LEXIS 13929, at \*2-3, 1997 WL 567961 (N.D.N.Y. Sept. 11, 1997)* (Pooler, J.) (dismissing action under Fed.R.Civ.P. 41[b] where plaintiff failed to inform the Clerk of his change of address despite having been previously ordered by Court to keep the Clerk advised of such a change); *see also* N.D.N.Y. L.R. 41.2(b) ("Failure to notify the Court of a change of address in accordance with [Local Rule] 10.1(b) may result in the dismissal of any pending action.").

Here, I find that, under the circumstances, the above-described factors weigh in favor of dismissal. The duration of Plaintiff's failure is some six-and-a-half months, i.e., since April 22, 2007, the date of the last document that Plaintiff attempted to file with the Court (Dkt. No. 85). Plaintiff received adequate notice (e.g., through the Court's above-referenced Order of April 15, 2004, and Defendants' motion to dismiss) that his failure to litigate this action (e.g., through providing a current address) would result in dismissal. Defendants are likely to be prejudiced by further delays in this proceeding, since they have been waiting to take Plaintiff's deposition since May 4, 2007. (Dkt. No. 84.) I find that the need to alleviate congestion on the Court's docket outweighs Plaintiff's right to receive a further chance to be heard in this action.[FN8] Finally, I have considered all less-drastic sanctions and rejected them, largely because they would be futile under the circumstances (e.g., an Order warning or chastising Plaintiff may very well not reach him, due to his failure to provide a current address).

FN8. It is cases like this one that delay the resolution of other cases, and that contribute to the Second Circuit's dubious distinction as having (among the twelve circuits, including the D.C. Circuit) the longest median time to disposition for prisoner civil rights cases, between 2000 and 2005 (9.8 months, as compared to a national average of 5.7 months). Simply stated, I am unable to afford Plaintiff with further special solicitude without impermissibly burdening the Court and unfairly tipping the scales of justice against Defendant.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4246443 (N.D.N.Y.)

(Cite as: 2007 WL 4246443 (N.D.N.Y.))

**B. Failure to Comply with Order of Court**

With regard to the second ground for dismissal (a
failure to comply with an Order of the Court), the
legal standard governing such a dismissal is very similar to the
legal standard governing a dismissal for failure to
prosecute. "Dismissal ... for failure to comply with an
order of the court is a matter committed to the discretion
of the district court." [FN9] The correctness of a dismissal for
failure to comply with an order of the court is determined
in light of five factors:

FN9. *Alvarez v. Simmons Market Research
Bureau, Inc.,* 839 F.2d 930, 932 (2d Cir.1988)
[citations omitted].

(1) the duration of the plaintiff's failure to comply with
the court order, (2) whether plaintiff was on notice that
failure to comply would result in dismissal, (3) whether
the defendants are likely to be prejudiced by further
delay in the proceedings, (4) a balancing of the court's
interest in managing its docket with the plaintiff's
interest in receiving a fair chance to be heard, and (5)
whether the judge has adequately considered a sanction
less drastic than dismissal.[FN10]

FN10. *Lucas v. Miles,* 84 F.3d 532, 535 (2d
Cir.1996) [citations omitted].

Here, I find that, under the circumstances, the
above-described factors weigh in favor of dismissal for the
same reasons as described above in Part II.A. of this
Report-Recommendation. I note that the Order that
Plaintiff has violated is the Court's Order of April 15,
2004, wherein the Court ordered Plaintiff, *inter alia,* to
keep the Clerk's Office apprised of his current address.
(Dkt. No. 5, at 4.) Specifically, the Court advised plaintiff
that ***"[p]laintiff is also required to promptly notify the
Clerk's Office and all parties or their counsel of any
change in plaintiff's address; his failure to do same will
result in the dismissal of this action."*** (*Id.*) I note also
that, on numerous previous occasions in this action,
Plaintiff violated this Order, resulting in delays in the
action. (*See* Dkt. Nos. 47, 48, 49, 50, 54, 59, 72, 78, 79 &
Dkt. Entry for 12/15/06 [indicating that mail from the
Court to Plaintiff was returned as undeliverable.])

**\*4** As a result, I recommend that, should the Court
decide to deny Defendants' motion to dismiss, the Court
exercise its authority to dismiss Plaintiff's Amended
Complaint *sua sponte* for failure to prosecute and/or
failure to comply with an Order of the Court.

**ACCORDINGLY,** for the reasons stated above, it is

**RECOMMENDED** that Defendants' motion to
dismiss (Dkt. No. 86) be ***GRANTED%;*** and it is further

**RECOMMENDED** that, in the alternative, the Court
exercise its inherent authority to *SUA SPONTE DISMISS*
Plaintiff's Amended Complaint for failure to prosecute
and/or failure to comply with an Order of the Court.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have
ten (10) days within which to file written objections to the
foregoing report. Such objections shall be filed with the
Clerk of the Court. **FAILURE TO OBJECT TO THIS
REPORT WITHIN TEN (10) DAYS WILL
PRECLUDE APPELLATE REVIEW.** *Roldan v.
Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v.
Sec'y of Health and Human Servs.,* 892 F.2d 15 [2d
Cir.1989] ); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a),
6(e)..

N.D.N.Y.,2007.

Rodriguez v. Goord
Not Reported in F.Supp.2d, 2007 WL 4246443
(N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2000 WL 1264122 (N.D.N.Y.)
(Cite as: 2000 WL 1264122 (N.D.N.Y.))

**C**  Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Lisa ELGAMIL, Plaintiff,
v.
SYRACUSE UNIVERSITY, Defendant.
**No. 99-CV-611 NPMGLS.**

Aug. 22, 2000.

Joch & Kirby, Ithaca, New York, for Plaintiff, Joseph Joch, of counsel.

Bond, Schoeneck & King, LLP, Syracuse, New York, for Defendant, John Gaal, Paul Limmiatis, of counsel.

MEMORANDUM-DECISION AND ORDER

MCCURN, Senior J.

INTRODUCTION

*1 Plaintiff brings suit against defendant Syracuse University ("University") pursuant to 20 U.S.C. § 1681et seq. ("Title IX") claiming hostile educational environment, and retaliation for complaints of same. Presently before the court is the University's motion for summary judgment. Plaintiff opposes the motion.

LOCAL RULES PRACTICE

The facts of this case, which the court recites below, are affected by plaintiff's failure to file a Statement of Material Facts which complies with the clear mandate of Local

Rule 7.1(a)(3) of the Northern District of New York. This Rule requires a motion for summary judgment to contain a Statement of Material Facts with specific citations to the record where those facts are established. A similar obligation is imposed upon the non-movant who

shall file a response to the [movant's] Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises.... *Any facts set forth in the [movant's] Statement of material Facts shall be deemed admitted unless specifically controverted by the opposing party.*

L.R. 7.1(a)(3) (emphasis in original).

In moving for summary judgment, the University filed an eleven page, twenty-nine paragraph Statement of Material Facts, replete with citations to the record in every paragraph. Plaintiff, in opposition, filed a two page, nine paragraph statement appended to her memorandum of law which failed to admit or deny the specific assertions set forth by defendant, and which failed to contain a single citation to the record. Plaintiff has thus failed to comply with Rule 7.1(a)(3).

As recently noted in another decision, "[t]he Local Rules are not suggestions, but impose procedural requirements upon parties litigating in this District." *Osier v. Broome County,* 47 F.Supp.2d 311, 317 (N.D.N.Y.1999). As a consequence, courts in this district have not hesitated to enforce Rule 7.1(a)(3) and its predecessor, Rule 7.1(f) [FN1] by deeming the facts asserted in a movant's proper Statement of Material Facts as admitted, when, as here, the opposing party has failed to comply with the Rule. *See,e.g., Phipps v. New York State Dep't of Labor,* 53 F.Supp.2d 551, 556-57 (N.D.N.Y.1999); *DeMar v. Car-Freshner Corp.,* 49 F.Supp.2d 84, 86 (N.D.N.Y.1999); *Osier,* 47 F. Supp .2d at 317; *Nicholson v. Doe,* 185 F.R.D. 134, 135 (N.D.N.Y.1999); *TSI Energy,*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1264122 (N.D.N.Y.)
(Cite as: 2000 WL 1264122 (N.D.N.Y.))

*Inc. v. Stewart and Stevenson Operations, Inc.,* 1998 WL
903629, at *1 n. 1 (N.D. N.Y.1998); *Costello v.. Norton,*
1998 WL 743710, at *1 n. 2 (N.D.N.Y.1998); *Squair v.
O'Brien & Gere Engineers, Inc.,* 1998 WL 566773, at *1
n. 2 (N.D.N.Y.1998). As in the cases just cited, this court
deems as admitted all of the facts asserted in defendant's
Statement of Material Facts. The court next recites these
undisputed facts.

FN1. Amended January 1, 1999.

BACKGROUND

*2 Plaintiff became a doctoral student in the University's
Child and Family Studies ("CFS") department in the
Spring of 1995. Successful completion of the doctoral
program required a student to (1) complete 60 credit hours
of course work; (2) pass written comprehensive
examinations ("comp.exams") in the areas of research
methods, child development, family theory and a specialty
area; (3) after passing all four comp. exams, orally defend
the written answers to those exams; (4) then select a
dissertation topic and have the proposal for the topic
approved; and (5) finally write and orally defend the
dissertation. Plaintiff failed to progress beyond the first
step.

Each student is assigned an advisor, though it is not
uncommon for students to change advisors during the
course of their studies, for a myriad of reasons. The
advisor's role is to guide the student in regard to course
selection and academic progress. A tenured member of the
CFS department, Dr. Jaipaul Roopnarine, was assigned as
plaintiff's advisor.

As a student's comp. exams near, he or she selects an
examination committee, usually consisting of three faculty
members, including the student's advisor. This committee
writes the questions which comprise the student's comp.
exams, and provides the student with guidance and
assistance in preparing for the exams. Each member of the
committee writes one exam; one member writes two. Two
evaluators grade each exam; ordinarily the faculty member
who wrote the question, and one other faculty member

selected by the coordinator of exams.

Roopnarine, in addition to his teaching and advising
duties, was the coordinator of exams for the entire CFS
department. In this capacity, he was generally responsible
for selecting the evaluators who would grade each
student's comp. exam, distributing the student's answer to
the evaluators for grading, collecting the evaluations, and
compiling the evaluation results.

The evaluators graded an exam in one of three ways:
"pass," "marginal" or "fail." A student who received a
pass from each of the two graders passed that exam. A
student who received two fails from the graders failed the
exam. A pass and a marginal grade allowed the student to
pass. A marginal and a fail grade resulted in a failure. Two
marginal evaluations may result in a committee having to
decide whether the student would be given a passing
grade. In cases where a student was given both a pass and
a fail, a third evaluator served as the tie breaker.

These evaluators read and graded the exam questions
independently of each other, and no indication of the
student's identity was provided on the answer. FN2 The
coordinator, Roopnarine, had no discretion in compiling
these grades-he simply applied the pass or fail formula
described above in announcing whether a student passed
or failed the comp. exams. Only after a student passed all
four written exam questions would he or she be permitted
to move to the oral defense of those answers.

FN2. Of course, as mentioned, because one of
the evaluators may have written the question, and
the question may have been specific to just that
one student, one of the two or three evaluators
may have known the student's identity regardless
of the anonymity of the examination answer.

*3 Plaintiff completed her required course work and took
the comp. exams in October of 1996. Plaintiff passed two
of the exams, family theory and specialty, but failed two,
child development and research methods. On each of the
exams she failed, she had one marginal grade, and one
failing grade. Roopnarine, as a member of her committee,

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Not Reported in F.Supp.2d, 2000 WL 1264122 (N.D.N.Y.)
(Cite as: 2000 WL 1264122 (N.D.N.Y.))

authored and graded two of her exams. She passed one of them, specialty, and failed the other, research methods. Roopnarine, incidently, gave her a pass on specialty, and a marginal on research methods. Thus it was another professor who gave her a failing grade on research methods, resulting in her failure of the exam. As to the other failed exam, child development, it is undisputed that Roopnarine neither wrote the question, nor graded the answer.

Pursuant to the University's procedures, she retook the two exams she failed in January of 1997. Despite being given the same questions, she only passed one, child development. She again failed research methods by getting marginal and fail grades from her evaluators. This time, Roopnarine was not one of the evaluators for either of her exam questions.

After this second unsuccessful attempt at passing research methods, plaintiff complained to the chair of the CFS department, Dr. Norma Burgess. She did not think that she had been properly prepared for her exam, and complained that she could no longer work with Roopnarine because he yelled at her, was rude to her, and was otherwise not responsive or helpful. She wanted a new advisor. Plaintiff gave no indication, however, that she was being sexually harassed by Roopnarine.

Though plaintiff never offered any additional explanation for her demands of a new advisor, Burgess eventually agreed to change her advisor, due to plaintiff's insistence. In March of 1997, Burgess and Roopnarine spoke, and Roopnarine understood that he would no longer be advising plaintiff. After that time period, plaintiff and Roopnarine had no further contact. By June of that year, she had been assigned a new advisor, Dr. Mellisa Clawson.

Plaintiff then met with Clawson to prepare to take her research methods exam for the third time. Despite Clawson's repeated efforts to work with plaintiff, she sought only minimal assistance; this was disturbing to Clawson, given plaintiff's past failures of the research methods exam. Eventually, Clawson was assigned to write plaintiff's third research methods exam.

The first time plaintiff made any mention of sexual harassment was in August of 1997, soon before plaintiff made her third attempt at passing research methods. She complained to Susan Crockett, Dean of the University's College of Human Development, the parent organization of the CFS department. Even then, however, plaintiff merely repeated the claims that Roopnarine yelled at her, was rude to her, and was not responsive or helpful. By this time Roopnarine had no contact with plaintiff in any event. The purpose of plaintiff's complaint was to make sure that Roopnarine would not be involved in her upcoming examination as exam coordinator. Due to plaintiff's complaints, Roopnarine was removed from all involvement with plaintiff's third research methods examination. As chair of the department, Burgess took over the responsibility for serving as plaintiff's exam coordinator. Thus, Burgess, not Roopnarine, was responsible for receiving plaintiff's answer, selecting the evaluators, and compiling the grades of these evaluators; [FN3] as mentioned, Clawson, not Roopnarine, authored the exam question.

> [FN3.] Plaintiff appears to allege in her deposition and memorandum of law that Roopnarine remained the exam coordinator for her third and final exam. *See* Pl.'s Dep. at 278; Pl.'s Mem. of Law at 9. The overwhelming and undisputed evidence in the record establishes that Roopnarine was not, in fact, the coordinator of this exam. Indeed, as discussed above, the University submitted a Statement of Material Facts which specifically asserted in paragraph 18 that Roopnarine was removed from all involvement in plaintiff's exam, including the role of exam coordinator. *See* Def.'s Statement of Material Facts at ¶ 18 (and citations to the record therein). Aside from the fact that this assertion is deemed admitted for plaintiff's failure to controvert it, plaintiff cannot maintain, without any evidence, that Roopnarine was indeed her exam coordinator. Without more than broad, conclusory allegations of same, no genuine issue of material fact exists on this question.

**\*4** Plaintiff took the third research methods examination

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1264122 (N.D.N.Y.)
(Cite as: 2000 WL 1264122 (N.D.N.Y.))

in September of 1997. Clawson and another professor, Dr. Kawamoto, were her evaluators. Clawson gave her a failing grade; Kawamoto indicated that there were "some key areas of concern," but not enough for him to deny her passage. As a result of receiving one passing and one failing grade, plaintiff's research methods exam was submitted to a third evaluator to act as a tie breaker. Dr. Dean Busby, whose expertise was research, was chosen for this task. Busby gave plaintiff a failing grade, and began his written evaluation by stating that

[t]his is one of the most poorly organized and written exams I have ever read. I cannot in good conscience vote any other way than a fail. I tried to get it to a marginal but could not find even one section that I would pass.

Busby Aff. Ex. B.

The undisputed evidence shows that Clawson, Kawamoto and Busby each evaluated plaintiff's exam answer independently, without input from either Roopnarine or anyone else. Kawamoto and Busby did not know whose exam they were evaluating. [FN4] Importantly, it is also undisputed that none of the three evaluators knew of plaintiff's claims of sexual harassment.

    [FN4.] Clawson knew it was plaintiff's examination because she was plaintiff's advisor, and wrote the examination question.

After receiving the one passing and two failing evaluations, Burgess notified plaintiff in December of 1997 that she had, yet again, failed the research methods exam, and offered her two options. Although the University's policies permitted a student to only take a comp. exam three times (the original exam, plus two retakes), the CFS department would allow plaintiff to retake the exam for a fourth time, provided that she took a remedial research methods class to strengthen her abilities. Alternatively, Burgess indicated that the CFS department would be willing to recommend plaintiff for a master's degree based on her graduate work. Plaintiff rejected both offers.

The second time plaintiff used the term sexual harassment in connection with Roopnarine was six months after she was notified that she had failed for the third time, in May of 1998. Through an attorney, she filed a sexual harassment complaint against Roopnarine with the University. This written complaint repeated her allegations that Roopnarine had yelled at her, been rude to her, and otherwise had not been responsive to her needs. She also, for the first time, complained of two other acts:

1. that Roopnarine had talked to her about his sex life, including once telling her that women are attracted to him, and when he attends conferences, they want to have sex with him over lunch; and

2. that Roopnarine told her that he had a dream in which he, plaintiff and plaintiff's husband had all been present.

Prior to the commencement of this action, this was the only specific information regarding sexual harassment brought to the attention of University officials.

The University concluded that the alleged conduct, if true, was inappropriate and unprofessional, but it did not constitute sexual harassment. Plaintiff then brought this suit. In her complaint, she essentially alleges two things; first, that Roopnarine's conduct subjected her to a sexually hostile educational environment; and second, that as a result of complaining about Roopnarine's conduct, the University retaliated against her by preventing her from finishing her doctorate, mainly, by her failing her on the third research methods exam.

**\*5** The University now moves for summary judgment. Primarily, it argues that the alleged conduct, if true, was not sufficiently severe and pervasive to state a claim. Alternatively, it argues that it cannot be held liable for the conduct in any event, because it had no actual knowledge of plaintiff's alleged harassment, and was not deliberately indifferent to same. Finally, it argues that plaintiff is unable to establish a retaliation claim. These contentions are addressed below.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1264122 (N.D.N.Y.)
(Cite as: 2000 WL 1264122 (N.D.N.Y.))

DISCUSSION

The principles that govern summary judgment are well established. Summary judgment is properly granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must draw all factual inferences and resolve all ambiguities in favor of the nonmoving party. See Torres v. Pisano, 116 F.3d 625, 630 (2d Cir.1997). As the Circuit has recently emphasized in the discrimination context, "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial." Danzer v. Norden Sys., Inc., 151 F.3d 50, 54 (2d Cir.1998). Rather, there must be either an absence of evidence that supports plaintiff's position, see Norton v. Sam's Club, 145 F.3d 114, 117-20 (2d Cir.), cert. denied, 525 U.S. 1001 (1998), "or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." Danzer, 151 F.3d at 54. Yet, as the Circuit has also admonished, "purely conclusory allegations of discrimination, absent any concrete particulars," are insufficient to defeat a motion for summary judgment. Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.1985). With these principles in mind, the court turns to defendant's motion.

*I. Hostile Environment*

Title IX provides, with certain exceptions not relevant here, that

[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).

Recently, the Supreme Court reiterated that Title IX is enforceable through an implied private right of action, and that monetary damages are available in such an action.

See Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, , 118 S.Ct. 1989, 1994 (1998) (citing Cannon v. University of Chicago, 441 U .S. 677 (1979) and Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60 (1992)).

A. Severe or Pervasive

Provided that a plaintiff student can meet the requirements to hold the school itself liable for the sexual harassment,[FN5] claims of hostile educational environment are generally examined using the case law developed for hostile work environment under Title VII. See Davis, 119 S.Ct. at 1675 (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986), a Title VII case). Accord Kracunas v. Iona College, 119 F.3d 80, 87 (2d Cir.1997); Murray v. New York Univ. College of Dentistry, 57 F.3d 243, 249 (2d Cir.1995), both abrogated on other grounds by Gebser, 118 S.Ct. at 1999.

> FN5. In Gebser, 118 S.Ct. at 1999, and Davis v. Monroe County Bd. of Educ., 526 U.S. 629, , 119 S.Ct. 1661, 1671 (1999), the Supreme Court explicitly departed from the *respondeat superior* principles which ordinarily govern Title VII actions for purposes of Title IX; in a Title IX case it is now clear that a school will not be liable for the conduct of its teachers unless it knew of the conduct and was deliberately indifferent to the discrimination. Defendant properly argues that even if plaintiff was subjected to a hostile environment, she cannot show the University's knowledge and deliberate indifference. This argument will be discussed below.

> It bears noting that courts examining sexual harassment claims sometimes decide first whether the alleged conduct rises to a level of actionable harassment, before deciding whether this harassment can be attributed to the defendant employer or school, as this court does here. See,e.g., Distasio v. Perkin Elmer Corp., 157 F.3d 55 (2d Cir.1998). Sometimes, however, courts first examine whether the defendant can be held liable for the conduct,

Not Reported in F.Supp.2d, 2000 WL 1264122 (N.D.N.Y.)
(Cite as: 2000 WL 1264122 (N.D.N.Y.))

and only then consider whether this conduct is actionable. *See,e.g.,Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 767 n. 8 (2d Cir.1998). As noted in *Quinn,* the Circuit has not instructed that the sequence occur in either particular order. *Seeid.*

**\*6** In *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-22 (1993), the Supreme Court stated that in order to succeed, a hostile environment claim must allege conduct which is so "severe or pervasive" as to create an " 'objectively' hostile or abusive work environment," which the victim also "subjectively perceive[s] ... to be abusive." *Richardson v. New York State Dep't of Corr. Servs .,* 180 F.3d 426, 436 (alteration in original) (quoting *Harris,* 510 U.S. at 21-22). From this court's review of the record, there is no dispute that plaintiff viewed her environment to be hostile and abusive; hence, the question before the court is whether the environment was "objectively" hostile. *Seeid.* Plaintiff's allegations must be evaluated to determine whether a reasonable person who is the target of discrimination would find the educational environment "so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victim['s] educational experience, that [this person is] effectively denied equal access to an institution's resources and opportunities." *Davis,* 119 S.Ct. at 1675.

Conduct that is "merely offensive" but "not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive" is beyond the purview of the law. *Harris,* 510 U.S. at 21. Thus, it is now clear that neither "the sporadic use of abusive language, gender-related jokes, and occasional testing," nor "intersexual flirtation," accompanied by conduct "merely tinged with offensive connotations" will create an actionable environment. *Faragher v. City of Boca Raton,* 524 U.S. 775, 787 (1998). Moreover, a plaintiff alleging sexual harassment must show the hostility was based on membership in a protected class. *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 77 (1998). Thus, to succeed on a claim of sexual harassment, a plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimina[tion] ... because of ... sex." *Id.* at 81 (alteration

and ellipses in original).

The Supreme Court has established a non-exclusive list of factors relevant to determining whether a given workplace is permeated with discrimination so severe or pervasive as to support a Title VII claim. *See Harris,* 510 U.S. at 23. These include the frequency of the discriminatory conduct, its severity, whether the conduct was physically threatening or humiliating, whether the conduct unreasonably interfered with plaintiff's work, and what psychological harm, if any, resulted from the conduct. *Seeid.; Richardson,* 180 F.3d at 437.

Although conduct can meet this standard by being either "frequent" or "severe," *Osier,* 47 F.Supp.2d at 323, "isolated remarks or occasional episodes of harassment will not merit relief [ ]; in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive." ' *Quinn,* 159 F.3d at 767 (quoting *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1305 n. 5 (2d Cir.1995)). Single or episodic events will only meet the standard if they are sufficiently threatening or repulsive, such as a sexual assault, in that these extreme single incidents "may alter the plaintiff's conditions of employment without repetition." *Id.Accord Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.,* 957 F.2d 59, 62 (2d Cir.1992) ("[t]he incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief.").

**\*7** The University quite properly argues that the conduct plaintiff alleges is not severe and pervasive. As discussed above, she claims that she was subjected to behavior by Roopnarine that consisted primarily of his yelling at her, being rude to her, and not responding to her requests as she felt he should. This behavior is insufficient to state a hostile environment claim, despite the fact that it may have been unpleasant. *See,e.g., Gutierrez v. Henoch,* 998 F.Supp. 329, 335 (S.D.N.Y.1998) (disputes relating to job-related disagreements or personality conflicts, without more, do not create sexual harassment liability); *Christoforou v. Ryder Truck Rental, Inc.,* 668 F.Supp. 294, 303 (S.D.N.Y.1987) ("there is a crucial difference between personality conflict ... which is unpleasant but legal ... [and sexual harassment] ... which is despicable and illegal."). Moreover, the court notes that plaintiff has

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1264122 (N.D.N.Y.)
(Cite as: 2000 WL 1264122 (N.D.N.Y.))

failed to show that this alleged behavior towards her was sexually related-an especially important failing considering plaintiff's own testimony that Roopnarine treated some males in much of the same manner. *See,e.g.,* Pl.'s Dep. at 298 ("He said that Dr. Roopnarine screamed at him in a meeting"). As conduct that is "equally harsh" to both sexes does not create a hostile environment, *Brennan v. Metropolitan Opera Ass'n, Inc.,* 192 F.3d 310, 318 (2d Cir.1999), this conduct, while demeaning and inappropriate, is not sufficiently gender-based to support liability. *See Osier,* 47 F.Supp.2d at 324.

The more detailed allegations brought forth for the first time in May of 1998 are equally unavailing. These allegations are merely of two specific, isolated comments. As described above, Roopnarine told plaintiff of his sexual interaction(s) with other women, and made a single, non-sexual comment about a dream in which plaintiff, plaintiff's husband, and Roopnarine were all present. Accepting as true these allegations, the court concludes that plaintiff has not come forward with evidence sufficient to support a finding that she was subject to abuse of sufficient severity or pervasiveness that she was "effectively denied equal access to an institution's resources and opportunities." *Davis,* 119 S.Ct. at 1675.

*Quinn,* a recent Second Circuit hostile work environment case, illustrates the court's conclusion well. There, plaintiff complained of conduct directed towards her including sexual touching and comments. She was told by her supervisor that she had been voted the "sleekest ass" in the office and the supervisor deliberately touched her breasts with some papers he was holding. 159 F.3d at 768. In the Circuit's view, these acts were neither severe nor pervasive enough to state a claim for hostile environment. *See id.* In the case at bar, plaintiff's allegations are no more severe than the conduct alleged in *Quinn,* nor, for that matter, did they occur more often. Thus, without more, plaintiff's claims fail as well.

**\*8** Yet, plaintiff is unable to specify any other acts which might constitute sexual harassment. When pressed to do so, plaintiff maintained only that she "knew" what Roopnarine wanted "every time [she] spoke to him" and that she could not "explain it other than that's the feeling [she] had." Pl.'s Dep. at 283-85, 287, 292. As defendant

properly points out, these very types of suspicions and allegations of repeated, but unarticulated conduct have been shown to be insufficient to defeat summary judgment. *See Meiri,* 759 F.2d at 998 (plaintiff's allegations that employer " 'conspired to get of [her];' that he 'misconceived [her] work habits because of his subjective prejudice against [her] Jewishness;' and that she 'heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places.... It's all around us,' " are conclusory and insufficient to satisfy the demands of Rule 56) (alterations and ellipses in original); *Dayes v. Pace Univ.,* 2000 WL 307382, at *5 (S.D.N.Y.2000) (plaintiff's attempts to create an appearance of pervasiveness by asserting "[t]he conduct to which I was subjected ... occurred regularly and over many months," without more "is conclusory, and is not otherwise supported in the record [and] therefore afforded no weight"); *Quiros v. Ciba-Geigy Corp.,* 7 F.Supp.2d 380, 385 (S.D.N.Y.1998) (plaintiff's allegations of hostile work environment without more than conclusory statements of alleged discrimination insufficient to defeat summary judgment); *Eng v. Beth Israel Med. Ctr.,* 1995 U.S. Dist. Lexis 11155, at *6 n. 1 (S.D.N.Y.1995) (plaintiff's "gut feeling" that he was victim of discrimination was no more than conclusory, and unable to defeat summary judgment). As plaintiff comes forward with no proper showing of either severe or pervasive conduct, her hostile environment claim necessarily fails.

B. Actual Knowledge / Deliberate Indifference

Even if plaintiff's allegations were sufficiently severe or pervasive, her hostile environment claim would still fail. As previously discussed, *seesupra* note 5, the Supreme Court recently departed from the framework used to hold defendants liable for actionable conduct under Title VII. *See Davis,* 119 S.Ct. at 1671; *Gebser,* 118 S.Ct. at 1999. Pursuant to these new decisions, it is now clear that in order to hold an educational institution liable for a hostile educational environment under Title IX, it must be shown that "an official who at minimum has authority to address the alleged discrimination and to institute corrective measures on the [plaintiff's] behalf *has actual knowledge of [the] discrimination* [.]" *Gebser,* 118 S.Ct. at 1999 (emphasis supplied). What's more, the bar is even higher: after learning of the harassment, in order for the school to be liable, its response must then "amount to deliberate

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1264122 (N.D.N.Y.)
(Cite as: 2000 WL 1264122 (N.D.N.Y.))

indifference to discrimination[,]" or, "in other words, [ ] *an official decision by the [school] not to remedy the violation."Id.* (Emphasis supplied). Accord*Davis,* 119 S.Ct. at 1671 ("we concluded that the [school] could be liable for damages only where the [school] itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of teacher-student harassment of which it had actual knowledge."). This requires plaintiff to show that the school's "own deliberate indifference effectively 'cause[d]' the discrimination." *Id.* (alteration in original) (quoting *Gebser,* 118 S.Ct. at 1999). The circuits that have taken the question up have interpreted this to mean that there must be evidence that actionable harassment continued to occur *after* the appropriate school official gained actual knowledge of the harassment. *SeeReese v. Jefferson Sch. Dist.,* 208 F.3d 736, 740 (9th Cir.2000); *Soper v. Hoben,* 195 F.3d 845, 855 (6th Cir.1999); *Murreel v. School Dist. No. 1, Denver Colo.,* 186 F.3d 1238, 1246 (10th Cir.1999); *Wills v. Brown Univ.,* 184 F.3d 20, 26-27 (1st Cir.1999). There is no serious contention that plaintiff can satisfy this requirement.

**\*9** By the time plaintiff complained to Dean Crockett of sexual harassment in August of 1997, it is uncontested that her alleged harasser had no contact with her. Nor, for that matter, did he ultimately have any involvement in the third retake of her exam. She had a new advisor, exam committee and exam coordinator. Quite simply, by that point, Roopnarine had no involvement with her educational experience at all.[FN6] This undisputed fact is fatal to plaintiff's claim. As discussed above, the Supreme Court now requires some harm to have befallen plaintiff *after* the school learned of the harassment. As there have been no credible allegations of subsequent harassment, no liability can be attributed to the University.[FN7]*SeeReese,* 208 F.3d at 740 ("There is no evidence that any harassment occurred after the school district learned of the plaintiffs' allegations. Thus, under *Davis,* the school district cannot be deemed to have 'subjected' the plaintiffs to the harassment.").

FN6. Of course, plaintiff contends that the University had notice of the harassment prior to this time, through her complaints to Burgess that she no longer could work with Roopnarine, because he yelled at her, was rude to her, and

refused to assist her with various requests. But it is undisputed that she never mentioned sexual harassment, and provided no details that might suggest sexual harassment. Indeed, as pointed out by defendant, plaintiff *herself* admits that she did not consider the conduct sexual harassment until another person later told her that it might be, in June of 1997. *See* Pl.'s Dep. at 258-59, 340. As a result, plaintiff can not seriously contend that the University was on notice of the alleged harassment before August of 1997.

FN7. As mentioned previously, *seesupra* note 3, plaintiff maintains without any evidentiary support that Roopnarine played a role in her third exam. This allegation is purely conclusory, especially in light of the record evidence the University puts forward which demonstrates that he was not, in fact, involved in the examination.

As plaintiff's allegations of harassment are not severe or pervasive enough to state a claim, and in any event, this conduct can not be attributed to the University, her hostile environment claim is dismissed.

*II. Retaliation*

Plaintiff's retaliation claim must be dismissed as well. She cannot establish an actionable retaliation claim because there is no evidence that she was given failing grades due to complaints about Roopnarine. *SeeMurray,* 57 F.3d at 251 (retaliation claim requires evidence of causation between the adverse action, and plaintiff's complaints of discrimination). The retaliation claim appears to be based exclusively on plaintiff's speculative and conclusory allegation that Roopnarine was involved in or influenced the grading of her third research methods exam.[FN8] In any event, the adverse action which plaintiff claims to be retaliation must be limited to her failing grade on the third research methods exam, since plaintiff made no complaints of sexual harassment until August of 1997, long after plaintiff failed her second examination. *SeeMurray,* 57 F.3d at 251 (retaliation claim requires proof that defendant had knowledge of plaintiff's protected activity at the time of the adverse reaction); *Weaver v.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1264122 (N.D.N.Y.)
(Cite as: 2000 WL 1264122 (N.D.N.Y.))

*Ohio State Univ.*, 71 F.Supp.2d 789, 793-94 (S.D.Ohio)
("[c]omplaints concerning unfair treatment in general
which do not specifically address discrimination are
insufficient to constitute protected activity"), *aff'd,* 194
F.3d 1315 (6th Cir.1999).

        FN8. As properly noted by defendant, *see* Def.
        Mem. of Law at 28 n. 14, plaintiff's complaint
        alleges that a number of individuals retaliated
        against her, but in her deposition she essentially
        conceded that she has no basis for making a
        claim against anyone other than Roopnarine and
        those who graded her third exam. *See* Pl.'s Dep.
        at 347-53.

The undisputed evidence establishes that Roopnarine had
no role in the selection of who would grade plaintiff's
exam. Nor, for that matter, did he grade the exam; this was
done by three other professors. Each of these professors
has averred that they graded the exam without any input or
influence from Roopnarine. More importantly, it is
undisputed that none of the three had any knowledge that
a sexual harassment complaint had been asserted by
plaintiff against Roopnarine, not surprising since two of
the three did not even know whose exam they were
grading. Plaintiff's inability to show that her failure was
causally related in any way to her complaint of harassment
is fatal to her retaliation claim.FN9

        FN9. Plaintiff's claim also fails to the extent that
        the school's refusal to let her take the research
        methods exam for a fourth time was the
        retaliatory act she relies upon. It is undisputed
        that the University's policies for CFS department
        students only allow a comp. exam to be given
        three times. *See* Gaal Aff. Ex. 53. Plaintiff
        cannot claim that the University's refusal to
        depart from its own policies was retaliation
        without some concrete showing that its refusal to
        do so was out of the ordinary, i.e., that it had
        allowed other students to take the exam a fourth
        time without a remedial course, when these other
        students had not engaged in some protected
        activity. *See* *Murray,* 57 F.3d at 251 (there is "no
        allegation either that NYU selectively enforced
        its academic standards, or that the decision in

[plaintiff's] case was inconsistent with these
standards.").

CONCLUSION

*10 For the aforementioned reasons, Syracuse University's
motion for summary judgment is GRANTED; plaintiff's
claims of hostile environment and retaliation are
DISMISSED.

IT IS SO ORDERED.

N.D.N.Y.,2000.
Elgamil v. Syracuse University
Not Reported in F.Supp.2d, 2000 WL 1264122
(N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Westlaw.

Not Reported in F.Supp., 1998 WL 278264 (N.D.N.Y.)

(Cite as: 1998 WL 278264 (N.D.N.Y.))

H

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Anthony ROBINSON, Plaintiff,

v.

Jane DELGADO, Hearing Officer and Lieutenant; and
Donald Selsky, Director of Inmate Special Housing
Program, Defendants.

No. 96-CV-169 (RSP/DNH).

May 22, 1998.

Anthony Robinson, Veterans Shelter, Brooklyn, for
Plaintiff, Pro Se.

Hon. Dennis C. Vacco, Attorney General of the State of
New York, Attorney for Defendants, Albany, Ellen Lacy
Messina, Esq., Assistant Attorney General, of Counsel.

ORDER

POOLER, D.J.

*1 Anthony Robinson, a former inmate incarcerated
by the New York State Department of Corrections
("DOCS"), sued two DOCS employees, alleging that they
violated his right to due process in the course of a
disciplinary proceeding and subsequent appeal. On
September 9, 1997, defendants moved for summary
judgment. Defendants argued that plaintiff failed to
demonstrate that the fifty days of keeplock confinement
that he received as a result of the hearing deprived him of
a liberty interest within the meaning of the Due Process
Clause. Plaintiff did not oppose the summary judgment
motion, and Magistrate Judge David N. Hurd
recommended that I grant it in a report-recommendation
filed April 16, 1998. Plaintiff did not file objections.

Because plaintiff did not file objections, I "need only
satisfy [myself] that there is no clear error on the face of
the record in order to accept the recommendation."
Fed.R.Civ.P. 72(b) advisory committee's note. After
reviewing the record, I conclude that there is no clear error
on the face of the record. After being warned by
defendants' motion that he must offer proof in admissible
form that his disciplinary confinement imposed an
"atypical and significant hardship on the inmate in relation
to the ordinary incidents of prison life," Robinson failed
to offer any such proof. Sandin v. Conner, 515 U.S. 472,
115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995).
Consequently, he cannot maintain a due process challenge.
Id. Therefore, it is

ORDERED that the report-recommendation is
approved; and it is further

ORDERED that defendants' motion for summary
judgment is granted and the complaint dismissed; and it is
further

ORDERED that the Clerk of the Court serve a copy

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1998 WL 278264 (N.D.N.Y.)

(Cite as: 1998 WL 278264 (N.D.N.Y.))

of this order on the parties by ordinary mail.

HURD, Magistrate J.

### REPORT-RECOMMENDATION

The above civil rights action has been referred to the undersigned for Report and Recommendation by the Honorable Rosemary S. Pooler, pursuant to the local rules of the Northern District of New York. The plaintiff commenced the above action pursuant to 42 U.S.C. § 1983 claiming that the defendants violated his Fifth, Eighth, and Fourteenth Amendment rights under the United States Constitution. The plaintiff seeks compensatory and punitive damages.

Presently before the court is defendants' motion for summary judgment pursuant to Fed R. Civ. P. 56. However:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P 56(e).

In addition, "[f]ailure to file any papers as required by this rule shall, unless for good cause shown, be deemed by the court as consent to the granting or denial of the motion, as the case may be." L.R. 7.1(b)(3).

*2 The defendants filed their motion on September 9, 1997. The response to the motion was due on October 23, 1997. It is now five months beyond the date when the plaintiff's response was due, and he has failed to file any papers in opposition to defendants' motion.

Therefore, after careful consideration of the notice of motion, affirmation of Ellen Lacy Messina, Esq., with exhibits attached, and the memorandum of law; and there being no opposition to the motion; it is

RECOMMENDED that the motion for summary judgment be GRANTED and the complaint be dismissed in its entirety.

Pursuant to 28 U.S.C. § 636(b)(l), the parties have ten days within which to file written objections to the foregoing report. *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696(1992). Such objections shall be filed with the Clerk of the Court with a copy to be mailed to the chambers of the undersigned at 10 Broad Street, Utica, New York 13501. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(l); Fed.R.Civ.P. 72, 6(a), 6(e); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of HHS,* 892 F.2d 15, 16 (2d Cir.1989); and it is

ORDERED, that the Clerk of the Court serve a copy of this Order and Report-Recommendation, by regular mail, upon the parties to this action.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1998 WL 278264 (N.D.N.Y.)

(Cite as: 1998 WL 278264 (N.D.N.Y.))

N.D.N.Y.,1998.

Robinson v. Delgado

Not Reported in F.Supp., 1998 WL 278264 (N.D.N.Y.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2011 WL 1103045 (N.D.N.Y.)

(Cite as: 2011 WL 1103045 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Valery LATOUCHE, Plaintiff,
v.
Michael C. TOMPKINS, C.O., Clinton Correctional
Facility; Dean E. Laclair, C.O., Clinton Correctional
Facility; Jeffrey R. Ludwig, C.O ., Clinton Correctional
Facility; Michael B. King, Sgt., Clinton Correctional
Facility; D. Mason, C.O., Clinton Correctional Facility;
B. Malark, C.O., Clinton Correctional Facility; John
Reyell, C.O., Clinton Correctional Facility; Bob
Fitzgerald, R.N., Clinton Correctional Facility; John
Doe, C.O. (C.O. Gallery Officer Company Upper F–6);
John Doe, C.O. (Mess Hall Supervising C.O.),
Defendants.
No. 9:09–CV–308 (NAM/RFT).

March 23, 2011.
Valery LaTouche, Ossining, NY, pro se.

Eric T. Schneiderman, Attorney General for the State of
New York, Krista A. Rock, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Defendants.

**MEMORANDUM–DECISION AND ORDER**

NORMAN A. MORDUE, Chief Judge.

**INTRODUCTION**

**\*1** In this *pro se* action under 42 U.S.C. § 1983,
plaintiff, an inmate in the custody of the New York State
Department of Correctional Services ("DOCS"), claims
that defendants violated his Eighth Amendment rights as
a result of a physical altercation. Defendants moved for
summary judgment pursuant to Rule 56 of the Federal
Rules of Civil Procedure (Dkt. No. 46) and plaintiff
opposed the motion. (Dkt. No. 53). The motions were
referred to United States Magistrate Judge Randolph F.
Treece for a Report and Recommendation pursuant to 28
U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c).

Magistrate Judge Treece issued a Report and
Recommendation (Dkt. No. 60) recommending that
defendants' motion be granted in part and denied in part.
Specifically, Magistrate Judge Treece recommended
awarding summary judgment dismissing the following: (1)
plaintiff's claims for monetary relief against all defendants
in their official capacity; (2) plaintiff's claims of medical
indifference against defendant Fitzgerald; and (3)
plaintiff's allegations of verbal harassment by defendant
Mason. Magistrate Judge Treece also recommended
denying defendants' motion for summary judgment on
plaintiff's excessive force claims against defendants
Tompkins, LaClair, Mason, Malark and Reyell and
plaintiff's failure to protect claims against defendants
Ludwig and King.

Defendants filed specific objections to portions of the
Report and Recommendation arguing: (1) that the
Magistrate Judge erred in "overlooking" plaintiff's failure
to comply with Local Rule 7.1(a) (3); (2) that the
Magistrate Judge erred when he failed to apply the
*Jeffreys* exception as plaintiff's testimony was incredible
as a matter of law; and (3) plaintiff's excessive force
claims against defendant Reyell are subject to dismissal
for lack of personal involvement. (Dkt. No. 61). Plaintiff
does not object to the Report and Recommendation. (Dkt.
No. 62).

In view of defendants' objections, pursuant to 28
U.S.C. § 636(b) (1)(c), this Court conducts a *de novo*
review of these issues. The Court reviews the remaining
portions of the Report–Recommendation for clear error or
manifest injustice. See *Brown v. Peters,* 1997 WL 599355,
\*2–3 (N.D.N.Y.), *af'd without op.,* 175 F.3d 1007 (2d
Cir.1999); *see also Batista v. Walker,* 1995 WL 453299,
at \*1 (S.D.N.Y.1995) (when a party makes no objection to
a portion of the report-recommendation, the Court reviews
that portion for clear error or manifest injustice). Failure
to object to any portion of a report and recommendation
waives further judicial review of the matters therein. See
*Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993).

**DISCUSSION**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1103045 (N.D.N.Y.)

(Cite as: 2011 WL 1103045 (N.D.N.Y.))

## I. Local Rule 7.1(a)(3)

The submissions of *pro se* litigants are to be liberally construed. *Nealy v. U.S. Surgical Corp.,* 587 F.Supp.2d 579, 583 (S.D.N.Y.2008). However, a *pro se* litigant is not relieved of the duty to meet the requirements necessary to defeat a motion for summary judgment. *Id.* (citing *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir.2003)). Where a plaintiff has failed to respond to a defendant's statement of material facts, the facts as set forth in defendant's Rule 7.1 statement will be accepted as true to the extent that (1) those facts are supported by the evidence in the record, and (2) the non-moving party, if is proceeding *pro se,* has been specifically advised of the potential consequences of failing to respond to the movant's motion for summary judgment. *Littman v. Senkowski,* 2008 WL 420011, at *2 (N.D.N.Y.2008) (citing *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996)). FN1

> FN1. Local Rule 7.1(a)(3) provides:
>
> Summary Judgment Motions
>
> Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits. *Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion.*
>
> The moving party shall also advise *pro se* litigants about the consequences of their failure to respond to a motion for summary judgment. See also L.R. 56.2.
>
> The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs. *The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.*
>
> Local Rule 7.1(a)(3) (emphasis in original).

**\*2** The record herein contains few undisputed facts. Plaintiff and defendants disagree on many of the events that transpired and provide conflicting accounts of the circumstances surrounding the incident. In support of the motion, defendants properly filed a Statement of Material Facts pursuant to Local Rule 7.1 and notified plaintiff about the consequences of his failure to respond to the motion for summary judgment. Plaintiff does not dispute that he received such notification from defendants. Plaintiff responded with a handwritten "Statement of Facts", without citations to the record, and failed to specifically admit or deny defendants' factual statements as required by Local Rule 7.1. However, plaintiff also annexed a copy of his deposition transcript. In the deposition, upon questioning from defense counsel, plaintiff testified as follows:

Q. ... Have you read the complaint?

A. Yes, ma'am.

Q. So, you are aware of its contents?

A. Yes, ma'am.

Q. Did anyone help you prepare the complaint?

A. No, ma'am.

Q. Are there any statements contained in the complaint that you now wish to change or modify?

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1103045 (N.D.N.Y.)

(Cite as: 2011 WL 1103045 (N.D.N.Y.))

A. I'm not sure.

Q. Well, let me ask you this: So, do you adopt this document under oath as true to the best of your knowledge?

A. Yes, ma'am.

Transcript of Plaintiff's Deposition at 13.

A verified complaint may be treated as an affidavit for the purposes of a summary judgment motion and may be considered in determining whether a genuine issue of material fact exists. *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) (the plaintiff verified his complaint by attesting under penalty of perjury that the statements in the complaint were true to the best of his knowledge). Based upon the aforementioned colloquy, the Court deems plaintiff's complaint to be "verified" and as such, will treat the complaint as an affidavit. *See Torres v. Caron,* 2009 WL 5216956, at *3 (N.D.N.Y.2009). While plaintiff has not formally and technically complied with the requirements of Local Rule 7.1(a)(3), his opposition to defendants' motion contains sworn testimony. In light of his *pro se* status and the preference to resolve disputes on the merits rather than "procedural shortcomings", to the extent that plaintiff's "Statement of Facts" and assertions in the complaint do not contradict his deposition testimony, the Court will consider those facts in the context of the within motion. *See Mack v. U.S.,* 814 F.2d 120, 124 (2d Cir.1987); *see also Liggins v. Parker,* 2007 WL 2815630, at *8 (N.D.N.Y.2007) (citing *Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.1996)). The Court has reviewed plaintiff's complaint and compared the allegations with the testimony presented at his deposition and adopts Magistrate Judge Treece's summary of the "facts" as presented by both parties.[FN2]

> FN2. While the Court adopts Magistrate Judge Treece's recitation of defendants' and plaintiff's versions of the facts, the Court does not adopt the reasoning set forth in the Footnote 2 of the Report and Recommendation.

## II. *Jeffreys* Exception

Defendants argue that the Court should apply *Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir.2005) and award summary judgment dismissing all claims of excessive force based upon plaintiff's implausible and contradictory claims.

*3 "It is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment' ". *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir.2006) (citing *Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir.1997) (unfavorable assessments of a plaintiff's credibility are not "within the province of the court on a motion for summary judgment")). A narrow exception to this general rule was created by the Second Circuit in *Jeffreys:*

> While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether "the jury could reasonably find for the plaintiff," and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account. Under these circumstances, the moving party still must meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor.

> *Id.* at 554 (internal citations and citations omitted).

Here, while plaintiff relies exclusively on his own testimony, for *Jeffreys* to apply, the testimony must also be "contradictory and incomplete". In this regard, defendants argue that plaintiff's allegations are contradicted by his prior accounts of the incident. Defendants cite to the record and argue that plaintiff told Fitzgerald that, "I hit the officer first" and that "I was hurt when I was subdued". Moreover, defendants point out that these statements were documented in an Inmate Injury Report executed by plaintiff.

Plaintiff does not deny making the aforementioned statements. However, in his deposition, plaintiff explained

Not Reported in F.Supp.2d, 2011 WL 1103045 (N.D.N.Y.)

(Cite as: 2011 WL 1103045 (N.D.N.Y.))

those discrepancies and testified:

Q. —did Nurse Fitzgerald ask you any questions while he was examining you?

A. I think he asked me how am I feeling, how did this happen?

Q. And what did you say?

A. I told him I was nervous and that [sic] whatever officer D. Mason told me to tell him.

Q. What did you say?

A. I told him I was nervous and whatever officer D. Mason told me to tell him, which was that I got hurt being subdued—

Q. Which was—

A. —and that I started this.

Q. And is that the truth?

A. No.

Q. Why did you tell the nurse that?

A. Because I was being forced to.

Q. Forced to how?

A. By the officers that [sic] was there.

Q. Did you sign a form admitting that you hit the officer first and you were hurt when you were subdued?

A. Yes, ma'am.

Q. Why did you do that?

A. Because the [sic] officer D. Mason kept smacking me for me to do that.

Transcript of Plaintiff's Deposition at 53–54.

**\*4** In the Report and Recommendation, Magistrate Judge Treece concluded that plaintiff's "fear of retribution" was a plausible explanation for the discrepancies in his testimony. This Court agrees and adopts the Magistrate Judge's conclusions. See *Langman Fabrics v. Graff Californiawear, Inc.,* 160 F.3d 106, 112–13 (2d Cir.1998); *see also Cruz v. Church,* 2008 WL 4891165, at \*5 (N.D.N.Y.2008) ("[t]he Court notes that ... it would be have difficulty concluding that [the][p]laintiff's statement of June 5, 2005, and his statement of June 16, 2005, are wholly irreconcilable, given his proffered explanation that he made the statement of June 5, 2005, out of fear of retribution by [the] [d]efendants.").

Defendants also argue that plaintiff cannot identify which individuals participated in the attack; that plaintiff's injuries are consistent with the brief use of force as described by defendants to subdue plaintiff; and that plaintiff's version is contradicted by defendants' affidavits. Magistrate Judge Treece found that plaintiff was able to identify some individuals involved in the assault which, "stands in stark contrast to the plaintiff in *Jeffreys* who was unable to identify any of the officers involved in the alleged assault". Upon review of the record, as it presently exists, the Court agrees and finds that plaintiff's testimony is not wholly conclusory or entirely inconsistent to warrant application of the *Jeffreys* exception. See *Percinthe v. Julien,* 2009 WL 2223070, at \*7 (S.D.N.Y.2009) (the court rejected the defendants' argument that the plaintiff's claims were subject to dismissal for implausibility as his injuries did not reflect the attack that he described and his description of the incident changed over time holding that the plaintiff's testimony, "[did] not reach the level of inconsistency and lack of substantiation that would permit the Court to dismiss on these grounds").

Magistrate Judge Treece provided an extensive summary of the record and applicable law and found that the evidence did not support deviating from the established rule that issues of credibility are not resolved on summary judgment. On review, the Court agrees with the Magistrate's recommendations and concludes that the *Jeffreys* exception does not apply. Accordingly, the Court accepts and adopts the Report and Recommendation on this issue.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1103045 (N.D.N.Y.)

(Cite as: 2011 WL 1103045 (N.D.N.Y.))

### III. Reyell's Personal Involvement

Defendants argue that the Magistrate Judge erred when he failed to dismiss the complaint against Reyell on the grounds that he was not personally involved in the attack. Defendants claim that the "RRO erroneously cites plaintiff's declaration as stating that 'it was defendant Reyell and another officer who removed the shirt' ". Defendants claim that the declaration and complaint clearly state that, "Officer Rock orchestrated the removal of plaintiff's shirt".[FN3] Defendants argue that the assertions in plaintiff's declaration (submitted in response to the motion for summary judgment) and complaint are contradicted by plaintiff's deposition testimony. Defendants claim that plaintiff testified that Reyell tried to cover up the incident by removing the shirt he was wearing.

> FN3. Officer Rock is not a defendant herein.

**\*5** The Court has reviewed plaintiff's complaint, declaration and deposition transcript and finds defendants' summary of plaintiff's assertions to be inaccurate. In plaintiff's complaint, on page 8, plaintiff alleges:

Feeling extremely weak the claimant responded with a shake of his head. Once this performance was over with Correctional Officer R. Rock, the individual who held on to the photograph camera and who is responsible for capturing the claimant's injuries [sic] photos pointed to the claimant's bloodly [sic] stain kitchen white colored uniform [ ] as co-workers....

Correctional Officer D. Mason then roughly removed the article of clothing and with the help of on[e] other they discarded the item of clothings [sic].

In Paragraph 22 of plaintiff's declaration, he states:

Officer Rock, the individual who held the photograph camera and was responsible for capturing LaTouche injuries [sic] pointed to LaTouche [sic] bloody kitchen white colored uniform to his coworker asking them to remove the article of clothing before he take [sic] any pictures. Mason then roughly removed the clothing and with the help of an other [sic] officer they discarded the items of

clothing.

In his deposition, plaintiff testified:

Q. What about Defendant Reyell, why are you suing Reyell?

A. Because defendant Reyell, that's the officer that was holding the camera and he tried to cover up the incident.

Q. How so?

A. That's when him and the other officer that was there, when they was searching me, strip searching me they took my shirt and they kept screaming something about let's remove this bloodstained shirt, let's remove this bloodstained shirt, we can't have this for the camera.

       * * *

Q. Reyell and another officer took your shirt off?

A. Yes, ma'am.

Q. Do you remember the other officer's name?

A. No, ma'am.

Transcript of Plaintiff's Deposition at 63–64.

Here, the Magistrate Judge stated that any inconsistency or discrepancy [in plaintiff's testimony], "go[es] to the weight ... accorded to plaintiff's testimony". The Court agrees. Any discrepancies or inconsistencies in plaintiff's testimony are for a jury to assess. In the Second Circuit case of *Fischl v. Armitage,* the plaintiff/inmate alleged that he was assaulted in his cell by other inmates. *Fischl,* 128 F.3d at 54. The district court dismissed the plaintiff's complaint as against one defendant based upon "inconsistent statements". *Id.* The Second Circuit vacated the judgment of the district court holding:

[T]he district court apparently questioned whether there had been an attack on Fischl at all, principally because of inconsistencies in his accounts of the event, his failure to report such an attack to prison workers in the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1103045 (N.D.N.Y.)

(Cite as: 2011 WL 1103045 (N.D.N.Y.))

area on that morning, and the failure of those workers to notice any indications that he had been beaten. That skepticism, however, rests on both a negative assessment of Fischl's credibility and the drawing of inferences adverse to Fischl.

**\*6** Likewise, inconsistent statements by Fischl as to, for example, whether it was five, six, or seven inmates who attacked him, and as to what he observed or overheard just prior to the attack, go to Fischl's credibility. While inconsistencies of this sort provide ammunition for cross-examination, and they may ultimately lead a jury to reject his testimony, they are not a proper basis for dismissal of his claim as a matter of law. The jury might well infer, for example, that while Fischl was under siege he was understandably unable to take an accurate census of the number of inmates holding him and kicking him in the face.

  *Fischl,* 128 F.3d at 56.

   In this matter, without a credibility assessment of plaintiff, the record does not warrant an award of summary judgment. Accordingly, the Court adopts the Magistrate's recommendation and denies summary judgment on this issue.

### CONCLUSION

   It is therefore
   **ORDERED** that the Report and Recommendation of United States Magistrate Judge Randolph F. Treece (Dkt. No. 60) is adopted; and it is further

   **ORDERED** that for the reasons set forth in the Memorandum–Decision and Order herein, defendants' motion for summary judgment is granted in part and denied in part; and it is further

   **ORDERED** that the Clerk provide copies of this Order to all parties.

   **IT IS SO ORDERED.**

N.D.N.Y.,2011.

Latouche v. Tompkins
Not Reported in F.Supp.2d, 2011 WL 1103045 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

2016 WL 7156559
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Ramzidden Trowell, a/k/
a Ramziddin Trowell, Plaintiff,
v.
Upstate Correctional Facility, et. al., Defendants.

9:16-CV-0639 (MAD/TWD)
|
Signed 12/07/2016

**Attorneys and Law Firms**

RAMZIDDEN TROWELL, 14-A-4530, Upstate Correctional Facility, P.O. Box 2001, Malone, New York 12953, Plaintiff, pro se.

HON. ERIC T. SCHNEIDERMAN, New York Attorney General, The Capitol, William A. Scott, ESQ., Ass't Attorney General, Albany, NY 12224, Attorney for Defendants.

**DECISION AND ORDER**

MAE A. D'AGOSTINO, United States District Judge

**I. INTRODUCTION**

**\*1** Pro se plaintiff Ramzidden Trowell, an inmate presently confined at Upstate Correctional Facility ("Upstate C.F."), commenced this civil rights action asserting claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 1 ("Compl."). The incidents that formed the foundation for the complaint occurred in February 2016 and March 2016 at Upstate C.F. *See* Compl., *generally.* By Decision and Order filed on July 6, 2016 (Dkt. No. 4) (the "July Order"), this Court granted plaintiff's IFP application and reviewed the sufficiency of the complaint in accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A. On the basis of that review, the Court dismissed the following claims with leave to amend: (1) retaliation claims and Eighth Amendment claims arising from plaintiff's transfers to/from and confinement at Downstate Correctional Facility; (2) excessive force claims related to an incident in February 2016 against

defendant Correctional Officer Garland ("Garland"); (3) Eighth Amendment claims of deliberate indifference to serious medical needs at Upstate C.F.; (4) Eighth Amendment claims related to plaintiff's conditions of confinement at Upstate C.F.; (5) claims related to verbal threats or harassment; (6) excessive force claims related to an altercation involving "two unknown officers" upon plaintiff's arrival at Upstate C.F.; and (7) failure-to-protect claims related to alleged sexual abuse by another inmate. *See* Dkt. No. 4, *generally.* The Court ordered defendant Sergeant Santamore ("Santamore") to respond to plaintiff's Eighth Amendment excessive force claims arising from a February 2016 incident.[1] *See id.* at 20. In light of his pro se status, plaintiff was afforded an opportunity to submit an amended complaint. *See* Dkt. No. 4 at 20. On September 9, 2016, Santamore filed an answer to the complaint. Dkt. No. 9.

Presently before the Court is plaintiff's motion to supplement the complaint.[2] Dkt. No. 8. Plaintiff also filed a motion for preliminary injunctive relief and a request for the appointment of counsel. Dkt. Nos. 11, 12. Defendant takes no position on the motion for counsel or motion to supplement the complaint but opposes plaintiff's request for preliminary injunctive relief. Dkt. No. 13, 16.

**II. MOTION TO SUPPLEMENT COMPLAINT**

**A. Legal Standard**

**\*2** The filing of amended and supplemental pleadings is governed by Rule 15 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 15. Rule 15(a) states that leave to amend shall be freely given "when justice so requires." *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1993). The Supreme Court has stated:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment,

etc.—the leave sought should ... be "freely given."

*Foman*, 371 U.S. at 182. An amendment or supplementation of a pleading is considered a "futile" act when the proposed claim would not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). The decision to grant or deny a motion to amend or supplement is committed to the sound discretion of the trial court, and the court's decision is not subject to review on appeal except for abuse of discretion. *See Fielding v. Tollaksen*, 510 F.3d 175, 179 (2d Cir. 2007).

In the case of proposed amendments where new defendants are to be added, the Court must also look to Rules 20 and 21. *Ward v. LeClaire*, No. 07-CV-0026 (LEK/RFT), 2008 WL 182206, at *3 (N.D.N.Y. Sept. 26, 2007) (citing *United States v. Chilstead Bldg. Co.*, No. 96-CV-0641 (N.D.N.Y. Nov. 7, 1997) (McAvoy, C.J.)). Rule 21 states that a party may be added to an action "at any time [and] on just terms." Fed. R. Civ. P. 21. Rule 21 is "intended to permit the bringing in of a person, who through inadvertence, mistake or for some other reason, had not been made a party and whose presence as a party is later found necessary or desirable." *Goston v. Potter*, No. 9:08-CV-0478 (FJS/ATB), 2010 WL 4774238, at *5 (N.D.N.Y. Sept. 21, 2010) (quoting *United States v. Commercial Bank of N. Am.*, 31 F.R.D. 133, 135 (S.D.N.Y. 1962) (internal quotations marks omitted)). [3] Rule 20(a)(2) is liberally construed "so as to promote judicial economy and to allow related claims to be tried within a single proceeding." *Equal Emp't Opportunity Comm'n v. Nichols Gas & Oil, Inc.*, 518 F. Supp. 2d 505, 508-09 (W.D.N.Y. 2007) (citing, inter alia, *Barr Rubber Prods. Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1127 (2d Cir. 1970)).

A motion to amend may properly be denied where the requested relief would be futile. *Foman, supra*, 371 U.S. at 182. An amendment or supplementation of a pleading is considered a "futile" act when the proposed claim would not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir. 2002). Thus, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo*

*v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted).

**B. Plaintiff's Motion**

*3 In support of his motion, plaintiff submitted a proposed pleading which names new defendants and sets forth new claims arising from incidents that occurred at Upstate C.F. [4] Dkt. No. 8 at 1-2 ("Supp. Compl."). As alleged in this pleading, plaintiff was harassed, physically and sexually assaulted, and injured by officers in August 2016. *See id.* at 2-3. Defendant takes no position on plaintiff's motion but notes that plaintiff's supplement does not appear to have any relation to the facts alleged in his underlying complaint. *See* Dkt. No. 16 at 1.

**C. Discussion**

The Court has thoroughly reviewed the proposed pleading and finds that the claims asserted are sufficiently related to the original claims, defendants, and complaint. *See Keith v. Volpe*, 858 F.2d 267, 474 (9th Cir. 1988) (holding that "[w]hile some relationship must exist between the newly alleged matters and the subject of the original action, they need not all arise out of the same transaction."). Defendant has not opposed plaintiff's request to supplement and it does not appear to this Court that plaintiff has delayed unduly in bringing his motion. The requested supplements do not significantly change the theory of the case, and the Court is not persuaded that resolution of this matter will be significantly delayed by the filing of the supplemental pleading. With that in mind, the Court will review plaintiff's proposed supplemental complaint thoroughly, with due regard for his status as a pro se litigant. [5]

**III. ANALYSIS OF SUPPLEMENTAL COMPLAINT**
The supplemental complaint includes new factual allegations and claims against new defendants: Sergeant W. Vesneske ("Vesneske"), Manson, and C.O. Succee ("Succee"). *See* Supp. Compl., *generally.* Moreover, while not identified as a defendant in the caption or in the list of parties, the amended complaint contains factual allegations and claims against Officer B. Fleury ("Fleury"). *See id.*

On August 5, 2016, plaintiff was called to his cell door in the Special Housing Unit ("SHU") to receive his HIV medication. Supp. Compl. at 2. When the nurse attempted

to give plaintiff his medication, Garland intervened and began to harass plaintiff. *Id.* Garland refused to give plaintiff his medication. *Id.* Plaintiff spoke with mental health staff and a sergeant was summoned. *Id.* at 3. When Vesneske arrived, plaintiff refused to discuss the issue with him. Supp. Compl. at 3. Vesneske and Succee ordered plaintiff's bunk mate to physically assault plaintiff but the inmate did not comply with the directive. *Id.*

Plaintiff refused an order by officers to "cuff up" for an escort to the mental health unit. [6] Supp. Compl. at 3. Plaintiff was "gassed" and physically beaten inside his cell. [7] *Id.* Plaintiff was handcuffed, shackled, stripped to his underwear, and dragged to the infirmary, where the assault continued. Supp. Compl. at 3. When plaintiff was about to "pass out from the pain," Fleury put a gloved finger in his anus and called plaintiff "a bitch." *Id.*

**\*4** The proposed supplemental complaint asserts the following: (1) claims that Garland, Vesneske, and Succee threatened and harassed plaintiff in violation of his Eighth Amendment rights; (2) Eighth Amendment excessive force claims against unidentified defendants; (3) Eighth Amendment sexual assault claim against Fleury; and (4) Eighth Amendment claim against the "Medical Department" for deliberate indifference to plaintiff's serious medical needs. *See* Supp. Compl, *generally.*

## IV. ANALYSIS

### A. Eighth Amendment Claims

The caselaw surrounding Eighth Amendment claims of excessive force, deliberate indifference to medical needs, and threats was discussed at length in the July Order and will not be restated in this Decision and Order. *See* Dkt. No. 4 at 9-17.

### 1. Harassment

Construing the proposed supplemental complaint liberally, plaintiff claims that he was harassed by Garland, Vesneske, and Succee. The allegations in the proposed pleading suffer from the same infirmities as the original harassment allegations. Accordingly, for the reasons set forth in the July Order, plaintiff's Eighth Amendment harassment claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(b) and 28 U.S.C. § 1915A(b).

### 2. Excessive Force

The law, as it pertains to personal involvement in 1983 actions, was discussed in the July Order. *See* Dkt. No. 4 at 8. In the supplemental complaint, plaintiff summarily states that he was, "gassed and physically beaten while inside the cell." *See* Supp. Compl. at 3. However, plaintiff did not identify any individual(s) or officer(s) personally involved in the alleged assault. For the reasons set forth in the July Order, plaintiff's claims related to the alleged assault in his cell and at the infirmary are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Sexual Assault

"Because sexual abuse of a prisoner by a corrections officer may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind, allegations of such abuse are cognizable as Eighth Amendment claims." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997). "A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." *Crawford v. Cuomo*, 796 F.3d 252, 256-57 (2d Cir. 2015). "[A] single incident of sexual abuse, if sufficiently severe or serious, may violate an inmate's Eighth Amendment rights no less than repetitive abusive conduct." *Id.*

Here, plaintiff claims that Fleury "put a gloved finger in [his] anus and called [him] a bitch." *See* Supp. Compl. at 3. At this juncture, plaintiff has sufficiently plead an Eighth Amendment claim against Fleury based upon this incident. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

### 4. Deliberate Indifference to Medical Needs

In the supplemental complaint, plaintiff claims that he sustained injuries to his back and arm as a result of the August 2016 assault. *See* Supp. Compl. at 5. Even assuming plaintiff sufficiently plead that he suffered from a serious medical need, plaintiff must allege facts to establish the subjective element of the Eighth Amendment analysis.

Case 9:16-cv-00275-LEK-DEP    Document 32    Filed 05/21/18    Page 50 of 109

In the July Order, the Court dismissed plaintiff's Eighth Amendment claims holding:

   **\*5** Plaintiff does not name or otherwise identify any individual as personally involved in his deprivation of medical treatment. As presently plead, plaintiff's allegations do not plausibly "allow[ ] the court to draw the reasonable inference that [any] defendant is liable for the misconduct alleged."

Dkt. No. 4 at 13-14 (internal citations omitted).

Plaintiff's supplemental complaint suffers from similar deficiencies. Plaintiff claims that he suffered a "lack of medical attention" from the "medical department," *see* Supp. Compl. at 5, however the complaint does not contain any facts related to who plaintiff complained to, the substance of his complaints, or the response, if any, to his complaints. *See Kee v. Hasty*, No. 01 Civ. 2123, 2004 WL 807071, at \*29 (S.D.N.Y. April 14, 2004) (holding that the plaintiff's Eighth Amendment claims were overly conclusory because the inmate failed to specify the dates on which he was denied proper treatment, the nature of his needs on those dates, and the nature of the treatment that was purportedly denied by the defendants).

To the extent that plaintiff attempts to assert a cause of action against the "medical department," that claim is subject to dismissal because only "persons" may act under the color of state law. Here, the use of the term, "medical department" as an alleged defendant, without naming specific individuals, is not adequate to state a claim against a "person" as required in § 1983 actions. *See Martin v. UConn Health Care*, 99-CV-2158, 2000 WL 303262, at \*1-2 (D. Conn. Feb. 9, 2000); *Ferguson v. Morgan*, No. 90 Civ. 6318, 1991 WL 115759, at \*1 (S.D.N.Y. June 20, 1991) (holding that Otisville Correctional Facility medical staff not a person under § 1983).

For these reasons and the reasons set forth in the July Order, plaintiff's Eighth Amendment medical indifference claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

**B. Claims Against Manson**
Plaintiff names Manson as a defendant in the caption, however, the complaint lacks any facts related to Manson. Indeed, Manson is not referenced anywhere in the body of the complaint. "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *see also Cipriani v. Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, \*1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff") (citation omitted); *see also Casino v. Rohl*, No. 14-CV-2175, 2014 WL 5425501, at \*6 (E.D.N.Y. Oct. 23, 2014) (holding that since the defendant is nowhere mentioned or referenced in the body of the amended complaint, the plaintiff did not adequately plead personal involvement in any of the constitutional deprivations). In the absence of factual allegations sufficient to plausibly suggest that Manson was personally involved in conduct that violated plaintiff's constitutional rights, the complaint fails to state a cognizable claim against Manson.

**C. Remaining Requests for Relief Dismissed**
 **\*6** In the section of the complaint entitled "Relief," plaintiff indicates that he would like to "sue" for retaliation. *See* Supp. Compl. at 5. However, the supplemental complaint, as presently written contains no facts suggesting that plaintiff was the victim of any retaliatory action.

Plaintiff also seeks to "press charges" against all defendants. There exists no constitutionally protected right to file criminal charges against another." *Mercer v. Benson*, No. 08-CV-0537 (DNH/DRH), 2009 WL 3111684, at \*3, n. 7 (N.D.N.Y. Sept. 23, 2009) (citing *Langworthy v. Dean*, 37 F.Supp.2d 417, 422 (D. Md. Feb. 8, 999) ("[A] right to compel the prosecution of criminal activity does not exist.")); *see also Porter v. Goord,* No. 04-CV-0485, 2004 WL 2271383, at \*3 (W.D.N.Y. Oct. 5, 2004) ("a private citizen is not constitutionally entitled to a criminal investigation or the pursuit of a criminal prosecution") (citing *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973)).

Based upon the foregoing, the Court finds that the Eighth Amendment claim against defendant Fleury set forth in the supplemental complaint is cognizable in this Section 1983 action and therefore grants this aspect of plaintiff's motion to supplement. Plaintiff's motion is denied in all other respects as futile.

Case 9:16-cv-00275-LEK-DEP   Document 32   Filed 05/21/18   Page 51 of 109

## V. Motion for Appointment of Counsel

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [The Court] should first determine whether the indigent's position *see*ms likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)) (internal quotation marks omitted). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F.Supp. 972, 974 (N.D.N.Y. 1995) (citing *Hodge*, 802 F.2d at 621).

At this preliminary stage, the Court is unable to determine whether plaintiff meets the threshold requirement that at least some aspects of his claim are "likely to be of substance." *Hodge*, 802 F.2d at 61. Plaintiff has not submitted any evidence supporting his claims and plaintiff's request for counsel is not accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector. *See Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994); *Cooper v. Sargenti Co., Inc.*, 877 F.2d 170, 172, 174 (2d Cir. 1989). Even if the Court were to assume, for purposes of this motion, that plaintiff's position seems likely to be of substance, the relevant factors weigh decidedly against granting plaintiff's motion at this time.

For example: (1) the case does not present novel or complex issues; and (2) it appears to the Court as though, to date, plaintiff has been able to effectively litigate this action. The Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation. *See Terminate Control Corp.*, 28 F.3d at 1341; *Hodge*, 802 F.2d at 61. Thus, plaintiff's motion for the appointment of counsel is denied without prejudice.

**\*7** For these reasons, plaintiff's motion for the appointment of counsel is denied without prejudice. After defendants have responded to the allegations in the amended complaint, and the parties have undertaken discovery, plaintiff may file a second motion for appointment of counsel, at which time the Court may be better able to determine whether such appointment is warranted in this case. It is the plaintiff's responsibility to retain an attorney or press forward with this lawsuit pro se. *See* 28 U.S.C. § 1654; *see also Phillips v. Goord*, No. 08-CV-0957, 2009 WL 909593, at \*1, n.3 (W.D.N.Y. April 1, 2009).

## VI. Motion for a Preliminary Injunction

Plaintiff moves for preliminary injunctive relief to prevent harassment by various officers. See Dkt. Nos. 11, 12. Plaintiff also seeks an order placing him in protective custody. *See id.*

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). The standard a court must utilize in considering whether to grant a request for injunctive relief is well-settled in this Circuit. *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35, 38 (2d Cir. 2010). A plaintiff must demonstrate irreparable harm and either a substantial likelihood of success on the merits of the claim, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *Id.* at 35; *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011). However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher. *Id.*; *see also Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996). Thus, a mandatory preliminary injunction "should

Case 9:16-cv-00275-LEK-DEP   Document 32   Filed 05/21/18   Page 52 of 109

issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Citigroup Global Mkts.*, 598 F.3d at 35 n.4 (internal quotation marks omitted). The district court has wide discretion in determining whether to grant a preliminary injunction. *Moore*, 409 F.3d at 511.

"To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint. *Levesque v. Clinton County,* No. 10-CV-787 (DNH/DEP), 2012 WL 6948779, at \*11 (N.D.N.Y. Dec. 28, 2012) (citing *inter alia Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)) (a preliminary injunction may not be issued to prevent an injury or harm which was not caused by the wrong claimed in the underlying action); *see also Allen v. Brown*, No. 96-CV-1599 (RSP/GJD), 1998 WL 214418, \*4 (N.D.N.Y. Apr. 28, 1998) (denying request for injunctive relief where allegations in application for such relief were unrelated to claims asserted in the complaint and, thus, plaintiff "failed to establish either a likelihood of succeeding on the merits of his underlying claim, or sufficiently serious questions going to the merits of such claim and a balance of hardships tipping decidedly toward" the plaintiff).

Here, as plaintiff seeks a mandatory injunction, he must meet the higher standard and establish a clear or substantial likelihood of success or show that extreme or very serious damage would result in the absence of the requested relief. *See Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995); *see also Nicholson v. Fischer*, No. 13-CV-6072, 2014 WL 666913, at \*2 (W.D.N.Y. Nov. 10, 2014) (reasoning that plaintiff must meet the higher standard as his request to move to protective custody seeks to alter the status quo). To the extent that plaintiff seeks injunctive relief against individuals who are not defendants herein, that request is denied. Injunctive relief is available against non-parties only under very limited circumstances, none of which are present here. *See* Fed. R. Civ. P. 65(d)(2); *Doctor's Associates, Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302-03 (2d Cir. 1999); *United States v. Regan*, 858 F.2d 115, 120 (2d Cir. 1988); *see also In re Rationis Enterprises, Inc. of Panama*, 261 F.3d 264, 270 (2d Cir. 2001) ("A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction.").

\*8 Construing plaintiff's motions in the light most favorable to him as a pro se plaintiff, the Court finds that plaintiff has failed to substantiate any allegations of irreparable harm with evidence in admissible form or to demonstrate, with evidence, a likelihood of success on the merits of his underlying claims, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *See Hancock v. Essential Res., Inc.,* 792 F. Supp. 924, 928 (S.D.N.Y. 1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals").

Plaintiff's fear that he may be assaulted in the future is purely speculative and, therefore, patently insufficient to show that he is likely to suffer imminent irreparable harm if the requested relief is not granted. *See e.g., Slacks v. Gray*, No. 9:07-CV-0501(NAM/GJD), 2008 WL 2522075, at \*1 (N.D.N.Y. June 25, 2008) (finding that allegations of future injury, without more, do not establish a real threat of injury) (citations omitted); *see also Agostini v. Backus*, No. 15-CV-6188, 2015 WL 1579324, at \*3 (W.D.N.Y. Apr. 9, 2015) (reasoning that the plaintiff's concern about threats and future retaliation, even if sincere, is speculative insufficient to establish irreparable harm). In his motion, plaintiff sets forth factual allegations related to the August 5, 2016 incidents, the same incidents that formed the foundation for the supplemental complaint. *See* Dkt. No. 12 at 1. Plaintiff cannot base his request for relief upon past conduct and the anticipation of future assaults. *See Garcia v. Arevalo*, No. 93 CIV. 8147, 1994 WL 383238, at \*2 (S.D.N.Y. June 27, 1994) ("Such a bare allegation of future injury does not demonstrate a real threat of actual injury. It is well settled that an allegation of the mere possibility of irreparable harm is insufficient to justify the drastic remedy of preliminary injunction.") (citing *Borey v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 934 F.2d 30 (2d Cir. 1991)).

To the extent that plaintiff claims he is being denied medical attention, plaintiff states only that he has complained to "the medical department" and "mental health" but the "people" at "this facility are not trying to cooperate." *See* Dkt. No. 12 at 1-2. As discussed *supra*, in the proposed supplemental complaint, plaintiff failed to sufficiently allege facts to establish a cause of action for a violation of his Eighth Amendment rights related to his medical treatment. More importantly, the named defendants have no connection to plaintiff's medical

Trowell v. Upstate Correctional Facility, Slip Copy (2016)
Case 9:16-cv-00275-LEK-DEP   Document 32   Filed 05/21/18   Page 53 of 109

2016 WL 7156559

treatment. Thus, plaintiff cannot establish a likelihood of success on the merits of his underlying claim and plaintiff's request for relief is denied. *See Mitchell v. New York State Dep't of Corr. Srvs.*, No. 06-CV-6278, 2011 WL 5326054, at *3 (W.D.N.Y. Nov. 3, 2011) (the facts underlying the request for injunctive relief are essentially unrelated to the underlying facts of the claims in this action, except for the fact that they arise in the prison context).

Further, it is noted that the relief requested by plaintiff amounts to little more than an "obey the law" injunction. "Obey the law" injunctions are vague, do not require the defendants to do anything more than that already imposed by law, subject the defendants to contempt rather than statutorily prescribed sanctions, and are not readily capable of enforcement. As such, these injunctions are not favored. *N.L.R.B. v. Express Pub. Co.*, 312 U.S. 426, 435-36 (1941); *see also Rowe v. New York State Division of Budget*, No. 1:11-CV-1150 (LEK/DRH), 2012 WL 4092856, at *7 (N.D.N.Y. Sept. 17, 2012); *New York v. Shinnecock Indian Nation*, 560 F. Supp. 2d 186, 189 (E.D.N.Y. 2008). According to the Second Circuit, "[u]nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law." *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240 (2d Cir. 2001) (quoting *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996)).

**\*9** Accordingly, plaintiff's motion for preliminary injunctive relief (Dkt. Nos. 11 and 12) is denied. [8]

## VII. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's motion to supplement the complaint is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that the Clerk of the Court is directed to create a new docket entry incorporating the original complaint (Dkt. No. 1) with the supplemental complaint (Dkt. No. 8) and entitle the entry, "Amended Complaint;" and it is further

**ORDERED** that the amended complaint shall be the operative pleading in this action; and it is further

**ORDERED** that the Clerk of the Court is also directed to amend the docket to include Fleury as a defendant; and it is further

**ORDERED** that the following claims are **DISMISSED** for failure to state a cause of action: (1) Eighth Amendment claims related to threats; (2) Eighth Amendment excessive force claims; (3) Eighth Amendment deliberate indifference claims related to plaintiff's medical needs; and (4) retaliation claims; and it is further

**ORDERED**, that a response to the amended complaint be filed by defendant Santamore, or his counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED**, that the Clerk shall issue a summons and forward it, along with copies of the amended complaint, to the United States Marshal for service upon Fleury. The Clerk shall forward a copy of the summons and amended complaint to the Office of the New York Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED**, that a response to the amended complaint be filed by Fleury, or his counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**\*10 ORDERED** that plaintiff's motion for the appointment of counsel (Dkt. Nos. 11 and 12) is **DENIED with leave to renew**; and it is further

**ORDERED** that plaintiff's motion for injunctive relief (Dkt. Nos. 11 and 12) is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2016 WL 7156559

Footnotes

1   The Court also held that plaintiff's Eighth Amendment claims against John Does 1 through 5 survived sua sponte review. *See* Dkt. No. 4 at 10-11. Plaintiff was advised that the United States Marshals Service could not effect service on an unidentified defendant. In the event that plaintiff wished to pursue any claims against any John Doe, he was directed to take reasonable steps to ascertain the identity of that defendant. *See id.* at 20, n.8.

2   Upon review of the submission, the Court considered plaintiff's motion as seeking leave to supplement the original complaint with allegations regarding incidents that occurred in August 2016.

3   "Rule 21 cannot be read alone but must be read in the light of Rules 18, 19 and 20[.]" *Commercial Bank of N. Am*, 31 F.R.D. at 135. In this respect, the federal rules state, in part, that "[p]ersons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

4   The proposed supplement includes new claims against Garland, an original defendant. Pursuant to the July Order, Garland was dismissed as a defendant. *See* Dkt. No. 4 at 20.

5   The legal standard governing the dismissal of a pleading for failure to state a claim was discussed at length in the July Order and it will not be restated in this Decision and Order. *See* Dkt. No. 4 at 2-4.

6   The supplement does not contain facts regarding which officers directed plaintiff to "cuff up."

7   Plaintiff does not identify the individuals involved in this incident.

8   Plaintiff is advised that concerns regarding his current conditions of confinement at Upstate C.F. should be addressed through administrative channels at Upstate C.F. and the New York State Department of Corrections and Community Supervision and, if necessary, by means of a properly filed action in the appropriate District Court.

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2005 WL 928620

KeyCite Yellow Flag - Negative Treatment
Distinguished by Smith v. Burge, N.D.N.Y., September 28, 2006

2005 WL 928620
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Ronald DAVIDSON, Plaintiff

v.

John TALBOT, Auburn Corr. Fac.; Richard Smith,
Auburn Corr. Fac.; M.D. Anthony Graceffo, Fac.
Health Servs. Dir.; Hans Walker; Gary Hodges,
Deputy Supt., Auburn Corr. Fac.; Glen Goord,
Comm'r of Docs; M.D. Lester Wright, Chief Medical
Officer of Docs; United Health Care; Estate of
Edward Dann; Jerry S. Leonard, Chief Medical
Officer of Docs; John Does 1-10, Defendants.

No. Civ.9:01 CV 0473.
|
March 31, 2005.

**Attorneys and Law Firms**

Ronald Davidson, 76-A-1166, Shawangunk Correctional
Facility, Wallkill, New York, Plaintiff pro se.

Hon. Eliot Spitzer, Attorney General of the State of
New York, Office of Attorney General-Albany Office,
The Capitol, Albany, New York, for Defendants Talbot,
Smith, Graceffo, Goord, and Estate of Dann, of counsel.

Charles J. Quackenbush, Assistant Attorney General, of
counsel.

REPORT-RECOMMENDATION AND ORDER

TREECE, Magistrate J.

**\*1** Plaintiff Ronald Davidson brings this *pro se* action,
pursuant to 42 U.S.C. § 1983, alleging Defendants violated
his civil rights. Specifically, Davidson alleges that on
or about April 6, 1998, while incarcerated at Auburn
Correctional Facility, he was assaulted by Defendants
Talbot and Smith "as payback" for filing complaints
and court cases against their co-workers at Auburn. Dkt.
No. 36, 2d Am. Compl. at ¶¶ 1-4. Plaintiff also claims
that Defendants Walker, Hodges,[1] and Dann authorized

the use of force on Plaintiff and that he suffered back
and shoulder injuries as a result of the attack. *Id.* at ¶¶
5-6. Plaintiff claims that he was denied proper medical
care by Defendants Leonard and United Health Care in
deliberate indifference to his serious medical needs. *Id.*
Finally, Davidson alleges that he informed Defendants
Goord and Graceffo of the denial of medical care and they
failed to intervene on his behalf. *Id.*

Presently before this Court is a Motion for Summary
Judgment brought by Defendants Talbot, Smith,
Graceffo, Goord, and Estate of Dann, pursuant to FED.
R. CIV. P. 56(b). Dkt. No. 46. Plaintiff opposes the
Motion. Dkt. Nos. 56-57.[2] For the reasons that follow, it
is recommended that Defendants' Motion be granted and
Plaintiff's Second Amended Complaint be dismissed in its
entirety.

I. BACKGROUND

A. Procedural History

Because not all Defendants have been served with process,
a recitation of the procedural history, which is somewhat
convoluted, is warranted. Plaintiff timely commenced this
action on or about April 3, 2001, by filing his verified
Complaint with the Clerk of the Court. Dkt. No. 1,
Compl.[3] Plaintiff simultaneously filed an Application to
Proceed *In Forma Pauperis.* Dkt. No. 2.

On May 4, 2001, the Honorable Frederick J. Scullin,
Chief United States District Judge, granted permission
for Davidson to proceed *in forma pauperis* and ordered
Davidson to file an amended complaint that complied
with Rules 8 and 10 of the Federal Rules of Civil
Procedure. Dkt. No. 4. In accordance with such directive,
Davidson filed an Amended Complaint (Dkt. No. 6),
which was thereafter approved for service on the named
Defendants (Dkt. No. 7). Plaintiff was warned, however,
that the U.S. Marshals Service could not effect service
on "the Estate of Edward Dann" as a Defendant unless
Plaintiff first ascertains the identity of an individual
authorized to accept service of process on behalf of the
Estate. Dkt. No. 7 at p. 2. Thereafter, according to
the Docket Report, on August 21, 2001, Summonses
were issued for John Talbot, Richard Smith, Anthony
Graceffo, Hans Walker, Gary Hodges, Glen Goord,

WESTLAW  © 2018 Thomson Reuters. No claim to original U.S. Government Works.    1

2005 WL 928620

Lester Wright, United Health Care, Jerry S. Leonard, and Edward Dann.

On September 17, 2001, the Court received a letter, dated July 2, 2001, from William M. Gonzalez, Esq., Deputy Counsel for the New York State Department of Correctional Services (DOCS), informing the Court that Edward Dann was deceased. Dkt. No. 8. That same date, the Summonses issued for Defendants Dann and Leonard were returned to the Court unexecuted. Dkt. Nos. 9 & 10. On February 1, 2002, Davidson filed a Motion for Injunctive Relief seeking an Order from the Court directing (1) the U.S. Marshals Service "to use their resources" to locate Defendant Leonard and serve him with process; (2) Defendants to disclose the full name and address of the Executor of the Estate of Edward Dann; (3) Defendants to disclose the file number and county of the surrogate court where Dann's Estate is probated; and (4) Anthony Annucci, Esq., DOCS counsel, to accept service of process on behalf of Edward Dann and/or Estate of Edward Dann. Dkt. No. 14. Plaintiff identified Defendant Leonard as the President and Chief Executive Officer of United Health Care Group, Inc., (United) and further alleged that United provided inmate medical services under a contract with NYSDOCS. With regard to service on Leonard, Davidson provided an address for United in Anaheim, California, however, service attempted at that address was returned with the notation "not at this address." Dkt. No. 10.

 *2 In light of alleged contractual relationship between United and DOCS, court staff wrote to Mr. Gonzalez, Deputy Counsel for DOCS, requesting assistance in determining whether DOCS had an address on file for Defendant Leonard. Dkt. No. 16. Thereafter, on April 25, 2002, this Court granted in part and denied in part Plaintiff's request for injunctive relief. Dkt. No. 17. Specifically, with respect to Defendant Leonard, we directed no action be taken until DOCS responded to the Court's letter. Id. at p. 3. With regard to Defendant Dann, we noted that Defendant Dann deceased prior to the initiation of this suit and that Plaintiff's difficulty in effecting service was due to his inability to properly identify this Defendant. Id. at p. 4. We nevertheless directed DOCS to inform the Court "whether it has been appointed agent for service of process by the successors or representatives of Edward Dann and, if not, to provide the Court with any information it may have regarding the identity and location of Dann's successors

or representatives." Id. at p. 4. In light of the fact that none of the other Defendants appeared to have been served, we further directed the Marshals Service to advise the Court in writing its efforts to effect timely service on the remaining Defendants. Id. at p. 5.

On May 2, 2002, the Court received a letter from Mr. Gonzalez advising that he has an address for Jerry Leonard and the Estate of Dann has designated DOCS Counsel's Office as its agent for service of process. Dkt. No. 18. On May 16, 2002, the Court received a letter from Barbara Wright, Administrative Officer, United States Marshal Service, advising that her office had never received Summonses, copies of the Complaint, nor USM-285 forms [4] for any Defendant other than Leonard and Dann. Dkt. No. 19. Accordingly, on May 30, 2002, this Court directed that Summonses be reissued for each Defendant and forwarded to the Marshals Service, along with copies of the Amended Complaint, for service on the Defendants. Dkt. No. 20 at p. 2. We also provided specific addresses for service on Defendants Dann and Leonard and further directed Plaintiff to complete the necessary USM-285 forms for each Defendant. Id. at pp. 2-3. Summonses were accordingly reissued by the Clerk of the Court and were returned executed for the following Defendants: John Talbot, Richard Smith, Glen Goord, and Anthony Graceffo. Dkt. Nos. 21-24. The Summonses for Defendants Walker and Hodges were returned unexecuted with a note to Plaintiff from the Marshals Service indicating that Plaintiff must notify the Service in writing if he wanted the Service to make further service attempts. Dkt. Nos. 26-27.

On August 21, 2002, Defendants Talbot, Smith, Graceffo, and Goord, made a Motion for a More Definitive Statement and a Motion to Strike Part of the Amended Complaint, pursuant to Rules 12(e) and 12(f) of the Federal Rules of Civil Procedure (Dkt.Nos.29-30); Plaintiff opposed the Motion (Dkt. No. 31). By their Motion, Defendants sought a more definitive description of the actions Davidson took with regard to exhaustion of administrative remedies. In ruling on Defendants' Motion, we found that Plaintiff's pleading was adequate to survive Defendants' Motion, but nevertheless directed Plaintiff to file an amended complaint that alleges in detail the steps he took to exhaust his administrative remedies with respect to all claims. [5] Dkt. No. 32.

**\*3** On May 13, 2003, Plaintiff filed his Second Amended Complaint in compliance with our directive. Dkt. No. 35. Defendants urged the Court not to accept the Second Amended Complaint as it still suffered from the same deficiency with regard to exhaustion. Dkt. No. 37. On June 17, 2003, we reviewed the contents of the Second Amended Complaint as well as Defendants' Objections and determined that the pleading sufficiently complied with our directives and ordered Defendants to file an answer to the Second Amended Complaint. Dkt. No. 38. In that same Order, we revisited the issue of service on Defendants Dann and Leonard in light of the fact that the Summonses had still not been returned. We again directed the Marshals Service to review its files and advise the Court, in writing, of the status such service. *Id.* On July 3, 2003, Defendants Talbot, Smith, Graceffo, and Goord filed an Answer to the Second Amended Complaint. Dkt. No. 39. On July 7, 2003, the Court received a letter from the Marshals Service indicating that on June 6, 2002, Summonses were received for Defendants Goord, Hodges, Walker, Graceffo, Smith, and Talbot, but not for Dann and Leonard, nor had the Service received USM-285 forms from Plaintiff for Defendants Dann and Leonard. Dkt. No. 40. On March 22, 2004, Summonses were reissued by the Clerk of the Court for Defendants Dann and Leonard. Then, on April 19, 2004, Plaintiff was informed by the Marshals Service that he failed to provide USM-285 forms for "all defendants to be served." Dkt. No. 45. On May 28, 2004, the Summonses for Defendants Dann and Leonard were returned unexecuted. Dkt. Nos. 47-48. Notably, in filling out the USM-285 forms, Plaintiff indicated the same address for Defendants Dann and Leonard, that is, DOCS General Counsel, 1220 Washington Avenue, Albany, New York. *Id.* The Court was later advised by Deputy Counsel Gonzalez that the refusal to accept service on behalf of the Estate of Dann was in error. Dkt. No. 51. As to Defendant Leonard, Mr. Gonzalez reiterated that DOCS has not been designated as an agent to accept process, and thus, the refusal to accept such service on behalf of Mr. Leonard was proper. *Id.* Once again, a Summons was issued for Defendant Dann; such Summons was returned executed on August 16, 2004. Dkt. No. 54.

On September 9, 2003, a Pre-Trial Scheduling Order was issued in this case setting the following deadlines: Discovery Deadline-January 30, 2004; Motion to Compel Filing Deadline-February 28, 2004; Motion Filing Deadline-May 30, 2004. Dkt. No. 42. On June 1, 2004,

Defendants Goord, Graceffo, Smith, and Talbot filed an untimely Motion for Summary Judgment, which was opposed by Plaintiff and is now under review. After service had finally been effectuated on Defendant Estate of Dann, Defendants requested that the Motion for Summary Judgment be considered submitted on behalf of Mr. Dann's estate as well. Dkt. No. 52. To date, service has not been properly effectuated on Defendants Walker, Hodges, Wright, Leonard, or United Health Care.

### B. Facts

**\*4** The following material facts are uncontroverted. [6] Plaintiff is a New York State prison inmate. In April 1998, Davidson was housed at the Auburn Correctional Facility, in Auburn, New York, a maximum security prison. Dkt. No. 46, Charles J. Quackenbush, AAG, Decl. at ¶ 2, Ex. A (copy of DOCS Inmate Locator System Printout for Davidson); N.Y. COMP.CODES R. & REGS. tit. 7, § 100.10. According to facility log entries, on April 6, 1998, at approximately 11:45 a.m., Davidson and other inmates were taken from the Auburn Special Housing Unit (SHU) to the Walsh Regional Medical Unit and were returned to Auburn at 4:45 p.m. Dkt. No. 46, Defs.' 7.1 Statement at ¶ 2; E. Scott Talbot Decl., Ex. A-1 (SHU log entries).

Upon Davidson's return to the facility, he was escorted by correction officer (C.O.) Talbot, C.O. Hai, and Sergeant (Sgt.) Valentino from SHU to the E-Block, a general population section of the prison. Defs.' 7.1 Statement at ¶ 3; Talbot Decl., at ¶ 10, Exs. A-1 & A-2. Pursuant to standard procedure, Plaintiff's hands were cuffed behind his back during the escort. *Id.* At approximately 5:02 p.m., Davidson began complaining of chest pains and requested an emergency sick call, however, such request was denied when a nurse advised E-Block security staff that Plaintiff had just returned from a hospital trip rendering an emergency sick call unnecessary. [7] Defs.' 7.1 Statement at ¶ 7; Talbot Decl., Ex. A-2; Anthony J. Graceffo, M.D., Decl., Ex. A (Davidson's Ambulatory Health Record (AHR)). At approximately 5:41 p.m., Defendants Talbot and Smith escorted Plaintiff from the E-Block to the infirmary where he was examined by a facility nurse who addressed his complaints of tightness in his chest. Defs.' 7.1 Statement at ¶ 9; Talbot Decl. at ¶¶ 15-16; Richard Smith Decl. at ¶¶ 15-16; AHR, entry dated Apr. 6, 1998 at 1745 hours). His blood pressure was measured and an

electrocardiogram (EKG) was performed; Davidson had no discernible cardiac problem and made no complaints about physical abuse. *Id.* At the conclusion of the medical examination, Talbot and Smith re-cuffed Davidson and escorted him back to E-Block. Defs.' Decl. at ¶ 13; Talbot Decl. at ¶ 16; Smith Decl. at ¶ 16. After receiving his evening kosher meal and medications, Smith and Talbot returned Davidson to his E-Block cell. *Id.*

Later that day, at approximately 11:50 p.m., Davidson again requested an emergency sick call. According to the AHR, C.O. Woodward [8] notified Richard Sharples, [9] the nurse on duty at the infirmary, that Davidson was again complaining of cardiac pain. Defs.' 7.1 Statement at ¶ 17; Graceffo Decl. at ¶ 15, AHR, entry dated Apr. 6, 1998, 2345 hours; Richard Sharples Decl. at ¶ 5. Woodward also advised the nurse that Davidson had been smoking cigarettes in his cell. *Id.* The nurse stated that Davidson had been seen during the previous shift and his problems had been addressed, he should stop smoking, and could put in for a sick call in the morning. *Id.* On April 7, 1998, shortly after midnight, Davidson was informed that his request for sick call was denied. In response, Davidson insisted upon his chest pain complaint and stated that he had been in an altercation with correctional officers sometime during April 6 and injured his shoulder. Defs.' 7.1 Statement at ¶ 18; Talbot Decl., Ex. A-2 (log report); Sharples Decl. at ¶ 6. At approximately 12:30 a.m., Nurse Sharples, accompanied by a sergeant and a correctional officer, responded to Davidson's cell. Defs.' 7.1 Statement at ¶ 19; Sharples Decl. at ¶ 7. According to the log report, at some point during the examination, Davidson broke the blood pressure cuff, which he kept in his possession and refused to give back; hours later, Davidson returned the cuff. Talbot Decl., Ex. A-2 (log entry).

## II. DISCUSSION

### A. Summary Judgment Standard

**\*5** Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no

genuine issue of material fact. *F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin,* 344 F.3d 282, 287 (2d Cir.2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525-26 (2d Cir.1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) and *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 164 F.3d 736, 742 (2d Cir.1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994). Furthermore, where a party is proceeding *pro se,* the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994), *accord, Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991).

We note that Davidson is proceeding herein *pro se* and thus, would normally be afforded special solicitude in construing his claims. However, the Second Circuit has stated that there are circumstances where an overly litigious inmate, "who is quite familiar with the legal

system and with pleading requirements," may not be afforded such special solicitude. *Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994) (declining Ronald Davidson, the Plaintiff herein, who was categorized as an "extremely litigious inmate," the benefit of lenient treatment normally afforded *pro se* litigants and thus denying him the opportunity to amend a claim where he failed to properly plead a cause of action); *see also Davidson v. Dean,* 204 F.R.D. 251, 257 (S.D.N.Y.2001) (citing Second Circuit opinion in *Davidson v. Flynn* and refusing to accord deference Ronald Davidson, who is also the same Plaintiff herein); *Santiago v. C.O. Campisi Shield No. 4592,* 91 F.Supp.2d 665, 670 (S.D.N.Y.2000) (applying *Davidson* to *pro se* plaintiff who had ten suits pending in district); *Brown v. McClellan,* 1996 WL 328209, at *1 n. 3 (W.D.N.Y. Jun.11, 1996) (stating that plaintiff's "litigious nature," notwithstanding his *pro se* status, "weighs somewhat against the leniency that is normally accorded"); *Brown v. Selsky,* 1995 WL 13263, at *8 n. 1 (W.D.N.Y. Jan.10, 1995) (denying special solicitude to *pro se* plaintiff who had seven cases pending in the district). As the Second Circuit has noted, Ronald Davidson, the Plaintiff herein is no stranger to the courts and at one point had "at least 30 simultaneously pending suits." *Davidson v. Flynn,* 32 F.3d at 31 (citing *Davidson v. Smith,* 9 F.3d 4, 6 (2d Cir.1993)). Thus, in light of Davidson's experience in federal court, we find that the special solicitude afforded *pro se* litigants shall not be accorded herein. [10]

## B. Service of Process and Pleading Matters

**\*6** Under FED. R. CIV. P. 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period. Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint. FED. R. CIV. P. 4(m). [11] Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant. *Id.*

In this case, where Davidson has been authorized by the Court to proceed *in forma pauperis,* pursuant to 28 U.S.C. § 1915, the U.S. Marshals Service was appointed to effect service of process of the Summons and Complaint on his behalf. *See* 28 U.S.C. § 1915(d); FED. R. CIV. P. 4(c)(2); N.D.N.Y.L.R. 5.1(h). In accordance with the Local Rules of Practice for the Northern District of New York,

[i]n the case of a prisoner's civil rights action, or any action where a party has been granted leave to proceed in forma pauperis, the Marshal shall serve the summons and complaint by regular mail pursuant to Fed.R.Civ.P. 4(c)(2). The Marshal shall file the return or other acknowledgment of service with the Court. The return shall constitute *prima facie* evidence of the service of process. If no acknowledgment of service is filed with the Court, the Marshal shall notify the plaintiff and, if requested by the plaintiff, shall make personal service as provided in Fed.R.Civ.P. 4.

N.D.N.Y.L.R. 5.1(h) (emphasis added).

To date, service has not been properly effectuated on Defendants Walker, Hodges, Wright, Leonard, or United Health Care. First, with regard to Defendant Hans Walker, Former Superintendent, Auburn Correctional Facility, and Defendant Gary Hodges, Former First Deputy Superintendent, Auburn Correctional Facility, both Summonses were returned unexecuted on August 5, 2002. Dkt. Nos. 26 & 27. "[I]n situations where a plaintiff is proceeding in forma pauperis and has been forced to rely on the U.S. Marshals for execution of service, the Plaintiff should not be penalized for the failings of the Marshals." *Webber v. Hammack,* 973 F.Supp. 116, 121 (N.D.N.Y.1997) (citing *Romandette v. Weetabix Co.,* 807 F.2d 309, 310 (2d Cir.1986)). However, in reviewing the case file, we note that accompanying the returned unexecuted Summonses for Defendants Walker and Hodges were notes from the U.S. Marshal, notifying Plaintiff that if he desired further attempts of service for these two Defendants, he must notify the Marshals Service *in writing. Id.* There is no indication in the record that Plaintiff made any attempts to effectuate service on these Defendants. As outlined above, Plaintiff's pleas for court intervention regarding service matters have primarily centered around Defendants Leonard and the Estate of Dann, the latter of which was eventually properly served. Plaintiff has failed to provide any explanation for his failure to pursue service on Defendants Walker and Hodges, despite the fact that Defendants raised this

very early in their Memorandum of Law in support of their Motion and indicated to the Court that the unserved Defendants should be dismissed. Thus, the Court has not obtained the requisite jurisdiction over these Defendants.

**\*7** Usually, when we recommend dismissal of a Defendant due to the Plaintiff's failure to effectuate service, the dismissal is without prejudice. FED. R. CIV. P. 4(m). However, in reviewing the Second Amended Complaint, which replaces all prior pleadings *in toto*, the Court notes that there is no mention of any personal involvement by Defendant Hodges in any of the alleged constitutional violations. [12] And, as to Defendant Walker, the sole allegation is that he "approved" the use of force. Dkt. No. 36, 2d Am. Compl. at ¶ 5. Plaintiff fails to elaborate, either in his Second Amended Complaint or in his Opposition to Defendants' Motion, in what way Defendant Walker approved or sanctioned the alleged use of force, and more importantly, if pursuing an Eighth Amendment violation, why Walker approved the use of force. Under the authority provided by 28 U.S.C. § 1915(e)(2)(B)(ii), "the court shall dismiss the case at any time if the court determines that ... the action ... fails to state a claim on which relief may be granted." It is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a § 1983 action, *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), and furthermore, the doctrine of respondeat superior is inapplicable to § 1983 claims. *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973). Since Davidson has failed to adequately allege the personal involvement of Defendants Walker and Hodges in any constitutional violation, we recommend dismissal of these Defendants from this lawsuit, with prejudice.

Similarly, with regard to Defendant Lester Wright, Chief Medical Officer at DOCS, service has not been properly effectuated and it is unclear from the record what attempts, if any, were made by the Marshals Service. However, a review of the Second Amended Complaint reveals that the sole allegation against Defendant Wright is that he failed to intervene on Plaintiff's behalf after Plaintiff wrote a letter to Mr. Wright. Plaintiff does not provide a copy of that letter, nor does he indicate the substance of the letter or when such letter was written. The fact that Plaintiff may have written a letter does not automatically render the supervisory official responsible

for any constitutional violation. *See Thomas v. Coombe,* 1998 WL 391143, at \*6 (S.D.N.Y. July 13, 1998) (ignoring letter is insufficient for personal involvement; *Young v. Kihl,* 720 F.Supp. 22, 23 (W.D.N.Y. Sep.22, 1989) (the wrong must have been capable of mitigation at the time the supervisory official was apprised thereof); *Woods v. Goord,* 1998 WL 740782 (S.D.N.Y. Oct.23, 1998) (receiving letters or complaints does not automatically make a supervisor liable for the denial of medical care). Prison supervisors cannot be deemed personally liable based simply on a response to a complaint. *See Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997). Thus, Plaintiff has also failed to state a cause of action against Defendant Wright, who, accordingly, should be dismissed from this action, with prejudice in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii).

**\*8** The final two Defendants who have not been served in this action are (1) Defendant Jerry S. Leonard, who Davidson identifies in his First Amended Complaint as the President and Chief Executive Officer of United Health Care Group, Inc., and (2) United Health Care Group, Inc. There can be no denying, unlike the other non-served Defendants, that Davidson has been particularly diligent in his efforts to have Defendant Leonard served. *See supra* Part I.A, Procedural History. However, in reviewing the Second Amended Complaint, we note that Davidson omitted Defendant Leonard from both the caption and parties sections of his pleading and the sole allegation against Defendant United Health Care Group is that it, as the contracted managed care provider for DOCS, denied Davidson the magnetic resonance imaging (MRI) ordered by one of the facility doctors. While, due to the lack of service, the Court has not gained jurisdiction of these Defendants, and putting aside for the moment any concerns the Court has with regard to whether a § 1983 action can be stated against the managed health care provider, we note that Davidson's pleading fails to adequately allege a cause of action against these two Defendants in that he has not met the pleading requirements of an Eighth Amendment violation, specifically, he has failed to allege an objectively serious medical condition as well as a deliberately indifferent state of mind by these Defendants in denying the MRI. *See infra* Part II.C.3 n. 19 (discussing Eighth Amendment Standard). Since Davidson has failed to allege a sufficiently serious medical condition and a deliberately indifferent state of mind, he has failed to state a cause of action against these Defendants. As such, we

recommend dismissal of these Defendants, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), with prejudice.

C. Claims Against the Remaining Defendants

The remaining Defendants, who have moved for dismissal of this action, are Defendants (1) John Talbot, Correction Officer (CO) at Auburn, (2) Richard Smith, CO at Auburn, (3) Anthony Graceffo, M.D., Facility Health Services Director at Auburn, (4) Glen Goord, Commissioner of DOCS, and (5) Estate of Edward Dann, decedent former Superintendent of Auburn.

*1. Exhaustion of Administrative Remedies*

Prior to assessing the merits of Plaintiff's claims, we must address Defendants' affirmative defense that Davidson has failed to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that for actions brought by prisoners under 42 U.S.C. § 1983, the inmate must first exhaust his or her administrative remedies. The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Exhaustion is similarly required even if the prisoner asserts futility as an excuse. *See Booth v. Churner,* 531 U.S. 731, 741 n. 6 (2001) (refusing to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.") (cited in *Marvin v. Goord,* 255 F.3d 40, 43 (2d Cir.2001)).

**\*9** Here are the following uncontroverted, material facts regarding Davidson's exhaustion of the claims stated in his Second Amended Complaint, that being, Talbot and Smith's use of excessive force in retaliation for Plaintiff's use of the grievance system and the general denial of access to medical care, primarily a MRI and orthopedic consult, for injuries sustained as a result of the assault. As a general matter, the Court is informed that, in accordance with DOCS Directive 4040, documentary grievance records are maintained for a period of four years, after which they are destroyed. Cheryl Parmiter Decl. at ¶ 6; Thomas G. Eagen Decl. at ¶ 3, Ex. A (DOCS Directive 4040, Part VI(J), File Maintenance/Confidentiality ("In order to

ensure preservation, it is Department policy to maintain greivance files for the current year plus the previous four calendar years."). As standard practice at Auburn, contemporaneous electronic records of grievances are often held beyond the standard record retention period. Parmiter Decl. at ¶ 6. Those computer files do not contain complete copies of grievance materials but record key details, including, the grievance number, name/DIN/ housing unit of the filing inmate, a short title summarizing the primary complaint presented in the grievance, the date the grievance was received, and the level of appeal the grievance was pursued. *Id.* While many of Davidson's documentary grievances were destroyed in accordance with Directive 4040, a computerized record of grievances filed between January 2, 1997 to May 21, 1998 was provided; such record indicates that Davidson filed 182 grievances during that period. *Id.* at ¶ 8, Ex. A. During the seven weeks between April 6, 1998, the alleged incident date, and May 26, 1998, the date Plaintiff was transferred to Wende Correctional Facility, Davidson filed eight grievances. *Id.* While the facility no longer retains copies of these eight grievances, the Attorney General's Office located in its own archives a copy of a grievance submitted by Davidson which references the alleged assault of April 6[th]. The Court shall summarize the substance of such grievance.

On April 30, 1998, Davidson filed Grievance # AUB-29990-98, with the Auburn Inmate Grievance Review Committee (IGRC). Defs.' 7.1 Statement at ¶ 30; Parmiter Decl. at ¶ 9. In this grievance, Davidson complains of lack of access to medical care for examination of injuries sustained when he was assaulted on April 6th by unnamed guards. *Id.* The Grievance did not identify the individuals who participated in the assault nor did it describe a time or location of the use of force, nor was any action requested to be taken against the alleged aggressors; the only action requested was to see a facility doctor. Defs.' 7.1 Statement at ¶ 33; Parmiter Decl. at ¶ 12, Ex. B (Grievance). The Grievance did not allege that staff assaulted Davidson in retaliation for his use of the grievance processs. Parmiter Decl. at ¶ 14. The Grievance did not present any allegation that Davidson requested or was being denied a MRI scan on his shoulder(s) for injuries inflicted on April 6th, nor were there any allegations that Davidson requested or was being denied a consultation with or treatment by an orthopedic surgeon in connection with injuries sustained on April 6th.

Parmiter Decl. at ¶¶ 15-16. Further, to the extent the Grievance referenced an incident alleged to have occurred on April 6 th, the Grievance was not timely filed. Defs.' 7.1 Statement at ¶ 32; Parmiter Decl. at ¶ 11; Eagen Decl., Ex. A (DOCS Directive 4040, Part V, Procedures-Grievance to be submitted within fourteen (14) calendar days of an alleged occurrence). Nevertheless, the Grievance was accepted and investigated. Defs.' 7.1 Statement at ¶ 32; Parmiter Decl. at ¶ 11. Correctional Sergeant Burton was assigned to investigate the Grievance, and with the assistance of Nurse Coyne, Sgt. Burton examined Davidson's medical record; the medical record revealed no indication that Davidson experienced any traumatic event on April 6 th. Defs.' 7.1 Statement at ¶ 34; Parmiter Decl. at ¶ 12, Ex. B.

*10 On May 4, 1998, the IGRC determined that the action requested by Plaintiff, that he be seen by a physician, had been fulfilled and that there was no objective medical information to substantiate a use of force. Defs.' 7.1 Statement at ¶ 36; Parmiter Decl. at ¶ 12, Ex. B. Davidson appealed this determination to the facility superintendent; the appeal also did not identify either the participants or the location of the use of force. Defs.' 7.1 Statement at ¶ 37; Parmiter Decl. at ¶ 13, Ex. B. On May 11, 1998, Deputy Superintendent Hodges sustained the IGRC decision, observing that there was no medical evidence of an assault by facility staff and that Davidson had seen a facility doctor on May 4 th. Defs.' 7.1 Statement at ¶ 38; Parmiter Decl. at ¶ 13, Ex. B. Plaintiff appealed to the Central Office Review Committee (CORC), stating "I was assaulted by staff on 4/6/98 and my eyeglasses were taken by Sgt. Richard Smith and never returned." Defs.' 7.1 Statement at ¶ 39; Parmiter Decl., Ex. B. Again, Plaintiff failed to identify which individuals assaulted him as well as when and where the assault occurred. Id. CORC sustained the superintendent's decision. Parmiter Decl., Ex. B.

Notably, Plaintiff has not provided this Court with a copy of any grievance filed relative to the claims stated in his Second Amended Complaint. Instead, he responds to the Defendants' affirmative defense with a litany of conclusions in an attempt to demonstrate the general ineptness of the grievance program. In his Second Amended Complaint, when asked if he presented the facts relating to his claims to the grievance program, Davidson writes "Yes, [a]s to denial of medical care. As

to the assault, I was not required to due to the nature of the attack by guards, the nature of the grievance system (which can't provide money damages) and federal case law. In fact, I wasn't even required to file a grievance over the denial of medical care." 2d Am. Compl. at ¶ 4(b). Then, in the "Facts" section of the same pleading, Plaintiff asserts that, in light of his experience as an IGRC representative and his having filed "thousands of grievances and appeals during [his] incarceration," along with his extensive knowledge of exhaustion case law, he "knew that [he] had to file a grievance concerning the instant assault." Id. at ¶¶ 18-27. Davidson then accuses DOCS of implementing policies permitting IGRC staff to intentionally "lump" or "bury" assault and harassment allegations with other grieved issues, thereby, successfully masking such grievances in an attempt to thwart an inmate's attempt to exhaust administrative remedies. Id. Davidson also alleges to have witnessed such burying techniques as well as staff intentionally losing, misfiling, or destroying grievances alleging assaults. Id.

This Court finds Plaintiff's contradictory contentions to be utterly disingenuous and incredulous. If Plaintiff had actually witnessed such "shady dealings" first hand with regard to the burying or destroying of assault grievances, we must ask why he would not take extra steps to ensure his assault claims were properly preserved, i.e., why did Plaintiff not make copies of his grievances? [13] If Plaintiff was aware of this unspoken policy of destroying grievances alleging staff assault or harassment, why did Plaintiff fail to take extra steps to ensure that the wrongs against him were vindicated? Why did Plaintiff, a seasoned pro se litigator, fail to lodge a complaint, for example, with the more informal and expedited grievance available when harassment is alleged? [14] Why did self-professed knowledgeable Plaintiff fail to lodge a complaint with DOCS Inspector General's Office, who bears the responsibility to internally investigate matters of employee misconduct, including allegations of unjustified/ excessive uses of force by DOCS staff against inmates? [15]

*11 Exhaustion of administrative remedies under the PLRA is an affirmative defense which must be raised by the defendants. *Jenkins v. Haubert,* 179 F.3d 19, 28-29 (2d Cir.1999). Once raised, the defendants bear the burden of proving that administrative remedies have not been exhausted. *Howard v. Goord,* 1999 WL 1288679, at *3 (E.D.N.Y. Dec.28, 1999). The party

2005 WL 928620

opposing the affirmative defense "may delay the ultimate determination as to its validity until trial by showing that there is a genuine issue of material fact to be determined." *Id.* (citations omitted). Furthermore, several courts, including this one, have held that there are situations where a defendant may be estopped from asserting this affirmative defense. *Croswell v. McCoy,* 2003 WL 962534, at *4 (N.D.N.Y. Mar.11, 2003) (Sharpe, M.J.) *aff'd in unpublished opinion* No. 01-CV-547, Dkt. No. 50 (Hurd, J.); *Heath v. Saddlemire,* 2002 WL 31242204, at *4-5 (N.D.N.Y. Oct.7, 2002) (Scullin, C.J.) (affirming this Court's Report-Recommendation and Order in its entirety); *O'Connor v. Featherston,* 2002 WL 818085, at *2 (S.D.N.Y. Apr.29, 2002) (collecting cases from various districts including the 5th and the 8th Circuit explicitly holding such exceptions to the PLRA exhaustion requirement). A prisoner may continue with his suit despite nonexhaustion issues when

> (1) [the] inmate was led to believe by prison officials that his alleged incident was not a grievance matter and assured that his claims were otherwise investigated ... (2) an inmate makes a reasonable attempt to exhaust his administrative remedies, especially where it is alleged that corrections officers failed to file the inmate's grievances or otherwise impeded or prevented his efforts ... and (3) the state's time to respond to the grievance has expired.

*O'Connor v. Featherston,* 2002 WL 818085, at *2 (S.D.N.Y. Apr.29, 2002) (internal quotations and citations omitted).

We find that the Defendants have adequately and astutely, in light of the limited discovery available, carried their burden of proof on their affirmative defense. Instead of countering the Defendants' claims with regard to the inadequate notice Grievance # AUB-29990-98 provided, Plaintiff attempts to divert the Court's attention from his failure to exhaust his remedies to alleged improper acts of unnamed individuals. Such tactics, in our mind, are deceitful and obsequious, and are simply inadequate to excuse his failure to follow the rules he proclaims to be extensively acquainted. We therefore recommend dismissal of all claims due to Davidson's failure to exhaust

his administrative remedies. In the alternative, we note that none of Davidson's claims have any merit, and can also be dismissed, as explained below.

*2. Personal Involvement*

As stated above, it is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a § 1983 action, *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), and furthermore, the doctrine of respondeat superior is inapplicable to § 1983 claims. *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973).

**\*12** With regard to Defendants Graceffo, Goord and Estate of Dann, Davidson alleges that Dann authorized the use of force against him and that he advised Goord and Graceffo of his denial of his MRI and that they failed to intervene on his behalf. The claims against these Defendants must fail for the same reason we recommended dismissal of any claims against Defendants Wright, Walker, and Hodges. *See supra* Part II.B. Plaintiff fails to adequately allege in what manner, when, and why Defendant Dann sanctioned the alleged use of force. Further, the fact that he may have written a letter to Goord or had a conversation with Defendant Graceffo does not render such Defendants liable.

The Second Circuit has stated that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if he: (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (4) was grossly negligent in managing subordinates who caused the unlawful condition or event. *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986). Pointedly, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (quoting *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985)); *see also Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (defendant may not be held liable simply because he holds a high position of authority). Davidson does not allege the

dates he allegedly contacted Goord or Graceffo nor does he provide any copies of any correspondence he sent to these Defendants. Nor, for that matter, has Davidson alleged with sufficient particularity the dates on which he was denied any medical care, namely, a MRI and/or an orthopedic consult. Since Plaintiff has not implicated Goord, Graceffo, and Dann under any of the above theories, and fails to address these claims in his Opposition to Defendants' Motion, we recommend granting Defendants' Motion for Summary Judgment and dismissing Defendants Goord, Graceffo, and Estate of Dann from this lawsuit.

*3. Eighth Amendment Claim*

Davidson alleges that on April 6, 1998, Defendants Smith and Talbot, while escorting Plaintiff at an unspecified time and at an unspecified place, yanked Davidson's handcuffed hands and arms upwards behind his back and Talbot punched him several times in the rib cage area. [16] 2d Am. Compl. at ¶¶ 1-3. Plaintiff further alleges that during the attack, Smith and Talbot told Plaintiff they were assaulting him as "payback" for his complaints and grievances filed against their fellow co-workers. *Id.*

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California,* 370 U.S. 660, 666-67, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) (cited in *Tramell v. Keane, et al.,* 338 F.3d 155, 161 (2d Cir.2003)). To prove a violation of the Eighth Amendment, the Second Circuit stated that an inmate must show,

> **\*13** (1) that the deprivation alleged is 'objectively sufficiently serious' such that the plaintiff was denied 'the minimal civilized measure of life's necessities,' and (2) that the defendant official possessed a 'sufficiently culpable state of mind' associated with 'the unnecessary and wanton infliction of pain.'

*Trammell v. Keane,* 338 F.3d 155, 161 (2d Cir.2003) (citing *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

Punishments prohibited by the Eighth Amendment include those that are "grossly disproportionate" to the severity of the crime including unnecessary and wanton

inflictions of pain which are "totally without penological justification." *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) (citations omitted); *see also Hope v. Pelzer,* 536 U.S. 730, 737, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

In *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), the Supreme Court clarified the standards for determining whether an Eighth Amendment violation occurred in the context of excessive force. Specifically, the Court stated that, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley [v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) ]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 6 (quoted in *Davidson v. Flynn,* 32 F.3d 27, 29 (2d Cir.1994)). Courts should consider both the objective and subjective component of an alleged violation. In assessing the objective component, the court should consider the seriousness of the injury, however, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury," thus, the seriousness of the injury is relevant to the inquiry, but does not end it. *Davidson v. Flynn,* 32 F.3d at 29 n. 1 (alterations in original) (quoting *Hudson v. McMillian,* 503 U.S. at 4). With regard to the subjective component, the court should consider whether the defendants had a "wanton" state of mind when they were engaging in the alleged misconduct. Further consideration of the circumstances surrounding the alleged misconduct may be warranted. As the Court in *Hudson* explained, "[i]n determining whether the use of force was wanton and unnecessary, it may ... be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson,* 503 U.S. at 7 (internal quotation marks and citations omitted).

By Declarations, both Talbot and Smith adamantly deny ever using force against Davidson, that is, beyond ordinary escort-related handcuffing. Talbot Decl. at ¶ 8; Smith Decl. at ¶ 10. In support of their defense, Talbot and Smith attached to their Declarations facility logs for SHU and E-Block on April 6-7. Because Davidson failed to specify a time when the alleged attack took place, or

even the circumstances surrounding the attack, *i.e.*, where he was escorted to, the Defendants were at somewhat of a disadvantage in properly defending themselves against Plaintiff's unsupported and unsubstantiated claims. The facility logs help paint a clear picture for this Court of the events as they transpired on April 6th, as set forth in the facts section above. *See supra* Part I.B, Facts. Plaintiff contends that he was "forcibly removed from Auburn's SHU" on April 6th, purportedly by Defendants Talbot and Smith.2d Am. Compl. at ¶¶ 2-4. However, as indicated by the facility logs, Plaintiff was escorted from SHU, along with other prisoners, at approximately 11:45 a.m. and was taken to Walsh Regional Medical Center, neither Defendant Talbot nor Smith escorted Plaintiff from SHU that morning. Talbot Decl. at ¶ 9, Ex. A-1 (SHU log); Smith Decl. at ¶ 11, Ex. A-1 (SHU log). In fact, on that date, Talbot worked a 3:00 p.m.-11:00 p.m. shift and, therefore, wasn't even present in the facility at the time this escort took place. Talbot Decl. at ¶ 9. Later that day, upon Plaintiff's return to the facility at 4:45 p.m., Talbot, whose shift had begun, along with two other officers escorted Plaintiff to the E-Block; facility logs indicate that Smith was not present during that escort. Talbot Decl. at ¶ 10, Exs. A-1 & A-2. Facility logs further indicate that Davidson made no complaints about a use of force against him during any of the escorts that day.

**\*14** The first time Talbot and Smith escorted Plaintiff was at 5:41 p.m., when, after his relentless complaints about chest pains, they brought him from E-Block to the infirmary. Talbot Decl. at ¶ 15, Ex. A-2; Smith Decl. at ¶ 15, Ex. A-2. At 5:45 p.m., Davidson was examined by a facility nurse and did not complain about any use of force, nor did he exhibit any traumatic injury. Graceffo Decl., Ex. A (AHR, entry dated Apr. 6, 1998, at 1745 hrs). Talbot and Smith then escorted Plaintiff back to E-Block, and then, after Davidson received his evening meal and medications, they escorted him back to his cell at approximately 6:14 p.m. Talbot Decl. at ¶ 16, Ex. A-2; Smith Decl. at ¶ 16, Ex. A-2. Log entries reflect no complaint of physical mistreatment or traumatic injury. Talbot Decl., Ex. A-2. Plaintiff's personal property was brought to him at 8:15 p.m. and 8:35 p.m.; Davidson made no complaints of physical mistreatment or traumatic injury. Smith Decl. at ¶¶ 18-19, Ex. A-2. In fact, it was not until after midnight on April 7th, after again being denied access to emergency sick call, that Davidson for the first

time complained of abuse by security staff. Talbot Decl. at ¶ 20; Ex. A-2.

In further support of their contentions that no assault occurred, Defendants supplied Declarations of various non-parties, who have no stake in this particular litigation, attesting to the general procedures of the facility, which must be undertaken when staff impose the use of force, *i.e.* reports and investigations lodged to ensure that only the amount of force necessary was used. *See generally* Laurence M. Cheney, Liason Officer at Auburn, Decl. at ¶¶ 3-4, Ex. A (indicating that no "Use of Force" reports involving Davidson were generated for events occurring on April 6, 1998, however, a Use of Force incident did occur on April 7, 1998, when Davidson was being escorted to the Mental Hygiene Unit and began kicking the glass cover of a fire alarm panel; none of the Defendants were involved in that incident); Joseph Bellnier, Deputy Superintendent for Security at Auburn, Decl., Ex. A (explaining DOCS Directive 4944, which sets forth the policies and procedures following a use of force against an inmate); Timothy Costello Decl., Ex. A (describing April 7th incident during his escort of Davidson and use of force against Davidson).

To further bolster their claims that Davidson had not been the victim of an assault by staff on April 6th, Defendants offer the Declaration of Nurse Richard Sharples who responded to Plaintiff's midnight complaints. Sharples' refreshed his recollection of the events by reviewing Davidson's AHR as well as nurses' notes for April 6-7, 1998. Sharples Decl. at ¶ 4. Shortly after midnight, on April 7th, Sharples and a staff sergeant responded to Davidson's complaints that he had been assaulted by security staff. *Id.* at ¶ 6. Sharples arrived at E-Block at approximately 12:30 a.m. *Id.* at ¶ 7. Prior to making his presence known to Davidson, Sharples spent some time observing Davidson in his cell. *Id.* Sharples stood by the officers' desk, located approximately ten to twenty feet from Davidson's cell, and had an unobstructed view of Davidson through his cell door. [17] *Id.* Sharples observed Davidson walk, bend his body, and move his limbs without difficulty. *Id.* Sharples then made his presence known and conducted a physical examination of Davidson without entering the cell. *Id.* at ¶ 8. Davidson described his subjective complaints of pain in his knee, right neck, and left shoulder, yet, he was able to remove his shirt without complaint or apparent

physical disability. *Id.* at ¶ 9. Davidson complained of lower back pain but was able to bend over smoothly without apparent spasms. *Id.* After examining Davidson's body, Sharples could not detect any evidence of trauma injuries. *Id.* With Davidson's arm extended through the cell door, Sharples measured his blood pressure with a sphygmomanometer, and checked his heart rate and respiration with a stethoscope. *Id.* at ¶ 10. At the conclusion of the examination, Davidson requested that his blood pressure be read again from his other arm, which he extended through the opening of the cell door. *Id.* As Sharples started to comply, Davidson grabbed hold of the blood pressure cuff and tried to yank it into his cell and broke the equipment. Notably, Davidson's mobility, range of motion, and limb strength were unimpaired. Davidson retained the blood pressure cuff, but ultimately returned it to security staff. *Id.; see also* Talbot Decl., Ex. A-2 (log entries indicating Davidson kept cuff and later returned it).

**\*15** In support of his allegations, and in countering Defendants' sworn testimony and documentary evidence, Plaintiff essentially avers that the entire staff covered up the assault by not properly documenting the multiple complaints he lodged that day. We find that such statements are insufficient to create a genuine issue of material fact. The Court has closely examined the facility logs and notes the great details included therein. If such a conspiracy existed, then how does Plaintiff account for the entry indicating his complaints of staff abuse and the immediate response by all staff. Why was that entry not similarly obscured?

Once a moving party has met its burden of showing that no triable issues of fact exist, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." *Young v. Corbin,* 889 F.Supp. 582, 284 (N.D.N.Y.1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis added). "A dispute regarding a material fact is genuine 'if evidence is such that a reasonable jury could return a verdict for the non-moving party.' " *Young,* 889 F.Supp. at 584 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, once the moving party establishes a *prima facie* case demonstrating an absence of a genuine issue of material fact, "the non-moving party must come forward with enough evidence to lead a rational trier of fact to find for the non-

moving party, [and t]he motion will not be defeated by a non-movant who raises merely a 'metaphysical doubt' concerning the facts or who offers only conjecture or surmise." *Young,* at 584 (quoting *Matsushita,* 475 U.S. at 586) (emphasis added).

We find Plaintiff's feeble attempts to create an issue of fact by generally "attesting" to the falsity of all sworn statements submitted by the Defendants and other non-parties to be unsavory. Again, even if we were to believe that an assault took place, we cannot overlook the fact that Plaintiff failed to ensure that his claims were properly investigated, whether through the various avenues available in the facility, DOCS, or even the Inspector General's Office. Plaintiff's failure to protect his rights in this instance, when he has clearly done so in so many other instances, certainly weighs against his claims and exposes what can only be categorized as a disingenuous and a utter waste of judicial resources. [18] Without making any credibility determinations, which this Court acknowledges is better left to the trier of fact, we find that Defendants have more than met their burden in moving for summary judgment on the objective prong alone, in that Plaintiff cannot show that any assault took place, and his Eighth Amendment claims should be dismissed as frivolous. [19]

### 4. Retaliation Claims

The Second Circuit has made it clear that an inmate has a substantive due process right not to be subjected harassment in retaliation for the exercise of a constitutional right such as petitioning the government for redress of grievances. *Jones v. Coughlin,* 45 F.3d 677, 679-80 (2d Cir.1995); *Franco v. Kelly,* 854 F.2d 584, 589-90 (2d Cir.1988). To state a First Amendment claim for retaliation, an inmate must demonstrate (1) he or she was engaged in constitutionally protected activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected speech and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Morales v. Mackalm,* 278 F.3d 126, 131 (2d Cir.2002) (citing *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001)); *see also Gayle v. Gonyea,* 313 F.3d 677 (2d Cir.2002) (alleging false disciplinary report); *Hendricks v. Coughlin,* 114 F.3d 390 (2d Cir.1997) (alleging retaliatory transfers). The Second Circuit has noted that retaliation claims are

Case 9:16-cv-00275-LEK-DEP   Document 32   Filed 05/21/18   Page 67 of 109

prone to abuse, therefore courts should examine such claims "with skepticism and particular care." *Bennett*, 343 F.3d at 137; *Dawes v. Walker,* 239 F.3d at 491 ("[V]irtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act."); *see also Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996).

**\*16** In addressing the first prong of the retaliation analysis, we note that Plaintiff's claims falls miles short of adequately stating a retaliation claim. Davidson alleges he was attacked as retaliation for filing grievances, a constitutionally protected activity, however, he fails to allege when such grievances were filed. Thus, from the outset, this Court has no way of assessing the strength or validity of such claims. We therefore recommend granting Defendants' Motion for Summary Judgment as to any retaliation claims.

### *5. Request for Further Discovery*

In his opposition to Defendants' Motion, Plaintiff requests that the Motion be held in abeyance pending further discovery. Plaintiff's request for more discovery to oppose the Motion is denied. Plaintiff has had ample time for discovery in this matter. When making such a request in opposition to a motion for summary judgment, the Second Circuit requires an affidavit sufficiently detailing:

1) the nature of the uncompleted discovery;

2) how the facts sought are *reasonably expected* to create *genuine issues* of material fact;

3) what efforts the affiant has made to obtain those facts; and

4) why those efforts were unsuccessful.

*Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137 (2d Cir.1994); FED. R. CIV. P. 56(f). Plaintiff's purported Rule 56(f) affidavit falls short of establishing the above factors. In fact, Plaintiff only seeks more discovery to provide proof that "grievances submitted by prisoners were frequently 'lost' or 'consolidated' by [the Inmate Grievance Supervisor]." Dkt. No. 56, Pl.'s Aff. at ¶ 3. The Court considers such issue to be collateral to the constitutional claims at hand, namely, retaliation,

excessive force, and denial of medical care.[20] Moreover, limited discovery that may possibly address the issue of exhaustion would not shed any further light on the merits of his constitutional claims, which the Court has already found to be frivolous and lacking merit.

### III. CONCLUSION

WHEREFORE, it is hereby

RECOMMENDED, that Defendants Wright, Walker, Hodges, Leonard, and United Health Care, be dismissed from this action, without prejudice, in accordance with FED. R. CIV. P. 4(m), due to Plaintiff's failure to timely effectuate service, or in the alternative, that such Defendants be dismissed from this action, with prejudice, in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii), due to Plaintiff's failure to properly state a cause of action; and it is further

RECOMMENDED, that Defendants' Motion for Summary Judgment (Dkt. No. 46) be granted and Plaintiff's entire Second Amended Complaint be dismissed without prejudice due to Plaintiff's failure to exhaust his administrative remedies; and it is further

RECOMMENDED, that Defendants' Motion for Summary Judgment (Dkt. No. 46) be granted and Plaintiff's entire Second Amended Complaint be dismissed with prejudice as frivolous, in light of Plaintiff's failure to allege any personal involvement of Defendants Graceffo, Goord, and Estate of Dann, and due to his failure to state a claim for retaliatory excessive force against Defendants Smith and Talbot; and it is further

**\*17** ORDERED, that Plaintiff's request to hold Defendants' Motion in abeyance pending further discovery is denied; and it is further

ORDERED that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report to the U.S. DISTRICT JUDGE assigned to this case. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT TO THE*

Davidson v. Talbot, Not Reported in F.Supp.2d (2005)

2005 WL 928620

*U.S. DISTRICT JUDGE WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993); Small v. Sec'y of Health and Human Servs. 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).*

SO ORDERED

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 928620

Footnotes

1    The allegation against Defendant Hodges is included in Plaintiff's First Amended Complaint, but not his Second Amended Complaint. *See infra* Part II.B.

2    The Motion was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

3    Since the actions alleged in the Complaint took place on or about April 6, 1998, the Complaint, filed on April 3, 2001, was timely filed, albeit barely with only three days to spare, in accordance with the three-year statute of limitations for actions brought pursuant to 42 U.S.C. § 1983. *See, e.g., Dory v. Ryan, 999 F.2d 679, 681 (2d Cir.1993).*

4    USM-285, entitled "Process Receipt and Return," is the form utilized by the Marshals Service in effectuating service of process. *See* United States Marshals Service website, *available at http:// www.usmarshals.gov/process/index.html* (last visited Mar. 30, 2005). An inmate seeking to file a civil action in federal court is provided an instruction packet, which contains, *inter alia,* a memorandum from the Clerk of the Court explaining how to fill out the USM-285 form. *See* United States District Court, Northern District of New York website forms page, *available at http://www.nynd.uscourts.gov/ forms.htm* (last visited Mar. 30, 2005).

5    We directed an amendment of the pleading in light of the fact that Plaintiff's opposition to Defendants' Motion set forth in greater detail the steps he took in exhausting his remedies.

6    The following facts were derived mainly from the Defendants' Statement of Material Facts, submitted in accordance with N.D.N.Y.L.R. 7.1, which were not specifically countered or opposed by Plaintiff. We acknowledge that Defendants have submitted multiple Declarations and Exhibits in support of their Motion. Many of the facts in those Declarations were summarily denied by Plaintiff. As explained more fully below, Plaintiff's conclusory denials of these sworn statements are insufficient to create a genuine issue of material fact. Many of those facts shall be discussed in addressing the sufficiency of Plaintiff's Eighth Amendment claims. *See infra* Part II.C.3.

7    According to the Declaration submitted by Defendant Anthony J. Graceffo, M.D.,

     "Emergency Sick Call" is a specific procedure available to inmates by which they may receive expedited physician/ physician's assistant attention for urgent medical conditions. Initial evaluations are performed by nurses, who determine whether it is necessary to bring a matter to the immediate attention of a physician or a PA. When necessary, nurses and/or physicians will interrupt their work, including treatment of other inmates, in order to give priority to inmates requiring emergency care.

     Dkt. No. 46, Graceffo Decl. at ¶ 9.

8    Woodward is not a Defendant in this action.

9    Sharples is not a Defendant in this action.

10   Davidson has filed twenty (20) lawsuits in this district alone:

     (1) *Davidson v. Flynn,* 86-cv-316 (TJM/DEP) (closed on Aug. 15, 2001-Statistically and administratively closed w/ o prej.);

     (2) *Davidson v. Boulinger,* 87-cv-689 (LEK/RWS) (closed on Feb. 2, 2000-Defs.' Mot. for Summ. J. granted; appeal denied on Aug. 7, 2000, as indisputably lacking merit as to be rendered frivolous);

     (3) *Davidson v. Dean,* 88-cv-050 (TJM/DS) (transferred to S.D.N.Y. on Nov. 25, 1996);

     (4) *Davidson v. Coughlin,* 88-cv-646 (TJM/DEP) (closed on Aug. 15, 2001-Statistically and administratively closed w/o prej.);

     (5) *Davidson v. Riley,* 88-cv-1042 (TJM) (closed on Mar. 18, 1997-Defs.' Mot. to Dismiss granted at trial);

     (6) *Davidson v. Leonardo,* 88-cv-1366 (TJM/RWS) (closed on Aug. 4, 2000-Defs.' Mot. for Summ. J. granted; appeal denied on June 17, 2002, aff'd district court judgment);

     (7) *Davidson v. McHugh,* 88-cv-1367 (TJM/DS) (closed on July 1, 1994-Defs.' Mot. for Summ. J. granted; appeal denied on Jan. 30, 1995, as indisputably lacking merit as to be rendered frivolous);

2005 WL 928620

(8) *Davidson v. Jones,* 88-cv-1368 (TJM/DS) (closed on Aug. 25, 1994-Defs.' Mot. for Summ. J. granted; appeal denied on Jan. 30, 1995, as indisputably lacking merit as to be rendered frivolous);

(9) *Davidson v. Cox,* 89-cv-498 (TJM/DS) (closed on Jan. 18, 1994-Defs.' Mot. for Summ. J. granted; appeal denied on May 9, 1994, as frivolous);

(10) *Davidson v. Eastman,* 89-cv-1018 (TJM/DS) (closed on July 18, 1994-Defs.' Mot. for Summ. J. granted; appeal dismissed on Nov. 9, 1994);

(11) *Davidson v.Scully,* 90-cv-1187 (CGC/DS) (closed on Sept. 16, 1992-Defs.' Mot. for Summ. J. granted; appeal denied on Dec. 6, 1993, affirming district court judgment);

(12) *Davidson v. Henderson,* 90-cv-1226 (TJM/DEP) (closed on June 10, 2004-Defs.' Mot. for Summ. J. granted; currently on appeal);

(13) *Davidson v. Greifinger,* 91-805 (FJS/DS) (closed on Dec. 23, 1996-Defts' Mot. for Summ. J. granted; appeal denied on Oct. 29, 1998, affirming district court judgment);

(14) *Davidson v. Coughlin,* 93-cv-272 (TJM/DEP) (closed on Aug. 15, 2001-Statistically and administratively closed w/o prej.);

(15) *Davidson v. Graceffo,* 97-cv-1204 (FJS/DRH) (closed on Aug. 13, 2001-Defs.' Mot. for Summ. J. granted; appeal denied on Jan. 28, 2002, as lacking merit and no arguable basis in law and future frivolous appeals will be subject to Rule 38 sanctions);

(16) *Davidson v. Komanecky,* 97-cv-1415 (FJS) (closed on Jan. 22, 2002-failure to prosecute; appeal pending);

(17) *Davidson v. Hoepner,* 97-cv-1660 (FJS/GJD) (closed on Feb. 26, 2002-Statistically and administratively closed w/o prej.);

(18) *Davidson v. Terrazzini,* 98-cv-1555 (FJS/DEP) (closed on June 25, 2002-Defs.' Mot. for Summ. J. granted; appeal dismissed on Dec. 23, 2004, failure to provide prisoner authorization form);

(19) *Davidson v. O'Connell,* 00-cv-422 (NAM/GS) (closed on Sept. 15, 2003-Defs.' Mot. for Summ. J. granted; appeal dismissed on July 28, 2004, failure to provide prisoner authorization form);

(20) *Davidson v. Talbot,* 01-cv-473 (FJS/RFT) (currently pending).

In light of Davidson's litigation track record, and the Second Circuit's recognition that Davidson has stepped into that rare status for inmate litigants of being deemed not entitled to "special solicitude," we place both parties on notice that FED. R. CIV. P. 11 sanctions may be applicable, when warranted, for any further litigation pursued by Davidson. However, Rule 11 applicability shall not be considered for this case. *See infra* n. 18

11   Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days. N.D.N.Y.L.R. 4.1(b).

12   In Davidson's First Amended Complaint, the sole allegation against Defendant Hodges is that he "authorized" the use of force. Dkt. No. 6, 1st Am. Compl. at ¶ 11. However, in that same pleading, Davidson fails to elaborate when and how such authorization occurred. Furthermore, the allegation of authorization is completely omitted from his Second Amended Complaint. *Compare* Dkt. No. 6, 1st Am. Compl. *with* Dkt. No. 36, 2d Am. Compl. Thus, we may properly deem any claims against Defendant Hodges as abandoned. *See, e.g., Austin v. Ford Models, Inc.,* 149 F.3d 148, 155-57 (2d Cir.1998). However, we need not address this abandonment issue in light of Plaintiff's failure to state a cause of action as explained below.

13   We acknowledge that an inmate may not possess the funds necessary for copying, however, Plaintiff obviously maintained copies of other grievances filed on other matters since such unrelated grievances were attached to his pleadings and opposition papers.

14   *See* DOCS Directive 4040, codified at N.Y. COMP.CODES R. & REGS, tit. 7, § 701.11.

15   *See generally* Kenneth McLaughlin Decl. (indicating that Plaintiff never requested the IG to investigate any use of force on April 6, 1998).

16   Davidson alleges his hands were handcuffed behind his back during the escort and that the assault was completely unprovoked.2d Am. Compl. at ¶¶ 2-4.

17   Sharples explains that the cell door consisted of rows of vertical steel bars running from the floor to the upper jamb, approximately seven feet high, the cell was lit from within, the lights in the gallery were on, and there was no sheet or anything else hanging from the inside of the door. Sharples Decl. at ¶ 7.

18   Again, we put the parties on notice that should this prisoner continue to bring such frivolous actions, he may be subject to Rule 11 sanctions as that rule is in no way limited, by its very terms, to attorneys admitted to the bar. *See Cavallary v. Lakewood sky Diving Ctr.,* 623 F.Supp. 242, 245-46 (S.D.N.Y.1985) (*pro se* plaintiff not immune from Rule 11); *Taylor v. Prudential Bache Sec., Inc.,* 594 F.Supp. 226, 228-29 (N.D.N.Y.), *aff'd without opinion,* 751 F.2d 371 (2d Cir.1984)

("oppressive" and "unfounded" conduct by *pro se* plaintiff warranted sanctions in bringing "frivolous" and "spiteful" action); *see also McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d 121, 124 (2d Cir.1988) (noting that in spite of *pro se* litigants being held to a less stringent standard, all litigants, including *pro ses,* have an obligation to inform themselves of and comply with court orders and procedural rules); *Edwards v. INS,* 59 F.3d 5, 8-9 (2d Cir.1995) (same); *Young v. Corbin,* 889 F.Supp. 582, 585-86 (N.D.N.Y.1995) (imposing minimal Rule 11 sanctions on *pro se* inmate plaintiff and barring commencement of future actions until the fine is paid).

Rule 11 states, in pertinent part:

By presenting to the court ... a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,-

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

While the Court could have initiated Rule 11 sanctions for this action on its own initiative, we decline to do so since at this juncture fair notice of such intent has not been provided. However, considering Plaintiff's admissions of filing more than one thousand claims, which we consider to be sheer braggadocio, the Court's personal knowledge of more than one hundred claims filed in the New York State Court of Claims by the Plaintiff, the Second Circuit's further recognition of his overly litigiousness in federal court based upon his contemporaneous filing of over thirty federal actions, as well as the Second Circuit's multiple admonitions to this Plaintiff in bringing frivolous appeals, the probability of many if not all of his legal actions are meritless and, as such, this Plaintiff is particularly deserving of notice of possible future Rule 11 sanctions for frivolous litigation. *See supra* note 10. Davidson above all has stretched judicial resources beyond justification with his vexatious lawsuits.

19    Due to Plaintiff's failure to properly serve Defendants Leonard and United, we need not address Plaintiff's claims of being denied access to medical care. In any event, because Plaintiff has failed to give a proper framework for precisely when his access to medical care was inhibited, we cannot adequately address such claims. Further, even if we did have such information, we note that Plaintiff's Eighth Amendment claim based on the denial of medical care would fail since he cannot establish a serious medical condition. *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Hathaway v. Coughlin ("Hathaway I"),* 37 F.3d 63, 66 (2d Cir.1994) (stating that a medical need is serious if it presents " 'a condition of urgency' that may result in 'degeneration' or 'extreme pain' "). Plaintiff has failed to provide any documentation evidencing his alleged shoulder injury was a condition of urgency or even caused him extreme pain.

20    We note that Plaintiff has not detailed what efforts he made to obtain discovery not only with regard to exhaustion issues but also with regard to the substance of his constitutional claims. We further note that, as evidenced by AAG Quackenbush's Declaration, and Exhibit attached therewith, Plaintiff has failed in his obligation to cooperate in good faith in discovery thereby stymying Defendants' efforts to uncover specific facts underlying Plaintiff's claims.

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2004 WL 807071
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Charles Michael KEE, Plaintiff,
v.
Warden D. HASTY, et al., Defendants.

No. 01 Civ.2123(KMW)(DF).
|
April 14, 2004.

**Attorneys and Law Firms**

Mr. Charles Michael Kee, U.S. Penitentiary, Beaumont, TX, pro se.

REPORT AND RECOMMENDATION

FREEMAN, Magistrate J.

**\*1** In this action purportedly brought under 42 U.S.C. § 1983 by *pro se* plaintiff Charles Michael Kee ("Kee"), [1] the Court faces three motions. First, Kee seeks a default judgment against certain defendants who, he claims, have failed to appear despite proper service. Second, those defendants who have appeared in the action seek judgment on the pleadings and/or summary judgment dismissing Kee's claims. And third, Kee seeks leave to file a Third Amended Complaint, adding new factual allegations, as well as certain new defendants.

For the reasons set forth below, I respectfully recommend that Kee's motion for a partial default judgment be denied, defendants' motion for judgment on the pleadings and/or summary judgment be granted in part and denied in part, and that Kee's motion to amend also be granted in part and denied in part.

BACKGROUND

A. *Plaintiff's Claims*

Kee's allegations arise out of an incident that took place at the Metropolitan Correctional Center ("MCC") in Manhattan, on May 25, 2000. According to Kee's Second Amended Complaint and attached documents, [2]

at approximately 1:00 p.m. on that date, Kee was escorted to his cell in handcuffs by defendant Correctional Officer Steven Linder ("Linder"), after the conclusion of a legal visit, to find that the cell had been searched, leaving his legal papers "all over the cell floor," and his package of cookies opened. (Second Amended Complaint ("Second Am. Compl.") filed May 9, 2002 (Dkt.19), attached May 30, 2000 letter to Warden Dennis Hasty ("Ltr. to Hasty") at 1.) Upon this discovery, Kee, while he was still handcuffed, threw the cookies and a container of milk out of his food slot, and asked to speak with an officer about the condition of his cell. (*See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion [for] Summary [Judgment], dated January 26, 2003 ("Pl.'s 1/26/03 Mem."), at 2.) Kee alleges that, although he initially refused to have his handcuffs removed until he received an explanation as to why his food had been opened and his papers disturbed, he eventually did allow defendant Correctional Officer Garcia ("Garcia") to uncuff him, after which he proceeded to clean up his cell and do "legal work." (*See id.*)

At about 3:00 p.m. on that same date, Kee claims to have heard a disturbance involving another inmate. Kee reacted to the disturbance by "yell[ing] to the staff on the tier ... ['] don't do that to him![']" (Ltr. to Hasty at 2.) At some point thereafter, certain of the defendants, allegedly on the order of defendant Captain Michael Gassaway ("Gassaway"), placed Kee in four-point restraints, [3] and did the same to the inmate who was the subject of the disturbance and to "another inmate who yelled." (*Id.; see* Pl's 1/26/03 Mem. at 3.) Kee alleges that, despite the fact that he regained his composure quickly and complained of pain from the restraints, he was kept in the restraints for approximately 22 hours. (*See* Second Am. Compl. Attach. C; Declaration of Mark Glover, M .D., dated July 19, 2002 (Dkt.31) ("Glover Decl."), ¶ 4 (Kee placed in restraints at 3:35 p.m. on May 25, 2000); Defendants Local Civil Rule 56.1 Statement ("Def's 56.1 Stmt") dated July 22, 2002, ¶¶ 25-26 (except for three-hour legal visit, Kee remained in restraints until 3:30 p.m. May 26, 2000).)

**\*2** As a result of the restraints, Kee claims to have sustained "back, neck, and wrist injuries" along with extreme mental suffering ." (Second Am. Compl. ¶ IV.) Thereafter, Defendants provided Kee with Motrin, but allegedly denied him physical therapy (*see* Second Am. Compl. ¶ IV), and intentionally served him meals that he

could not eat, as they included meat, which was "not [part of his] ... diet." (Second Am. Compl. Attach. C.)

Kee's claims, liberally construed, [4] charge that: (1) by placing him in four-point restraints in response to his acts of throwing cookies and milk out of his cell and shouting his objection to the mistreatment of another inmate, and by keeping him in the restraints long after he had regained his self-control, defendants used excessive force against Kee in violation of the Eighth Amendment (*see* Second Am. Compl. ¶ IV-A); (2) by continuing to restrain Kee despite his complaints of pain, and by inadequately treating his injuries and failing to meet his dietary needs after releasing him from the restraints, defendants were deliberately indifferent to Kee's medical needs, another Eighth Amendment violation (*see id.* ¶¶ IV, IV-A); and (3) by confiscating certain of Kee's "belongings and legal materials," certain defendants deprived Kee of property without due process of law, in violation of the Fifth Amendment (*see* Second Am. Compl. ¶¶ IV, IV-A).

Kee seeks declaratory, injunctive, and monetary relief on his claims. (*See* Second Am. Compl. ¶ IV-A; *id.* Attach. D.)

### B. *Procedural History*

Kee filed his original Complaint in this action on December 20, 2000. (Dkt.2.) [5] On March 30, 2001, the case was referred to me for general pretrial supervision and for a report and recommendation as to any dispositive motions. (Dkt.4.) Kee filed an Amended Complaint on November 5, 2001 (Dkt.10) ( "Am.Compl."), and, with leave of Court, a Second Amended Complaint on May 9, 2002 (Dkt.19).

On January 24, 2002, Kee filed an application for the Court to request counsel. (Dkt.13.) He renewed that application on August 28, 2002, and the Court denied it on January 7, 2003. (Dkt.40.)

### 1. *Kee's Motion for Partial Default Judgment*

On May 29, 2002, which was 20 days after filing his Second Amended Complaint, Kee moved for a default judgment against certain defendants-Lieutenant James Williams ("Williams"), Special Investigative Agent Robert Parrish ("Parrish"), Correctional Officers Garcia ("Garcia") and Victor Jean ("Jean"), and unidentified members of the

MCC "Medical Department Staff." Despite the timing, however, the basis of Kee's motion for a default against these defendants was *not* that they had failed to answer the Second Amended Complaint within 20 days of service of that pleading (*see* Fed.R.Civ.P. 12(a)(1)(A)), but rather that they had failed to respond in timely fashion to Kee's *first* Amended Complaint, which purportedly was served on them by the United States Marshal on January 10, 2002. (*See* Plaintiff's Affirmation in Support of Motion for Default Judgment, dated May 29, 2002 (Dkt.21) ("Pl.'s Default Mot."), at ¶ 2; Amended Summons, dated January 10, 2002 (attached to Pl.'s Default Mot.) [6]

**\*3** On behalf of the purportedly defaulting defendants, the United States Attorney's Office opposed Kee's default motion on various grounds. (*See* Memorandum of Law in Support of Defendants' Motion for Summary Judgment, dated July 19, 2002 (Dkt.28) ("Defs.' Mem."), at 20-21.) Kee replied on October 16, 2002. (*See* Plaintiff's Affirmation in Opposition to Defendants' Motion for Summary Judgment, dated October 16, 2002 ("Pl.'s 10/16/02 Mem.").) [7]

### 2. *Defendants' Motion for Judgment on the Pleadings and/or for Summary Judgment*

After Kee served his motion for default as against certain defendants, all of the defendants who had appeared in the action as of July 26, 2002-including Parrish and Jean (*see* n. 6, *supra* )-moved for judgment on the pleadings or, alternatively, for summary judgment dismissing the claims against them. (*See* Defendants' Notice of Motion for Judgment on the Pleadings and/ or for Summary Judgment, dated July 22, 2002 ("Defs' Notice of Motion") (Dkt.27).) The motion was based, *inter alia,* on the doctrines of sovereign and qualified immunity, on Kee's purported failure to allege the nature of individual defendants' personal involvement in the claimed constitutional violations, and on Kee's failure to plead and/or demonstrate the requisite elements of his claims. (*See* Defs' Mem at 2-3; Dkt. 27-32.)

Kee opposed this motion on October 16, 2002 (*see* Pl.'s 10/16/02 Mem.; Notice of [ ] Opposition [to] Government's [Motion for Judgment] on [the] Pleadings and/or for Summary Judgment, dated October 16, 2002), and Defendants replied on December 23, 2002 (*see* Reply Memorandum of Law in Support of Defendants'

Motion for Summary Judgment, dated December 13, 2002 (Dkt.39) ("Defs.' Reply Mem."), at 3-9).

### 3. *Kee's Motion for Leave To File a Third Amended Complaint*

At the same time that he filed his reply on his motion for a partial default judgment and his opposition to defendants' motion for judgment on the pleadings and/ or summary judgment, Kee also sought leave to file a Third Amended Complaint. (*See* Motion [for] Leave to File Amended Complaint Pursuant to Fed.R.Civ.P. [ ] 15(a) and [Affirmation] in Support, dated October 16, 2002 ("Pl.'s Mot. to Amend").) This motion to amend was supported by a new proposed pleading, which was handwritten on a form apparently intended for use by civil rights litigants in the Central District of California. (*See* United States District Court Central District of California Civil Rights Complaint Pursuant to *Bivens v.. Six Unknown Agents,* dated October 16, 2002 ("Proposed Third Am. Compl.").)

Defendants opposed the motion to amend on December 23, 2002, in conjunction with their reply on their motion for judgment on the pleadings and/or summary judgment. (*See* Defs.' Reply Mem.) On January 26, 2003, Kee submitted papers which, as discussed further below, not only replied to defendants' arguments on his motion to amend, but also supplemented his earlier submissions opposing defendants' motion. (*See* Pl.'s 1/26/03 Mem. at 4; *see also* transcript of April 7, 2003 Case Management Conference ("4/7/03 Tr."), at 2 (accepting Kee's January 26, 2003 submission as, *inter alia,* Kee's reply on the motion to amend).)

### 4. *Kee's Supplemental Submission*

**\*4** As noted above, Kee's January 26, 2003 supplemental submission was in the nature of both a reply on his motion to amend and a sur-reply on defendants' motion for judgment. [8] Among other things, Kee used this submission to address a prison videotape-showing several minutes of the incident at issue-that had been belatedly produced by defendants. Defendants had submitted this videotape to the Court in connection with their alternative motion for summary judgment (*see* Reply Declaration of Les Owen, dated December 13, 2002 ("Owen Reply Decl."), Ex. A), but Kee apparently did not receive a copy of the tape until after he had submitted his October 16, 2002 opposition papers. (*See* Dkt. 41; *see also* letter

from Kee to *Pro Se* Clerk, dated January 26, 2003 (noting "delay of filing due to prison's failure to release video tape and documents").) Accordingly, Kee presented argument about the tape for the first time in his January 26 submission. (*See* Pl.'s 1/26/03 Mem. at 3.)

## DISCUSSION

### I. *KEE'S MOTION FOR PARTIAL DEFAULT JUDGMENT*

#### A. *Applicable Legal Standards*

Rule 55(a) of the Federal Rules of Civil Procedure provides that the Clerk of the Court shall enter a default against a party who "has failed to plead or otherwise defend" an action in accordance with the applicable requirements, including timeliness. Fed.R.Civ.P. 55(a); *see also* Fed.R.Civ.P. 12(a)(1) (setting forth time limits to answer a complaint). Once the default has been entered, upon application of the party "entitled to a judgment by default," the Court may enter a default judgment against the defaulting party. Fed.R.Civ.P. 55(b).

The decision to grant a motion for a default judgment lies in the sound discretion of the trial court. *See Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir.1993). A default judgment, however, cannot be entered unless the Court has "jurisdiction over the party against whom the judgment is sought, which also means that [the defendant] must have been effectively served with process." Wright, Miller & Kane, *Federal Practice and Procedure Civil 2d §* 2682.

Further, a default judgment is warranted only where a plaintiff establishes that he has been prejudiced by the defendant's default. *See Cruz v. Coach Stores,* No. 96 Civ. 8099(JSR), 1998 WL 812045, at \*3 (S.D.N.Y. Nov. 18, 1998) (default judgment "not remotely warranted" where, *inter alia,* plaintiff had failed to establish prejudice resulting from defendant's lateness in answering) (citation omitted). Delay, standing alone, will not suffice to show prejudice, *see Enron Oil Corp.,* 10 F.3d at 98; rather, a plaintiff must show "that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler,* 713 F.2d 907, 916 (2d Cir.1983) (quoting Wright, Miller & Kane at § 2699) (internal quotation marks omitted)). Our judicial system does not favor

default judgments, and, if a trial on the merits is possible despite the defendant's default, *e.g.,* where a defendant answered a complaint belatedly, such a means of disposition is preferred. *See Campbell v. Shenendehowa Cent. Sch. Dist.,* No. 93 Civ. 227, 1993 WL 133726, at *2 (N.D.N.Y. Apr. 23, 1993)* (noting, in denying default motion where defendants had answered complaint belatedly, that courts disfavor defaults) (citing *Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir.1981)). The preference is for courts to "reach judgments on the merits and not by way of default judgments." *Shah v. N.Y. State Dep't of Civil Serv.,* 168 F.3d 610, 615 (2d Cir.1999) (citations omitted). Further, a plaintiff is not entitled to a default judgment, regardless of whether the defendant has answered the complaint, if the complaint does not state a viable legal claim for relief. *See, e.g., CPF Premium Funding, Inc. v. Ferrarini,* No. 95 Civ. 4621(CSH), 1997 WL 158361, at *14 (S.D.N.Y. Apr. 3, 1997) (The Court "may deny an application for entry of a default when the complaint fails to state a claim against the defaulting defendant.").

B. *The Defendants Against Whom Default Judgment Is Sought*

1. *Parrish and Jean*

**\*5** Kee is correct that, as of the date of his default motion, defendants Parrish and Jean had not answered his Amended Complaint. (*See* Pl.'s Default Mot. ¶ 3; Defs.' Am. Answer at 1 (listing defendants on whose behalf answer was filed).) Prior to filing his motion, however, Kee filed a Second Amended Complaint, which those defendants did answer, albeit belatedly. (*See* Second Am. Answer. at 1 (naming Parrish and Jean among answering defendants).) Indeed, Parrish and Jean have now joined in defendants' motion to dismiss Kee's claims, either on the pleadings or on summary judgment. (*See* Defs.' Notice of Motion at 1 (naming Parrish and Jean among moving defendants).)

In support of his default motion, Kee asserts only that "[t]he time to respond to [the Amended Complaint] has expired, and the defendants [have] not answered or made a motion," and that "[t]he defendants are not infants or incompetent people, nor [are they] serving in the United States Armed Forces." (Pl.'s Default Mot. ¶¶ 3-4.) Although these statements, when made, were apparently correct as to defendants Parrish and Jean, Kee has made no attempt to demonstrate that these defendants'

failure to answer the Amended Complaint-or to file a timely response to the Second Amended Complaint-has negatively affected the evidence or Kee's ability to conduct discovery in this case, or has enabled the defendants to engage in fraud or collusion. *Cf. Davis,* 713 F.2d at 916 (granting defendants' motion to set aside default judgment where, although "some delay will result," plaintiff, by failing to allege effects regarding evidence, discovery or fraud, did not establish prejudice). Given that any delay in these defendants' appearance is minor when the case is viewed as a whole, and that policy interests strongly favor the resolution of claims on the merits, I recommend that the motion for default judgment against these defendants be denied.

2. *Garcia*

Although the Marshal's return of service suggests that defendant Garcia was served with process, defendants contend that this particular defendant has never been sufficiently identified to enable effective service or a response. (*See* Defs.' Mem. at 20 (stating that Kee "has not provided sufficient identifying information, such as Garcia's first name or any actions Garcia allegedly took concerning [Kee], and the BOP consequently has been unable to identify who[m][Kee] purports to sue").) Having heard this argument, Kee now appears to concede that the BOP's inability to identify Garcia has precluded effective service upon him, and Kee has thus requested that his motion for a default judgment be stayed as to Garcia "until he can be properly identified." (*See* Pl.'s 10/16/02 Mem. at ¶ 48.)

Where, however, attempted service has been ineffective, the Court does not have jurisdiction over the defendant and should not entertain a default motion nor stay such a motion pending adequate service. Rather, the default motion should simply be denied. *See, e.g, American Inst. of Certified Pub. Accountants v. Affinity Card,* 8 F.Supp.2d 372, 375 (S.D.N.Y.1998) (vacating default judgment where plaintiff had failed to effectuate proper service because the court never had jurisdiction over the defendant to allow entry of the judgment); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Forman 635 Joint Venture,* No. 94 Civ. 1312(LLS), 1996 WL 272074, at *3 (S.D.N.Y. May 21, 1996) (default judgment may not be entered where the service of process, on which it rests, was ineffective). Here, if Kee is, at some point, able to identify Garcia sufficiently to effectuate valid service, then Kee's pleading should be amended at that time to reflect

Kee v. Hasty, Not Reported in F.Supp.2d (2004)
Case 9:16-cv-00275-LEK-DEP    Document 32    Filed 05/21/18    Page 75 of 109
2004 WL 807071

the identifying information; service should be made; and Garcia should be given a fair opportunity to respond to any claims against him. As there does not appear to be any present dispute that any prior service on Garcia was ineffective, I recommend that Kee's default motion as to this defendant be denied.

### 3. *Williams*

**\*6** Defendants assert that Williams has not appeared in this action because he has been on active duty overseas in the United States Air Force and is on leave from the BOP. (*See* Defs.' Mem. at 20-21; Declaration of Les Owen, dated July 19, 2002 (Dkt.32) ("Owen Decl."), ¶ 10.) Therefore, Defendants request that, if this action is not dismissed in its entirety, it be stayed as to Williams, pursuant to the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.App. § 521, which protects service members who have not appeared in an action against default judgments. (*See* Defs.' Mem. at 20-21.) That section provides, in pertinent part:

In an action covered by this section in which the defendant is in military service, the court shall grant a stay of proceedings for a minimum period of 90 days under this subsection upon application of counsel, or on the court's own motion, if the court determines that -

(1) there may be a defense to the action and a defense cannot be presented without the presence of the defendant; or

(2) after due diligence, counsel has been unable to contact the defendant or otherwise determine if a meritorious defense exists.

50 U.S.C.App. § 521(d); *see also Conroy v. Aniskoff,* 507 U.S. 511, 516 n. 9 (1993) (noting that Section 521 provides for stays of legal proceedings against persons engaged in military service).

The fact that Williams is on active duty overseas materially affects his ability to conduct a defense in this case. *See* 59 U.S.C.App. § 521(d)(1); *Franklin v. Police Officer Balestrieri,* No. 00 Civ. 5883(BJS)(DFE), 2002 WL 54600, at \*1 (S.D.N.Y. Jan. 15, 2002) (finding that activation of defendant Navy reservist officer to military duty materially affected his ability to conduct his defense); *see also U.S. v. Kaufman,* 453 F.2d 306, 308-309 (2d Cir.1971) ("The purpose of the Soldiers' and Sailors'

Civil Relief Act is to prevent default judgments from being entered against members of the armed services in circumstances where they might be unable to appear and defend themselves."). Further, Kee has not presented any evidence that Williams is not overseas on active duty, *see* 59 U.S.C.App. § 521(b)(1); *Kaufman,* 453 F.2d at 309 (noting that before a plaintiff can obtain a default judgment against a person in the military he must file an affidavit with the court stating that the individual being sued is not in the service), nor does he appear to object to the Court's granting Defendants' request for a stay. (*See* Pl.'s 10/16/02 Mem. ¶ 48 ("This action should also be stayed as to Lt. Williams who is alleged to be overseas on active duty.").) [9]

For these reasons, I recommend that Kee's motion for a default judgment as to defendant Williams be denied, and that this action be stayed as to him, pending his release from Air Force duty. I further recommend that counsel for defendants be directed to notify Kee and the Court of any changes in Williams's military duty status. *See Franklin,* 2002 WL 54600, at \*1 (directing Assistant Corporation Counsel to update court and plaintiff as to status of defendant officer's military duty).

### 4. *"Medical Department Staff"*

**\*7** Kee also seeks a default judgment as to the defendant identified only as "Medical Department Staff." (*See* Pl.'s Default Mot.) Defendants argue that, by failing in his Second Amended Complaint to name any members of that staff who allegedly were involved in a violation of his constitutional rights, Kee has failed to state a claim against any such staff members. (*See* Defs.' Mem. at n. 1.)

Defendants are correct that, under *Bivens,* a plaintiff must identify defendants by name and demonstrate the nature of their individual liability in order to state a claim for excessive force. (*See generally* discussion *infra* at 24-25.) Therefore, Kee is not entitled to a default judgment against the "Medical Department Staff," regardless of whether the Marshal purportedly served that entity with process and even though it has not, to date, appeared. *See, e.g., CPF Premium Funding, Inc.,* 1997 WL 158361, at \*14 (The Court "may deny an application for entry of a default when the complaint fails to state a claim against the defaulting defendant."); *see also Hernandez v. Coughlin,* No. 83 Civ. 8882(RWS), 1984 WL 211, at \*2 (S.D.N.Y. Apr. 17, 1984) (granting defendants' motion to

dismiss where plaintiff, *inter alia,* "alleges that his requests [to defendant 'Medical Staff' for attention] were denied, but he does not specify to whom those requests were made").

Further, as Kee has not named the "Medical Department Staff" as a defendant in his Proposed Third Amended Complaint (instead naming as defendants two individuals who were apparently members of that staff), it appears that Kee wishes to dismiss his claim voluntarily against the staff as an entity. Accordingly, I recommend that Kee's motion for a default judgment as to defendant Medical Department Staff be denied, and I further recommend that the "Medical Department Staff" be dropped as a named defendant in this case.

## II. *DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR SUMMARY JUDGMENT*

A. *Kee's Claims for Declaratory and Injunctive Relief*
Although not raised in defendants' motion, the Court notes that, since the date when Kee filed this action, he has been transferred out of the MCC, [10] and, thus, he no longer has viable claims for declaratory or injunctive relief with respect to any improper practices to which he was allegedly subjected at that facility. Regardless of whether defendants have raised this argument, the Court may consider it, *see Prins v. Coughlin III,* 76 F.3d 504, 506 (2d Cir.1996), and, logically, it should be considered before otherwise focusing on the merits of defendants' motion.

For a federal court to retain jurisdiction over a case, an actual controversy must exist "at all stages of review, not merely at the time the complaint is filed." *Prins,* 76 F.3d at 506 (quoting *Preiser v. Newkirk,* 422 U.S. 395, 402 (1975)) (where inmate had been transferred to third facility, his request for injunctive relief against first and second facilities was moot). "A case is deemed moot where the problem sought to be remedied has ceased, or where there is 'no reasonable expectation that the wrong will be repeated.' " *Id.* (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 632 (1953)). Under this reasoning, an incarcerated plaintiff's transfer out of the prison facility at which the cause of action arose moots his claim against that facility, insofar as it seeks injunctive and declaratory relief. *See Young v. Coughlin,* 866 F.2d 567, 568 n. 1 (2d Cir.1989); *accord Williams v. Goord,* 142

F.Supp.2d 416, 420 n. 2 (S.D.N.Y.2001); *Graham v. Perez,* 121 F.Supp.2d 317, 325 (S.D.N.Y.2000). An action for monetary damages, however, is not mooted by a transfer. *Prins,* 76 F.3d at 506.

**\*8** In this case, Kee seeks declaratory and injunctive relief, as well as monetary damages. Specifically, Kee requests that, in addition to awarding him compensatory and punitive damages, the Court: (1) declare that Defendants "violated the U.S. Constitution" (Second Am. Compl. at ¶ IV-A); and (2) enjoin Defendants "from using physical force against [P]laintiff except when necessary; from [confiscating] ... personal property and legal material from [P]laintiff; from [engaging in] retaliation [against Plaintiff in any] ... form [ ]; and from abusing authority over [P]laintiff" (Second Am. Compl. Attach. D). Since Kee is no longer being held at the MCC, there is "no reasonable expectation" that alleged wrongful conduct directed toward him will be repeated. Therefore, to the extent that they request prospective relief, Kee's claims are moot, and I recommend that they be dismissed on that ground. I further recommend that Kee not be granted leave to plead claims for declaratory or injunctive relief in a further amended pleading, [11] as such an amendment would be futile.

B. *Kee's Claims Against Defendants in Their Official Capacities*
To the extent Kee has asserted claims against the defendants in their official capacities, defendants move to dismiss such claims on the pleadings, on the ground that, under the doctrine of "sovereign immunity," the Court lacks subject matter jurisdiction over such claims. (*See* Defs.' Mem. at 4.)

*Bivens v. Six Unknown Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), affords a plaintiff a private right of action against federal officials who engaged in unconstitutional conduct in their *individual* capacities. *See Armstrong v. Sears,* 33 F.3d 182, 185 (2d Cir.1994). Suits against officers of the United States for actions taken in their official capacities, however, are considered suits against the United States, *see Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 509-10 (2d Cir.1994), and, under the doctrine of sovereign immunity, the United States is generally immune from suit unless it has consented to be sued, *see FDIC v. Meyer,* 510 U.S. 471, 476-79 (1994). With respect to claims like those asserted

here, *i.e.,* claims for money damages arising from alleged constitutional torts, the United States has not waived its sovereign immunity. *See Meyer,* 510 U.S. at 476-79; *Keene Corp. v. United States,* 700 F.2d 836, 845 n. 13 (2d Cir.1983).

Accordingly, Kee's constitutional tort claims, insofar as he brings them against defendants in their official capacities, are barred by the doctrine of sovereign immunity, and should be dismissed for lack of subject matter jurisdiction. *See, e.g, Sule v. Warden,* No. 94 Civ. 2242(DLC), 1995 WL 115694, at *2 (S.D.N.Y. Mar. 17, 1995) (sovereign immunity barred plaintiff from bringing constitutional claims against warden of the MCC in his official capacity). Further, Kee's motion to amend should be denied to the extent that it seeks to assert claims against defendants in their official capacities.

### C. *Kee's Claims Against Defendants in Their Individual Capacities*

#### 1. *Applicable Legal Standards*

##### a. *Judgment on the Pleadings*

 **\*9** In deciding a Rule 12(c) motion for judgment on the pleadings, the Court applies the same standards it uses for a Rule 12(b)(6) motion to dismiss. *Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999); *General Elec. Capital Corp. v. Domino's Pizza Inc.,* No. 93 Civ. 5070(PKL), 1994 WL 256776, at *2 (S.D.N.Y. June 2, 1994) (noting that the same standards are employed for deciding a Rule 12(c) motion as a motion made pursuant to Fed.R.Civ.P. 12(b)(6)) (citation omitted). That is, the Court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff. *Burnette,* 192 F.3d at 56 ("In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b) (6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the non-moving party); *see Allen v. WestPoint-Pepperell, Inc.,* 945 F .2d 40, 44 (2d Cir.1991). The issue is not whether the plaintiff will prevail ultimately, but whether the claimant is entitled to offer more evidence in support of the claims. *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998). A claim may not be dismissed under Rule 12(c) unless "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Deravin v. Kerik,* 335 F.3d 195,

200 (2d Cir.2003) (internal quotation marks and citations omitted). Further, where, as here, a plaintiff is proceeding *pro se,* the Court must construe the pleadings liberally. *Taylor v. Vermont Dep't of Educ.,* 313 F.3d 768, 776 (2d Cir.2002), *see Hughes v. Rowe,* 449 U.S. 5, 10 (1980) (a *pro se* party's pleadings must be liberally construed in favor of that party and are held to "less stringent standards that the formal parties drafted by lawyers") (internal quotation and citation omitted); *Farid v. Ellen,* No. 01 Civ. 8292(PKC), 2003 WL 23018805, at *1 (S.D.N.Y. Dec. 23, 2003) (liberal interpretation of a *pro se* plaintiff's pleading on a Rule 12(c) motion particularly appropriate where the plaintiff alleges a civil rights violation).

The mandate that a *pro se* plaintiff's complaint be construed liberally also makes it appropriate for the Court to look to the factual allegations in the plaintiff's opposition materials as a supplement to the factual allegations in the complaint. *See Idelicato v. Suarez,* 207 F.Supp.2d 216, 217 (S.D.N.Y.2002) (where a plaintiff is proceeding *pro se,* the court may, in deciding a Rule 12(c) motion, look beyond the complaint to all the pleadings, including plaintiff's opposition papers); *Roland v. Murphy,* 289 F.Supp.2d 321, 322 (E.D.N.Y.2003) (accepting the allegations in a *pro se* plaintiff's opposition materials for the purposes of deciding a Rule 12(c) motion); *see also Johnson v. Wright,* 234 F.Supp.2d 352, 356 (S.D.N.Y.2002); *Burgess v. Goord,* No. 98 Civ.2077(SAS), 1999 WL 33458, at *1 n. 1 (S.D.N.Y. Jan 26, 1999). Furthermore, on a motion to dismiss, the Court may consider any written instrument attached to the complaint as an exhibit, any statements or documents incorporated by reference, and documents on which the plaintiff relied while drafting his pleadings. *See Idelicato,* 207 F.Supp.2d at 217 (citing *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991)); *General Elec. Capital Corp. v. Domino's Pizza Inc.,* No. 93 Civ. 5070(PKL), 1994 WL 256776, at *2 (S.D.N.Y. June 2, 1994) (noting that the same standards are employed for deciding a Rule 12(c) motion as a motion made pursuant to Fed.R.Civ.P. 12(b) (6), and that in deciding either motion, consideration may be based on the factual allegations in the complaint and to documents attached thereto or incorporated therein by reference); *see Daniels v. City of N.Y.,* No. 03 Civ. 0809(GEL), 2003 WL 22510379, at *2 (S.D.N.Y. Nov. 3, 2003) (on a motion to dismiss, considering documents attached to *pro se* plaintiff's civil rights complaint as incorporated therein by reference).

### b. Summary Judgment

**\*10** Rule 12(c) of the Federal Rules of Civil Procedure provides that:

> [i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

In this case, defendants have submitted, and the Court has not excluded, a considerable amount of evidence outside the pleadings on the question of defendants' potential liability. (*See, e.g.,* Declaration of Dennis Hasty ("Hasty Decl."), dated July 19, 2002 (Dkt.29); Declaration of Courtney Shepard ("Shepard Decl."), dated July 19, 2002 (Dkt.30); Glover Decl.; Owen Decl.) Kee has had an opportunity to review and respond to this additional evidence. (*See* Pl.'s 56.1 Stmt.; Pl.'s 1/26/03 Mem.; Pl.'s 1/25/03 Decl.) Therefore, to the extent Kee's claims survive a challenge on the pleadings, it would be appropriate for the Court to reach defendants' alternative motion for summary judgment pursuant to Rule 56.

Under Rule 56(c), a motion for summary judgment may be granted when the parties' sworn submissions show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986); *Holt v. KMI-Continental, Inc.,* 95 F.3d 123, 128 (2d Cir.1996). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970).

In considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. Am. Piles, Inc.,* 138 F.3d 81, 87 (2d Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986)); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Further, where the party

opposing summary judgment is proceeding on a *pro se* basis, the Court must read that party's papers liberally and interpret them "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (internal quotation marks and citation omitted). Even a *pro se* plaintiff, however, cannot withstand a motion for summary judgment by relying merely on the allegations of a complaint. *See Champion v. Artuz,* 76 F.3d 483, 485 (2d Cir.1996). Rather, when confronted with evidence of facts that would support judgment in the defendant's favor as a matter of law, the plaintiff must come forward with evidence in admissible form that is capable of refuting those facts. *See* Fed.R.Civ.P. 56(e); *see also Jermosen v. Coughlin,* 877 F.Supp. 864, 867 (S.D.N.Y.1999) (*pro se* plaintiffs must make proper evidentiary showing in order to defeat summary judgment).

**\*11** Overall, the Court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir.1967); *accord Sutera v. Schering Corp.,* 73 F.3d 13, 15-16 (2d Cir.1995). Only where there is no genuine issue of material fact, viewing the evidence in the light most favorable to the nonmoving party, is summary judgment appropriate. *See Liberty Lobby,* 477 U.S. at 248; *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991).

### 2. Excessive Force Claim

Kee has alleged that several of the defendants engaged in the use of excessive force against him, in violation of the Eighth Amendment's prohibition against the infliction of cruel and unusual punishment. The Eighth Amendment [12] is violated by unnecessary and wanton inflictions of pain and suffering. *See Whitley v. Albers,* 475 U.S. 312, 320 (1986).

To establish an Eighth Amendment excessive force claim, an inmate must satisfy both subjective and objective tests. *See Hudson v. McMillan,* 503 U.S. 1, 7-8 (1992); *Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir.2000); *McCrory v. Beldon,* No 101 Civ. 0525(MHD), 2003 WL 22271192, at \*5(S.D.N.Y. Sept. 30, 2003). To satisfy the subjective test, the inmate must show that the prison officials "had a 'wanton' state of mind when they were engaging in the alleged misconduct." *Davidson v. Flynn,* 32 F.3d 27, 30 (2d Cir.1994) (citing *Hudson,* 503 U.S. at 7). Whether

such a showing has been made is determined by balancing four factors: (1) the need for the application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. *Hudson,* 503 U.S. at 7 (citing *Whitley,* 475 U.S. at 321). The absence of a serious injury is a relevant, but not dispositive, factor in this analysis. *See id.* Ultimately, the court's decision "turns on 'whether force was applied in a good faith effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm.' " *Whitley,* 475 U.S. at 320-21 (quoting *Johnson v. Glick,* 481 F .2d 1028, 1033 (2d Cir.1973)).

To satisfy the objective test, the inmate must show that the force that was applied was "sufficiently serious." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter,* 501 U.S. 295, 298 (1991)). The objective component may include allegations of the type and extent of force used, the nature and seriousness of any injury that resulted, and other indicia of the "excessiveness" of the force. *Mitchell v. Keane,* 974 F.Supp. 332, 340-41 (S.D.N.Y.1997) (citing *Branham v. Meachum,* 77 F.3d 626, 628-29 (2d Cir.1996)), *aff'd,* 175 F.3d 1008 (Table) (2d Cir.1997). This inquiry is "context specific, turning upon contemporary standards of decency." *Griffin v. Crippen,* 193 F.3d 89, 91 (2d Cir.1999) (quoting *Blyden v. Mancusi,* 186 F.3d 252, 263 (2d Cir.1999) (internal quotation omitted)). Furthermore, although "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993) (citation omitted), a plaintiff "need not prove 'significant injury' to make out an excessive force claim, and, thus, the fact that he suffered only minor injuries does not warrant dismissal." *Griffen,* 193 F.3d at 92.

**\*12** Where a prison disturbance was in progress at the time of the alleged constitutional violation, "wide-ranging deference" must be accorded to the actions of the prison officials in quelling the disturbance. *See Rosario v. Coughlin,* No. 88 Civ. 56, 1995 WL 57417, at \*7 (N.D.N.Y.1995) (citing *Whitley,* 475 U.S. at 320-21). If, however, the disturbance was already under control when the alleged violation occurred, the Court need not be as deferential. *See id.* (citations omitted).

Finally, to be liable under *Bivens* for an Eighth Amendment violation such as the use of excessive force,

a defendant must: (1) have been personally involved in the violation of the plaintiff's rights; (2) have created or acquiesced in a policy or practice of poor training or supervision; or (3) have otherwise acted recklessly in managing his or her subordinates. *See Barbera v. Smith,* 836 F .2d 96, 99 (2d Cir.1987) (citing, *inter alia, Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1999)). Thus, to establish any type of claim under *Bivens,* a plaintiff must allege facts showing, *inter alia,* that each named defendant denied him a right secured by the Constitution. *See Smith v. Menafee,* No 00 Civ. 2521(DC), 2002 WL 461514, at \*4 (S.D.N.Y. Mar. 26, 2002); *Lee v. Carlson,* 645 F.Supp. 1430, 1436 (S.D.N.Y.1986), *aff'd,* 812 F.2d 712 (2d Cir.1987). Conclusory accusations regarding a defendant's personal involvement in the alleged violation, standing alone, are not sufficient, *see Barbera,* 836 F.2d at 99, and supervisors cannot be held liable based solely on the alleged misconduct of their subordinates, *see Ellis v. Blum,* 643 F.2d 68, 85 (2d Cir.1981) (citations omitted).

### a. Kee Has Not Pleaded the Personal Involvement Necessary To State an Excessive Force Claim Against Defendants Barry, Maiden, Cancioso, Desmond, Rivera, Lett, Parrish, Cole, and Jean

Neither the Second Amended Complaint nor the materials attached thereto contain any allegation that defendants Barry, Maiden, Cancioso, Desmond, Rivera, Lett, Parish, Cole, and/or Jean personally engaged in any purported use of excessive force. Where allegations merely assert violations by "defendants" or "all defendants" (*see* Second Am. Compl., ¶¶ IV, IV-A), they are insufficient to sustain a claim that must be predicated on personal involvement. *See, e.g., Barbera,* 836 F.2d at 99 (dismissing *Bivens* complaint where plaintiff failed to plead a cognizable claim, in that he did not allege any personal involvement by the defendant supervisor); *Grullon v. Reid,* No. 97 Civ. 7616(RWS), 1999 WL 436457, at \* 7 (S.D.N.Y. June 24, 1999) (dismissing claims where plaintiff, in a *Bivens* action, failed to establish specific facts to show each defendant's personal involvement in the alleged constitutional violations); *Hendrickson v. U.S. Atty Gen.,* 91 Civ. 8135 (LMM), 1994 WL 23069, at \*3 (S.D.N.Y. Jan 24) ("In a *Bivens* action ... a complaint that fails to allege the direct and personal responsibility on the part of any of the named defendants ... must be dismissed."), *aff'd without opinion,* 40 F.3d 1236 (Table) (2d Cir.1994).

**\*13** For this reason, the excessive force claim pleaded in the Second Amended Complaint should be dismissed as against these particular defendants. I recommend, however, that any such dismissal be without prejudice to Kee's right to amend his pleading further to allege facts capable of supporting such a claim, if he is able to do so. In this regard, it appears that Kee's Proposed Third Amended Complaint in fact adds allegations capable of supporting an excessive force claim against most of these defendants (specifically, Barry, Maiden, Ciancioso, Desmond, Rivera, Lett, Parrish, and Cole), and that this amendment would not be futile and should thus be allowed. (*See* discussion *infra* at 50-52, regarding Kee's motion to amend.) It also appears, as discussed further below, that Kee's proposed amendment would *not* be sufficient to support an excessive force claim against defendant Jean (*see* discussion *infra* at 54-55), and I therefore recommend that this claim be dismissed with prejudice as to this defendant. [13]

*b. The Excessive Force Claim Against Defendants Hasty, Shepard, Brown, Linder, Ortiz, and Gassaway Is Adequately Pleaded, and Summary Judgment Against Those Defendants Should Be Denied*

*i. Adequacy of the Pleading*

Kee claims that defendants violated his Eighth Amendment right to freedom from cruel and unusual punishment by subjecting him to the excessive use of force in two ways: first, by placing him in four point restraints, in response to his acts of throwing cookies and milk out of his cell and shouting his objection to officers' treatment of another inmate, and, second, by keeping him in the restraints for 22 hours, despite his apparent self-control. (*See* Second Am. Compl. ¶ IV-A; Ltr. to Hasty; Pl.'s 1/26/03 Mem. at 2-4 .) Defendants concede that defendants Hasty, Shepard, Brown, Linder, and Ortiz were personally involved with placing Kee in restraints and/or in keeping him restrained. (*See* Defs.' Mem. at 6.) Thus, the excessive force claim against these defendants should not be dismissed on the pleadings for failure to allege defendants' personal involvement in the claimed violation.

As for defendant Gassaway, in the body of the Second Amended Complaint, Kee makes no allegations regarding Gassaway's personal involvement in any use of excessive force, but there are two statements in the materials

attached to Kee's Second Amended Complaint that implicate Gassaway in such a violation.

The first statement is contained in a letter from Kee to Gassaway, dated May 30, 2000, in which Kee writes, *inter alia,* "You told me you [tied] me down for throwing cookies on the floor and anyone who [does] that will be four-pointed.... [I]t is unconstitutional to four point someone for something other than body damage to self or others, or destroying property." (Letter from Kee to Captain Michael Gassaway, dated May 30, 2000, attached to Second Am. Compl. ("Ltr. to Gassaway").) The second statement is contained in a letter from Kee to Warden Hasty (another named defendant in this action), dated May 30, 2000, in which Kee writes, *inter alia,* "This four-point situation is from Captain [Gassaway].... He said ... people who throw food out will be four-pointed.... Please tell me about why you ordered me on four point restraints through the Captain.... [W]hy for 24 hrs.? Each time I was let up for the bathroom I was calm, even before I was strap[ped] down." (Ltr. to Hasty.)

**\*14** Liberally construed and accepted as true, these statements are adequate to plead a claim of excessive force by Gassaway. By accusing defendant Gassaway of having placed him (or having directed that he be placed) in four-point restraints, Kee has adequately charged that Gassaway was personally involved in the claimed violation. *Williams,* 781 F.2d at 323 (personal involvement is pleaded where there is an allegation that official directly participated in, or supervised, a constitutional infraction).

Further, as to the requirements of an excessive force claim against these defendants, whose personal involvement has been sufficiently alleged, both the subjective and objective factors have been satisfactorily pleaded. As to the subjective requirement of "wantonness," by asserting that there was no legitimate reason to place or keep him in restraints, Kee appears to allege that defendants had an ulterior, illegitimate motive for doing so. Liberally construed, Kee's charges that defendants did not need to place him in restraints so as to protect "[him]self or others," or to prevent property damage (Ltr to Gassaway), suggest that there was no useful purpose for the restraints other than to cause him pain. *See, e.g., Davidson,* 32 F.3d at 30 (subjective standard satisfied where plaintiff alleged that guards were improperly motivated when they put handcuffs on plaintiff too tightly under the circumstances so as to cause injury); *Mitchell,* 974 F.Supp. at 340-41

Kee v. Hasty, Not Reported in F.Supp.2d (2004)
Case 9:16-cv-00275-LEK-DEP    Document 32    Filed 05/21/18    Page 81 of 109
2004 WL 807071

(plaintiff satisfied subjective standard by pleading that the defendants used unnecessary force where plaintiff claimed that although he had already been subdued, officers continued to unnecessarily restrain him for no useful purpose other than to inflict pain).

For the objective requirement, Kee has alleged injuries as a result of the restraint, *e.g.,* to his back, neck and wrist (*see* Second Am. Compl. at ¶¶ IV, IV-A; *id.* Attach. C), indicating that the force applied was "sufficiently serious" to satisfy the pleading requirement. *See, e.g., Davidson, 32 F.3d at 30* (allegation of injury to the wrist and ankles resulting from leg irons and handcuffs sufficiently stated the objective component of the excessive force claim); *Mitchell, 974 F. Supp at 340* (allegation that plaintiff suffered bruising and back pain as a result of improper use of shackles was sufficient harm to satisfy the objective prong of the excessive force standard).

Given defendants' concessions regarding the personal involvement of Hasty, Shepard, Brown, Linder, and Ortiz; the above statements that Kee claims were made by Gassaway; and the fact that Kee has pleaded both deliberate wrongdoing and more than *de minimis* injury, I recommend that the Court deny defendants' motion for judgment on the pleadings as to Kee's excessive force claim against each of these defendants.

### ii. *Summary Judgment*

I further recommend that the Court deny defendants' alternative motion for summary judgment dismissing the excessive force claim against defendants Hasty, Shepard, Brown, Linder, Ortiz, and Gassaway.

### (a) *Material Issues of Fact Exist Regarding the Subjective Component of the Claim*

**\*15** As to the subjective component of Kee's excessive force claim, the parties have presented conflicting evidence to the Court regarding whether the particular circumstances of Kee's restraint could support a jury finding of an Eighth Amendment violation. First, the parties have offered differing accounts of the events leading up to Kee's placement in four-point restraints. Defendants trace the decision to place Kee in restraints to Kee's original act of throwing cookies. That is, they claim that Kee "created the disturbance in the MCC ... [by throwing] cookies out of his cell [which struck] a BOP staff member" (Defs.' Reply at 4-5), and argue that Kee had to

be forcibly restrained "in order to provide for the security of other inmates and staff and to prevent any further escalation of the disturbance" (Defs.' Mem. at 12; *see also* Hasty Decl. ¶ 8; Shepard Decl. ¶¶ 5, 6. [14] ) Kee, however, disputes defendants' representation that he "created" the disturbance, stating that his throwing of cookies was a "totally separate incident" from the disturbance that resulted in his restraint. (Pl.'s 1/25/03 Decl. ¶ 4.)

Second, although defendants argue that it is undisputed that Kee "refused to stop [his] behavior after attempts were made to avoid a confrontation by asking [him] to voluntarily comply" (Defs.' 56.1 Stmt. ¶ 11; *see* Shepard Decl. ¶ 7), Kee alleges that defendants' contention that he was "ordered ... to stop disruptive behavior and [that he] ... did not comply with the request nor the order ... is false" (Pl.'s 1/25/03 Decl. ¶ 2). According to Kee, the continued use of force was "completely needless," since he "was locked in his cell [,] obeyed the one order given[,] ... was in control[,] and did what [the] staff told him." (Pl.'s 1/26/03 Mem. at 3; *see also* Pl.'s 1/25/03 Decl. ¶¶ 2, 6.)

These contradictory accounts of the events leading up to Kee's placement in four-point restraints give rise to triable issues of fact. *See Griffen v. Crippen, 193 F.3d 89, 91 (2d Cir.1999)* (dismissal of an excessive force claim was inappropriate where there were genuine issues of material fact concerning what transpired after plaintiff was handcuffed and guards used force against him); *Crawford v. Braun, No. 99 Civ. 5851(RMB)(JCF), 2001 WL 127306, at \*4 (S.D.N.Y. Feb. 9, 2001)* (summary judgment denied because, *inter alia,* although "defendants present a strong case for finding that they applied only the force necessary to restrain [plaintiff] ... [i]f the jury were to credit [plaintiff's] version of the events, it would be entitled to infer that at least some of the defendants acted maliciously"); *Ali v. Szabo, 81 F.Supp.2d 447, 457 (S.D.N.Y.2000)* (where plaintiff's statement that he was obeying an order flatly contradicted the officers' rendition of the incident, factual issue regarding need for force precluded summary judgment on excessive force claim).

**\*16** Defendants also point to certain circumstances, surrounding both this particular incident and prison life in general, to justify the force that was used on this occasion. Specifically, they note that: (1) on the date in question, defendant Hasty "was confronted with a situation in which three inmates [including Kee] were being disruptive in the SHU [Special Housing Unit], including throwing

food out of their cells and shouting and banging their doors at the same time" (Defs.' Mem. at 11); (2) "[a]ny disturbance [in a prison facility] raises substantial security and safety concerns" (*id.*); (3) "many inmates in the SHU [where the incident in question took place] are placed there because of their history of committing disciplinary infractions ... includ[ing] violence" (*id .*); and (4) that "all three inmates [who were being disruptive] had significant disciplinary histories," including Kee, who "had been involved in two fights with other inmates, ... had been disruptive on at least one other occasion toward an MCC staff member ... [and] had attempted to commit suicide" (*id.*).

None of this, however, assures that, in this particular instance, restraints were used solely, as defendants contend, "to ensure that [Kee] ... regained self-control and [was] no longer deemed to pose a threat to [himself] or others or to the orderly running of the institution." (Defs.' Mem. at 12.) It appears, in this case, that approximately three hours passed between the time when Kee first became involved in a disturbance, which was 12:30 p.m., according to the MCC's Incident Report (*see* Second Am. Compl., Attach. A), and the time when he was placed in four-point restraints, which occurred at 3:37 p.m., according to the BOP videotape (*see* Owen Reply Decl. Ex. A; *see also* Shepard Decl. Ex. B. ("I was notified at approximately 1:20 p.m. [of the disturbance].... At approximately 3:37 p.m. inmate Charles Kee was placed in four point hard restraints.")). Further, defendants do not appear to dispute Kee's claim that he was "in control" and doing "legal work" when defendants entered his cell to place him in the restraints. (Pl.'s 1/26/02 Mem. at 2, 3; *see also* Pl.'s 56.1 Stmt. ¶¶ 2, 3; Pl.'s 1/25/02 Decl. ¶¶ 2, 6; Shepard Decl. ¶ 11 ("Members of the [use of force] team then entered Kee's cell, and placed him in four-point restraints in another cell, without any incident or injuries to the inmate or staff."); Owen Reply Decl. Ex. A (showing Kee calmly submitting to handcuffs and walking to cell to be positioned where four-point restraints were located).) With respect to the verbal commands given prior to placing Kee in the four point restraints, there appears to be a dispute as to whether they were effective, as defendants claim that Kee "initially refused to submit to hand restraints" (Defs.' 56.1 Stmt. ¶ 10; Shepard Decl. ¶ 7), [15] while Kee asserts that "[o]nce [he] was told to submit to hand restraints he did" (Pl.'s 1/25/03 Decl. ¶¶ 2, 6).

**\*17** The Court recognizes that the decision to place Kee in four-point restraints may have been made in the context of a prison disturbance. In such a situation, deference must be accorded to prison officials' means of restoring order. *See Rosario v. Coughlin,* No. 88 Civ. 56, 1995 WL 57417, at \*7 (N.D.N.Y.1995) (citing *Whitley v. Albers,* 475 U.S. 312, 320 (1986)). Nonetheless, if, as may also be the case here, the disturbance was already under control when the alleged violation occurred, a lesser measure of deference is required. *See id.* Kee appears to base his claim not only on his initial placement in four-point restraints, but also on the fact that he was kept in the restraints for 22 hours, even though, according to him, he was calm the entire time. [16]

In light of conflicts between the parties' accounts of relevant events, this case presents triable issues regarding the subjective element of Kee's excessive force claim, *i.e.,* the question of whether defendants' placement of Kee in four-point restraints, and keeping him restrained for 22 hours, was "a good faith effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley,* 475 U.S. at 320-21 (internal quotation marks and citation omitted); *see also Griffin,* 193 F.3d at 91 (dismissal of excessive force claim was inappropriate where there were "genuine issues of material fact concerning what transpired after appellant was handcuffed and whether the guards maliciously used force against him."); *McCrory v. Belden,* No. 01 Civ. 0525(MHD), 2003 WL 22271192, at \*6 (S.D.N.Y. Sept. 30, 2003) ("Depending on the specific facts of how the altercation began and proceeded, a reasonable fact-finder could conceivably conclude that some of the actions that plaintiff attributes to each of these defendants represented malicious or sadistic conduct, or at least reflected an excessive and unreasonable use of force to keep or restore order."); *Ali,* 81 F.Supp.2d at 458 ("because there is a material issue of fact as to whether any force was needed, the Court cannot determine whether the force allegedly used ... reasonably correlates to the need for the application of force"); *Johnson v. Doherty,* 713 F.Supp. 69 (S.D.N.Y.1989) (summary judgment on an excessive force claim is inappropriate where there are disputed facts as to the context in which the incident occurred and the signs of provocation). [17]

(b) *Material Issues of Fact Also Exist Regarding the Objective Component of the Claim*

This case also involves disputed issues of fact with respect to the objective component of Kee's excessive force claim-that component which looks to the seriousness of the force that was applied, as evidenced by the injury that the plaintiff suffered. *See, e.g., Griffen,* 193 F.3d at 92; *McCrory,* 2003 WL 22271192, at *6. This requirement can be satisfied by pain, even where the plaintiff has shown no significant injury. *See United States v. Walsh,* 194 F.3d 37, 50 (2d Cir.1999); *Williams,* 77 F.3d at 762 (noting, in case involving four-point restraints, that one reason for this exception is that "[m]ankind has devised some tortures that leave no lasting physical evidence of injury").

**\*18** Defendants argue that Kee "was placed into four point restraints ... without any ... injuries" (Defs.' Mem. at 12), and, thereafter, pursuant to BOP policy, was checked every 15 minutes by facility staff, and at least once per eight-hour shift by MCC medical personnel (*id.; see also* Shepard Decl. ¶¶ 14, 15; Glover Decl. ¶ 7). Kee, however, has alleged that, during the 22-hour period of restraint, he suffered "back and neck problems" (Second Am. Compl. Attach. C), that he complained of "extreme pain" which has had "effects up until this very day" (Second Am. Compl. at ¶ IV-A), as well as "back, neck and wrist injuries along with extreme mental suffering" (Second Am. Compl. at ¶¶ IV, IV-A; *see also* Proposed Third Am. Compl. ¶ C.11).

Defendants have presented evidence that Kee neither exhibited outward signs of injury nor voiced specific complaints of pain during the period of restraint or the months that followed (*see* Glover Decl. ¶ 8, Ex. B), although that evidence does indicate that, on July 3, August 31, and September 18, 2000, the MCC's medical staff refilled Kee's prescription for Motrin, which he was originally given, prior to the May 25, 2000 incident, for "complaints of headaches and back pain" (Glover Decl. ¶ 9; *see also id.* Ex. B). Kee, on the other hand, claims that, during the period of restraint, "[Defendants] saw me ... and heard [me] complain of back and neck problems but continued" the restraints nonetheless. (Second Am. Compl. Attach. C.) Kee also asserts that he suffered "back and neck problems" as a result of the restraints (*id* ), that he was "treated ... with Motrin" for these problems (Second Am. Compl. ¶ IV), and that his request for physical therapy was refused (*id* ).[18]

Viewing the evidence in the light most favorable to Kee, and recognizing that four-point restraints may have

serious physical side effects, *Washington v. Harper,* 494 U.S. 210, 226-27 (1990), a reasonable fact-finder could at least find that Kee was taking Motrin in July, August and September 2000 to relieve pain he suffered as a result of the four-point restraints. Similarly, a reasonable fact-finder could determine that Kee's pain and injury were not *de minimis.*

The conflict in the evidence regarding the existence (or extent) of the pain suffered by Kee as a result of the restraints thus creates another genuine issue of material fact. *See Griffen,* 193 F.3d at 92 (where plaintiff's alleged injuries of a bruised shin and swelling in one knee, although minor, could not be said to be *de minimis* as a matter of law to support the grant of summary judgment); *McCrory,* 2003 WL 22271192, at *6 (abrasions evidenced by medical records "still present a triable issue of fact," because they "may be found by a reasonable fact-finder to constitute minor rather than *de minimis* harm"); *Crawford v. Braun,* No. 99 Civ. 5851(RMB)(JCF), 2001 WL 127306, at *4 (Feb. 9, 2001) (denying summary judgment on excessive force claim where there was a disputed issue of fact regarding the objective component of the claim); *Minor v. Ramsey,* No. 99 Civ. 11661(AKH), 2001 WL 540746, at *3 (S.D.N.Y. May 22, 2001) (denying summary judgment where inmate, in handcuffs, leg irons and a waist chain, suffered a bruised and swollen wrist after alleged use of excessive force, because a jury could conclude that his injuries were serious enough to satisfy the objective element of plaintiff's claim); *see also Faison,* 2002 WL 467145, at *4 (where defendants did "not directly contest [plaintiff's] allegations of intense pain" both during and after 48-hour period in five-point restraints, objective component of excessive force claim satisfied).

**\*19** As Kee has demonstrated the existence of genuine disputed issues regarding both the subjective and objective components of his excessive force claim, I recommend that defendants' motion for summary judgment on this claim be denied.

### iii. *Qualified Immunity*

Defendants also argue that "[t]he undisputed facts demonstrate that the actions taken concerning [Kee] on May 25, 2000 ... were objectively reasonable," and that they are therefore entitled to qualified immunity with respect to Kee's excessive force claim. (*See* Defs.' Mem. at 10-14.)

"The purpose of the qualified immunity doctrine is to balance the need to protect the rights of citizens through damage remedies, with the opposing need to 'protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.' " *Danahy v. Buscaglia,* 134 F.3d 1185, 1189-90 (2d Cir.1998) (quoting *Butz v. Economou,* 438 U.S. 478, 506 (1978)). "A government official is entitled to qualified immunity from suit for actions taken as a government official if (1) the conduct attributed to the official is not prohibited by federal law, constitutional or otherwise; (2) the plaintiff's right not to be subjected to such conduct by the official was not clearly established at the time of the conduct; or (3) the official's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken." *Cuoco v. Moritsugu,* 222 F.3d 99, 109 (2d Cir.2000) (citations omitted).

A prisoner's right to freedom from excessive force by prison officials is a clearly established constitutional right. *See, e.g, McCrory,* 2003 WL 22271192, at *7 ("there is no question that ... the right of inmates to be free from excessive force by their jailers [i]s well-established") (citation omitted). Where a right is clearly established, however, a government official is still entitled to qualified immunity if "it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Cerrone v. Brown,* 246 F.3d 194, 199 (2d Cir.2001) (internal quotation marks and citation omitted). Objective reasonableness is established if "the only conclusion a reasonable jury could reach is that reasonable officers would disagree on the constitutionality" of the official's actions. *Id.* at 203.

Dismissal on the basis of a qualified immunity defense is not appropriate where "there are facts in dispute that are material to a determination of reasonableness." *Thomas v. Roach,* 165 F.3d 137, 143 (2d Cir.1999); *see, e.g., Breen v. Garrison,* 169 F.3d 152, 153 (2d Cir.1999) (issues of material fact which existed as to the excessive force claim precluded summary judgment based on a qualified immunity defense); *McCrory,* 2003 WL 22271192, at *7 ("immunity cannot be granted on this record" where, *inter alia,* there was issue of fact regarding initiator of altercation between plaintiff and defendants); *Ali,* 81 F.Supp.2d at 461 ("The Court cannot conclude as a matter of law that [officers'] conduct was objectively reasonable since there are material issues of fact as to whether

[plaintiff] was obeying the officers' order and who started the physical confrontation."); *Amaker v. Haponik,* No. 98 Civ. 2663(JGK), 2000 WL 343772, at *6 (S.D.N.Y. Mar. 31, 2000) (complaint should not be dismissed on qualified immunity grounds where "the facts [were] not sufficiently developed at this stage in the proceedings to conclude that a reasonable officer would not have concluded that defendants' actions were unlawful").

**\*20** Here, as discussed above, Kee has raised triable issues of fact with respect to the reasonableness of the conduct of those defendants whom he has identified as playing a direct role in placing and/or keeping him in restraints. Accordingly, I recommend that defendants' motion to dismiss the excessive force claim against those defendants on the ground of qualified immunity be denied.

### 3. *Deliberate Indifference Claim*

Kee also appears to be alleging that by continuing to restrain him despite his complaints of pain, and by inadequately treating his injuries and failing to meet his dietary needs after releasing him from the restraints, defendants were deliberately indifferent to his medical needs. (*See* Second Am. Compl. ¶¶ IV, IV-A.)

The Eighth Amendment has been construed to safeguard an inmate's right to adequate medical care. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Woods v. Goord,* No. 01 Civ. 3255(SAS), 2002 WL 731691, at *3-4 (S.D.N.Y. Apr. 23, 2002). Prison officials violate this right when they are deliberately indifferent to an inmate's medical needs. *Id.* Like the standard for excessive force, the personal involvement of each defendant must be adequately pleaded. (*See* discussion *supra* at 24-25.) Further, determining whether officials have been deliberately indifferent also includes both objective and subjective components. *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998); *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994).

First, the plaintiff's medical need, in objective terms, must be serious. *Hathaway,* 37 F.3d at 66; *Hutchinson v. New York State Corr. Officers,* No. 02 Civ. 2407(CMB), 2003 WL 22056997, at *4-5 (S.D.N.Y. Sept. 4, 2003) (citing *Flemming v. Velardi,* No. 02 Civ. 4113(AKH), 2003 WL 21756108, at *2 (S.D.N.Y. July 30, 2003) (citation omitted)). This standard contemplates "a condition of urgency" that may "produce death, degeneration or

extreme pain." *Hathaway,* 37 F.3d at 66 (citing *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting)). Such a serious medical need arises where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Chance,* 143 F.3d at 702 (quoting *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir.1997)); *Woods,* 2002 WL 731691, at *4.

Second, the facts must give rise to an inference that the persons charged with providing medical care knew of that serious medical need and intentionally disregarded it. *Flemming,* 2003 WL 21756108, at *2; *Woods,* 2002 WL 731691, at *4; *Johnson v. Bendheim,* No. 00 Civ. 720(JSR), 2001 WL 799569, at *7 (S.D.N.Y. July 13, 2001). To satisfy this prong of the standard, the defendant prison official must have acted with a sufficiently culpable state of mind-that is, the official must have known of and disregarded "an excessive risk to inmate health or safety." *Chance,* 143 F.3d at 702 (quoting *Farmer v. Brennan,* 511 U.S. 825 (1994)). Thus, "the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harms exists, and he must also draw the inference." *Id; see also Hathaway,* 37 F.3d at 66.

**\*21** In this case, Kee has accused all of the named defendants, collectively, of denying him medical attention both during and after the 22 hours that he was in four-point restraints, despite his complaints of pain (Second Am. Compl. Attach. C), and of serving him food that they knew he could not eat (*see id.*). With these allegations, pleaded in the Second Amended Complaint, Kee appears to be attempting to state a claim of deliberate indifference to his medical needs, in violation of the Eighth Amendment. As a threshold matter, this claim cannot survive defendants' Rule 12(c) motion for judgment on the pleadings, because Kee has failed to allege any individual's personal involvement in the denial of medical treatment. *See, e.g, Hemmings v. Gorczyk,* 134 F.3d 104, 109 n. 4 (2d Cir.1998) (where plaintiff "fails to include an allegation which, if proven, would permit a reasonable trier of fact to infer that that individual was personally involved in the deliberate indifference to his medical needs, the district court may dismiss the complaint as to that individual"); *Gowins v. Greiner,* No. 01 Civ. 6933(GEL), 2002 WL 1770772, at *6 (S.D.N.Y. July 31, 2002) ("A plaintiff must 'allege a tangible connection between the defendants' alleged unconstitutional acts and the injuries suffered'.") (citing *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986)).

Further, Kee has not pleaded that he suffered a sufficiently serious injury to meet the objective component of the deliberate indifference claim. Unlike an excessive force claim, which can be sustained even in the absence of any significant injury (*see supra* at 23), deliberate indifference requires the plaintiff to have had an "urgent" medical condition which, as discussed above, could lead to "death, degeneration or extreme pain." *Everling v. Rielly,* No. 98 Civ. 6718(DAB), 2001 WL 1150318, at *8 (S.D.N.Y. Sept. 28, 2001) (citation omitted). Here, although Kee alleges that he sustained injuries to his "back, neck and wrist" (Second Am. Compl. ¶ IV), he does not claim that these injuries were life-threatening or otherwise severe. Under the circumstances, Kee cannot maintain his deliberate indifference claim, as pleaded. *See, e.g., id* at *8-9 (finding that alleged injuries consisting of a bruised arm, a knot in plaintiff's back, and soreness around her vaginal area, satisfied the objective component of plaintiff's excessive force claim but were insufficient for her deliberate indifference claim) (citing *Hathaway,* 37 F.3d at 66); *Rodriguez v. Mercado,* No 00 Civ. 8588(JSR) (FM), 2002 WL 1997885, at *8 (S.D.N.Y. Aug. 28, 2002) (allegations that plaintiff was "kneed in the back of the head and had his head struck against the wall" and sustained bruises to his head back and wrists were not so life threatening as to demonstrate a serious injury for deliberate indifference claim); *Thomas v. Nassau Co. Corr. Ctr.,* 299 F.Supp.2d 333, 338 (E.D.N.Y.2003) (objectively speaking, the allegation of an "injured hand" was not a serious enough condition to satisfy the first prong of the deliberate indifference test); *cf. Henderson v. Doe,* No. 98 Civ. 5011(WHP), 1999 WL 378333, at *2 (S.D.N.Y. June 10, 1999) (listing examples of sufficiently serious medical conditions such as loss of an ear, an allergic reaction to penicillin, and brain tumor) (citations omitted).

**\*22** Moreover, Kee's bare allegations of mental suffering and/or physical "pain" are, without more, insufficient to satisfy the stringent standard for pleading a serious injury. *Thomas,* 299 F.Supp.2d at 228 ("[S]ubjective complaints of pain are insufficient to satisfy this standard.") (citing *Chatin v. Artuz,* No 95 Civ. 7994(KTD), 1999 WL 587885, at *3 (S.D.N.Y. Aug. 4, 1999) ("[The plaintiff's] alleged problems in his right foot may indeed be very real. His pain is not, however, of the type contemplated for satisfaction of the objective standard)); *cf. Chance,* 143 F.3d at 702 (plaintiff stated a sufficiently serious medical condition where he suffered great pain for six months from abscessed

Kee v. Hasty, Not Reported in F.Supp.2d (2004)
Case 9:16-cv-00275-LEK-DEP    Document 32    Filed 05/21/18    Page 86 of 109
2004 WL 807071

teeth, making him unable to chew properly and causing him to choke on his food); *Hathaway,* 37 F.3d at 66 (deliberate indifference standard satisfied where doctors delayed in removing pins in inmate's hips for over 2 years and where inmate complained of pain over 50 times).

Finally, Kee's acknowledgment in the Second Amended Complaint, that the medical staff provided him with pain medication (Motrin) renders his claim of deliberate indifference insufficient under the subjective prong of the standard, which requires that the defendant officials knew of and intentionally disregarded "an excessive risk to inmate health or safety." *Chance,* 143 F.3d at 702 (quoting *Farmer v. Brennan,* 511 U.S. 825 (1994)); *Williams v. Koenigsman,* No. 03 Civ. 5267(SAS), 2004 WL 315279, at *6 (S.D.N.Y. Feb. 18, 2004) (deliberate indifference claim dismissed against defendant nurse who proscribed Motrin and other pain medication for plaintiff who complained of headaches after being struck in the base of the head, even though this plan of treatment did not ultimately succeed in alleviating plaintiff's suffering). The fact that Kee may feel that more should have been done is insufficient to satisfy this component of the claim. *Vento v. Lord,* No. 96 Civ. 6169(SS), 1997 WL 431140, at *4 (S.D.N.Y. July 31, 1997) ("It is well established ... that allegations of negligence, medical malpractice or claims based on a difference of opinion over matters of medical judgment do not rise to an Eighth Amendment violation.")

For these reasons, I recommend that Kee's deliberate indifference claim be dismissed on the pleadings. I further recommend that Kee be denied leave to replead this claim as his Proposed Third Amended Complaint alleges no facts describing a more serious injury than that described by Kee in his Second Amended Complaint. (*See* discussion *infra* at 55-56.)

### 4. *Deprivation of Property Claim*

In his Second Amended Complaint, Kee alleges that defendants "confiscated [his] personal property and some legal materials." (*See* Second Am. Compl. at ¶ IV-A.) The Court liberally construes this allegation, as defendants have, as a constitutional claim of deprivation of property.[19] (*See* Defs.' Mem. at 18.) Defendants argue that this claim is subject to dismissal on the pleadings because Kee has: (1) failed to plead exhaustion of his administrative remedies with respect to this claim; and (2) failed to plead the claim with sufficient specificity. (*See id.*

at 18-20.) The Court need not reach the second argument, because defendants are correct that dismissal is warranted on the ground of lack of exhaustion.

**\*23** All claims of misconduct regarding prison conditions must be exhausted before they can be raised in this Court. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that this exhaustion requirement "applies to all inmate suits about prison life, whether they involve general or particular episodes, and whether they allege excessive force or some other wrong." *See Porter v. Nussle,* 534 U.S. 516, 532 (2002). Moreover, claims for deprivation of property are claims "with respect to prison conditions" under § 1997e and, as such, must be exhausted under the PLRA. *See Dixon v. Laboriel,* No. 01 Civ. 3632(LAP), 2003 WL 21729834, at *4 (S.D.N.Y. July 24, 2003) (dismissing deprivation of property claim because inmate had failed to exhaust administrative remedies and the claim was thus barred by the PLRA).

The BOP's Administrative Remedy Program provides "a process through which inmates may seek formal review of an issue which relates to any aspect of their confinement ... if less formal procedures have not resolved the matter." 28 C.F.R. § 542.10. To exhaust a claim, an inmate must first attempt to resolve his complaint by presenting the issue to staff informally. If that effort is unsuccessful, the inmate may submit a written Administrative Remedy Request to the Warden, on a standard form, within 20 days of the incident that is the subject of the complaint. If that request is denied, the inmate may, within 20 days of the denial, submit an appeal to the appropriate Regional Director, again on a standard form. Finally, if the appeal is denied as well, the inmate may appeal to the General Counsel's office, within 30 days of the Regional Director's decision. *See* § 542.10 *et seq.; see also Joost v. Menifee,* No. 03 Civ. 1608(DLC), 2003 WL 22977499, at *2 (S.D.N.Y. Dec. 19, 2003).

A prisoner must completely exhaust the administrative remedies to the highest level for each claim he seeks to present. *See Santiago v. Meinsen,* 89 F.Supp.2d 435, 440 (S.D.N.Y.2000). Under Section 1997e, all institutional

remedies must be pursued, even if the prisoner is ultimately time-barred from pursuing the administrative process or is seeking a remedy that cannot be awarded in the administrative proceeding. *See id; see also Booth v. Churner,* 532 U.S. 731, 736-37 (2001) (requiring an inmate to exhaust claims through all available proceedings, even those that could not provide the relief sought); *Cruz,* 80 F.Supp.2d at 117 (even though monetary damages sought by the plaintiff were not available in the administrative proceeding, the exhaustion requirement remained applicable).

Because dismissal on the basis of a failure to exhaust is mandatory, Kee's deprivation of property claim can only proceed in this Court if he has exhausted all available administrative remedies with respect to it, including all appellate remedies provided within the BOP system. *See Porter,* 534 U.S. at 523 (citing *Booth,* 532 U.S. at 739); *see Woods,* 2002 WL 731691, at *11; *Mendez v. Artuz,* No. 01 Civ. 4157(GEL), 2002 WL 313796, at *1 (S.D.N.Y. Feb. 27, 2002).

**\*24** Defendants argue that Kee's deprivation of property claim should be dismissed because, although Kee complained in his Administrative Remedy Request that his "personal property" had been "disposed," "[i]t is unclear what 'disposed personal property' relates to, [Kee] did not address or further explain it in the attachment to his administrative complaint ..., this 'issue' was not addressed by the BOP, nor did [Kee] further raise it in the administrative process." (Defs.' Mem. at 19; *see* Owen Decl. ¶ 12; Ex. D.) In response, Kee has offered no evidence that he sought relief regarding the alleged deprivation of his property issue beyond an Administrative Remedy Request. [20] Although Kee maintains that "property claims were raised in the administrative process" (*see* Pl 10/16/02 Mem. ¶ 47), he must do more than raise the issue in the administrative process-he must fully exhaust the remedies provided therein. *See Porter,* 534 U.S. at 523

As Kee has not offered any evidence, let alone sufficiently pleaded, that he has exhausted his administrative remedies on the deprivation of property claim, the claim should be dismissed. *See Burns v. Moore,* No. 99 Civ. 0966(LMM) (THK), 2002 WL 91607, at *7 (S.D.N.Y. Jan. 24, 2002) (granting defendant's motion for judgment on the pleadings for failure to exhaust administrative remedies based on the pleadings and accompanying affidavits); *see McCoy v. Goord,* 255 F.Supp.2d 233, 250-52 (S.D.N.Y.2003) (where it appears from the face of the complaint that a plaintiff concedes lack of exhaustion, or non-exhaustion is otherwise apparent, a court may decide the issue on a motion to dismiss). Moreover, as Kee still fails to plead exhaustion of this claim in his Proposed Third Amended Complaint, leave to replead should be denied. (*See* discussion *infra* at 49-50, 56-57.)

5. *Retaliation Claim*

Kee also appears to assert a retaliation claim against defendant Gassaway, by alleging that his placement in four-point restraints was "due to [his] complaints to [C]aptain Gassaway about [Gassaway] instructing [Kee] on how to paint the SHU, before the fabricated riot was alleged." (Pl.'s 1/26/03 Mem. at 6; *see also* Pl.'s 5/30/00 Mem. at 2 ("I do allege that defendants violated ... the regulations of [the MCC] with respect to retaliation"); Second Am. Compl. Attach. D (requesting that defendants "refrain from retaliation").)

In order to establish a claim for retaliation for an individual's exercise of his First Amendment rights, a plaintiff must show: (1) that the plaintiff's activity was protected by the First Amendment; and (2) that the defendant's conduct was in response to that protected activity. *Cancel v. Goord,* No. 00 Civ.2042(LMM), 2002 WL 171698, at *4 (S.D.N.Y. Feb. 4, 2002) (citing *Posr v. Court Officer Shield # 207,* 180 F.2d 409, 418 (2d Cir.1999)). Although filing a grievance or a lawsuit is protected activity under the First Amendment, *id.* (citing *Crawford v. Braun,* No. 99 Civ. 5851(RMB)(JCF), 2001 WL 127306, at *6 (S.D.N.Y. Feb. 4, 2001)), Kee fails to plead that he filed a grievance regarding Gassaway's instructions on painting the SHU, and never claims that his complaint on this subject was protected by the First Amendment. Thus, as Kee never alleges that he actually exercised a First Amendment right, he has not adequately pleaded that he was subjected to retaliation for exercising such a right. Further, Kee does not plead any particular circumstances, such as a close proximity in time between his complaint and his being placed in the four-point restraints, to suggest that Gassaway's conduct was retaliatory. *Cf. id.* (finding a sufficiently pleaded claim of retaliation where the plaintiff had filed a grievance based on the alleged retaliatory conduct as well as specifically pleading that the alleged retaliatory conduct occurred one month after filing the lawsuit). Rather, Kee's conclusory allegations of retaliation in this case are devoid of any

factual detail or support, and, as such, are not sufficient to state a claim. *See Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (stating standard for § 1983 retaliation claim, and noting that "a complaint of retaliation that is wholly conclusory can be dismissed on the pleadings alone") (internal quotation marks and citation omitted).

**\*25** Accordingly, I recommend that Kee's retaliation claim against Gassaway be dismissed on the pleadings. I recommend, however, that this claim be dismissed with leave to replead, as defendants did not address this claim in their motion for judgment on the pleadings and/ or summary judgment, and Kee has not yet had the opportunity to add additional allegations in support of this claim in an attempt to cure the noted deficiencies.

### 6. *Statutory Claims*

Kee also purports to bring his claims under 42 U.S.C. §§ 1983, 1985(3), 1986, 1997a, 1997b and 1997c. [21] (*See* Pl.'s 10/16/02 Mem. ¶¶ 1, 29; Proposed Third Am. Compl. at 1.) To the extent they are brought under these statutes, however, Kee's claims should be dismissed, because, as defendants point out, no such claims can be maintained. (*See* Defs.' Reply at 9 n. 3.)

Section 1983 concerns violations by individuals acting under color of state law, and does not, therefore, subject federal employees to suit. *See Robinson v. Overseas Military Corp.,* 21 F .3d 502, 510 (2d Cir.1994). Under Section 1985(3), a plaintiff must allege a conspiracy that is motivated by racial or related class-based discriminatory animus, *see Graham,* 89 F.3d at 81-82, which Kee has not done, and, a valid Section 1986 claim is dependent on a valid Section 1985 claim, *see id.* at 82. Finally, Sections 1997a, 1997b and 1997c concern actions that may be brought by the Attorney General, and do not provide a private right of action. *See Gayle v. Lucas,* 1998 WL 148416, at \*5 (S.D.N.Y. Mar. 30, 1998) (noting that 42 U.S.C. § 1997j precludes a private right of action under §§ 1997-1997j) (citation omitted).

Therefore, I recommend that, to the extent that Kee purports to assert any claims under these statutes, such claims be dismissed on the pleadings, with prejudice.

### III. *KEE'S MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT*

#### A. *Applicable Legal Standards*

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." A "motion to amend should be denied if there is an 'apparent or declared reason-such as undue delay, bad faith or dilatory motive ... repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of an amendment, [or] futility of amendment." ' *Dluhos v. Floating and Abandoned Vessel Known as "New York,"* 162 F.3d 63, 69 (2d Cir.1998) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

An amendment is considered futile when the proposed new claim would not withstand a motion to dismiss, either for failure to state a cause of action, or on another ground. *See Milanese v. Rust-oleum Corp.,* 244 F.3d 104, 110 (2d Cir.2001); *see also Avent v. Solfaro,* No. 02 Civ. 0914(RCC)(RLE), 2003 WL 21361730, at \*3 (S.D.N.Y. June 12, 2003) (denying prisoner leave to amend where claims would be subject to dismissal as not fully exhausted); *Whimsicality, Inc. v. Battat,* 27 F.Supp.2d 456, 465 (S.D.N.Y.1998) (denying leave to amend where the claim to be added would fail to state a claim upon which relief may be granted); *Chan v. Reno,* 916 F.Supp. 1289, 1302 (S.D.N.Y.1996) (denying leave to amend where Court lacked subject matter jurisdiction over the proposed amendment). Thus, if a proposed amendment would be subject to "immediate dismissal" on some ground, the Court will not permit the amendment. *See Jones v. N .Y. State Div. of Military & Naval Affairs,* 166 F.3d 45, 55 (2d Cir.1999). If, however, the party seeking to amend "has at least colorable grounds for relief, justice ... require[s]" that its motion be granted. *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 783 (2d Cir.1984) (citation omitted). As noted above, a *pro se* litigant, in particular, should be afforded a reasonable opportunity to amend his complaint to demonstrate the existence of a valid claim. *See, e.g., Satchell v. Dilworth,* 745 F.2d 781, 785 (2d Cir.1984).

#### B. *Kee's Proposed New Allegations in Support of His Excessive Force Claim*

1. *The Proposed Amendment As To Defendants Barry, Maiden, Ciancioso, Desmond, Rivera, Lett, Parrish, Cole, and Gassaway Should Be Permitted*

**\*26** Kee's proposed amendment alleges that defendant Barry "assisted [placing] Plaintiff in restraints" (Proposed Third Am Compl. ¶¶ C.9); that defendant Maiden "attack[ed] Plaintiff while in restraints ... with fist and key rings" (*id.* ¶ C.11); and that defendant Ciancioso "assisted Lt. Barry in applying restraints" (*id.* ¶ C.16). These allegations are adequate to allege these defendants' direct involvement in the claimed use of excessive force. *See Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986).

The Proposed Third Amended Complaint also contains allegations sufficient to plead the personal involvement of defendants Desmond, Rivera, Lett, and Parrish in this claimed violation. Each of these defendants is now alleged to have known that Kee was wrongly being held in four-point restraints, and to have done nothing to correct the situation. (*See* Proposed Third Am. Compl. ¶¶ C.3, C.4, C .10, C.13.) [22]

A correctional officer has an affirmative duty to intercede on behalf of an inmate when he witnesses a violation of that inmate's Eighth Amendment rights by his or her fellow officers. *See Rosario v. Coughlin,* No. 88-CV-56, 1995 WL 57417, at \*8 (N.D.N.Y. Feb. 8, 1995) (correctional officers liable for excessive use of force against inmate where, *inter alia,* they "failed to intervene [to stop beating of inmate], thus condoning the use of physical force upon plaintiff") (citing *O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2d Cir.1988)). "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know [*inter alia* ] that excessive force is being used, ....or [ ] that any constitutional violation has been committed by a law enforcement official." *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994). Furthermore, a supervisory official can be held liable for constitutional tort damages if he failed to intervene in the alleged use of force, if he knew or had reason to know that excessive force was being used. *See McCoy v. Goord,* 255 F.Supp.2d 233, 262 (S.D.N.Y.2003) (inmate's allegation of prison official's "proximity to the incident and supervisory position gave him the opportunity to prevent the alleged use of force" states valid excessive force claim that official) (citing *Anderson,* 17 F.3d at 557).

Drawing all inferences in Kee's favor, the proposed amendment adequately alleges that defendants Desmond, Rivera, Lett, and Parrish knew or had reason to know

about the incident of which he complains and that, despite such knowledge, took no steps to correct the situation. [23] On this basis, the proposed amendment "permits an inference of acquiescence and personal involvement." *Jackson v.. Johnson,* No. 90 Civ. 0661(JSM), 1990 WL 170412, at \*4 (S.D.N.Y. Oct. 26, 1990).

As to defendant Cole, Kee's proposed amendment adds the allegation that Cole "allowed plaintiff to suffer in feces." (Proposed Third Am. Compl. ¶ C.17.) This allegation is sufficient to describe Cole's personal knowledge of the allegedly improper use of restraints, and is capable of supporting an excessive force claim. *See, e.g., Davis v. Lester,* 156 F.Supp.2d 588, 594 (W.D.Va.2001) (finding that the allegation that plaintiff was, *inter alia,* held in five-point restraint for 48 hours "in his own urine in a cold cell" sufficiently alleged an Eighth Amendment violation based on excessive force). [24]

**\*27** Finally, although Kee has (through his supplemental submissions) sufficiently shown the basis of his excessive force claim against Gassaway (*see supra* at 26-29), Kee's proposed amendment goes farther to specify the basis of that claim. In his Proposed Third Amended Complaint, Kee pleads that Gassaway "used last resort first"-presumably by placing Kee in four-point restraints without first attempting less severe means of restoring order. (*See* Proposed Third Am. Compl. ¶ C.2; Attachment to Kee's Request for Administrative Remedy, dated June 14, 2000, attached to Proposed Third Am. Compl. ("Staff ordinarily shall first attempt to gain the inmate's voluntary cooperation before use of force.").) This additional allegation should be permitted as clarifying Kee's excessive force claim against Gassaway.

For all of these reasons, the proposed amendment to Kee's excessive force claim against Barry, Maiden, Ciancioso, Desmond, Rivera, Lett, Parrish, Cole, and Gassaway would not be futile and should be permitted under Rule 15(a).

2. *The Proposed Amendment as to Defendant Jean Should Be Denied as Futile*

In his proposed amendment, Kee alleges that Jean "falsif[ied] [an] incident report" (Proposed Third Am. Compl. ¶ C.18), [25] referring, presumably, to the facility's written record of the events of May 25, 2000 (*see* Incident

Report, dated May 25, 2000 (Proposed Third Am. Compl. Attach. A)).

A prison officer's falsifying of a report regarding an alleged violation of an inmate's rights does not, in itself, rise to the level of a constitutional deprivation, absent a showing that the officer was personally involved in the underlying incident. *See Williams,* 781 F.2d at 324 (affirming dismissal of constitutional claim against prison officer who, inmate alleged, "filed a false misbehavior report which initiated the procedurally flawed disciplinary hearing," because "[t]he filing of a false report does not, of itself, implicate the guard who violated it in constitutional violations which occur at a subsequent disciplinary hearing") (citing *Sommer v. Dixon,* 709 F.2d 173, 174-75 (2d Cir.1983)); *Jackson,* 1990 WL 170412, at *4 ("plaintiff's allegation concerning the falsification of the report fails to state a claim since, even assuming that the report was falsified, it does not appear that this caused plaintiff any harm let alone the deprivation of a constitutional right") (citations omitted). As Kee's proposed amendment alleges, with respect to defendant Jean, nothing more than his falsification of the report, it fails to state a constitutional claim as to him, and the amendment would thus be futile.

I therefore recommend that Kee's motion for leave to amend his excessive force claim against defendant Jean be denied. [26]

### C. *Kee's Proposed New Allegations in Support of His Deliberate Indifference Claim*

To buttress his claim of deliberate indifference, Kee seeks to add allegations that defendants Desmond, Rivera, Barry and Lett were each "informed of injuries [that Kee incurred in the four-point restraints] and did nothing." (Proposed Third Am. Compl. ¶ C.9; *see also id.* ¶¶ C.3; C.4; C.10.)

**\*28** These new allegations do describe, at least to some extent, the nature of each of these defendants' personal involvement in the alleged violation. *See Jackson,* 1990 WL 170412, at *4 (motion to dismiss denied where "plaintiff's claims, if true, would implicate defendant" in an incident that could have been a constitutional violation); *cf. Khan. v. U.S.,* 271 F.Supp.2d 409, 413 (E.D.N.Y.2003) (inmate's *Bivens* claims against prison officials dismissed for failure to state a claim because

"plaintiff has failed to allege *any* facts against" those officials) (emphasis added).

Nonetheless, Kee's deliberate indifference claim remains deficient as pleaded because, in his Proposed Third Amended Complaint, Kee still fails to allege that he suffered a sufficiently serious medical condition. The only new allegation Kee seeks to add in this regard is that he suffered "welts" and "bruises" on his body, neck, and wrist. (Proposed Third Am. Compl. ¶ C.11.) [27] In all other respects, the injuries alleged in Kee's proposed amendment mirror the allegations of injury set forth in the Second Amended Complaint. Even reading his Proposed Third Amended Complaint liberally, Kee has still failed to allege a serious enough condition to satisfy the objective prong of the deliberate indifference standard. (*See* discussion *supra* at 39-42.)

For this reason, Kee's proposed amendment to his deliberate indifference claim against defendants Desmond, Rivera, Barry, and Lett should therefore be denied as futile.

### D. *Kee's Proposed New Allegations in Support of His Deprivation of Property Claim*

In addition to arguing that Kee never exhausted his deprivation of property claim, defendants have also argued that the claim, as pleaded in the Second Amended Complaint, is subject to dismissal for failure to plead with specificity either the nature of the property taken from Kee, or who was responsible. (Defs.' Mem. at 19-20; *see generally Santiago v. James,* No. 95 Civ. 1136(JFK), 1998 WL 474089, at *4 (S.D.N.Y. Aug. 11, 1998)* (inmate's claim regarding access to law library deemed too "insubstantial" to survive on the pleadings, where, *inter alia,* plaintiff failed to offer specific facts "such as the type of materials that he requested, who allegedly denied him the materials or when or frequency of these alleged occurrences").) Kee's proposed amended pleading rectifies these pleading defects, at least to some extent, as to particular defendants. (*See, e.g.,* Proposed Third Am. Compl. at ¶ C.2 (alleging that defendant Gassaway "destroyed [Kee's] legal documents [and] took books").)

Nonetheless, unless and until Kee can plead that his claim is exhausted, he cannot raise it before this Court. I therefore recommend that leave to amend this claim be denied, because, in light of Kee's apparent failure to

2004 WL 807071

exhaust this claim, the proposed amendment would be futile.

E. *Newly Named Defendants*
Kee seeks to name three additional defendants in his Proposed Third Amended Complaint: Lieutenant Moore ("Moore"), who Kee claims was "on duty .... [acquiesced] and did nothing to correct" the use of excessive force against him (Proposed Third Am. Compl. ¶ C.19), and two members of the MCC medical staff, Physician's Assistants Erwin Ramos and Evangelis, who, he claims, "failed to properly treat [him]" (*id.* ¶¶ C.7, C.8; *see also* Pl.'s 10/16/02 Mem. ¶ 12). [28]

**\*29** Although Rule 21 of the Federal Rules of Civil Procedure governs the addition of new defendants, in deciding whether to allow joinder, the Court is guided by "the same standard of liberality afforded to motions to amend pleadings under Rule 15." *Soler v. G & U, Inc.,* 86 F.R.D. 524, 527-28 (S.D.N.Y.1980) (internal quotation and citation omitted); *see also Clarke v. Fonix Corp.,* 98 Civ. 6116(RPP), 1999 WL 105031, at \*6 (S.D.N.Y. Mar. 1, 1999) ("Although Rule 21, and not Rule 15(a) normally governs the addition of new parties to an action, the same standard of liberality applies under either Rule.") (internal quotation and citation omitted), *aff'd,* 199 F.3d 1321 (2d Cir.1999); *Sheldon v. PHH Corp.,* No. 96 Civ. 1666(LAK), 1997 WL 91280, at \*3 (S.D.N.Y. Mar. 4, 1997) ("While plaintiffs' motion [to add a new defendant] properly is considered under Rule 21 rather than Rule 15, nothing material turns on this distinction."); *Kaminsky v. Abrams,* 41 F.R.D. 168, 170 (S.D.N.Y.1966).

1. *Kee Should Be Permitted To Add Moore as a Defendant*
For the same reason that Kee's new allegations against defendants Desmond, Rivera, Lett, and Parrish are adequate to state a claim for the use of excessive force (*see supra* at 50-52 (discussing adequacy of allegations that officers had knowledge of use of excessive force, but took no steps to intervene)), the similar proposed allegations against Moore with respect to that claim are sufficiently pleaded in the Proposed Third Amended Complaint, and I therefore recommend that Kee be granted leave to add Moore as a defendant.

2. *Kee Should Not Be Permitted To Add Ramos and Evangelis as Defendants Because the Amendment Would Be Futile*
Kee's naming of Ramos and Evangelis is apparently intended to rectify the inadequacy of Kee's original attempt to name the entire MCC "Medical Department Staff" as defendant on his claim of deliberate indifference to his medical needs. Although Kee's proposed addition of these physician's assistants as individual defendants answers the question of which members of the medical staff Kee is seeking to hold responsible, the allegations he proposes to assert against these new defendants are still lacking in the specificity necessary to state a claim.

Aside from accusing them of falsifying reports, which, as discussed above, is not in itself sufficient to state a claim for a constitutional violation, [29] Kee merely proposes to allege that Ramos and Evangelis each "failed to properly treat" him. [30] (Proposed Third Am. Compl. ¶¶ C.7, C.8.) These allegations are overly conclusory. They fail to specify the dates on which Kee was denied proper treatment, the nature of his needs on those dates, and the nature of the treatment that was purportedly denied by these defendants. Without such details, Kee's allegations cannot survive. *See, e.g., Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 308-09 (S.D.N.Y.2001) ("A generalized claim that an inmate was denied access to medical treatment will not suffice" to state a claim); *Vento v. Lord,* No. 96 Civ. 6169(SS), 1997 WL 431140, at \*4 (S.D.N.Y. July 31, 1997) (plaintiff failed to state a claim of deliberate indifference because, *inter alia,* her assertion that "medical staff will not see me fit for medical attention" was conclusory and lacked necessary information, *i.e.,* officials' names, dates, and details of sick call requests) (internal quotation marks and ellipsis omitted); *cf. Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987) ("It is well-settled that ... allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983.") (citations omitted).

**\*30** Moreover, the proposed deliberate indifference claim against Ramos and Evangelis suffers from the same defect as Kee's deliberate indifference claim against other defendants, as his claimed injury does not rise to the level of a sufficiently serious medical condition. (*See* discussion *supra* at 39-42.)

As the claims Kee proposes to assert against Ramos and Evangelis would be subject to dismissal for failure to state a claim, I recommend that Kee be denied leave to amend his pleading to name these two physician's assistants as defendants. I further recommend that this denial be with prejudice, as Kee has already attempted to cure the deficiency in his pleading and has been unable to do so.

*CONCLUSION*

For the foregoing reasons, I hereby recommend that:
(1) *As to plaintiff's motion for a partial default judgment:*

(a) the motion be denied as to defendants Parrish, Jean, and Garcia;

(b) the motion be denied as to defendant Williams, with a direction to defendants' counsel to notify Kee and the Court of any change in Williams' military status; and

(c) the motion be denied as to defendant "Medical Department Staff," and this defendant be dropped from the caption.

(2) *As to defendants' motion for judgment on the pleadings and/or summary judgment:*

(a) the motion for judgment on the pleadings be granted, without leave to replead, as to:

(i) any claims for declaratory or injunctive relief,

(ii) any claims against defendants in their official capacities;

(iii) the excessive force claim against defendant Jean; and

(iv) any claims of deliberate indifference, deprivation of property, or violations of 42 U.S.C. §§ 1983, 1985(3), 1986, 1997a-c, and the ADA;

(b) the motion for judgment on the pleadings be granted, with leave to replead, as to:

(i) the excessive force claim against defendants Barry, Maiden, Cioncioso, Desmond, Rivera, Lett, Parrish, and Cole; and

(ii) the retaliation claim against defendant Gassaway; and

(c) the motion for judgment on the pleadings, as well as defendants' alternative motion for summary judgment, be denied as to the excessive force claim against defendants Hasty, Shepard, Brown, Linder, Ortiz, and Gassaway.

(3) *As to plaintiff's motion for leave to file a Third Amended Complaint:*

(a) the motion be granted as to:

(i) the excessive force claim against defendants Barry, Maiden, Ciancioso, Desmond, Rivera, Lett, Parrish, Cole, and Gassaway; and

(ii) the addition of Moore as a named defendant; and

(b) the motion be denied as to:

(i) the excessive force claim against defendant Jean;

(ii) any claims of deliberate indifference and deprivation of property; and

(iii) the addition of Ramos and Evangelis as named defendants.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Kimba M. Wood, United States Courthouse, 500 Pearl Street, Room 1610, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 40 Centre Street, Room 631, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Wood. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn,* 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838

**Kee v. Hasty, Not Reported in F.Supp.2d (2004)**
Case 9:16-cv-00275-LEK-DEP    Document 32    Filed 05/21/18    Page 93 of 109
2004 WL 807071

F.2d 55, 58 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237-38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 807071

Footnotes

1    Kee's claims are asserted against federal, rather than state employees, and this Court will therefore construe his claims as asserted under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), in which the Supreme Court recognized a private cause of action against federal officials in their individual capacities for unconstitutional conduct, rather than under Section 1983. *See Tavarez v. Reno,* 54 F.3d 109, 109-10 (2d Cir.1995) (construing action brought by *pro se* plaintiff against federal officials under § 1983 as *Bivens* action).

2    On a motion for judgment on the pleadings, the Court may consider any documents attached to a pleading. (*See* discussion *infra* at 19-20 regarding Rule 12(c) standards.)

3    The application of four-point restraints involves placing an inmate on a concrete block covered by a mattress and binding his hands in soft restraints attached to the corners of the block. *See Cuoco v. Hershberger,* No. 93 Civ. 2806(AGS), 1996 WL 648963, at *2 n. 2 (S.D.N.Y. Nov. 6, 1996).

4    Where, as here, a plaintiff is proceeding *pro se,* the Court must construe the pleadings liberally, applying a less stringent standard than when a plaintiff is represented by counsel. *Branham v. Meachum,* 77 F.3d 626, 628-29 (2d Cir.1996).

5    Although the Complaint was not docketed until March 13, 2001, Plaintiff signed it on December 20, 2000, and, where a *pro se* plaintiff is incarcerated at the time a suit is commenced, the date on the pleading itself is generally considered the filing date. *See Dory v. Ryan,* 999 F.2d 679, 682 (2d Cir.1993) (*pro se* prisoner litigant's § 1983 complaint considered "filed" as of date of delivery to prison officials for transmittal to court), *modified on other grounds,* 25 F.3d 81 (2d Cir.1994). The filing dates for all of Kee's submissions have been determined in this manner, with the exception of the Second Amended Complaint, which, although dated November 5, 2001, the same date as the First Amended Complaint, is deemed to have been filed on May 9, 2002, in accordance with this Court's Order. (*See* Order dated May 16, 2002 (Dkt.18).)

6    The original Complaint in this action was purportedly served on Williams, Parrish, Garcia, and the MCC "Medical Department Staff" (among others) on July 11, 2001. (*See* Dkt. 7.) The Court granted the U.S. Attorney's Office request for an extension of time to respond (*see* Dkt. 8, 9), but, before the extended deadlines passed, Kee filed his Amended Complaint on November 5, 2001, adding Jean as a defendant (*see* Am. Compl. Attach. B). That amended pleading was purportedly served on January 10, 2002, as noted above. The Court then granted the U.S. Attorney's Office's request for another extension of time to respond to the amended pleading, because the Office was "stillin the process of determining whether the defendants who are BOP [Bureau of Prisons] employees desire representation, and, if so, whether the Department of Justice will grant authorization to represent them." (*See* Dkt. 12.) On March 28, 2002, the U.S. Attorney's Office answered the Amended Complaint on behalf of several named defendants, but not the defendants against whom Kee now seeks default judgment. (*See* Amended Answer, dated March 28, 2002 (Dkt.14) ( "Am.Answer").) On May 9, 2002, Kee filed his Second Amended Complaint. (*See* Dkt. 19.) In its Order granting Kee leave to file that pleading, the Court stated that "this Second Amended Complaint shall be deemed served ... on the United States Attorney's Office, as counsel for" the defendants that had previously appeared through that counsel. (Dkt.18.) Although this would not have included any of the defendants against whom Kee now seeks a default judgment, Parrish and Jean nonetheless answered the Second Amended Complaint on May 29, 2002, through the representation of the U.S. Attorney's Office. (*See* Answer to Second Amended Complaint, dated May 29, 2002 (Dkt.20) ("Second Am. Answer").)

7    Although titled as opposition papers to defendants' motion on the pleadings, these papers also contained Kee's reply on his motion for a partial default judgment.

8    Kee's submission consisted of: (1) a Declaration in Opposition to Defendants' Motion for Summary [Judgment], dated January 25, 2003 ("Pl.'s 1/25/03 Decl."); (2) a Statement of Disputed Factual Issues, dated January 25, 2003 ("Pl.'s Rule 56.1 Stmt."); and (3) a Memorandum of Law in Opposition to Defendants' Motion for Summary [Judgment], to which supporting materials were attached.

9    The Court further notes that, during a telephone conference subsequent to Kee's October 16, 2002 submission, Kee said that he was inclined to withdraw his motion for default with respect to defendant Williams, given Williams's current military status. (*See* transcript of December 26, 2002 Case Management Conference ("12/26/02 Tr."), at 6-7; *see also* Owen Decl., ¶ 10.) The Court then invited Kee to submit a statement in writing confirming that he wished to withdraw the motion as to this defendant. (*See* 12/26/02 Tr. at 6 (Court noting that it "would rather [address the withdrawal of the motion] that way than just from an oral statement on a conference call").) Kee, however, never followed up on the matter.

10   On January 11, 2001, Kee was transferred from the MCC to the Federal Correctional Institution in Lewisburg, Pennsylvania (*see* Owen Decl., ¶ 4; Second Am. Compl.) and, in July 2002, he was transferred again, to the United States Penitentiary in Beaumont, Texas (*see* transcript of September 19, 2002 Case Management Conference, at 3), where he remains as of this date.

11   In his Proposed Third Amended Complaint, Kee requests the same prospective relief that he requests in his Second Amended Complaint. (*See* Proposed Third Am. Compl. Attach. D.)

12   The Fourteenth Amendment makes the Eighth Amendment applicable to the states. *See McKenna v. Wright,* No. 01 Civ. 6571(WK), 2002 WL 338375, at *5 n. 8 (S.D.N.Y. Mar. 4, 2002) (citing *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)).

13   As set forth above (*see supra* at 7), Kee sought leave to file his Third Amended Complaint in conjunction with his opposition to the defendants' motion for judgment on the pleadings and/or summary judgment. (Pl.'s Mot. to Amend; Pl.'s 10/16/02 Mem.) It thus appears that Kee's Proposed Third Amended Complaint represents his attempt to cure any pleading deficiencies raised and argued by defendants in their motion. Where he has made such an attempt, and still appears to be unable to state a claim, I recommend that the claim as pleaded in the Second Amended Complaint be dismissed with prejudice.

14   Although defendants' account is, to some extent, supported by the Declaration of Courtney Shepard, the MCC's Emergency Preparedness Coordinator, the Court notes that Shepard's statements may not be based on personal knowledge. (*See* Shepard Decl. ¶ 5 ("I *was informed* that Kee ... had initiated a disturbance") (emphasis added); *id.* ¶ 6 ("I *was notified* that Kee had thrown cookies and milk out of the food slot in his cell") (emphasis added).)

15   Once again (*see* n. 14, *supra* ), it is not clear that Shepard actually saw Kee refuse to submit to hand restraints. The paragraph of his declaration that precedes his statement regarding the refusal to submit to restraints begins, "I *was notified* that Kee had thrown cookies and milk...." (Shepard Decl. ¶ 6 (emphasis added).) Nowhere in his declaration does Shepard claim to have witnessed the events that he describes.

16   Defendants assert that "[t]he videotape [of the May 25, 2000 incident] provides objective evidence that plaintiff's allegations are false." (Defs.' Reply at 7; *see* Owen Decl. Ex. A.) Kee is only shown on the tape, however, for an 11-minute period during which MCC staff removed Kee from his cell and placed him in four-point restraints. This sheds little light on the events at issue, because Kee's allegations are based primarily on the nature of his conduct-and the staff's response to him-during the period substantially before he was placed in four-point restraints and during the 22 hours that he was kept in those restraints, neither of which are shown on the recording.

17   *See also Faison v. Damron,* No. Civ. A. 7:00CV00739, 2002 WL 467145, at *4 (W.D.Va. Mar. 25, 2002) (where "any threat that [inmate] posed to prison order ... had obviously ended by the time [officer] reached [inmate's] cell to remove and restrain him," court found that "no facts in the record suggest that the Defendants needed to place [inmate] in five-point restraints to maintain prison order") *Davis v. Lester,* 156 F.Supp.2d 588, 594 (W.D.Va.2001) (no alleged facts suggest that defendants applied 5-point restraints for safety and security of inmate or institution where inmate "alleges that at the time defendants took him from his cell to be restrained, he was sitting, watching television"); *cf. Williams v. Benjamin,* 77 F.3d 756, 764 (4th Cir.1996) (court could not conclude that there was no "need" for four-point restraints where "only minutes had elapsed since the disturbance had begun, [inmate] was still 'hollering,' and it was not obvious that the disturbance had ended").

18   Defendants argue that the videotape of Kee being placed in four-point restraints "demonstrates that [Kee's] allegations are false," because it shows, *inter alia,* Kee stating "that he is 'comfortable' " after being placed in the restraints, and an MCC physician's assistant checking Kee's restraints for any effect on his circulation, and stating that there was no such effect. (*See* Defs.' Reply at 6-7; Owen Reply Decl. Ex. A.) Kee, however, appears to allege that his pain and injuries continued following the 22 hours that he spent in four-point restraints. (Second Am. Compl. Attach. C.) As the videotape reflects only the first 11 minutes of Kee's restraint, defendants' contention that the tape "provides objective evidence that plaintiff's allegations are false" (Defs.' Reply at 7), is unpersuasive.

19   Kee may also be attempting to assert a claim for conversion, which would be a state law claim, even though Kee asserts that he is alleging a violation of the "Federal law of conversion." (*See* Plaintiff's Memorandum, dated May 30, 2000, attached to Second Am. Compl. ("Pl.'s 5/30/00 Mem.") at 2; *see also CSC Holdings, Inc. v. Westchester Terrace at Crisfield Condominium,* 235 F.Supp.2d 243, 257-58 (S.D.N.Y.2002) (setting forth elements of conversion under New York State law). As defendants have not construed Kee's pleading as raising a conversion claim, and as no party has addressed such a claim on the pending motions, it would be inappropriate for the Court to consider at this time whether such a claim would be subject to dismissal. *See East Coast Novelty Co. v. City of N.Y.,* 781 F.Supp. 999, 1011 n. 5 (S.D.N.Y.1992) ("Absent a full briefing [on whether certain of plaintiff's state law claims were cognizable], the Court will not dismiss or grant summary judgment against these claims.").

2004 WL 807071

20   In his Request for Administrative Remedy, Kee addressed both the application of the four-point restraints as well as deprivation of property (*see* Owen Decl. Ex. B), but in his appeal of the rejection of that Request, Kee addressed only his placement in four-point restraints. (*See* Regional Administrative Remedy Appeal, dated July 26, 2000, attached to Second Am. Compl. and Proposed Third Am. Compl.) The Court notes that, in a letter to the General Counselor, Kee does mention "property" that he claims to be missing; that statement, however, is made in the context of a request for an extension for filing his final appeal, because Kee had been transferred to a different facility and had yet to receive his property from the MCC. (*See* Letter from Kee to BOP General Counselor, dated Oct. 11, 2000, attached to Second Am. Compl. and Proposed Third Am. Compl. ("I have no way of sending you another response with no property.").)

21   In his October 16, 2002 submission, Kee also purported to bring his claims under the Americans with Disabilities Act ("ADA"). Kee, however, does not cite the ADA in either his January 26, 2003 submission, or his Proposed Third Amended Complaint, and thus he appears to have withdrawn this claim. In any event, I would recommend dismissal of such a claim with prejudice, because, as defendants point out, the ADA does not apply to the federal government. (Defs.' Reply at 9 n. 3); *see Cellular Phone Task Force v. FCC,* 217 F.3d 72, 73 (2d Cir.2000).

22   As to defendants Desmond, Rivera and Lett, Kee alleges that each of them "was informed of assault ... and [did] nothing." (Proposed Third Am. Compl. ¶ C.3 (Desmond); *see also id.* ¶¶ C.4 (Rivera), C.10 (Lett).) As to defendant Parrish, Kee alleges that he "[acquiesced in] the attack without stopping it." (*Id.* ¶ C.13.)

23   The Court also notes that at least Desmond and Lett who were all apparently lieutenants, may have had supervisory roles. *See Khan v. U.S.,* 271 F.Supp.2d 409, 413 (E.D.N.Y.2003) (in prisoner's *Bivens* action, lieutenant was a "supervisory defendant").

24   Kee's allegation that Cole allowed him to suffer in feces could also be made in support of a new Eighth Amendment claim based on a failure to provide sanitary conditions for his confinement. *See Anderson v. Coughlin,* 757 F.2d 33, 35 (2d Cir.1985) ("Conditions of confinement inflict cruel and unusual punishment when they result in 'unquestioned and serious deprivations of basic human needs' or 'deprive inmates of the minimal civilized measure of life's necessities' ") (citing *Rhodes v. Chapman,* 452 U.S. 337 (1981)). "While the Eighth Amendment ... 'does not mandate comfortable prisons,' ... the conditions of confinement must be at least 'humane." ' *Gaston v. Coughlin,* 249 F.3d 156, 164 (2d Cir.2001) (citations omitted). The Eighth Amendment is generally not violated, however, where unsanitary conditions are temporary. *McNatt v. Unit Manager Parker, et. al,* No. 3:99 Cv. 1397(AHN), 2000 WL 307000, at *4 (D.Conn.2000). Because Kee alleges that he was "let up for the bathroom" (Ltr to Hasty) at least once during his restraint, he cannot have been "suffering in feces" for the entire duration of his restraint. Thus, his allegation against Cole is insufficient to maintain a claim based on conditions of confinement. *Cf. Gaston,* 249 F.3d at 165 (reversing dismissal of a claim of Eight Amendment violation where plaintiff alleged that his rights were violated when he was subjected to unsanitary conditions and cold for "prolonged periods of time"); *McNatt,* 2000 WL 307000, at *4 (collecting cases indicating that short term deprivations, between three and eighteen days, of sanitary living conditions were not actionable).

25   Kee also alleges that defendant Jean "was on vacation for second incident report that was forged." (Proposed Third Am. Compl. ¶ C.18.) As this statement, on its face, appears to assert that Jean was away from the MCC during the period in question, it cannot be construed to allege Jean's "personal involvement" in anything that happened at the facility.

26   Kee also alleges that defendant Cole "lied on all log entries ." (Proposed Third Am. Compl.¶ C.17.) For the same reasons that the similar allegations against Jean are insufficient to state a claim for excessive force, this allegation is insufficient to state such a claim against Cole.

27   The Second Amended Complaint only alleges "back, neck, and wrist injuries" (¶ IV), without reference to welts or bruises.

28   Kee also alleges that Moore "forged [the] signature of Victor Jean" (Proposed Third Am. Compl. ¶ C.19), presumably on the MCC Incident Report, and that Ramos and Evangelis also "falsified reports" (*id.* ¶ C.7, C.8).

29   (*See* discussion *supra* at 54-55, regarding the proposed new allegations against defendant Jean.)

30   In his Proposed Third Amended Complaint, Kee drops his allegation that the medical staff "treated [him] ... with [M]otrin" for his pain. (Second Am. Compl. ¶ IV.) Kee also ignores the medical records attached to Dr. Glover's declaration, filed in support of defendants motion for summary judgment, which indicate that Kee was examined on May 25, 2000, the date of the incident at issue, as well as on several occasions following the incident, with his prescription for Motrin being refilled three times. (Glover Decl. Attach A, B.)

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 651919

2012 WL 651919
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kenneth Carl GROVES, Sr., Plaintiff,

v.

Brett DAVIS, Secure Care Treatment Aid; David
W. Sill, Secure Care Treatment Aid; Thomas
Nicolette, RN, Ward Nurse; Charmaine Bill,
Treatment Team Leader; Jill E. Carver, Social
Worker, Primary Therapist; Edwin Debroize,
Psychologist Assist; Jeff Nowicki, Chief of Mental
Health Treatment Serv.; Terri Maxymmillian,
Ph.D., Dir. of Mental Health Serv.; Sgt. Sweet,
Security Services, CNYPC; Michael Hogan,
Comm'r, Dep't of Mental Health, Defendants.

No. 9:11–CV–1317 (GTS/RFT).
|
Feb. 28, 2012.

Attorneys and Law Firms

Kenneth Carl Groves, Sr., Marcy, NY, pro se.

### MEMORANDUM DECISION and ORDER

Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Kenneth Carl Groves, Sr. ("Plaintiff"),
against numerous employees of New York State or the
Central New York Psychiatric Center ("Defendants"),
are Plaintiff's motion to proceed *in forma pauperis,* his
motion for a temporary restraining order and preliminary
injunction, and his motion for appointment of counsel.

(Dkt.Nos.2, 3, 4.)[1] For the reasons set forth below,
Plaintiff's motion to proceed *in forma pauperis* is granted;
his motion for a preliminary injunction is denied; his
motion for appointment of counsel is denied; Plaintiff's
claims of deliberate indifference to his mental health
needs against Defendants Bill, Carver and DeBroize are
*sua sponte* dismissed with prejudice; Plaintiff's claims
against Defendants Bill, Carver, DeBroize, Nowicki,
Maxymmillian, and Hogan arising from their alleged
personal involvement in the August 8, 2011 assault are
*sua sponte* dismissed without prejudice and with leave to

amend in this action in accordance with Fed.R.Civ.P.
15; Sgt. Sweet is *sua sponte* dismissed without prejudice
as a Defendant in this action; the Clerk is directed to
issue summonses, and the U.S. Marshal is directed to
effect service of process on Defendants Davis, Sill, and
Nicolette.

### I. RELEVANT BACKGROUND

On November 7, 2011, Plaintiff commenced this action
*pro se* by filing a civil rights Complaint, together with
a motion to proceed *in forma pauperis.* (Dkt. Nos.1,
2.)[2] Liberally construed, Plaintiff's Complaint alleges
that the following constitutional violations against him
occurred during his confinement at Central New York
Psychiatric Center ("CNYPC"): (1) Defendants Davis and
Sill used excessive force against him under the Eighth
and/or Fourteenth Amendments; (2) Defendant Nicolette
knew of and failed to take action to protect Plaintiff
from the assault under the Eighth and/or Fourteenth
Amendments; (3) Defendants Bill, Carver, and DeBroize
were deliberately indifferent to his mental health needs
under the Eighth and/or Fourteenth Amendments;
and (4) Defendants Bill, Carver, DeBroize, Nowicki,
Maxymmillian, Bosco, and Hogan failed to "adequately
train the staff under their supervision" and to take
appropriate action in response to the incident. (*See
generally* Dkt. No. 1.) For a more detailed description of
Plaintiff's claims, and the factual allegations giving rise to
those claims, the reader is referred to Part III.B of this
Decision and Order.

### II. MOTION TO PROCEED *IN FORMA PAUPERIS*
Because Plaintiff sets forth sufficient economic need, the
Court finds that Plaintiff may properly commence this
action *in forma pauperis.* (Dkt. No. 2.)

### III. *SUA SPONTE* REVIEW OF PLAINTIFF'S
COMPLAINT
In light of the foregoing, the Court must now review the
sufficiency of the allegations that Plaintiff has set forth in
his Complaint in light of 28 U.S.C. § 1915(e)(2)(B). This is
because Section 1915(e)(2)(B) directs that, when a plaintiff
seeks to proceed *in forma pauperis,* "(2) ... the court shall
dismiss the case at any time if the court determines that
—... (B) the action ... (i) is frivolous or malicious; (ii) fails
to state a claim on which relief may be granted; or (iii)

seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

**A. Governing Legal Standard**

*2 It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n .17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–

61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id .* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

*3 As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not show[n]—that the pleader is entitled to relief." *Id.* at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[4] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[5] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted].[6]

**B. Analysis of Plaintiff's Complaint**

The Court prefaces its analysis of Plaintiff's Complaint by noting that, although Plaintiff is a civilly committed sex offender and no longer a prisoner, the Court will look to cases addressing prisoner's rights in analyzing Plaintiff's claims, because "confinement of civilly committed patients is similar to that of prisoners." *Holly v. Anderson,* 04–CV–1489, 2008 WL 1773093, at *7 (D.Minn. Apr.15, 2008); *see also Morgan v. Rabun,* 128 F.3d 694, 697 (8th Cir.1997) ("The governmental interests in running a state mental hospital are similar in material aspects to that of running a prison."). Thus, whereas claims of excessive force by convicted criminals are analyzed under the Eighth Amendment to the United States Constitution, because Plaintiff is a civilly committed sex offender and no longer a prisoner, his substantive rights to be free from unsafe conditions of confinement arise under the Due Process Clause of the

Fourteenth Amendment. In *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Court stated "[i]f it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed-who may not be punished at all-in unsafe conditions." *Youngberg,* 457 U.S. at 315–16. As have numerous other courts which have considered the issue, this Court has found that "the standard for analyzing a civil detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard." *Groves v. Patterson,* 09–CV–1002, Memorandum–Decision and Order at *15–16 (N.D.N.Y. filed Nov. 18, 2009).[7]

**1. Excessive Force Claims Against Defendants Davis, Still and Nicolette**

**\*4** Plaintiff alleges that on August 8, 2011, Defendant Davis entered Plaintiff's dorm room at CNYPC and "viciously attacked and brutally assaulted and battered" him. (Dkt. No. 1 at 4.) During the course of this assault, Defendant Sill is alleged to have entered Plaintiff's room and "jump[ed] on the plaintiff's legs holding and pinning them as Defendant Davis [continued to beat Plaintiff]." (*Id.*) As alleged in the Complaint, although Defendant Nicolette knew in advance that this assault was planned, he "remained in the Nurses Station" and "did nothing to interceed [sic] or stop the brutal attack on the plaintiff." (*Id.* at 5.)

To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must allege the following: (1) subjectively, that the defendants acted wantonly and in bad faith; and (2) objectively, that the defendants' actions violated "contemporary standards of decency." *Blyden v. Mancusi,* 186 F.3d 252, 262–63 (2d Cir.1999) (internal quotation marks omitted) (citing *Hudson v. McMillian,* 503 U.S. 1, 8 [1992] ).

Here, construing the factual allegations of Plaintiff's Complaint with special leniency, the Court finds that Plaintiff appears to have alleged facts plausibly suggesting that he was subjected to excessive force by Defendants Davis and Sill. In addition, by alleging that Defendants Davis, Sill and Nicolette discussed the assault in advance of it occurring, and that Nicolette was in the vicinity of Plaintiff's room and had an opportunity to intervene to prevent it, the Complaint sufficiently alleges that

2012 WL 651919

Defendant Nicolette was personally involved and/or failed to protect Plaintiff from the assault. *See Bhuiyan v. Wright,* 06–CV–0409, 2009 WL 3123484, at *7 (N.D.N.Y. Sept.29, 2009) (Scullin, J.) ("The fact that defendant Davis was not in the room, but was acting as a 'lookout' so that no one came into the room while plaintiff was being beaten, would not absolve him from liability for the assault. An officer's failure to intervene during another officer's use of excessive force can itself constitute an Eighth Amendment violation unless the assault is "sudden and brief," and the defendant had no real opportunity to prevent it."); *Jeffreys v. Rossi,* 275 F.Supp.2d 463, 474 (S.D.N.Y.2003) (holding that an officer may be personally involved in the use of excessive force if he either directly participates in the assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so).

As a result, a response to these claims is required from Defendants David, Sill, and Nicolette. In so ruling, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Deliberate Indifference Claims Against Defendants Bill, Carver and DeBroize

Plaintiff alleges that on August 9, 2011, the day after the alleged assault, he attempted to "discuss the incident and what transpired" with Defendants Bill and Carver. (Dkt. No. 1 at 5.) Plaintiff alleges that Defendant Bill told him, "I don't want to discuss this Mr. Groves, we're too busy for your foolishness and the matter is being investigated." (*Id.*) Plaintiff's effort to explain that he was frightened by the incident was rebuffed by Defendant Bill, who told Plaintiff to "grow up." (*Id.* at 5–6.) The following day, Plaintiff attempted to discuss the incident with Defendant Carver, his primary therapist, again without success. A further attempt at discussion later that day was met with Defendant Carver "stating to the plaintiff in a snotty tone 'grow the hell up!' " (*Id.* at 6.) On August 10, 2011, Plaintiff attempted to discuss the incident "and his current fears and feelings," during his Monday afternoon "Process Group," which is facilitated by Defendant DeBroize. As alleged, Defendant DeBroize told Plaintiff and the other group members that the matter was under investigation "so no one could discuss the incident with anyone." (*Id.* at 6.)

*\*5* To state a claim of deliberate indifference to a serious medical and/or mental health need under the Eighth Amendment, a plaintiff must first allege facts plausibly suggesting that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06). The "deliberate indifference standard embodies both an objective and a subjective prong," both of which the plaintiff must establish. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.' " *Id.* (citations omitted). Second, the defendant "must act with a sufficiently culpable state of mind." *Id.*

With regard to the first element, generally, to be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) [citations omitted], *accord, Hathaway,* 37 F.3d at 66; *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).). [8] Under the subjective component, a plaintiff must also allege facts plausibly suggesting that the defendant acted with "a sufficiently culpable state of mind." *Hathaway,* 37 F.3d at 66. The requisite culpable mental state is similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). A physician's negligence in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment and is not properly the subject of a Section 1983 action. *Estelle,* 429 U.S. at 105–06; *Chance,* 143 F.3d at 703. [9]

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendants Bill, Carver, and DeBroize acted with deliberate indifference to Plaintiff's serious mental health condition when they declined to discuss the incident of August 8, 2011. There is nothing in the Complaint that even remotely suggests that the requested conversations were integral to Plaintiff's treatment as a convicted sex offender involuntarily

2012 WL 651919

committed to CNYPC, or that Defendants' refusal to discuss the incident with Plaintiff when he requested to do so caused Plaintiff to suffer any harm or worsening of his condition. In addition, Plaintiff does not allege that any of these Defendants acted with the requisite culpable state of mind.

Moreover, the statements made by Defendants Bill and Carver that he should "grow up," even if construed as verbal harassment, do not give rise to a cognizable claim that may be pursued under Section 1983. Allegations of verbal harassment are insufficient to support a Section 1983 claim. *Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001); *see also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) ("[A]llegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged .").

**\*6** For these reasons, Plaintiff's deliberate indifference claims against Defendants Bill, Carver, and DeBroize are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). Moreover, because the Court cannot imagine how Plaintiff might correct this claim through better pleading, he is not granted leave to attempt to do so in an amended pleading. [10] Rather, this claim is hereby dismissed with prejudice.

### 3. Failure to Supervise Claims Against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan

To prevail on a claim under 42 U.S.C. § 1983, a defendant must be personally involved in the plaintiff's constitutional deprivation. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). Generally, for purposes of 42 U.S.C. § 1983, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. [11]

Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement. *McKinnon,* 568 F.2d at 934. Rather, a plaintiff must demonstrate " 'a tangible

connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* 04–CV–7263, 2008 WL 857528, at \*2 (S.D.N.Y. Mar.31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 [2d Cir.1986] ) (other citation omitted). An official's failure to respond to grievance letters from inmates, however, "does not establish supervisory liability." *Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997). [12] Moreover, "the law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Pine v. Seally,* 9–CV–1198, 2011 WL 856426, at \*9 (N.D.N.Y. Feb.4, 2011). [13]

In his Complaint, Plaintiff alleges in wholly conclusory terms that Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan failed to "adequately train the staff under their supervision and fail[ed] to act within the scope and training of the position and job title they hold." (Dkt. No. 1 at 8.) Plaintiff alleges that he submitted a letter of complaint to Defendant Hogan and wrote to Defendant Nowicki on several occasions expressing concern his complaint had not been responded to, only to be advised that in September, 2011 that an investigation was ongoing. (*Id.* at 6–7.) Plaintiff does not allege that any of these Defendants personally participated in the alleged assault on August 8, 2011.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting any personal involvement by these Defendants in the alleged used of excessive force on August 8, 2011. As a result, Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from this incident are *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e) (2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). This dismissal is without prejudice to Plaintiff's right to file an Amended Complaint that corrects the above-described pleading defects, and states a viable claim against these Defendants. The Court notes that, at this early stage of the case, Plaintiff has the right—without leave of the Court—to file an Amended Complaint within the time limits established by Fed.R.Civ.P. 15(a)(1)(B). However, if he seeks to file an Amended Complaint after those time limits, he must file a motion for leave to file an Amended Complaint in accordance with Fed.R.Civ.P. 15(a)(2). In either event, Plaintiff is advised that *any Amended Complaint must be a complete pleading that will replace and supersede the original Complaint in its entirety, and that*

may not incorporate by reference any portion of the original *Complaint. See* N.D.N.Y. L.R. 7.1(a) (4).

**\*7** Finally, although Plaintiff names Sgt. Sweet as a Defendant in the caption of the complaint and the listing of the parties, he has not set forth in the Complaint any allegations of fact regarding the conduct of this Defendant complained of. (*See generally* Dkt. No. 1.) As a result, the Complaint fails to state a claim upon which relief may be granted and Sgt. Sweet is dismissed from this action without prejudice to Plaintiff's right to file an Amended Complaint as set forth above.

## IV. MOTION FOR INJUNCTIVE RELIEF

A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter." *Patton v. Dole,* 806 F.2d 24, 28 (2d Cir.1986). In most cases, to warrant the issuance of a preliminary injunction, a movant must show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in favor of the moving party. *D.D. ex rel. V.D. v. New York City Bd. of Educ.,* 465 F.3d 503, 510 (2d Cir.2006) (quotation omitted). "The purpose of issuing a preliminary injunction is to 'preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the ... merits.' " *Candelaria v. Baker,* 00–CV–912, 2006 WL 618576, at \*3 (W.D.N.Y. Mar.10, 2006) (quoting *Devose v. Herrington,* 42 F.3d 470, 471 [8th Cir.1994] ). Preliminary injunctive relief " 'should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' " *Moore v. Consolidated Edison Co. of New York, Inc.,* 409 F.3d 506, 510 (2d Cir.2005) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 [1997] ). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore,* 409 F.3d at 510 (citing *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). The same standards govern consideration of an application for a temporary restraining order. *Perri v. Bloomberg,* 06–CV–0403, 2008 WL 2944642, at \*2 (E.D.N.Y. Jul.31, 2008) [citation omitted]. The district court has broad discretion in determining whether to grant a preliminary injunction. *Moore,* 409 F.3d at 511.

"The Second Circuit has defined 'irreparable harm' as 'certain and imminent harm for which a monetary award does not adequately compensate,' noting that 'only harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief.' " *Perri,* 2008 WL 2944642, at \*2 (citing *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.,* 339 F.3d 101, 113–14 [2d Cir.2003] ); *see also Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir.2002) ("To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.") (internal quotation omitted). Speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons,* 461 U.S. 95, 111–12, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *see also Hooks v. Howard,* 07–CV–0724, 2008 WL 2705371, at \*2 (N.D.N.Y. Jul.3, 2008) (citation omitted) ("Irreparable harm must be shown to be imminent, not remote or speculative, and the injury must be such that it cannot be fully remedied by monetary damages.").

**\*8** Plaintiff has submitted a document entitled "Order to Show Cause for Preliminary Injunction and Tempor[ary] Restraining Order." (Dkt. No. 3.) Construed liberally, Plaintiff's submission seeks a temporary restraining order and injunctive relief enjoining Defendants from "submitting and filing false and untrue statements and reports" regarding the August 11, 2011 incident, and to "stop all retaliatory actions against the plaintiff ...." (*Id.* at 1.) Plaintiff also seeks an "Order of Seperation [sic]" directing that Defendants Davis, Sill, Nicolette, Bill, Carver and DeBroize be "restrained from being within 100 feet from the plaintiff in any form or matter." (*Id.* at 2.)

The Court has reviewed Plaintiff's motion papers thoroughly and considered the claims asserted therein in the light most favorable to Plaintiff, as a *pro se* litigant. Based upon that review, the Court finds that the harm Plaintiff alleges is purely speculative and, therefore, not "irreparable." Plaintiff's motion is supported only by a recitation of the alleged assault in August, 2011. (*Id.* at 1–4.) Plaintiff has not supported the claims of ongoing misconduct set forth in his motion papers with any factual allegations, such as the dates on which the misconduct occurred, the nature of the injuries he claims to have suffered, the identities of the persons responsible for the conduct he seeks to enjoin, or the relationship between those actions and the claims asserted in his Complaint. Simply stated, Plaintiff's alleged fear of future

2012 WL 651919

wrongdoing by the Defendants is not sufficient to warrant the extraordinary remedy of preliminary injunctive relief.

The Court further notes that the requested injunctive relief cannot be granted unless there is also proof that Plaintiff has a likelihood of succeeding on the merits of his claim, or evidence that establishes sufficiently serious questions going to the merits of his claim and a balance of hardships tipping decidedly toward him. *See Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir.1992). Plaintiff has failed to submit *proof or evidence* that meets this standard. Plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief. *See Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F.Supp. 547, 561 (E.D.N.Y.1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Resources, Inc.,* 792 F.Supp. 924, 928 (S.D.N.Y.1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). Without evidence to support his claims that he is in danger from the actions of anyone at CNYPC, the Court will not credit Plaintiff's conclusory allegations that he will be retaliated against or harmed in the future.

Plaintiff has failed to establish either of the two requisite elements discussed above. As a result, Plaintiff's request for a temporary restraining order and/or injunctive relief is denied.

## V. MOTION FOR APPOINTMENT OF COUNSEL

**\*9** Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin,* 114 F.3d 390, 392–93 (2d Cir.1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case,

> the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 [2d Cir.1986] ). This is not to say that all, or indeed any, of these factors are controlling in a particular case. [14] Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D.N.Y.1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61).

Upon due consideration, the Court finds that the relevant factors weigh decidedly against granting Plaintiff's motion at this time. For example, the Court finds as follows: (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action; (3) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial, as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel," *Velasquez,* 899 F.Supp. at 974; (4) if this case survives any dispositive motions filed by Defendants, *it is highly probable that this Court will appoint trial counsel at the final pretrial conference;* (5) this Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation; and (6) Plaintiff's motion for counsel is not accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

For these reasons, Plaintiff's motion for the appointment of counsel is denied without prejudice. After the Defendants have responded to the allegations in the Complaint which survive *sua sponte* review, and the parties have undertaken discovery, Plaintiff may file a second motion for the appointment of counsel, at which time the Court may be better able to determine whether such appointment is warranted in this case. Plaintiff is advised that any second motion for appointment of counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

**\*10**  **ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED;** [15] and it is further

**ORDERED** that Plaintiff's motion for injunctive relief (Dkt. No. 3) is **DENIED;** and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED without prejudice;** and it is further

**ORDERED** that Plaintiff's claims of deliberate indifference against Defendants Bill, Carver and DeBroize are *sua sponte* **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2) (B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from their alleged personal involvement in the August 8, 2011 incident are *sua sponte* **DISMISSED without prejudice and with leave to amend** in this action in accordance with Fed.R.Civ.P. 15 (as described above in Part III.B.3. of this Decision and Order), pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Defendant Sweet is *sua sponte* **DISMISSED without prejudice and with leave to be reinstated** as a Defendant in this action in accordance with Fed.R.Civ.P. 15, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is otherwise accepted for filing (i.e., as to the claims against Defendants Davis, Sill, and Nicolette arising from the August 8, 2011 incident); and it is further

**ORDERED** that Plaintiff provide a summons, USM–285 form and a copy of the complaint for Defendant Davis,

Sill and Nicolette for service, and upon receipt from Plaintiff of the documents required for service of process, the Clerk shall (1) issue summonses and forward them, along with copies of the Complaint to the United States Marshal for service upon the remaining Defendants, and (2) forward a copy of the summons and Complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that, after service of process on Defendants, a response to the Complaint shall be filed by the Defendants or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261–7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a certificate of service showing that a copy was served upon all opposing parties or their attorneys will be stricken from the docket .** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to so may result in the dismissal of this action.** All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 651919

---

Footnotes

1    This is the fourth civil rights action filed by Plaintiff in this District. Generally, two of these actions arose out of Plaintiff's refusal to consent to a strip search and the subsequent actions taken against Plaintiff as a result of his refusal. *See Groves v. New York,* 09–CV–0406, Decision and Order (N.D.N.Y. filed May 11, 2009) (Hurd, J.) (*sua sponte* dismissing complaint pursuant to 28 U.S.C. § 1915[e][2][B] ); *Groves v. The State of New York,* 9:09–CV–0412, Decision and Order (N.D.N.Y. filed Mar. 26, 2010) (Sharpe, J.) (granting defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12[b][6] ).

WESTLAW    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

The third action alleged numerous violations of Plaintiff's constitutional rights during the period July 23, 2009, and August 26, 2009, and was dismissed without prejudice upon Plaintiff's request in October, 2010. *See Groves v. Maxymillian,* 9:09–CV–1002, Decision and Order (N.D.N.Y. filed Oct. 8, 2010) (Suddaby, J.). As a result, it does not appear that the current action is barred because of res judicata, collateral estoppel, and/or the rule against duplicative litigation.

2   At that time, Plaintiff also filed motions for injunctive relief and for appointment of counsel. (Dkt.Nos.3, 4.)

3   The Court notes that, similarly, Section 1915A(b) directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

4   *See Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

5   *See Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

6   It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, *"Specific facts are not necessary"* to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law—first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

7   *See Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) ("[W]hile the Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner."); *Walton v. Breeyear,* 05–CV–0194, 2007 WL 446010, at *8, n. 16 (N.D.N.Y. Feb.8, 2007) (Peebles, M.J.) (noting that pretrial detainees enjoy protections under the due process clause of the Fourteenth Amendment parallel to those afforded to sentenced prisoners by the Eighth Amendment); *Vallen v. Carrol,* 02–CV–5666, 2005 WL 2296620, at ——8–9 (S.D.N.Y. Sep.20, 2005) (finding that the Eighth Amendment standard of "deliberate indifference" is the correct one for Section 1983 claims brought by involuntarily committed mental patients based on alleged failures to protect them that violated their substantive due process rights); *Bourdon v. Roney,* 99–CV–0769, 2003 WL 21058177, at *10 (N.D.N.Y. Mar.6, 2003) (Sharpe, M.J.) ("The standard for analyzing a pretrial detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard.").

8   Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "reasonable doctor or patient would find important and worthy of comment or treatment," a condition that "significantly affects" a prisoner's daily activities, or "the existence of chronic and substantial pain." *Chance,* 143 F.3d at 702.

9   Thus, a physician who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not exhibit the mental state necessary for deliberate indifference. *Harrison,* 219 F.3d at 139. Likewise, an inmate who disagrees with the physician over the appropriate course of treatment has no claim under Section 1983 if the treatment provided is "adequate." *Chance,* 143 F.3d at 703. The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.' " *Jones v. Westchester Cnty. Dept. of Corr.,* 557 F.Supp.2d 408, 413 (S.D.N.Y.2008). In addition, "disagreements over medications, diagnostic techniques (e .g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001). However, if prison officials consciously delay or otherwise fail to treat an inmate's serious medical condition "as punishment or for other invalid reasons," such conduct constitutes deliberate indifference. *Harrison,* 219 F.3d at 138.

10   The Court notes that, generally, leave to amend pleadings shall be freely granted when justice so requires. Fed.R.Civ.P. 15(a). However, an opportunity to amend is not required where amendment would be futile. *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir.1994). *John Hancock Mut. Life Ins. Co.,* 22 F.3d at 462. The Second Circuit has explained that "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not

2012 WL 651919

an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *see Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with [Plaintiff's] cause of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). This rule is applicable even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103.

11    *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (adding fifth prong); *Wright,* 21 F.3d at 501 (adding fifth prong); *Williams v. Smith,* 781 F.2d 319, 323–324 (2d Cir.1986) (setting forth four prongs).

12    *See also Gillard v. Rosati,* 08–CV–1104, 2011 WL 4402131, at *7 (N.D.N.Y. Aug.22, 2011) (Peebles, J.) ("It is well-established that without more, 'mere receipt of letters from an inmate by a supervisory official regarding a medical claim is insufficient to constitute personal liability." [internal quotation marks and brackets omitted] ); *Greenwaldt v. Coughlin,* 93–CV–6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."); *Clark v. Coughlin,* 92–CV 0920, 1993 WL 205111, at *5 n. 2 (S.D.N.Y. Jun.10, 1993) ("Courts in this jurisdiction have consistently held that an inmate's single letter does not constitute the requisite personal involvement in an alleged constitutional deprivation to trigger the Commissioner's liability.")

13    *See also Bernstein v. N.Y.,* 591 F.Supp.2d 448, 460 (S.D.N.Y.2008) ("Courts within the Second Circuit have determined that there is no constitutional right to an investigation by government officials." [internal quotation marks, brackets and ellipsis omitted] ).

14    For example, a plaintiff's motion for counsel must always be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector, and such a motion may be denied solely on the failure of the plaintiff to provide such documentation. *See Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994); *Cooper v. Sargenti Co., Inc.,* 877 F.2d 170, 172, 174 (2d Cir.1989) [citation omitted].

15    Plaintiff should note that he will still be required to pay fees that he may incur in this action, including but not limited to copying and/or witness fees.

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2004 WL 1824373
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Edward FEINBERG, Plaintiff,

v.

THE CITY OF NEW YORK, Police Officer Stephen
Lewis, Police Officer Treadwell, Sgt. Rentas
and Unidentified Police Officers from the New
York City Police Department, Defendants.

No. 99CV12127(RC).
|
Aug. 13, 2004.

Memorandum and Order

CASEY, J.

**\*1** Plaintiff Edward Feinberg ("Plaintiff" or "Feinberg") brings this § 1983 and New York state law action alleging *inter alia* false arrest, false imprisonment, and malicious prosecution. Defendants City of New York, Police Officer Stephen Lewis ("Lewis") and Police Officer James Treadwell ("Treadwell")[1] now move for summary judgment. For the reasons explained, Defendants' motion is granted in its entirety.

I. Background

The following facts are not in dispute. While on patrol duty on the afternoon of June 19, 1998, Officers Lewis and Treadwell heard a radio report of sexual abuse at the Bronx School for Career Development. Def. Am. 56.1 Stmt. ¶¶ 8, 13. When they arrived at the school they observed the complainant, Kesha Quinones ("Quinones"), in the school's security office looking visibly mad and upset. Def. Am. 56.1 Stmt. ¶ 15. Quinones told Officer Treadwell that Plaintiff Feinberg, a teacher at the school, grabbed her buttocks from behind with both his hands, causing her to lunge forward. Def. Am. 56.1 Stmt. ¶ 16. Quinones did not see Feinberg touch her, but she said he was the only person in her proximity at the time of the incident. Def. Am. 56.1 Stmt. ¶ 15; Pltf. 56.1 Stmt. ¶ 1.

Officers Lewis and Treadwell summoned their patrol supervisor, Defendant Sergeant Rentas, to the Bronx School on the same day. Def. Am. 56.1 Stmt. ¶ 18. The officers informed Sergeant Rentas that a woman at the school was alleging that a teacher grabbed her. Def. Am. 56.1 Stmt. ¶ 19. Sergeant Rentas also questioned Quinones about the incident and testified that Quinones demonstrated Feinberg allegedly did to her and that it was "force." Def. Am. 56.1 Stmt. ¶ 20.

Based on Quinones' statements, Officer Lewis arrested Feinberg. Def. Am. 56.1 Stmt. ¶ 21. Subsequently, the Bronx County District Attorney's Office prepared a criminal complaint charging Plaintiff with one count of sexual abuse in the third degree. Def. Am. 56.1 Stmt. ¶ 23. Quinones reviewed the complaint and attested to the facts it contained. Def. Am. 56.1 Stmt. ¶ 24; Mahon Am. Decl. Ex. H. Plaintiff was arraigned and released on his own recognizance on June 20, 1998. Def. Am. 56.1 Stmt. ¶ 25. The charges against Plaintiff were dropped on September 23, 1998. Def. Am. 56.1 Stmt. ¶ 26. On December 17, 1999, Plaintiff filed the instant action. Defendants now move for summary judgment on the grounds they had probable cause to arrest and charge Plaintiff and qualified immunity protects them from suit.

II. Discussion

A. Summary Judgment Standard

Summary judgment is appropriate where the parties' submissions demonstrate "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In evaluating a summary judgment motion, the court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Anderson,* 477 U.S. at 255. The party seeking summary judgment bears the initial burden of showing that no genuine issue of fact exists. *Celotex,* 477 U.S. at 323. Once such a showing is made, the opposing party must present "specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). However, the non-moving "may not rely on conclusory allegations or unsubstantiated speculation." *Scott v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998).

### B. Qualified Immunity
**\*2** Qualified immunity shields police officers from judgment and suit as long as " 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ' *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 817–18 (1982)). Even if Defendants did not have probable cause to arrest and charge Plaintiff, the officers would enjoy qualified immunity if it was "objectively reasonable for the officer to believe that probable cause existed, or officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* at 423–24. Summary judgment is not appropriate if a reasonable juror could find that the officers' actions were objectively unreasonable. *Id.* at 420 ("An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances."). If, on the other hand, "the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate." *Id.* at 421.

### C. False Arrest and False Imprisonment
Plaintiff's claims for false arrest and false imprisonment are analyzed identically. *Covington v. City of New York,* 171 F.3d 117, 125 (2d Cir.1999) (explaining false arrest is synonymous with false imprisonment). To state a claim for false arrest in New York, a plaintiff must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York,* 331 F.3d 63, 75 (2d Cir.2003) (internal quotations and citations omitted) (explaining liability for false arrest also gives rise to liability under § 1983); *see also Donahue v. Baker,* 976 F.Supp. 136, 142 (N.D.N.Y.1997) ("[T]o state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him ... of a right, privilege or immunity secured by the United States Constitution or the laws or treaties of the United States.")

If there was probable cause to make the arrest, the false arrest claim will fail. *Brome v. City of New York,* 2004 WL 502645, at \*3 (S.D.N.Y. Mar. 15, 2004) (citing *Boyd v. City of New York,* 336 F.3d 72, 75 (2d Cir.2003)). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (explaining probable cause "constitutes justification and is a complete defense to an action for false arrest"); *Illinois v. Gates,* 462 U.S. 213, 244 n. 13 (1983) (explaining probable cause requires only a "probability or a substantial chance of criminal activity, not an actual showing of such activity"); *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 128 (2d Cir.1997) (explaining once a police officer reasonably believes he has probable cause, the officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest"). "A judicial finding of probable cause may be based 'on the totality of circumstances' faced by the officer at the time of the arrest." *Brome v. City of New York,* 2004 WL 502645, at \*3 (citing *Illinois v. Gates,* 462 U.S. at 230).

**\*3** Here, the Defendant officers responded to a call of sexual abuse at the Bronx School. Upon arriving at the school, they took a statement from the visibly upset complainant, who stated she had been grabbed from behind on her buttocks and when she turned around the Plaintiff was the only person in her vicinity. Def. Am. 56.1 Stmt. ¶ 16 (citing Treadwell Dep. at pp. 33–35). The officers' supervisor also spoke to the complainant, who told her she had been grabbed on the buttocks by the Plaintiff. Def. Am. 56.1 Stmt. ¶ 20 (citing Rentas Dep. at pp. 30–31). "[A] law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth." *Miloslavsky v. AES Engineering Society, Inc.,* 808 F.Supp. 351, 355 (S.D.N.Y.1992), *aff'd,* 993 F.2d 1534 (2d Cir.1993); *see also Bernard v. United States,* 25 F.3d 98, 103 (2d Cir.1994) ("Assuming the information ... relied upon was wrong, probable cause exists even where it is based upon mistaken information, so long as the arresting officer was reasonable in relying on that information."); *Mistretta v. Prokesh,* 5 F.Supp.2d 128, 133 (E.D.N.Y.1998) ("When an officer is advised of a crime by a person who claims to be the victim, and that person signs a complaint accusing another, the officer generally has probable cause to arrest ."); *Eisenberg*

*v. District Attorney of King,* 1996 WL 406542, at *4 (E.D.N.Y. July 16, 1996) (granting summary judgment on false arrest claim even where putative sexual abuse victim was known to have made an unsubstantiated complaint of sexual abuse in the past).

Plaintiff argues he did not touch the complainant, an eyewitness never saw him touch the complainant, and the complainant was an emotional young woman who was not credible. Where, as here, the complainant and the accused have no prior relationship, the arresting officer has no duty to "embark upon a collateral investigation into the credibility of the complainant. Such a requirement would place an unwarranted burden upon those charged with the responsibility to enforce the law. It is the function of the factfinder, not the arresting officer, to decide whether the complainant's story is credible. 'Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to ... determine guilt, through a weighing of the evidence." ' *Eisenberg,* 1996 WL 406542, at *4 (quoting *Krause v. Bennett,* 887 F.2d 362, 372 (2d Cir.1989)); *cf. Mistretta v. Prokesch,* 5 F.Supp.2d at 128 (explaining when the arresting officer knows of a prior relationship between the putative victim and the accused, the officer may need to investigate further).

In light of the information the defendants had at the time of Plaintiff's arrest, the Court finds they had probable cause to arrest him. Alternatively, and at a minimum, reasonable officers could have disagreed as to the existence of probable cause in this instance and Defendants are thus entitled to qualified immunity with respect to the charge of false arrest. *Lennon v. Miller,* 66 F.3d at 420. Defendants' motion for summary judgment is granted on this claim.

#### D. Malicious Prosecution

**\*4** "To sustain a § 1983 claim of malicious prosecution, a plaintiff must demonstrate conduct by the defendant that is tortious under state law and that results in a constitutionally cognizable deprivation of liberty." *Kinzer v. Jackson,* 316 F.3d 139, 143 (2d Cir.2003) (citing *Singer v. Fulton County Sherif,* 63 F.3d 10, 116–17 (2d Cir.1995)). In New York, the plaintiff must show that "(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for

the proceeding; and (4) that the proceeding was instituted with malice." *Id.* Again, probable cause is a complete defense to a malicious prosecution claim. *Savino v. City of New York,* 331 F.3d at 72.

Plaintiff's claim fails with respect to the requirement that the proceedings were commenced without probable cause. Defendants had probable cause to arrest Plaintiff and the probable cause did not dissipate prior to the commencement of the criminal proceeding. Rather, the complainant attested to and endorsed the recitation of facts in the criminal complaint. Mahon Am. Decl. Ex. H; *see also Lowth v. Town of Cheektowaga,* 82 F.3d 563, 571 (2d Cir.1996) (explaining that for "probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact"). Thus, Defendants are also entitled to summary judgment on the malicious prosecution claim due to the presence of probable cause and, alternatively, qualified immunity grounds.

#### E. Duty to Intervene

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994). "An officer who fails to intercede is liable for the preventable harm caused by the actions of the of the other officers where that officer observes or has reason to know ... that a citizen has been unjustifiably arrested...." *Id.* (citing *Gagnon v. Ball,* 696 F.2d 17, 21 (2d Cir.1982)). If the Court determines that the officer's conduct did not violate a constitutional right, however, the analysis ends. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Thus, since Defendants had probable cause to arrest and charge the Plaintiff, Defendants' motion for summary judgment on this claim is granted.

#### F. Remaining Claims

In his opposition papers, Plaintiff does not respond to Defendants' arguments in support of summary judgment on his state, conspiracy, municipal liability and supervisory liability claims. However, "[e]ven when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law."

*Vermont Teddy Bear Gram Co. Inc. v. 1–800 Beargram Co.,* 2004 WL 1472675, at *1 (2d Cir. Jul. 1, 2004).

### 1. State claims are time barred
**\*5** New York's General Municipal Law § 50–i provides a one year and ninety day statute of limitations for tort claims against a municipality and its officers. Plaintiff was arrested on June 19, 1998 and released one day later. He did not file this lawsuit until December 17, 1999, well after the statute of limitations period had expired. Plaintiff has not offered any facts that would provide an appropriate basis for equitable tolling. Therefore, all of his state law claims against the City and its employees are dismissed. *Quiles v. City of New York,* 2003 WL 21961008, at *6 (S.D.N.Y. Aug. 13, 2003) (dismissing New York false arrest claims because plaintiff failed to timely file notice of claim and complaint).

### 2. Conspiracy claim is dismissed
"The essence of a conspiracy claim is a combination of two or more persons acting in concert to commit an unlawful act, the principal element of which is an agreement by the parties to inflict wrong upon or injure another." *Almonte v. Florio,* 2004 WL 60306, at *4 (S.D.N.Y. Jan. 13, 2004) (internal citations omitted). A plaintiff bringing a conspiracy claim under § 1983 must prove an actual violation of constitutional rights. *Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir.1995). As Plaintiff has not demonstrated a violation of his constitutional rights, his conspiracy claim fails.

### 3. Municipal liability claim is dismissed
Plaintiff's § 1983 claim against the City must be dismissed because Plaintiff cannot show that a policy or practice of the City caused the alleged deprivation of his rights. "To establish municipal liability for alleged constitutional violations, [a plaintiff] must prove that the defendants' actions against him were caused by a specific identifiable policy or that the challenged conduct resulted directly from a decision 'properly made by the government's authorized decision-makers.' " *Flynn v. New York City Board of Education,* 2002 WL 31175229, at *8 (S.D.N.Y. Sept. 20, 2002) (citing *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 690 (1978) and *Penbaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986) and granting defendants' motion for summary judgment). Since Plaintiff has not proffered any admissible evidence in support of this claim, Defendants' motion for summary judgment on the municipal liability claim is granted.

### 4. Supervisory liability claim is dismissed
Plaintiff's supervisory liability claim fails on two fronts. First, the supervisor here, Sergeant Rentas, was never served with the summons and complaint. Second, to establish a claim for supervisory liability, Plaintiff must demonstrate that the supervisor either participated in the unconstitutional action, learned of the violation and failed to remedy the wrong, created the policy or custom under which the unconstitutional practice occurred, or was grossly negligent in managing the subordinates who caused the unconstitutional condition. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). Here, Plaintiff has not come forward with any admissible proof to sustain a supervisory liability claim or create a triable issue of fact. Accordingly, the claim is dismissed.

### III. Conclusion
**\*6** For the reasons explained, Defendants' motion is granted in its entirety. The Clerk of the Court is directed to close the case.

So ordered.

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 1824373

## Footnotes
1    Defendant Sergeant Rentas and the additional unnamed police officer defendants have never been served with the summons and complaint. Def. Am. 56.1 Stmt. ¶ 5; Docket Sheet. The case is therefore dismissed with prejudice against them. Fed.R.Civ.P. 4(m); *Almonte v. Florio,* 2004 WL 60306, at *1 n. 3 (dismissing unserved defendants with prejudice because § 1983 three-year statute of limitations had expired) (S.D.N.Y. Jan. 13, 2004).